UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Palm Beach Division

Case No. 05-80387-CIV (Ryskamp/Vitunac)

| | |
|---|---|
| STEVEN A. SILVERS, an individual | ) |
| Plaintiff, | ) |
| v. | ) |
| GOOGLE INC., a Delaware corporation | ) |
| Defendant, | ) |
| GOOGLE INC., a Delaware corporation | ) |
| Counterclaimant, | ) |
| v. | ) |
| STEVEN A. SILVERS, an individual; STELOR PRODUCTIONS, INC., a Delaware corporation; STELOR PRODUCTIONS, LLC; a business entity of unknown form; and STEVEN ESRIG, an individual, | ) |
| Counterdefendants, | ) |



## MEMORANDUM IN SUPPORT OF MOTION TO BIFURCATE DISCOVERY AND TRIAL

Defendant and Counterclaimant Google Inc. files this memorandum supporting its motion to bifurcate discovery and trial in the very unusual circumstances of this case.



I.   **INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiff Steven A. Silvers ("Silvers"), claiming a federal registration for the mark GOOGLES AND DESIGN for children's books, has brought this action for alleged trademark infringement by Google Inc. ("Google"). Google has counterclaimed against Silvers, and against his collaborators Stelor Productions, Inc., its successor Stelor Productions, LLC, and Stelor's principal officer Steven A. Esrig, claiming that their use of GOOGLES in connection with Internet directory/search and email services violates Google's trademark rights in the world famous mark GOOGLE.

This case involves, among other things, a stark threshold question of fact, namely whether Mr. Silvers has any enforceable rights in GOOGLES AND DESIGN and, if so, whether Silvers or Google has priority of enforceable rights.

Mr. Silvers claims that his rights flow from the publication of the book <u>Googles And The Planet Of Goo</u> by a company apparently set up to commercialize the book, The Googles Children's Workshop, Inc. ("GCW").

GCW filed an application to register the trademark GOOGLES AND DESIGN for children's books with the U.S. Patent and Trademark Office in 1996. Declaration of Andrew P. Bridges ("Bridges Decl.") ¶2 and Exh. A. Upon an inquiry by the Patent and Trademark Office, Mr. Silvers, speaking for GCW, specifically confirmed that the applicant was the corporation GCW and not himself personally. Bridges Decl. ¶2 and Exh. B. GCW obtained the registration in 1997. Bridges Decl. ¶2 and Exh. C. GCW dissolved without assets later in 1997. Bridges Decl. ¶3 and Exh. D.

After GCW was dissolved, Google emerged as the world's most popular Internet search engine, rapidly establishing itself as one of the most prominent companies in the world. Mr. Silvers evidently saw for himself a new business opportunity arising from Google's rise to fame. Notwithstanding that his "Googles" business had died on the vine and that GCW had dissolved years earlier without assets, Mr. Silvers executed on May 18, 1999, a document purporting to assign the GOOGLES AND DESIGN mark and registration from the defunct company to himself. Bridges Decl. ¶4 and Exh. E. Mr. Silvers then apparently began to seek investors or partners in new business efforts. To that end Mr. Silvers entered into an agreement with The Aurora Collection in 2000, later replaced by an agreement with Counterdefendant Stelor Productions, Inc. ("Stelor") in 2002. Bridges Decl. ¶5 and Exhs. F, G.

The agreement between Silvers and Stelor was unusual in that it provided Stelor with rights exclusive even as to Mr. Silvers. Stelor has indicated that this unusual arrangement was necessary because Stelor was aware the Mr. Silvers was unsuitable as the developer and promoter of children's books or anything else that related to children. As Stelor points out in its cross-claim, "negative aspects of Silvers' background . . . made him unsuited to serve as figurehead or spokesman for an enterprise aimed at providing wholesome and enriching entertainment to an audience of impressionable children." Cross-claim at ¶10. In fact, during the time that Mr. Silvers claims to have been developing his child-oriented concept, he was convicted and served time in a federal penitentiary arising from his involvement in a large-scale cocaine trafficking ring based in Miami, Florida, with distribution networks in Maryland and elsewhere. *See United States v. Silvers*, 90 F.3d 95 (4th Cir. 1996).

Stelor and its CEO appear to have had no previous track record in children's merchandising. They contracted to take a license for an alleged child-oriented concept that had

3

failed for years. They acquired the license from an alleged creator whose association with the concept would be fatal. A good-faith business reason for this is not obvious.

In 2003, Stelor apparently caused an attorney to file a declaration of continued use in the name of GCW, by then defunct for five and one-half years, in order to maintain the registration and to secure supposed "incontestable" status for the registration. Bridges Decl. ¶6 and Exh. H. After that affidavit was filed, on July 22, 2004, Silvers caused the 1999 assignment to be recorded. Bridges Decl. ¶6 and Exh. I.

On May 17, 2004, Stelor apparently caused Silvers to file a new, intent-to-use application for federal registration of the GOOGLES mark for a variety of computer services including email. *See* Answer and Counterclaim Exh. K.

Sometime during 2005, Stelor Productions as Silvers' licensee launched a new website at googles.com advertising (but apparently not yet delivering) Internet directory/search and email services. Bridges Decl. ¶7 and Exh. J.

This, then, is the chronology of relevant events:

- August 2, 1996:     GCW filed application to register the trademark GOOGLES AND DESIGN with the U.S. Patent and Trademark Office.

- March 4, 1997:     Silvers clarified that GCW is the applicant, not himself personally.

- August 12, 1997:     Registration issued in name of GCW.

- October 22, 1997:     GCW dissolved without assets.

- May 18, 1999:     Silvers executed purported assignment of mark and registration from GCW to himself.

4

- July 21, 2000: Silvers entered agreement with The Aurora Collection to develop his concept.

- June 1, 2002: Silvers entered agreement with Stelor to develop his concept.

- March 26, 2003: GCW filed Combined Declaration to maintain registration.

- May 17, 2004: Silvers filed a new, intent-to-use application for federal registration of GOOGLES for computer services including email and information transfer.

- July 22, 2004: Silvers recorded the 1999 purported assignment in his favor.

- 2005: Stelor, pursuant to license from Silvers, announced and advertised an impending launch of a new web site based on the GOOGLES name called "Gootopia" featuring an advertised (but apparently not functional) Internet search/directory and email.

To prevail in his trademark infringement claim, Silvers must first establish that he has enforceable rights in his mark. However, it is not clear he will be able to meet this initial burden. The purported assignment from GCW to plaintiff, years after GCW was dissolved without assets, appears to be a nullity on two distinct grounds. First, since GCW was dissolved with no assets, it had no business or goodwill to assign, and its assignment was an "assignment in gross," invalid under trademark law. *See Int'l Cosmetics Exch., Inc. v. Saba*, No. 00CV2280, 2001 WL 1944733 (S.D. Fla. 2001) (noting that "[b]ecause trademarks do not have discrete value as property, when a trademark assignment results in a bare transfer, not involving assets,

5

trade secrets, management, or goodwill, courts will invalidate the transfer as an assignment-in-gross") (citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18-17). Second, an assignment by a former officer of a corporation, made years after the dissolution of the corporation, is ineffective as a matter of law. Where a company has dissolved before a purported assignment of trademark rights, the assignee has no rights in the assigned trademark. *See Thorne, Neale & Co., Inc. v. Coe*, 143 F.2d 155, 156 (D.C. Cir. 1944) (assignee did not own trademark allegedly assigned by company that had been dissolved five years prior to the assignment by the bankruptcy trustee). Yet plaintiff, eager to pursue Google, claims the rights based on the registration.

In addition to the profound chain of title problems faced by plaintiff Silvers, he has another hurdle: he cannot show that either he or GCW continuously used the alleged mark as alleged in the Combined Declaration upon which the continued maintenance of the pleaded registration depends. *See* 17 U.S.C. §§ 1058(a), 1058(b)(1), 1065(3) (providing for declarations under Sections 8 and 15 of Lanham Act to maintain registration and achieve incontestable status). The requisite "use in commerce" must be in the ordinary course of trade, and not used merely to reserve a right in a mark. *See* 17 U.S.C. § 1127 (definition of "use in commerce") Plaintiff's original complaint and his proposed first amended complaint include exhibits that show a failure by plaintiff to use the mark in the ordinary course of trade as required by the trademark law to constitute "use in commerce." The sales of the book GOOGLES AND THE PLANET GO were negligible. *See* Complaint, Exhs. 20, 21 (credit memo). Plaintiff's Silvers' efforts to attract a distributor for GCW failed time and again. *See* Complaint, Exh. 22. Only after the demise of GCW and after defendant Google became wildly successful and world famous did Silvers attract any attention from prospective business partners.

To prevail in a trademark infringement claim, plaintiff must establish as a prerequisite that it has enforceable rights in his mark that predate Google's adoption and use of its mark. *See Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). In this context, there are substantial doubts that plaintiff has any rights to enforce against Google. On the other hand, there is strong reason to believe that Google has rights to enforce against Silvers (and the Counterdefendants Stelor Productions and Esrig) with their late entry into Internet search, email, and related activities.

Because this issue is so stark, and so pivotal to the existence of any hope of a case of plaintiff against Google, it is especially well suited to the Court's focused attention in a bifurcated schedule of discovery and trial. Bifurcating the case to separate the preliminary issue, namely the validity, scope, and priority of rights held by Silvers, from the trademark infringement and other liability issues in Silvers' claims and Google's counterclaims is appropriate under Rule 42(b) of the Federal Rules of Civil Procedure because bifurcation will expedite resolution of this case, conserve judicial resources, and avoid unnecessary and otherwise inevitable prejudice to Google.

In addition to bifurcating the trial, the Court should stay discovery as to the trademark infringement claims and counterclaims in order to carry out the goals and purpose of Rule 42(b). Discovery on trademark infringement and other liability and relief issues is often time-consuming and expensive, and sometimes contentious. Neither the parties nor the Court should expend resources addressing these issues pending a determination of the extent and scope of rights held by Silvers, and whether Silvers' rights predate Google's adoption and use of the GOOGLE mark. Only after determining whether Silvers possesses any enforceable trademark rights and the relative priority between Silvers and Google can the Court be certain that

discovery related to liability and relief will be necessary. Furthermore, entering a stay of discovery as to the liability and relief issues would allow the parties to engage in focused, specific discovery aimed solely at determining the parties' respective trademark rights.

In addition, a newly filed cross-claim by Stelor Productions LLC ("Stelor") against Mr. Silvers further justifies bifurcation of this case. Stelor, a licensee of intellectual property rights from Silvers, is in a dispute with Silvers over who gets to sue Google. (From Google's perspective, the dispute between Stelor and Silvers as reflected in the cross-claim and the exhibits to the cross-claim merely evidences that the sole genuine business on which they were collaborating was the business of suing Google in the hope of securing a windfall settlement. This is made manifest by an earlier settlement agreement between Stelor and Silvers filed publicly in this Court in connection with an earlier case, in which they optimistically set forth their respective shares of recoveries over $100 million. Bridges Decl. ¶8 and Exh. K.[1]) The existence of trademark rights alleged by Silvers -- whether those rights are for the benefit of Silvers or Stelor -- is the foundation of Stelor's cross-claim against Silvers. A determination of the validity of the trademark rights claimed by Silvers is a prerequisite to the court's determination of Count Three of the cross-claim by Stelor, which alleges that Silvers breached an express warranty regarding Silvers' ownership of the trademark. *See* Cross-claim filed Sept. 9, 2005 at ¶41-48.

---

[1] In the other case, the Court denied a request to maintain under seal an exhibit incorporating that document. *Stelor Productions, LLC v. Silvers*, civil action no. 05-80393-CIV-Hurley/Hopkins, slip op. at 5 (S.D. Fla. July 2, 2005)(filed July 5, 2005).

II.  **ARGUMENT**

   A.  **Bifurcation Is Appropriate In Trademark Infringement Cases.**

Rule 42(b) provides that courts should order separate trials when doing so furthers convenience, avoids prejudice, or expedites resolution of the issues. Fed. R. Civ. P. 42(b). "[Rule] 42(b) confers broad discretion on the district court in this area, permitting bifurcation merely 'in furtherance of convenience.' That is not a high standard, and the district court's concern for clarifying the issues to be tried suffices to permit the court to separate the trials." *Harrington v. Cleburne County Board of Education*, 251 F.3d 935, 938 (11th Cir. 2001); *see also Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1260 (11th Cir. 1983). Any one of these three factors is sufficient to support a finding that bifurcation is appropriate.

Courts have bifurcated the issues of ownership from issues of infringement in trademark actions. In *City of Newark v. Beasley*, 883 F. Supp. 3, 4 (D.N.J. 1995), the court bifurcated the case so that issues of trademark (and copyright) ownership could be decided before issues of infringement and damages. That is the exact type of bifurcation that Google seeks here. In that case (as will likely occur here), the court found that the plaintiff lacked rights, and the court did not need to proceed to address other issues on plaintiff's claim.

Courts have found it appropriate to bifurcate trademark cases in other contexts where resolving an initial issue can obviate the need to resolve other claims. *E.g., Brooks Shoe Manufacturing Co., Inc. v. Suave Shoe Corp.*, 533 F. Supp. 75, 84 n.16 (S.D. Fla. 1981) (noting the bifurcation of a trademark trial with respect to the liability and damage issues, where a finding of no liability relegates the need to hear evidence on the issue of damages unnecessary); *St. Charles Man. Co. v. Mercer*, 737 F.2d 891, 892 (11th Cir. 1983) (liability stage and damages stage); *Isaly Co. v. Kraft, Inc.*, 619 F. Supp. 983, 998 (M.D. Fla. 1985) (noting that the court

approved bifurcation in a trademark case, reserving damages, if any, for a later proceeding). The court has broad discretion to bifurcate claims or issues and is subject to appellate reversal only if there has been an abuse of discretion. *Harrington*, 251 F.3d at 938; *see also Precision Shooting Equipment, Inc. v. Golden Eagle Industries, LLC*, No. 8:00-450, 2005 WL 1669120 (M.D. Fla. July 8, 2005) ("[t]he decision to bifurcate is consigned to the discretion of the trial court").

Parallels in patent law also reinforce the propriety of separating validity and infringement issues in trademark cases. Where both validity and infringement issues must be determined, validity should be decided first and infringement considered only if validity is decided in favor of the plaintiff. *Beckman Instruments, Inc. v. Chemtronics, Inc.*, 439 F.2d 1369, 1372 n.4 (5th Cir. 1970) ("we find that when a challenge is made to the validity of a patent in an infringement suit, that issue should ordinarily be taken up first and infringement considered only if validity is decided favorably to the patentee")[2]; *Kahn v. General Motors Corp.*, 865 F. Supp. 210, 215 (S.D.N.Y. 1994) (issue of patent ownership was severed and designated for trial before the issue of infringement, as a finding that plaintiff did not own patent would make it unnecessary to reach infringement issue and "[r]equiring the parties to prepare to try the whole case at once would be unreasonable and wasteful"). The same reasoning applies to this trademark case. Where Silvers' pleadings and the public records of the Patent and Trademark Office themselves call into question the validity of Silvers' trademark rights, it is appropriate to consider the validity and priority of the trademark rights first and to consider liability and relief issues later if necessary.

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

### B. Bifurcation Will Expedite Resolution Of This Case, Conserve Judicial Resources, And Avoid Significant Prejudice To The Defendant.

Expedition of the case and conservation of judicial resources are "especially weighty consideration[s] where the determination of one claim may obviate the need to adjudicate one or more other claims." 8 James Wm. Moore et al., Moore's Federal Practice ¶ 42.20[4][d] (3d ed. 2005); *see also Brooks Shoe Manufacturing Co., Inc.* 533 F. Supp. at 84 n.16 (bifurcating liability and damages in a trademark trial). Where, as here, a key issue may determine the outcome of an entire proceeding, bifurcation of that issue for trial, allowing a speedier focus on the threshold issue, promotes an expeditious resolution.

As observed by the Eleventh Circuit, "[i]n a trademark infringement action, the plaintiff must show, first, that its mark is valid and, second that the defendant's use of the contested mark is likely to cause confusion". *Dieter,* 880 F.2d at 326. Those two points involve distinct inquiries. In this case, the inquiry regarding Silvers' rights will focus upon his chain of title to the trademark, the dissolution of GCW without assets, the abandonment of the mark, and Silvers' failure to establish a *bona fide* use of the mark in commerce in the ordinary course of trade and not merely to reserve rights in a mark. If Silvers has developed any rights at all, the inquiry will then focus on the relative priority of rights between Silvers and Google. Bifurcation will expedite resolution of this case, conserve judicial resources and avoid significant prejudice because it would obviate the need to embark upon inquiries relating to infringement and other liability arising from Silvers' claimed rights if his rights do not exist or are inferior to any rights of Google.

Moreover, if Stelor's cross-claim against Silvers proceeds, bifurcation will be even more beneficial because an early trial on key issues may dramatically affect that cross-claim.

### C. All Discovery On Infringement And Other Liability Issues Should Be Stayed Pending A Determination Of The Validity Or Priority of Silvers' Trademark Rights.

One of the primary purposes of bifurcation under Rule 42(b) is to defer costly discovery and trial preparation costs pending resolution of preliminary issues. "When ordering separate trials, the district court is authorized to stay discovery as to a second claim or issue, if appropriate." 8 Moore's Federal Practice ¶ 42.23[3](3d ed. 2005). Indeed, the ability to defer costly discovery pending resolution of a preliminary issue is one of the primary purposes of bifurcation.

Furthermore, a trial judge has broad discretion to control the course of discovery and to stay discovery until preliminary questions that may dispose of the case are determined. *National Independent Theatre Exhibitors v. Buena Vista Dist. Co.*, 748 F.2d 602, 609 (11th Cir. 1984) (noting trial court's broad discretion to manage discovery); *R.E.F. Golf Co. v. Roberts Metals, Inc.*, No. 92-577, 1992 WL 161041, *3 (M.D. Fla. June 29, 1992) ("[t]he court has broad discretion to stay discovery until preliminary questions that may dispose of the case are determined").

Here, a stay of discovery as to all issues other than the extent and scope of trademark rights held by Silvers, and whether Silvers rights predate Google's adoption and use of the GOOGLE mark is appropriate. Such a stay would allow the parties to engage in discovery to determine the relative trademark rights of Google and Silvers. This initial inquiry may dispose of the infringement issue entirely. Rather than propound voluminous discovery covering a myriad of issues, such limited discovery would aid both parties in determining the extent and scope of trademark rights held by Silvers, and whether Silvers rights predate Google's adoption and use of the GOOGLE mark. Then, should the Court determine that Silvers has any

enforceable trademark rights, the parties could conduct further discovery on any remaining issues. Accordingly, a stay on discovery would be beneficial to both parties.

### D.   Bifurcation of Discovery and Trial Would Simplify And Shorten The Trial And Other Proceedings.

Both Silvers and Google have asserted claims against each other. Google believes Silvers lacks any genuine rights in his claimed marks, and it further believes that Silvers' recent foray into Internet directory/search and email services violates Google's rights.

Trying the parties' mutually opposing trademark infringement and other liability claims alongside the mutually opposing validity and priority claims would be complex from a practical decisional standpoint. Two sets of liability claims would be contingent upon the resolution of two sets of threshold validity and priority issues. The trademark infringement claims involve complicated issues involving many factors to determine the likelihood of confusion. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir. 1980). The procedural complexity as well as the substantive complexity of trying all issues at once will create a serious risk of confusing a jury, which would prejudice all parties in the case.

Bifurcation will allow the Court and jury to focus on distinct sets of issues separately in a way that will promote simplicity at trial. It will avoid distraction in the jury's deliberation of some issues caused by the presence of other evidence and arguments that have a merely contingent relevance until the underlying issues are decided. Evidence on the multi-factor test of infringement and of other claims need not crowd and complicate the straightforward appraisal of the validity and the priority of trademark rights.

Separate resolution of the threshold issue will also shorten the overall trial time. Evidence on infringement and other liability factors may be lengthy, and if both sides have to

present their full cases without a threshold determination, one set of evidence would likely become moot in light of the eventual ruling on validity and priority. If the ruling can be made early, it is likely that the proof and defense will be needed of only one set of infringement and other claims rather than two sets of claims.

Moreover, bifurcation of discovery will also shorten the total pendency of the case. By focusing discovery on the issues relevant to each phase, the Court can promote efficient and rapid progress of the case. Discovery on the threshold issues need not be retarded because it would be accompanied by the more burdensome discovery on liability and damages issues. Discovery on later issues would be streamlined enormously by threshold rulings on preliminary issues.

### E. The Balance Of The Equities Favors Bifurcation of Trial And Discovery.

The other parties will suffer no prejudice if this Court bifurcates the determination of trademark rights from the infringement and other liability claims. Indeed, if Google can demonstrate that Silvers has no enforceable trademark rights in the first instance, the case between Silvers and Google collapses into a non-jury declaratory relief and injunction claim by Google, which may be disposed of relatively rapidly. Equitable considerations favor an early determination of whether the rights claimed by Silvers are as hollow as Google believes based upon public documents and other documents relied upon by Silvers. To the contrary, it would be inequitable to require the parties to follow a complete course of discovery and to put on their complete cases -- not just on Silvers' principal claim but also on Google's counterclaim and even possibly on Stelor's cross-claim -- and to tie up the Court in much longer proceedings when such a stark threshold issue presents itself at the outset of the case.

III.  CONCLUSION

Because bifurcation of the trial and discovery of the case into separate validity/priority and liability/relief phases would promote a rapid resolution of the case, would streamline and simplify proceedings, would safeguard against confusion regarding the different issues, and would avoid prejudice to the parties, bifurcation of trial and discovery are appropriate and necessary in this case in order to promote the underlying purpose of Rule 42(b).  Google therefore respectfully requests that the Court order a separate trial, pursuant to Federal Rule of Civil Procedure 42(b), to determine the validity and priority of Silvers' alleged trademark rights in the "Googles" mark, before addressing liability and relief issues.  Google further requests an order staying all discovery on liability and relief issues until after the resolution of the potentially dispositive trademark validity and priority issues in order to advance the goals of Rule 42(b).

Dated: September 5, 2005   October

Respectfully submitted,

By: _____
Jan D. Atlas (Bar No. 226246)
jatlas@adorno.com
ADORNO & YOSS LLP
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida 33301-4217
Phone (954) 763-1200
Fax (954) 766-7800

Andrew P. Bridges (Bar No. 122761)
abridges@winston.com
Jennifer A. Golinveaux (Bar. No. 203056)
jgolinveaux@winston.com
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, California 94111
Phone: (415) 591-1000
Fax: (415) 591-1400

Attorneys for Defendant and Counterclaimant
GOOGLE INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. mail this 5 day of ~~September~~ October, 2005 upon:

Harley S. Tropin
Kenneth R. Hartmann
Gail A. McQuilkin
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134

Adam T. Rabin
DIMOND KAPLAN & ROTHSTEIN, P.A.
525 S. Flagler Drive, Trump Plaza - Suite 200
West Palm Beach, Florida 33401

Kevin C. Kaplan
David J. Zack
BURLINGTON, WEIL, SCHWIEP, KAPLAN & BLONSKY, P.A.
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Fax: 305-858-5261

Dated: ~~September~~ October 5, 2005

SF:114219.5