FILED by ___ SW ___ D.C.
ELECTRONIC

Nov 4 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Palm Beach Division

STEVEN A. SILVERS, an individual,   CASE NO. 05-80387-CIV-RYSKAMP
                                    Magistrate Judge Vitunac
       Plaintiff,

v.

GOOGLES INC., a Delaware corporation,

       Defendant.
_____/

GOOGLES INC., a Delaware corporation,

       Counterclaimant,

v.

STEVEN A. SILVERS, an individual; STELOR
PRODUCTIONS, INC., a Delaware corporation;
STELOR PRODUCTIONS, LLC.; a business
entity of unknown form; and STEVEN ESRIG,
an individual,

       Counterdefendants.
_____/

### SILVERS' REPLY TO STELOR'S MEMORANDUM
### IN OPPOSITION TO MOTION TO DISMISS CROSS-CLAIM

Stelor obscures the test of whether a cross-claim is "closely related" to the original action. The test is based on facts and issues common to the original claim, not whether as a result of prevailing on its cross-claim Stelor would allegedly have the "right to sue" Google.[1] The facts and issues that must be considered in resolving Stelor's wrongful termination claim

---

[1] Stelor cites *Paradise Creations v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003) for the apparent proposition that only Stelor can sue Google for infringement. *Opposition* at p. 6. This case, as this Court is aware, merely addressed the question of Article III standing, where the plaintiff/patent holder was a dissolved corporation when it obtained the patent in suit. Notably, the opinion cites to *H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1019 (Fed. Cir. 2001) and the rule that an exclusive licensee (like Stelor was) "did not have the right to sue" a patent infringer without joining the patent owner (here Silvers) in the lawsuit. *Paradise Creations*, 315 F.3d at 1310.

1

will be whether Silvers properly terminated the License Agreement, and if not, the amount of damages suffered by Stelor from the wrongful termination. These are the exact issues are being litigated in the pending state court action. Neither issue relates to whether Google has violated the Lanham Act.

### A. There Is No "Threshold Issue" To Decide: The License Has Been Terminated

While Stelor acknowledges that Silvers terminated the License Agreement before he filed this action, it conveniently skips over the critical fact that even if it prevails against Silvers on its claim for wrongful termination, *there will be no reinstatement of the license*. Regardless of its wishes, Stelor's sole remedy under established case law (and as Judge Hurley found when he denied Stelor injunctive relief to force Silvers to reinstate the license) is limited to money damages. Therefore, even if the parties were to litigate the cross-claim in this Court, the Court will not be deciding a "threshold issue" of who under the License Agreement can sue Google.[2]

The reason that Stelor's remedy is limited is because the license that Silvers terminated did more than give ordinary contractual rights, like the right to export bananas.[3] It was the license of a <u>trademark</u> and key to that license is the licensor's ability to exercise control over the use of the mark, the quality of goods and services promoted with the mark, and obtain compensation for allowing the licensee to use the mark. The ability to terminate a trademark license is critical to maintain trademark rights, and why termination provisions are written into every license agreement, including this one. It gave Silvers the right to terminate the license of

---

[2] Consistent with its behavior before Judge Hurley of making repeated false statements, Stelor makes the false statement to this Court that Silvers "does not contest that Stelor has the exclusive right to pursue this action against Google . . ." *Opposition at p. 6 n. 3*. Silvers has consistently objected during and after the License Agreement to legal actions Stelor filed without Silvers' knowledge or consent, including an action filed by Stelor against Google in the National Arbitration Forum (now dismissed), and one filed in the district court of Indiana, which Silvers only recently found out had been filed in May.

[3] Thus, the state law breach of contract cases cited by Stelor from the 1940s and 1950s are inapplicable because they do not involve the license of a trademark.

2

his trademark, subject of course to paying money damages if the termination of the contract was wrongful. This is why, for example, when a *Burger King* franchisee claims *Burger King* wrongfully terminated the franchise, the courts always hold that the franchisee's remedy is strictly limited to damages - - not "reinstatement" and continued use of the *Burger King* trademark without *Burger King's* consent. Otherwise, a terminated licensee could "force" the trademark owner to allow use of its trademark without a say in how the trademark is used or quality control, and without getting paid.[4] That flies in the face of basic trademark rights. As Professor McCarthy writes, trademark rights exist independent of any claim for breach of contract, and once the license to use the trademark is terminated, as it is when a franchisee is terminated, the only remedy available is money damages. The terminated party cannot sue to continue the unauthorized use of the trademark. *See McCarthy On Trademarks and Unfair Competition*, § 25:31, <u>Use of mark by ex-licensee is trademark infringement</u> (4th Ed. 2003).

The fact that Stelor asserts a *claim* for injunctive relief changes nothing, nor does it provide a valid reason to exercise supplemental jurisdiction of Stelor's unrelated breach of contract claims. In fact, Stelor acknowledges the overwhelming case law cited by Silvers, which reflects that a terminated licensee has a claim for damages - - and only damages - - and thus no irreparable harm as required to obtain injunctive relief. But, Stelor incredibly goes on to say that these cases do not apply here because they only involved <u>preliminary</u> injunctions, not <u>permanent</u> injunctions. *Opposition at pp*. 11-12. As Judge Hurley ruled, Stelor can't show irreparable harm for purposes of an injunction because it cannot demonstrate irreparable harm; it has a remedy for money damages that is easily quantified. This is so whether the injunction sought is preliminary or permanent.

---

[4] Silvers terminated the license, not only because Stelor refused to pay Silvers or account to him, but also for a variety of breaches, including failure to provide him samples of marketing and promotional materials, permit an audit, and persistent registering of "Googles" related trademarks and domain names in the name of Stelor's president rather than Silvers.

3

In this case, the ease of quantifying Stelor's damages (and the lack of irreparable harm) is even more apparent in light of the limitation of liability provisions included in the License Agreement:

> XII. <u>LMITATION OF LIABILITY</u>
>
> A.    IN NO EVENT WILL EITHER PARTY BE LIABLE UNDER THIS AGREEMENT FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITVE DAMAGES IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT (INCLUDING LOSS OF PROFITS, US, DATA, OR OTHER ECONOMIC ADVANTAGE), NO MATTER WHAT THEORY OF LIABILITY, EVEN IF THE EXCLUSIVE REMEDIES PROVIDED FOR IN THIS AGREEMENT FAIL OF THEIR ESSENTIAL PURPOSE AN DEVEN IF EITHER PARTY HADS BEEN ADVISED OF THE POSSIBILITY OR PROBABLILITY OF SUCH DAMAGES.  THE PROVISIONS OF THIS SECTION "LIMITATION OF LIABILITY" ALLOCATE THE RISKS UNDER THIS AGREEMENT BETWEEN LICENSOR AND LICENSEE AND THE PARTIES HAVE RELIED UPON THE LIMITATIONS SET FORTH HEREIN IN DETERMINING WHETHER TO ENTER INTO THIS AGREEMENT.
>
> B.    EACH PARTY'S LIABILITY TO THE OTHER UNDER THIS AGREEMENT FOR CLAIMS RELAINTG TO THIS AGREEMENT, WHETHER FOR BREACH OF CONTRACT OR IN TORT, SHALL BE LIMITED TO THE AGGREGATE ROYALTY FEES PAID BY LICENSEE TO LICENSOR DURING THE TWELVE MONTH PERIOD PRECEDING THE CLAIM.

(capitalization original)

It will be a simple matter to quantify Stelor's damages for wrongful termination if it prevails – it is entitled to an amount equal to royalty fees paid to Silvers.  And, even in the absence of this contractual limitation, any damages suffered by Stelor for wrongful termination of the license (as Judge Hurley found) can be easily quantified as the difference between the profits Stelor earned before and after the license was terminated.

Furthermore, the License Agreement provides that, as a terminated licensee Stelor has *no* rights in Silvers' mark, much less the ability to enforce Silvers' trademark rights against infringers.  The post-termination provisions of the License Agreement state that all of Stelor's rights in the trademark revert to Silvers immediately upon termination, without exception should the termination be wrongful:

4

## X. POST TERMINATION RIGHTS

> C. Upon the expiration or termination of this Agreement, all of the license rights of LICENSEE under this Agreement shall forthwith terminate and immediately revert to LICENSOR and LICENSEE except as detailed above in Section (B) of the "Post Termination Rights" Section, shall immediately discontinue all use of the Licensed Property and the like, at no cost whatsoever to LICENSOR.

Stelor also misrepresents what rights it would have if it were still a licensee. Stelor claims with a straight face that, under the License Agreement, <u>only</u> Stelor could enforce Silvers' trademark rights. But, the License Agreement does not say that at all. While Stelor was granted broad rights, including the right to register trademarks and copyrights on Silvers' behalf, those rights were not exclusive as to Silvers. The License Agreement provided in Article VIII that Silvers maintained all incidents of ownership, which necessarily includes the right to protect against infringers:

> B. LICENSOR shall retain all rights, title and interest in the Licensed Intellectual Property and Licensed Trademarks and any modifications thereto based solely on such Licensed Intellectual Property. LICENSEE acknowledges LICENSOR's exclusive right in the Licensed Intellectual Property and, further, acknowledges that the Licensed Intellectual Property and/or the Licensed Trademarks rights are unique and original to LICENSOR and that LICENSOR is the owner thereof. LICENSEE shall not, any time during or after the effective Term of the Agreement, dispute or contest, directly or indirectly, LICENSOR's exclusive right and title to the Licensed Intellectual Property and/or the Licensed Trademark(s) or the validity thereof.

> C. LICENSEE agrees that its use of the Licensed Intellectual Property and/or the Licensed Trademark(s) inures to the benefit of LICENSOR and that the LICENSEE shall not acquire any rights in the Licensed Intellectual Property and/or the Licensed Trademark(s) except for the license granted herein.

> D. LICENSOR shall retain all rights, title and interest in and to the Licensed Intellectual Properties. The LICENSOR owns the exclusive rights to the Licensed Intellectual Property. LICENSOR hereby waives and releases LICENSEE from any and all current or future claims or causes of actions by third parties, whether known

5

>or unknown, arising out of or relating to such Licensed Intellectual Properties including, but not limited to, any claim that Licensed Products violate, infringe on or misappropriate any of LICENSOR's Intellectual Property Rights.

Silvers owns his trademarks, and the right to sue an infringer. The outcome of the dispute between Stelor and Silvers will not change that.

### B.  Google's Counterclaim Does Not Create Jurisdiction for Stelor's Cross-Claim

Stelor suggests that by virtue of Google's counterclaim, Stelor's claim has been injected into the case such that jurisdiction should attach to the cross-claim. That is flat out wrong.

Google's counterclaim alleges that Stelor, while it was Silvers' licensee, used Silvers' mark for "search engine services" and thus infringed Google's mark (although as far as Silvers knows Stelor has never used the "Googles" trademark for that purpose). Since being terminated, Stelor is not authorized to use Silvers' trademark for any purpose, much less in a manner infringing of Google's mark. Indeed, Stelor is already prohibited, in light of its termination, from the conduct Google seeks to enjoin, namely use of Silvers' mark for search engine services (something Silvers would never have consented to in the first place). Google's counterclaim against Stelor, therefore, is based on Stelor's conduct prior to termination. This is an historical claim and is not even tangentially related to Stelor's claim against Silvers that it was wrongfully terminated.

Moreover, Stelor's contention that by not allowing it to bring its cross-claim against Silvers somehow limits its ability to defend against Google's counterclaim is nonsense. To defend itself, Stelor must show it did not infringe Google's mark by using Silver's mark (while it was a licensee) for search engine services. That is a factual determination based on how Stelor was using the trademark while it had the license. Those facts have nothing to do with whether Silvers wrongfully terminated the license, the core of the cross-claim, and the pending state court action.

6

Furthermore, Stelor blithely assumes that Google's counterclaim is an "original action" for purposes of Section 1367(c). It is not. Silvers' federal Lanham Act claim against Google is the original action for purposes of supplemental jurisdiction because that bestowed original jurisdiction on this Court. Stelor cites no case to justify the assertion of supplemental jurisdiction over its cross- claim on this basis. The holdings of *Allstate, Inc. Co. v. James*, a case decided under the old doctrine of ancillary jurisdiction, merely teaches that a supplemental jurisdiction can attach to a cross-claim; this begs the question because even under the ancillary jurisdiction test, the claim must be "closely related" to the original action. 779 F.2d at 1539. Stelor's cross-claim simply does not meet this test. And, the facts in *Palmer v. Hospital Auth. of Rudolph County* differ markedly from our facts. There, the court found supplemental jurisdiction because the claims of the original action and the supplemental claim "involves the same facts, occurrences, witnesses and evidence." 22 F.3d at 1566. Here, the opposite is true. There is no material overlap between the trademark infringement claims, by either Silvers or Google, and Stelor's claim that Silvers' wrongfully terminated its license. While some common witnesses may be involved, their testimony on the infringement and termination issues is not in common. Infringement and termination, as subjects, are like apples and oranges.

The Court should dismiss the Stelor's cross claim so it can be filed and properly adjudicated in state court.

Respectfully submitted,

| | |
|---|---|
| Adam T. Rabin  (FL Bar #985635) | KOZYAK TROPIN & THROCKMORTON, P.A. |
| DIMOND KAPLAN & ROTHSTEIN,P.A. | Counsel for Defendant |
| 525 South Flagler Drive, Suite 200 | 2525 Ponce de Leon, 9th Floor |
| West Palm Beach, FL  33401 | Coral Gables, Florida 33134 |
| Telephone: (561) 671-2110 | Telephone: (305) 372-1800 |
| | |
| |   s/ Gail A. McQuilkin                              |
| | Kenneth R. Hartmann (Fla. Bar  664286) |
| | Gail A. McQuilkin (Fla. Bar No. 969338) |

7

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by E-mail and U.S. mail on this 3rd day of November, 2005 upon:

Jan Douglas Atlas
Adorno & Yoss, LLP
350 East Las Olas Blvd., Suite 1700
Fort Lauderdale, FL 33301-4217
E-mail: jatlas@adorno.com

Andrew P. Bridges
Winston & Strawn, LLP
101 California Street, Suite 3900
San Francisco, CA 94111
E-mail: abridges@winston.com

Kevin C. Kaplan, Daniel F. Blonsky and
  David Zack
Burlington Weil Schwiep Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse A
Miami, FL 33133
E-mail: kkaplan@bwskb.com

                         s/ Gail A. McQuilkin

3339/102/259275.1

8