FILED by _____ D.C.
ELECTRONIC

**Nov 14 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80387 CIV RYSKAMP/VITUNAC

STEVEN A. SILVERS, an individual,

      Plaintiff,

v.

GOOGLE INC., a Delaware corporation,

      Defendant.

_____/

GOOGLE INC., a Delaware corporation

      Counterclaimant,

v.

STEVEN A. SILVERS, an individual;
STELOR PRODUCTIONS, INC., a Delaware
Corporation; STELOR PRODUCTIONS, LLC, a
Delaware limited liability company; and STEVEN
ESRIG, an individual,

      Counterdefendants.

_____/

**STELOR DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM
AGAINST GOOGLE INC, AND AMENDED CROSS-CLAIM AGAINST SILVERS**

**ANSWER**

      STELOR PRODUCTIONS, LLC, f/k/a STELOR PRODUCTIONS, INC. ("Stelor")[1] and

Steven Esrig, by and through their undersigned attorneys, hereby answer Google Inc.'s

---

[1] Stelor Productions, LLC is the successor to Stelor Productions, Inc.  Accordingly, the two are
referred to collectively as "Stelor".

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

Dockets.Justia.com

("Google") Counterclaim[2] as follows:

1.      Denied, except to admit that claims are pending against Google.

2.      Denied.

3.      Denied, except to admit that Google operates an internet search engine.

4.      Admitted.

5.      Denied, except to admit that Mr. Esrig resides in Maryland.

6.      Denied, and further alleged that Stelor Productions, Inc. has been converted to a limited liability company, Stelor Productions, LLC.

7.      Admitted.

8.      Denied, except to admit that Stelor has rights in the marks.

9.      Denied, except to admit that Stelor had and retains rights to enforce the marks.

10.     Denied, except to admit that litigation was pending between Stelor and Silvers.

11.     Denied, except to admit that Silvers filed this action and that proceedings were brought before the TTAB.

12.     Denied, except to admit that Google seeks relief, to which it is not entitled.

13.     Denied, except to admit that Google operates a website and search engine.

14.     Denied.

15.     Denied, except to admit that Exhibit "A" speaks for itself.

16.     Denied, except to admit that Exhibit "B" speaks for itself.

17.     Denied, except to admit that Exhibit "C" speaks for itself.

18.     Denied, except to admit that Exhibit "D" speaks for itself.

---

[2] Although styled a "Counterclaim" as to Stelor and Esrig, Google has effectively brought a Third-Party Complaint against these previously-unjoined parties.

2

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

19.    Without knowledge and therefore denied.

20.    Without knowledge and therefore denied.

21.    Admitted.

22.    Admitted

23.    Denied.

24.    Denied, except to admit that Exhibit "G" speaks for itself.

25.    Denied.

26.    Admitted.

27.    Denied, except to admit that Silvers executed an assignment and that Exhibit "H" speaks for itself.

28.    Without knowledge and therefore denied..

29.    Denied, except to admit that paragraph 46 of Silvers' Complaint speaks for itself.

30.    Without knowledge and therefore denied, except to admit that Exhibit "I" speaks for itself.

31.    Denied, except to admit that Exhibit "I" speaks for itself.

32.    Denied, except to admit that Exhibit "I" speaks for itself.

33.    Without knowledge and therefore denied.

34.    Without knowledge and therefore denied.

35.    Denied.

36.    Denied.

37.    Without knowledge and therefore denied.

3

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: INFO@BWSKB.COM    WWW.BWSKB.COM

38.    Without knowledge and therefore denied, except to admit that the PTO record speaks for itself.

39.    Without knowledge and therefore denied.

40.    Denied.

41.    Without knowledge and therefore denied.

42.    Denied.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied, except to admit that Exhibit "J" speaks for itself.

47.    Denied, except to admit that Exhibit "K" speaks for itself.

48.    Denied, except to admit that Exhibit "K" speaks for itself.

49.    Denied, except to admit that Exhibit "K" speaks for itself.

50.    Denied, except to admit that the PTO record speaks for itself.

51.    Admitted.

52.    Denied, except to admit that documents were filed before the TTAB, which speak for themselves.

53.    Denied, except to admit that a press release was issued, which speaks for itself.

54.    Denied, except to admit that a UDRP Complaint was filed, which speaks for itself.

55.    Denied.

56.    Denied.

4

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM    WWW.BWSKB.COM

57.     Denied.

58.     The responses to paragraphs 1-57 above are restated and incorporated.

59.     Denied, except to admit that a controversy exists.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied as to Esrig and Stelor.

66.     Denied.

67.     Denied.

68.     Denied,

69.     Denied, except to admit that a controversy exists.

70.     The responses to paragraphs 1-57 above are restated and incorporated.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     The responses to paragraphs 1-57 above are restated and incorporated.

78.     Denied.

5

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

79.     Denied.

80.     Denied.

81.     Denied.

82.     The responses to paragraphs 1-57 above are restated and incorporated.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied, along with all allegations in the WHEREFORE clause.

92.     All allegations not expressly admitted are hereby denied, and strict proof is demanded.

## **<u>AFFIRMATIVE DEFENSES</u>**

For their affirmative Defenses, Esrig and Stelor allege as follows:

1.     Google fails to state a claim for relief against Esrig or Stelor.

2.     Google lacks standing to bring its claims.

3.     Google's claims are barred by the doctrines of waiver and estoppel.

4.     Google's claims are barred by the doctrine of laches.

5.     Google has unclean hands.

6

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

6 of 71

6.      Google's trademark registration for the Google mark was obtained fraudulently and must be cancelled.  Accordingly, Google's claims are barred.

7.      Google's claims are barred by the applicable statute of limitation and the doctrine of acquiescence.

8.      The injuries and expenses of which Google complains were caused in whole or in part by the acts and omissions of others for whose conduct Stelor and Esrig are not responsible.

9.      Stelor and Esrig reserve the right to add additional affirmative defenses as discovery proceeds in this action.

WHEREFORE, Stelor and Esrig request that the counterclaim be dismissed with prejudice.

## STELOR'S COUNTERCLAIM[3] AGAINST GOOGLE AND AMENDED CROSS-CLAIM AGAINST SILVERS

Stelor, hereby sues Google, Inc. and Steven A. Silvers, and alleges as follows:

### JURISDICTION

1.      Silvers is an individual domiciled in Palm Beach County, Florida.

2.      Stelor is a limited liability company organized and existing under the laws of the State of Delaware, and having its principal place of business in Darnestown, Maryland.

3.      Google is a Delaware corporation with its principal place of business at Mountain View, California.

4.      This is an action for trademark infringement and unfair competition arising under the Lanham Act, 15 U.S.C. 1051-1127, and for related claims arising under the common law of the State of Florida.

---

[3] This pleading is styled a "Counterclaim", as a claim against a third-party plaintiff, Google.

7

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

5.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 (Lanham Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338 (trademark and unfair competition), and the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. Sections 1391.

## GENERAL ALLEGATIONS

7.      Stelor and its predecessors are the senior users of the mark "Googles" which they have used as a trademark for over twenty years in connection with goods and services directed to children's education and entertainment.  The trademark – GOOGLES AND DESIGN – was registered bearing number 2,087,590 on August 12, 1997.

8.      Stelor and its predecessors are also the senior users of the Internet domain name "googles.com" which they have used since 1997 for the "Googles" Website, www.googles.com.

9.      Stelor has an exclusive worldwide license covering the Googles trademarks, as well as related intellectual property, including the "Googles" Website.

10.     Stelor's rights are memorialized in a written "License, Distribution and Manufacturing Agreement" ("License Agreement") (a true and correct copy of which is attached hereto as Exhibit "A").  That Agreement grants to Stelor "the exclusive (even as to LICENSOR), worldwide, sub licensable right and license" with respect to all of the "Googles" intellectual property and trademarks.  Agreement ¶ 1(A).  The Agreement also expressly grants to Stelor "all right, power and interest to seek, obtain and maintain all Intellectual Property Rights associated with the Licensed Intellectual Property and Licensed Trademarks", as well as "an irrevocable power of attorney to act for and on LICENSOR's behalf".  Agreement ¶ VIII(A).  Article IX of

8

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: info@bwskb.com  www.bwskb.com

the Agreement titled "INFRINGEMENTS", gives Stelor "the sole right, in its discretion and at its expense, to take any and all actions against third persons to protect the Intellectual Property Rights licensed in this Agreement."

11.    Stelor's rights pursuant to the License Agreement were reaffirmed pursuant to a Confidential Settlement Agreement ("Settlement Agreement") dated January 18, 2005, which resolved certain pending litigation between the parties.  A true and correct copy of the Settlement Agreement is attached as Exhibit "B".  (Although it is required to be filed under seal, Silvers previously breached that obligation and filed the Agreement as part of the public record).

12.    The License Agreement and Settlement Agreement remain in full force and effect.

13.    Accordingly, Stelor, not Silvers, has the right and responsibility to pursue all Googles trademark and other intellectual property matters (Ex. "A" at ¶ VIIIA), including the present claims for trademark infringement against Google.

<u>**GOOGLE, INC.'S INFRINGEMENT**</u>

14.    Defendant Google, Inc. ("Google" or "Defendant") owns and operates the very well known Internet search engine "Google".  The name "Google" was adopted in or about 1998, which postdates Silvers' prior use and registration of the "Googles" mark, and "googles.com" domain name and Website.

15.    Google's "Google" mark, and its efforts to expand that mark into areas of commerce including the market for children's goods and services, is interfering with the "Googles" mark, of which Stelor is the exclusive licensee.

16.    Stelor has filed this action to protect its rights to use the "Googles" mark on the Internet in connection with children's goods and services, and to enjoin Google from using the

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

"Google" mark in connection with the advertising, promoting, marketing and sale of children's goods and services. Stelor also seeks damages.

### SILVERS' WRONGFUL TERMINATION AND OTHER MISCONDUCT

17.    Although Silvers has purported to terminate the License and Settlement Agreements, the termination is improper and ineffective. The Agreements remain in full force and effect, and the right to pursue this action against Google Inc. for trademark infringement belongs to Stelor.

18.    Thus, by letter dated April 27, 2005, Silvers through counsel claimed that the License Agreement and Settlement Agreement were terminated. A true and correct copy of the April 27th Letter is attached hereto as Exhibit "C". Although the License Agreement expressly provides for 60 days' notice and opportunity to cure any alleged breaches as an express precondition for any right of termination (Ex. "A" at ¶ IX), Silvers provided no such notice or opportunity to cure.

19.    Counsel for Stelor responded by letter dated April 29, 2005, refuting the specious grounds cited by Silvers for termination, and offering to cure any conceivable breaches (even though none existed). A true and correct copy of the April 29th letter is attached hereto as Exhibit "D".

20.    On May 2, 2005, Silvers' counsel responded by letter, reiterating his wrongful renunciation of the Agreements and stating that Silvers "intends to go in a different direction to develop his characters and intellectual property". A true and correct copy of the May 2nd letter (which is erroneously dated "2004") is attached hereto as Exhibit "E".

10

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM    WWW.BWSKB.COM

10 of 71

21.     Even before the letter was sent, Silvers had begun to interfere with Stelor's rights as licensee.   Thus, in clear violation of the Agreements, Silvers had changed 78 different Googles domain names from Stelor's control to Silvers' control and improperly excluded Stelor from being the administrative contact with the domain name registrar.

22.     Due to Silvers' actions in violation of the Agreements, Stelor is currently unable to reassert control over the domain names that it has licensed, a true and correct list of which is attached hereto as Exhibit "F".

23.     Silvers' actions have continued to harm Stelor, and improperly deprive Stelor of the use and benefit of the intellectual property to which Stelor is clearly entitled pursuant to the Agreements.

24.     Silvers has also violated the agreements by pursuing the present action against Google – a right that belongs exclusively to Stelor pursuant to the Agreements.

25.     In addition, Silvers has threatened to sue Stelor for trademark infringement, while Stelor continues to conduct its business as best it can.  Thus, by letter dated July 27, 2005, Silvers through counsel has claimed that Stelor's use of the Googles trademarks was unauthorized and demanded that Stelor "eliminate all reference to the Googles name and 'goo' related words."  Silvers further advised that it would "file an action for trademark infringement" unless Stelor complied.  A true and correct copy of the July 27th letter is attached hereto as Exhibit "G".

26.     Notwithstanding Silvers' breaches and misconduct, Stelor has continued to perform all of its obligations pursuant to the Agreements, including tendering payment to Silvers of all amounts when due under the Agreements.  Silvers has refused to accept those payments,

11

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

11 of 71

and has returned all of the checks Stelor has tendered.  Silvers has also attempted to interfere with the other actions Stelor has continued to take – at substantial expense – to protect and enforce the intellectual property rights under the License Agreement.

27.    All conditions precedent to the bringing of this action have been satisfied, performed, excused or waived.

28.    Stelor has retained undersigned counsel to prosecute this action and is obligated to them for reasonable attorney's fees and costs in connection therewith.

## COUNT ONE
### (Declaratory Judgment Against Silvers)

Stelor re-alleges and incorporates by reference the allegations of paragraphs 1 through 28, inclusive, as though fully set forth herein.

29.    This is a claim for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201.  Specifically, Stelor seeks a declaration that

    a. its continued use of the Googles trademarks does not infringe Silvers' rights in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), does not constitute unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and does not infringe Silvers' common law rights; and

    b. That Silvers' purported termination of the License and Settlement Agreements is wrongful and invalid, and thus, the Agreements remain in full force and effect.

30.    Silvers has threatened to bring a trademark infringement action against Stelor. *See* July 27, 2005 letter from Silvers' counsel, Exhibit "G" hereto.

31.    Stelor believes that Silvers' claim is unfounded, and that Stelor has continuing rights to use the Googles trademarks.

12

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

32.     Silvers' conduct, however, has created a real and reasonable apprehension of liability on the part of Stelor.

33.     Stelor's continued use of the trademarks has created an adversarial conflict with Silvers.

34.     Stelor is in doubt about its rights and Silvers' rights regarding the trademarks, and requests entry of declaratory relief by the Court.

35.     Silvers also claims that Stelor has breached the Settlement Agreement and that the License Agreement is terminated.  As detailed above, Silvers has taken actions in violation of his obligations and undertakings pursuant to the Agreements, in apparent reliance upon his purported termination of the License Agreement.

36.     Stelor believes that the Settlement Agreement and the License Agreement are valid and effective contractual commitments that continue to bind the parties.  Stelor further contends that Silvers' actions violate the terms of the Settlement Agreement and the License Agreement and threaten the business of Stelor.

37.     Stelor additionally has ongoing obligations (including financial) under the Settlement Agreement that it has continued to meet, but which are not required if the License Agreement has been terminated.  Stelor has continued to perform all of its obligations pursuant to the Agreements, including tendering payment to Silvers of all amounts when due under the Agreements.  Silvers has wrongly refused to accept those payments, and has returned all of the checks Stelor has tendered.

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

38.     Accordingly, Stelor is in doubt about its rights and Silvers' rights under the License Agreement and the Settlement Agreement, and requests entry of declaratory relief by the Court.

WHEREFORE, Stelor requests that this Court provide relief against these acts of Silvers as set forth in the WHEREFORE clause below.

<u>COUNT TWO</u>
**(Trademark Infringement under 15 U.S.C. § 1114 against Google Inc.)**

Stelor realleges and incorporates by reference the allegations of paragraphs 1 through 28, inclusive, as though fully set forth.

39.     Stelor and its predecessors are the senior users of the mark "Googles" for use in connection with children's books, merchandise, music, toys, and related goods and services. Since 1997, Stelor and its predecessors have used the Internet to market and promote the "Googles" mark.

40.     Stelor has the sole right to bring this action against Google, as set forth above.

41.     With knowledge of the superior and exclusive rights of Stelor and its predecessors in the "Googles" mark, the "googles.com" domain name, and Website, Google adopted the mark "Google" (which is the singular version of and almost identical to the "Googles" mark), and Google has used that mark extensively in connection with goods and services offered to consumers through the Internet.

42.     With knowledge of the superior rights of Stelor and its predecessors in the "Googles" mark, "googles.com" domain name, and Website, Google registered the domain name "google.com" and has used that domain name extensively in connection with its Internet-based services.

14

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: info@bwskb.com  www.bwskb.com

14 of 71

43. Google's use of the name "Google," which is substantially identical to the "Googles" mark, has caused and will continue to cause "reverse confusion" in that the consuming public will now wrongly believe that Stelor's goods and services, "googles.com" domain name, and Website are connected, affiliated, associated, sponsored, endorsed or approved by Google, and that Google is the source of origin of the "Googles" concept, books, music, "googles.com" domain name, Website, merchandise, and related goods and services, in violation of 15 U.S.C. 1114.

44. Google's infringing use of the "Google" name and "google.com" domain name for Internet-based services is diminishing the identity and value of Stelor's "Googles" mark, "googles.com" domain name, and Website, and is preventing Stelor from flourishing on the Web, or expanding its goods and services at the "googles.com" Website, and otherwise causing Stelor harm.

45. As a direct and proximate result of Google's unauthorized acts, Stelor has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Unless restrained, Google's conduct as described above, will continue to cause confusion and will continue to injure the value of Stelor's "Googles" mark, domain name, and Website, causing substantial harm and damage to Stelor.

46. As a direct and proximate result of Google's wrongful conduct, Stelor has also suffered and will continue to suffer monetary damages from the "reverse confusion" caused by Google.

WHEREFORE, Stelor requests that this Court provide relief against these acts of Google as set forth in the Wherefore clause below.

15

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

## COUNT THREE
### (Unfair Competition under 15 U.S.C. § 1125 (a) against Google Inc.)

Stelor realleges and incorporate by reference the allegations of paragraphs 1 through 28, inclusive, as though fully set forth.

47.     Stelor and its predecessors are the senior users of the mark "Googles" for use in connection with children's books, merchandise, music, toys and related goods and services. Since 1997, Stelor and its predecessors have used the Internet to market and promote the "Googles" mark.

48.     Stelor has the sole right to bring this action against Google, as set forth above.

49.     With knowledge of the superior and exclusive rights of Stelor and its predecessors in the "Googles" mark the "googles.com" domain name, and Website, Google adopted the mark "Google" (which is the singular version of and almost identical to the "Googles" mark), and Google has used that mark extensively in connection with goods and services offered to consumers through the Internet.

50.     With knowledge of the superior rights of Stelor and its predecessors in the "Googles" mark, "googles.com" domain name, and Website, Google registered the domain name "google.com" and has used that domain name extensively in connection with its Internet-based services.

51.     Google's unauthorized use of the name "Google," which is substantially identical to Stelor's "googles" mark, has caused and will continue to cause "reverse confusion" in that the consuming public will now wrongly believe that Stelor's goods and services, "googles.com" domain name, and Website are connected, affiliated, associated, sponsored, endorsed or approved by Google, and that Google is the source of origin of the "Googles" concept, books,

16

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

16 of 71

music, "googles.com" domain name, Website, merchandise, and related goods and services, in violation of 15 U.S.C.' 1125 (a).

52.     Google's use of the "Google" name and "google.com" domain name for Internet-based services is diminishing the identity and value of Stelor's "Googles" mark, "googles.com" domain name, and Website, and is preventing Stelor from flourishing on the Web, or expanding its goods and services at the "googles.com" Website, and otherwise causing Stelor substantial harm.

53.     As a direct and proximate result of Google's acts, Stelor has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Unless restrained, Google's conduct as described above, will continue to cause confusion and will continue to injure the value of Stelor's "Googles" mark, domain name, and Website, causing substantial harm and damage to Stelor.

54.     As a direct and proximate result of Google's wrongful conduct, Stelor has also suffered and will continue to suffer monetary damages from the "reverse confusion" caused by Google.

WHEREFORE, Stelor requests that this Court provide relief against these acts of Google as set forth in the Wherefore clause below.

## COUNT FOUR
### (Unfair Competition Under Florida Law against Google Inc.)

Stelor realleges and incorporates by reference the allegations of paragraphs 1 through 28, inclusive, as though fully set forth.

55.     Google's use of the name "Google" (which is substantially identical to the "Googles" mark), has caused and will continue to cause "reverse confusion" in that the

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: info@bwskb.com   www.bwskb.com

consuming public will now wrongly believe that Stelor's goods and services, "googles.com" domain name, and Website are connected, affiliated, associated, sponsored, endorsed or approved by Google, and that Google is the source of origin of the "Googles" concept, books, music, googles.com domain name, Website, merchandise, and related goods and services, which constitutes unfair competition under Florida common law.

56.     Google's use of the "Google" name and "google.com" domain name for Internet-based services is diminishing the identity and value of the "Googles" mark, "googles.com" domain name, and Website, and is preventing Stelor from flourishing on the Web, or expanding its Internet-based services and goods at the googles.com Website, and otherwise causing Stelor substantial harm.

57.     Google is also attempting to prevent other from using any derivation of the "Google" mark whatsoever, which constitutes unfair competition under Florida Law.

58.     As a direct and proximate result of Google's unauthorized acts, Stelor has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Unless restrained, Google's conduct as described above, will continue to cause confusion and will continue to injure the value of the "Googles" mark, domain name, and Website, causing substantial harm and damage to Stelor.

59.     As a direct and proximate result of Google's wrongful conduct, Stelor has also suffered and will continue to suffer monetary damages from the "reverse confusion" cause by Google.

60.     Stelor has the sole right to bring this action against Google, as set forth above.

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

WHEREFORE, Stelor requests that this Court provide relief against these acts of Google as set forth in the Wherefore clause below.

## COUNT FIVE
### (Breach of Contract against Silvers)

61.     Stelor re-alleges and incorporates by reference the allegations of paragraphs 1 through 29, inclusive, as though fully set forth herein.

62.     Silvers' actions set forth above constitute material breaches of the Licensing Agreement and the Settlement Agreement.  In addition, Silvers has breached the Agreements by unilaterally filing a trademark infringement action against Google, Inc., a valuable right that belongs exclusively to Stelor under the Agreements.

63.     As a result of Silvers' actions, Stelor has been damaged.

64.     Silvers' breaches have caused irreparable injury to Stelor.

65.     Stelor has no adequate remedy at law.

66.     Stelor has continued to perform all of its obligations pursuant to the Agreements, including tendering payment to Silvers of all amounts when due under the Agreements.  Silvers has refused to accept those payments, and has returned all of the checks Stelor has tendered.

WHEREFORE, Stelor requests that this Court provide relief against these acts of Silvers as set forth in the Wherefore clause below.

## COUNT SIX
### (Breach of Express Warranty against Silvers)

Stelor re-alleges and incorporates by reference the allegations of paragraphs 1 through 28, inclusive, as though fully set forth herein.

67.     This is a claim, in the alternative, for breach of express warranty seeking damages

19

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM    WWW.BWSKB.COM

19 of 71

in excess of $75,000.00, exclusive of attorneys' fees and costs.

68.     Among other provisions in the License Agreement, Silvers expressly warranted that he "owns the exclusive rights in and to the Licensed Intellectual Property, Licensed Trademarks, Licensed Patents and Licensed Copyrights necessary to effectual the granting of the Licensed Rights from the LICENSOR to the LICENSEE".  (Ex. "A" at ¶ VA(iii)).  Silvers, moreover, warranted that his performance of the License Agreement would "not violate or conflict with any applicable U.S. law or regulation".   (Ex. "A" at ¶ VA(ii)).

69.     Silvers similarly represented in the initial whereas clauses of the License Agreement that he "is the sole and exclusive owner of the GOOGLES trademarks", as well as of the "GOOGLES characters."

70.     Stelor reasonable relied on these representations, which were a material inducement for it to enter into the agreement, and to pursue the development of the property through substantial effort and investment.

71.     Google, Inc., however, in this action, has alleged that it – and not Silvers – has the right to use the Licensed Property and Trademarks, and has further alleged that the use of the Googles Property and Trademarks violates applicable trademark and other laws.  Google, in fact, seeks to cancel the GOOGLES Registration.

72.     If Google, Inc.'s allegations are correct, then Silvers has breached the express warranties set forth in the License Agreement.

73.     As a result of Silvers' actions, Stelor has been damaged.

WHEREFORE, Stelor requests that this Court provide the following relief against Silvers and Google, Inc.:

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

## RELIEF AGAINST SILVERS

(a)    a preliminary and permanent injunction enjoining Silvers from taking any action in violation of or contrary to the terms of the Licensing Agreement or the Settlement Agreement and affirmatively requiring him to restore to Stelor's control (1) the domain names listed on Exhibit "F" (2) the www.googles.com website and (3) the registration/WHOIS information pursuant to the Licensing Agreement and the Settlement Agreement;

(b)    a declaratory judgment declaring that Stelor's continued use of the Googles trademarks does not infringe Silvers' rights in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), does not constitute unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and does not infringe Silvers' common law rights.

(c)    a declaratory judgment declaring that Stelor has complied with its obligations under the Licensing Agreement and the Settlement Agreement and that those agreements remain in full force and effect;

(c)    a judgment awarding Stelor its reasonable attorneys' fees and costs pursuant to ¶ 17 of the Settlement Agreement;

(d)    a judgment awarding damages to Stelor; and

(e)    a judgment awarding Stelor such other relief as may be deemed just and proper.

## RELIEF AGAINST GOOGLE

(a)    That Google, its agents, servants and employees, and other such persons in concert or participation with Defendant, including licensees, pursuant to 15 U.S.C. § 1116, be

21

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM    WWW.BWSKB.COM

21 of 71

preliminarily and then permanently enjoined from the further use of the mark "Google" or any confusingly similar variation thereof, in connection with the advertising, promotion, marketing, and sale of children's goods and services;

(b)     That Google's Federal Trademark Registration No. 2954071 be ordered cancelled;

(c)     That Google's Federal Trademark Registration No. 2806075 be ordered cancelled;

(d)     That Stelor be awarded compensatory damages for the reverse confusion caused by Google consistent with, but not limited to, all remedies available under 15 U.S.C. §§ 1114 and 1117, and Florida common law.

(e)     That Stelor be awarded its costs, and attorneys fees pursuant to the exceptional case provisions of 15 U.S.C. § 1117(a) and (b);

(f)     That Google's domain name registrations for googlesadsense.com, googlesadwords.com, googles-adwords.com, 20googles.com, googlesc.com, googlesms.com, googlessms.co.il, googlessms.de and any other domain name incorporating the word "Googles" be cancelled;

(g)     That Google, its agents, servants and employees, and other such persons in concert or participation with Google, including licensees, be preliminarily and then permanently enjoined from the further use of the name "Googles" in connection with any domain name;

(h)     That Google, its agents, servants and employees, and other such persons in concert or participation with Google, including licensees, be preliminarily and then permanently enjoined from using any trade practices whatsoever that injure the value and goodwill in the

22

BURLINGTON • WEIL • SCHWIEP • KAPLAN ⊗ BLONSKY, P.A.
OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

22 of 71

"Googles" mark and Stelor's related intellectual property, including claims that it has superior rights to any mark using the GOO- or –OGGLE formative marks;

        (i)    That Stelor be granted such further relief as this Court may deem just and proper.

## JURY DEMAND

    Stelor demands a trial by jury on all issues so triable.

Respectfully submitted,

BURLINGTON, WEIL, SCHWIEP,
   KAPLAN & BLONSKY, P.A.
Attorneys for Stelor Productions, LLC f/k/a
   Stelor Productions, Inc. and Steven A. Esrig
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261
Email:  kkaplan@bwskb.com

By: /s/ Kevin C. Kaplan
     Kevin C. Kaplan
     Florida Bar No. 933848
     David J. Zack
     Florida Bar No. 641685

23

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

23 of 71

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing was served via U.S. mail on this

14th day of November, 2005 upon the following:

<table>
<tr>
<td>

Adam T. Rabin, Esq.<br>
DIMOND, KAPLAN &<br>
    ROTHSTEIN, P.A.<br>
Trump Plaza<br>
525 S. Flagler Drive, Suite 200<br>
West Palm Beach, Florida 33401

</td>
<td>

Kenneth R. Hartmann, Esq.<br>
Gail M. McQuilkin, Esq.<br>
KOZYAK TROPIN &<br>
    THROCKMORTON, P.A.<br>
2525 Ponce de Leon Blvd., 9th Floor<br>
Coral Gables, Florida 33134

</td>
</tr>
<tr>
<td>

Jan Douglas Atlas<br>
ADORNO & YOSS LLP<br>
350 East Las Olas Boulevard<br>
Suite 1700<br>
Fort Lauderdale, Florida  33301

</td>
<td>

Andrew P. Bridges<br>
WINSTON & STRAWN LLP<br>
101 California Street, Suite 3900<br>
San Francisco, California 94111

</td>
</tr>
</table>

/s/ Kevin C. Kaplan
Kevin C. Kaplan

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM    WWW.BWSKB.COM

# EXHIBIT "A"

# LICENSE, DISTRIBUTION
# AND MANUFACTURING AGREEMENT

This **LICENSE, DISTRIBUTION AND MANUFACTURING AGREEMENT** between Steven A. Silvers and Stelor Productions, Inc. is effective as of June 1, 2002 and is entered into by and between Steven A. Silvers (**LICENSOR**), an Individual, whose official address is 3741 NE 163rd Street, PMB #325, North Miami Beach, FL 33160 and Stelor Productions, Inc. (**LICENSEE**), a Delaware corporation with its current offices located at: 14701 Mockingbird Drive, Darnestown, Maryland, 20874.

## WITNESSETH

**WHEREAS,** LICENSOR is the sole and exclusive owner of the **GOOGLES** characters identified more fully in "Schedule A" attached hereto (the "Licensed Property");

**WHEREAS,** LICENSOR is the sole and exclusive owner of the **GOOGLES** trademarks identified more fully in "Schedule A" attached hereto (the "Licensed Trademarks");

**WHEREAS,** LICENSOR has the power and authority to grant to **LICENSEE** the right, privilege and license to use, manufacture, distribute, and sell those types of products that incorporate or are otherwise based on the Licensed Property as identified in "Schedule A" attached hereto (the "Licensed Products") and to use the Licensed Trademarks on or in association with such Licensed Products;

**WHEREAS,** LICENSEE has or will have the ability to manufacture, have manufactured, have sub-manufactured, distribute and sell or have sold and distributed the Licensed Products in the Licensed Territory more clearly defined in Schedule A (the Territory) and to use the Trademark(s) on or in association with the Licensed Products;

**WHEREAS,** LICENSEE desires to obtain from LICENSOR an exclusive license to use, manufacture, have manufactured and sell Licensed Products in the Territory and to use the Licensed Trademarks on or in association with the Licensed Products;

**WHEREAS,** LICENSEE has agreed, pursuant to a letter agreement, to act as a consultant for **LICENSOR;** and

**NOW, THEREFORE,** in consideration of the promises and agreements set forth herein, the parties, each intending to be legally bound hereby, do hereby agree as follows:

## I. LICENSE GRANT

A. **LICENSOR** hereby grants to **LICENSEE**, for the Term of this Agreement as recited in "Schedule A" attached hereto, the exclusive (even as to **LICENSEE**), worldwide, sub licensable right and license to use, reproduce, modify, create derivative works of, manufacture, have manufactured, market, advertise, sell, distribute, display, perform, and otherwise commercialize the Licensed Products and Licensed Properties in the Territory. The license includes a license under any and all intellectual property rights and interests therein, including by way of explanation, products which deal with the creative characters known as The Googles, anything that contains the letters GOO (in upper or lower case) together with any and all products, which comprise and which will comprise those characters, likenesses, which include Iggle, Oogle, Oggle, Gooroo, Gootian(s), the planet Goo, slides, computer web site(s), membership lists, clubs, materials, patterns, prototypes, logos, trademarks, service marks, clothing, merchandise, educational products, marketing and promotional data and tools, packaging and advertising, modifications, updates and variations, and all other items associated therewith whether in singular or plural

B.    LICENSOR hereby grants to LICENSEE for the term of this Agreement as recited in "Schedule A" attached hereto, the exclusive (even as to LICENSOR), worldwide, sub licensable right and license to use the Licensed Trademarks on or in association with the Licensed Products as well as on packaging, promotional, and advertising material associated therewith.

C.    LICENSEE shall have the right to sublicense LICENSEE's rights under this Agreement; provided that any and all such sublicenses shall be subject to the terms and conditions of this Agreement.

D.    No licenses will be deemed to have been granted by either party to any of its Intellectual Property Rights, except as otherwise expressly provided in this Agreement.

E.    LICENSEE agrees to place on all Licensed Products, where practicable, the phrase "created by Steven A. Silvers" or other similar wording.

## II. TERM OF THE AGREEMENT

This Agreement and the provisions hereof, except as otherwise provided, shall be in full force and effect commencing on the date of execution by both parties and shall extend for a Term as recited in "Schedule A" attached hereto (the "Term").

## III. COMPENSATION

A.    In consideration for the licenses granted hereunder, LICENSEE agrees to pay to LICENSOR, during the Term of this Agreement, a royalty in the amount recited in "Schedule A" attached hereto (the "Royalty") based on LICENSEE's Net Sales of Licensed Products. "Net Sales" shall mean the gross revenues on a cash basis (i.e., actually collected by LICENSEE but without counting any gross revenues twice) excluding shipping and handling charges, sales taxes, VAT, and other taxes imposed upon sales less (i) customary trade discounts, (ii) allowances actually shown on the invoice (except cash discounts not deductible in the calculation of Royalty) (iii) bona fide returns, charge backs, refunds or credits (net of all returns actually made or allowed as supported by memoranda actually issued to the customers), (iv) sales of remainder inventory made at less than the total of LICENSEE's actual cost of goods and actual direct selling costs solely for purposes of liquidation or close-out, (v) other uncollectible accounts, (vi) cooperative advertising allowances, (vii) sales commissions paid.

B.    The Royalty owed LICENSOR shall be calculated on a quarterly calendar basis on collected funds (the "Royalty Period") and shall be payable no later than thirty (30) days after the termination of the preceding full calendar quarter, i.e., commencing on the first (1st) day of January, April, July and October with the exception of the first and last calendar quarters which may be "short" depending upon the effective date of this Agreement.

C.    With each Royalty Payment, LICENSEE shall provide LICENSOR with a written royalty statement in a form acceptable to Licensor. Such royalty statement shall be certified as accurate by a duly authorized officer of Licensee, reciting on a country-by-country basis, the stock number, item, units sold, description, quantity shipped, gross invoice, amount billed to customers less discounts, allowances, returns and reportable sales for each Licensed Product. Such statements shall be furnished to Licensor whether or not any Licensed Products were sold during the Royalty Period. The LICENSEE hereby further agrees to provide the LICENSOR with a list of all of it's sub licensees added during the current royalty period.

D.    If LICENSEE sells any Licensed Products to any party affiliated with LICENSEE, or in any way directly or indirectly related to or under the common control with LICENSEE, at a price less than the average weighted price charged to other parties, the Royalty payable to LICENSOR shall be computed on the basis of the averaged weighted price charged to other parties if the Licensed Products are not ultimately resold to unaffiliated third parties.

E.      All payments due hereunder shall be made in United States currency drawn on a United States bank, unless otherwise specified between the parties and may offset or be offset from any other payments due to **LICENSEE** under this or any other agreement between the parties.

F.      Late payments shall incur interest at the rate of ONE PERCENT (1%) per month from the date such payments were originally due.

## IV. AUDIT

A.      **LICENSOR** shall have the right, at its own expense, to have a nationally recognized certified public accounting firm, upon at least thirty (30) days written notice and no more than twice per calendar year, to inspect during normal business hours, **LICENSEE's** books and records and all other documents and material in the possession of or under the control of **LICENSEE** with respect to the subject matter of this Agreement at the place or places where such records are normally retained by **LICENSEE**.

B.      In the event that such inspection reveals an underpayment discrepancy greater than 5% of the amount of Royalty owed **LICENSOR** from what was actually paid, **LICENSEE** shall have the opportunity to conduct its own audit. If **LICENSEE** agrees to the amount, if any, of any discrepancy, **LICENSEE** shall pay such discrepancy, plus interest, calculated at the rate of ONE AND ONE-HALF PERCENT (1 1/2%) per month. Upon settlement of any underpayment discrepancy, no further audit by **LICENSOR** shall be requested that year. That period end date shall represent the new period start date for future audits for underpayment discrepancies. In the event that such discrepancy is in excess of TEN THOUSAND UNITED STATES DOLLARS ($10,000.00), **LICENSEE** shall also reimburse **LICENSOR** for the cost of auditing fees in connection therewith.

C.      All books and records relative to **LICENSEE's** obligations hereunder shall be maintained and kept accessible and available to **LICENSOR** for inspection for at least three (3) years after the expiration of the initial or any subsequent term.

D.      In the event that an investigation of **LICENSEE's** books and records is made, certain confidential and proprietary business information of **LICENSEE** may necessarily be made available to the person or persons conducting such investigation. It is agreed that such confidential and proprietary business information shall be held in confidence by **LICENSOR** and shall not be used by **LICENSOR** or disclosed to any third party for a period of two (2) years from the date of disclosure, or without the prior express written permission of **LICENSEE** unless required by law, except **LICENSOR** may not disclose at any time to any third party any such confidential and proprietary business information which are trade secrets of **LICENSEE**. It is understood and agreed, however, that such information may be used by **LICENSOR** in any proceeding based on **LICENSEE's** failure to pay its actual Royalty obligation.

## V. WARRANTIES AND OBLIGATIONS

A.      **LICENSOR** represents and warrants that:

(i)      the execution, delivery and performance of this Agreement have been duly authorized by all necessary action of **LICENSOR** and this Agreement is a valid and binding obligation of **LICENSOR**, enforceable in accordance with its terms;

(ii)     the execution, delivery and performance by **LICENSOR** of this Agreement will not violate or conflict with any applicable U.S. law or regulation, or any order, writ, judgment or decree of any court or governmental authority to which **LICENSOR** is subject, or result in a violation, breach of, or default under any contract, lease, or other agreement binding on **LICENSOR**;

(iii)    **LICENSOR** owns the exclusive rights in and to the Licensed Intellectual Property, Licensed Trademarks, Licensed Patents and Licensed Copyrights necessary to effectuate the granting of the Licensing Rights from the **LICENSOR** to the **LICENSEE** as contemplated herein.

(iv)          the Licensed Intellectual Property and Licensed Trademarks do not infringe the rights, including without limitation, Intellectual Property Rights, of any third party; and

(v)          except as set forth in Schedule B attached hereto, **LICENSOR** has not received any notice from any third party of any alleged or actual infringement of the Licensed Intellectual Property or Licensed Trademarks and the Licensed Intellectual Property and/or Licensed Trademarks are not the subject, and has not been the subject, of any previous or pending litigation with the exception of the Ganz litigation which has been resolved.

B. **LICENSEE** represents and warrants that:

(i)          the execution, delivery and performance of this Agreement håve been duly authorized by all necessary action of **LICENSEE** and this Agreement is a valid and binding obligation of **LICENSEE**, enforceable in accordance with its terms;

(ii)          the execution, delivery and performance by **LICENSEE** of this Agreement will not violate or conflict with any applicable U.S. law or regulation, or any order, writ, judgment or decree of any court or governmental authority to which **LICENSEE** is subject, or result in a violation, breach of, or default under any contract, lease, or other agreement binding on **LICENSEE**; and

(iii)          it will use its commercially reasonable efforts to promote, market, sell and distribute the Licensed Products.

C.          Disclaimer of Warranties. EXCEPT AS EXPRESSLY PROVIDED ABOVE, NEITHER PARTY MAKES ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND, EITHER EXPRESS OR IMPLIED, REGARDING THIS AGREEMENT AS TO ANY MATTER INCLUDING, BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

D.          **LICENSEE** shall be solely responsible for the manufacture, production, sale and distribution of the Licensed Products or to have such Licensed Products manufactured, produced, sold and distributed, and will bear all related costs associated therewith.

## VI. NOTICES, QUALITY CONTROL, AND SAMPLES

A.          The Licensed Products, as well as all promotional, packaging and advertising material relative thereto, shall include all appropriate legal notices.

B.          The Licensed Products shall be of a high quality which is at least equal to comparable products manufactured and marketed by **LICENSEE** and in conformity with a standard sample provided by **LICENSEE**.

C.          Prior to the commencement of manufacture and sale of the Licensed Products, **LICENSEE** shall submit to **LICENSOR** for his input, at no cost to **LICENSOR**, a reasonable number of samples of all Licensed Products which **LICENSEE** intends to manufacture and sell and of all promotional and advertising material associated therewith.

## VII. NOTICES AND PAYMENT

A.          Any notice required to be given pursuant to this Agreement shall be in writing and delivered personally to the other designated party at the above-stated address or mailed by certified or registered mail, return receipt requested or delivered by a recognized national overnight courier service.

B.          Either party may change the address to which notice or payment is to be sent by written notice to the other in accordance with the provisions of this paragraph.

4

## VIII. INTELLECTUAL PROPERTY PROTECTION

A.      LICENSOR hereby grants **LICENSEE** all right, power and interest to seek, obtain and maintain all Intellectual Property Rights associated with the Licensed Intellectual Property and Licensed Trademarks, Licensed Copyrights and any other Intellectual Property Rights granted herein. **LICENSOR** further agrees to assist **LICENSEE** as may be required to apply for and obtain recordation of and from time to time enforce, maintain and defend such Intellectual Property Rights. **LICENSOR** hereby grants **LICENSEE** an irrevocable power of attorney for the initial and any subsequent terms of this Agreement to act for and on **LICENSOR's** behalf and instead of **LICENSOR**, at **LICENSEE's** expense, to execute and file any such document(s) and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by **LICENSOR**.

B.      **LICENSOR** shall retain all rights, title and interest in the Licensed Intellectual Property and Licensed Trademarks and any modifications thereto based solely on such Licensed Intellectual Property. **LICENSEE** acknowledges **LICENSOR's** exclusive rights in the Licensed Intellectual Property and, further, acknowledges that the Licensed Intellectual Property and/or the Licensed Trademarks rights are unique and original to **LICENSOR** and that **LICENSOR** is the owner thereof. **LICENSEE** shall not, at any time during or after the effective Term of the Agreement, dispute or contest, directly or indirectly, **LICENSOR's** exclusive right and title to the Licensed Intellectual Property and/or the Licensed Trademarks(s) or the validity thereof.

C.      **LICENSEE** agrees that its use of the Licensed Intellectual Property and/or the Licensed Trademarks(s) inures to the benefit of **LICENSOR** and that the **LICENSEE** shall not acquire any rights in the Licensed Intellectual Property and/or the Licensed Trademarks(s) except for the license granted herein.

D.      **LICENSOR** shall retain all rights, title and interest in and to the Licensed Intellectual Properties. The LICENSOR owns the exclusive rights to the Licensed Intellectual Property. **LICENSOR** hereby waives and releases **LICENSEE** from any and all current or future claims or causes of actions by third parties, whether known or unknown, arising out of or relating to such Licensed Intellectual Properties including, but not limited to, any claim that Licensed Products violate, infringe on or misappropriate any of **LICENSOR's** Intellectual Property Rights.

E.      Each party shall execute all papers, testify on all matters, and otherwise cooperate in every way necessary and desirable to effect any of the provisions under this Section (Intellectual Property Protection). The party requesting such shall reimburse the other party for the expenses incurred as a result of such cooperation. The parties agree to take any actions or prepare or execute any documents reasonably requested by the other party. Furthermore, during the term of this agreement, LICENSOR shall not initiate or maintain any relationship or conversations with LICENSEE'S current or prospective clients, vendors, any Company relationships with the media (press etc.) without the prior express written request by LICENSEE.

## IX. TERMINATION

A .     **Right to Terminate on Notice.** This Agreement may be terminated by either party upon sixty (60) days written notice to the other party in the event of a breach of a material provision of this Agreement by the other party, provided that, during the sixty (60) days period, the breaching party fails to cure such breach.

5

B.    LICENSEE shall have the right to terminate this Agreement at any time on thirty (30) days written notice to LICENSOR. In such event, all moneys paid to LICENSOR shall be deemed non-refundable and LICENSEE's obligation to pay any unpaid royalties shall be accelerated and shall become immediately due and payable.

C. Additionally, if, after five years of the initial intellectual property license, there are three consecutive years during which royalty payments to LICENSOR are less than one hundred thousand dollars ($100,000.00), LICENSOR has the option to cancel this Agreement in accordance with Section IX. TERMINATION, Para. A.

## X. POST TERMINATION RIGHTS

A.    Not less than thirty (30) days prior to the expiration of this Agreement or immediately upon termination thereof, LICENSEE shall provide LICENSOR with a complete schedule of all inventory of Licensed Products then on hand or on order (the "Inventory").

B.    Upon expiration or termination of this Agreement, LICENSEE shall be entitled, for an additional period of six (6) months, to continue to sell such Inventory. Such sales shall be made subject to all of the provisions of this Agreement and to an accounting for and the payment of a Royalty thereon. Such accounting and payment shall be due and paid within thirty (30) days of the quarterly calendar cited as the period basis for royalty calculation. LICENSEE shall have the right to continue the use of the name(s) associate with the products and articles that encompass this Agreement for so long as LICENSEE is actively selling its inventory of articles and products. At the conclusion of LICENSEE'S efforts in this regard, LICENSEE agrees to discontinue the use of names, trademarks, signs, advertising and anything else that might make it appear that the LICENSEE is still handling the articles and products of LICENSOR.

C.    Upon the expiration or termination of this Agreement, all of the license rights of LICENSEE under this Agreement shall forthwith terminate and immediately revert to LICENSOR and LICENSEE, except as detailed above in Section (B) of the "Post Termination Rights" Section, shall immediately discontinue all use of the Licensed Property and the like, at no cost whatsoever to LICENSOR.

D.    Upon termination of this Agreement for any reason whatsoever, LICENSEE agrees to immediately return to LICENSOR all material relating to the Licensed Intellectual Property. Furthermore, upon termination or expiration of this Agreement, LICENSEE agrees to immediately inform all of it's sub licensees regarding the said termination or expiration of this Agreement.

## XI. INFRINGEMENTS

A.    During the Term of this Agreement and any and all option/renewal periods, LICENSEE shall have the sole right, in its discretion and at its expense, to take any and all actions against third persons to protect the Intellectual Property Rights licensed in this Agreement.

B.    Upon request by either party to the other, the other party shall execute all papers, testify on all matters, and otherwise cooperate in every way necessary and desirable for the prosecution of any such lawsuit. Each party shall reimburse the other party for the expenses incurred as a result of such cooperation.

## XII. INDEMNITY

A.    ·LICENSEE agrees to indemnify and hold harmless LICENSOR, its agents, heirs, assigns and representatives, against all costs, expenses and losses (including reasonable attorneys' fees and costs) incurred through claims of third parties against LICENSOR based on product liability but excluding any claims based solely upon the use of the Licensed Intellectual Property or Licensed Trademarks by LICENSEE in accordance with the terms of this Agreement.

B.      **LICENSOR** agrees to indemnify and hold harmless **LICENSEE**, its officers, directors, agents and employees, against all costs, expenses and losses (including reasonable attorneys' fees and costs) incurred through claims of third parties against **LICENSEE** based on or arising from (i) any infringement, misappropriation or other related action involving the Licensed Intellectual Property or Licensed Trademarks; or (ii) any breach of **LICENSOR's** obligations, representations, warranties or duties under this agreement.

C.      With respect to any claims falling within the scope of the foregoing indemnifications: (i) each party agrees promptly to notify the other of and keep the other fully advised with respect to such claims and the progress of any suits in which the other party is not participating; (ii) each party shall have the right to assume, at its sole expense, the defense of a claim or suit made or filed against the other party; (iii) each party shall have the right to participate, at its sole expense, in any suit instituted against it; and (iv) a party assuming the defense of a claim or suit against the other party shall not settle such claim or suit without the prior written approval of the other party, which approval shall not be unreasonably withheld or delayed.

## XIII. LIMITATION OF LIABILITY

A.      IN NO EVENT WILL EITHER PARTY BE LIABLE UNDER THIS AGREEMENT FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT (INCLUDING LOSS OF PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), NO MATTER WHAT THEORY OF LIABILITY, EVEN IF THE EXCLUSIVE REMEDIES PROVIDED FOR IN THIS AGREEMENT FAIL OF THEIR ESSENTIAL PURPOSE AND EVEN IF EITHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OR PROBABILITY OF SUCH DAMAGES. THE PROVISIONS OF THIS SECTION "LIMITATION OF LIABILITY" ALLOCATE THE RISKS UNDER THIS AGREEMENT BETWEEN LICENSOR AND LICENSEE AND THE PARTIES HAVE RELIED UPON THE LIMITATIONS SET FORTH HEREIN IN DETERMINING WHETHER TO ENTER INTO THIS AGREEMENT.

B.      EACH PARTY'S LIABILITY TO THE OTHER UNDER THIS AGREEMENT FOR CLAIMS RELATING TO THIS AGREEMENT, WHETHER FOR BREACH OF CONTRACT OR IN TORT, SHALL BE LIMITED TO THE AGGREGATE ROYALTY FEES PAID BY LICENSEE TO LICENSOR DURING THE TWELVE MONTH PERIOD PRECEDING THE CLAIM.

## XIV. INSURANCE

**LICENSEE** shall, throughout the Term of this Agreement, obtain and maintain at its own cost and expense from a qualified insurance company licensed to do business as required by state and federal law(s), standard Product Liability Insurance naming **LICENSOR** as an additionally named insured. Such policy shall provide protection against any and all claims, demands and causes of action arising out of any defects or failure to perform, alleged or otherwise, of the Licensed Products or any material used in connection therewith or any use thereof. The amount of coverage shall be as specified in "Schedule A" attached hereto. **LICENSEE** agrees to furnish **LICENSOR** a certificate of insurance evidencing same within ninety (90) days after issuance of same, and, in no event, shall **LICENSEE** manufacture, distribute or sell the Licensed Products prior to receipt by **LICENSOR** of such evidence of insurance.

## XV. FORCE MAJEURE

**LICENSEE** shall not be liable for any failure of performance hereunder due to causes beyond its reasonable control, including but not limited to acts of God, fire, explosion, vandalism, strikes, lockouts, work stoppages, other labor difficulties, supplier failures, storm or other similar catastrophes, any law, order, regulation, direction, action or request of the state, local or federal government or of any government agency, commission, court, bureau, corporation or other instrumentality of any one or more of such governments, or of any civil or military authority, national emergencies, insurrections, riots, or wars.

## XVI. JURISDICTION AND DISPUTES

A. This Agreement shall be governed in accordance with the laws of the State of Florida without regard to its principles of conflicts of laws.

B. All disputes under this Agreement shall be resolved by the courts of the State of Florida including the United States District Court for Florida and the parties all consent to the jurisdiction of such courts, agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it.

## XVII. AGREEMENT BINDING ON SUCCESSORS

The provisions of the Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their heirs, administrators, successors and assigns.

## XVIII. WAIVER

No waiver by either party of any default shall be deemed as a waiver of prior or subsequent default of the same or other provisions of this Agreement.

## XIX. SEVERABILITY

If any term, clause or provision hereof is held invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other term, clause or provision and such invalid term, clause or provision shall be deemed to be severed from the Agreement.

## XX. NO JOINT VENTURE

Nothing contained herein shall constitute this arrangement to be employment, a joint venture or a partnership.

## XXI. ASSIGNABILITY

Neither party may assign by any act or operation of law the rights and obligations of this Agreement unless in connection with a transfer of substantially all of the assets of LICENSEE and/or with the consent of LICENSOR, which shall not be unreasonably withheld or delayed. By way of example and not limitation, LICENSEE may freely assign its rights and obligations under this Agreement to Stelor Productions, Inc.

## XXII. INTEGRATION

This Agreement constitutes the entire understanding of the parties, and revokes and supersedes all prior agreements between the parties, including any option agreements which may have been entered into between the parties, and is intended as a final expression of their Agreement. It shall not be modified or amended except in writing signed by the parties hereto and specifically referring to this Agreement. This Agreement shall take precedence over any other documents which may be in conflict with said Agreement.

## XXIII. RATIFICATION

The LICENSOR hereby agrees to the transfer of this License from the LICENSEE (The Aurora Collection, Inc.) to Stelor Productions, Inc. as contemplated by the Asset & Purchase Agreement, dated May 1st, 2002, and       executed       between       the       above       mentioned       parties

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have each caused to be affixed hereto its or his/her hand and seal the day indicated.

STEVEN A. SILVERS                                    STELOR PRODUCTIONS, INC.

Steven A. Silvers
Title: Owner/LICENSOR
Dated: 5/09/02

By: _____
Printed Name: Steven A. Esrib
Title: President
Dated: 5/9/02

Received Ten Thousand Dollar signing bonus ($10,000.00)

MICHAEL LUM
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires April 1, 2003
5/9/02

## "SCHEDULE A"

### LICENSED INTELLECTUAL PROPERTY

The following Licensed Intellectual Property forms part of this Agreement:  A License under any and all intellectual property rights and interests therein, including by way of explanation, products which deal with a creative character known as Googles, anything that contains the letters GOO (in upper or lower case), together with any and all products, which comprise and which will comprise those characters, likenesses, which include Iggle, Oogle, Oggle, Goorqo, Gootian(s), the Planet Goo, slides, computer web site(s), membership lists, clubs, materials, patterns, prototypes, logos, trademarks, service marks, clothing, merchandise, educational products, marketing and promotional data and tools, packaging and advertising, modifications, updates and variations, and all other items associated therewith whether in singular or plural

### LICENSED TRADEMARKS

The following Licensed Trademarks form part of this Agreement: (i) "The Googles" (word and design) Trademarks in International Class Code (016) of the U.S.P.T.O. and the co-existent Trademarks Agreement with Ganz, Inc. of Canada in International Class Code (028) of the U.S.P.T.O., which is hereto attached and made a part of this "Schedule A" document, (ii) "Oogle", (iii) "Iggle", (iv) "Oggle", (v) "GooRoo", (vi) "Planet Goo", (vii) "GooMu", (viii) "GooToons", (ix) "GooStuff", (x) "GooKids", (xi) "GooStore" and (xii) any other trademarks, whether registered, pending or future or common law, used in connection with the Licensed Property, including , but not limited to, any trademark incorporating the phrase "Goo" currently in existence.

### LICENSED PRODUCTS

The following Licensed Products form part of this Agreement:  all products which comprise the likenesses, stories, ideas, concepts, or designs of the Licensed Property, including without limitation, stuffed toy figurines, videos, stickers, t-shirts or other clothing items, slides, movies, cartoons, books (comic and otherwise), posters, playing, trading and collector cards, CDs, cassette tapes, DVDs, TV programs, motion pictures, all other forms of communication and publication, programs, computer Web site(s), membership lists and clubs, and any other products.

### DERIVATIVES

A Derivative as defined in this agreement shall mean a product or service that is utilized by the LICENSEE and developed by a party other than the LICENSOR but is used in conjunction with licensed products, articles and /or services. It can be a product or service produced by the LICENSEE or a third party (inventor, sub licensee etc,) that in its use enhances the value of the Googles Universe but does not have a conflict with an already existing Googles product idea or concept as outlined in this agreement. It may not possess the "Googles" or "GOO" in it's name and would therefore fall under the LICENSOR'S exclusive ownership as defined in the amended agreement but can be used in conjunction with the "Goo" Universe by the LICENSEE.

### TERRITORY

The following countries shall constitute the Territory: Global/Worldwide rights.

### TERM

This Agreement shall commence on the date executed below by both parties and shall be for a thirty (30) year term.   This Agreement shall automatically renew for one additional ten (10) year term on the same terms and conditions provided for herein ("Renewal Term"). Upon expiration of the first Renewal Term of ten (10) years, this Agreement shall automatically renew for a second ten (10) year  extended Term on the

10

same terms and conditions provided for herein, unless **LICENSOR** provides written notice of its intention to not to renew this Agreement within one hundred eighty (180) days prior to expiration of the Renewal Term.

## ROYALTY RATE

**LICENSEE** shall pay the following royalty rates: (i) SIX PERCENT (6%) of Net Sales of Licensed Products that are based solely on the Licensed Intellectual Property and (ii) THREE PERCENT (3%) of Net Sales of Licensed Products that are based solely on Derivative Products and (iii) In the case of Sub Licenses royalties will be TEN PERCENT (10%) of Net sales after subtracting licensing costs and royalties paid to third parties only.

## PRODUCT LIABILITY INSURANCE

Minimum Product Liability Insurance shall be Two Million U.S. dollars ($2,000,000.00) combined single limit for each single occurrence for bodily injury and/or for property damage.

5/9/02

## Succession
### Rights of Survivor

In the event of the Death of Licensor all of the Licensors rights under this agreement shall go to his heirs, assigns or legal representatives as he has lawfully designated in writing.

_[signature]_ Steven A. Silvers
5/09/02

_[signature]_
5/9/02

_[signature] Michael Lum_

MICHAEL LUM
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires April 1, 2003

5/9/02

11

# EXHIBIT "B"

# CONFIDENTIAL SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by Stelor Productions, Inc. ("Stelor") and Steven A. Silvers ("Silvers"). Stelor and Silvers are collectively referred to herein as "the Parties."

WHEREAS, Stelor brought a complaint in the United States District Court for the Southern District of Florida (Case No. 04-80954-CIV-HURLEY) against Silvers alleging breach of, (1) the License, Distribution and Manufacturing Agreement; and (2) the Letter Agreement;

WHEREAS, Silvers brought a counter-complaint against Stelor alleging breach of, (1) the License, Distribution and Manufacturing Agreement; and (2) the Letter Agreement;

WHEREAS, Silvers on January 13, 2005 sent a notice of termination of the Licensing, Distribution and Manufacturing Agreement to Stelor;

WHEREAS, Stelor has invested substantial time, effort, and money in developing a business involving the GOOGLES IP and fully intends to continue developing and commercializing such business, including sub-licensing some or all of the GOOGLES IP;

WHEREAS, the Parties intend that full performance by each Party of its obligations under this agreement cures the breaches alleged against each by the other Party, and

WHEREAS, the Parties wish to resolve all of the foregoing disputes to their mutual satisfaction.

//

//

SILVERS _____                    1                    STELOR_____

THEREFORE, the Parties hereby agree as follows:

1.  Domain Name Administration:

    a.  Silvers shall give Stelor, as the administrative contact for the GOOGLES IP domain names, the right to control the DNS records and make changes to the administrative contact information for all GOOGLES IP domain names, and shall advise the domain name registrar known as godaddy.com to this effect. Silvers will provide proof that Stelor has such rights no later than February 15, 2005. Silvers shall cooperate with any other request from Stelor regarding necessary administrative issues relating to the domain names, and all communications by Silvers, relating to domain names, shall be through Kozyak Tropin and Throckmorton ("KTT").

    b.  KTT will create and control a domain name renewal database to ensure timely renewal of domain names owned by Silvers, and will communicate with Stelor's counsel regarding any deadlines or other administrative issues.

2.  Pending and Future Actions Relating to the GOOGLES IP:  Silvers will cooperate with Stelor and Stelor's counsel in all respects in pending and future trademark and domain name dispute proceedings filed by Stelor, including but without limitation, providing any and all documents and other evidence needed to support Stelor's position.

3.  The License, Distribution and Manufacturing Agreement:  Silvers withdraws his notice of termination of the License Agreement, and reaffirms his obligations under

THEREFORE, the Parties hereby agree as follows:

1. <u>Domain Name Administration</u>:

    a.   Silvers shall give Stelor, as the administrative contact for these domain names, the right to control the DNS records and make changes to the administrative contact information for all GOOGLES IP domain names, and shall advise the domain name registrar known as godaddy.com to this effect. Silvers will provide proof that Stelor has such rights no later than February 15, 2005. Silvers shall cooperate with any other request from Stelor regarding necessary administrative issues relating to the domain names, and all communications by Silvers, relating to domain names, shall be through Kozyak Tropin and Throckmorton ("KTT").

    b.   KTT will create and control a domain name renewal database to ensure timely renewal of domain names owned by Silvers, and will communicate with Stelor's counsel regarding any deadlines or other administrative issues.

2. <u>Pending and Future Actions Relating to the GOOGLES IP</u>:  Silvers will cooperate with Stelor and Stelor's counsel in all respects in pending and future trademark and domain name dispute proceedings filed by Stelor, including but without limitation, providing any and all documents and other evidence needed to support Stelor's position.

3. <u>The License, Distribution and Manufacturing Agreement</u>:  Silvers withdraws his notice of termination of the License Agreement, and reaffirms his obligations under

SILVERS _____

2

STELOR _____

the License Agreement.

4. <u>Post-Settlement Communications:</u>   Silvers shall communicate with Stelor solely

through KTT.

5. <u>USPTO Correspondent of Record:</u>   Silvers shall change the correspondent on all

GOOGLES IP trademark applications and registrations to the name of Stelor's

counsel no later than February 15, 2005, and shall not change the correspondent in the

future as long as the Licensing, Manufacturing and Distribution Agreement is in

effect.  Stelor's counsel shall copy KTT with all correspondence to and from the

USPTO

6. <u>Sale or Assignment of the GOOGLES IP:</u>  KTT and Stelor's counsel shall include

each other in any and all negotiations and discussions with Google Inc. that relate to

resolving the pending trademark and domain name disputes or the sale or assignment

of the GOOGLES IP.

7. <u>Domain Name Renewal Expenses:</u>   Stelor agrees to reimburse Silvers for

documented expenses incurred to date in renewing GOOGLES IP domain names.

Future GOOGLES IP domain name renewal expenses will be reimbursed by Stelor.

All requests for reimbursement will be submitted by KTT to Stelor, and all payments

by Stelor will be sent to Silvers through KTT.

8. <u>Options Acknowledgement:</u> Stelor agrees that it will confirm in writing that no

additional options have been granted that would obligate it to provide such options

under the now expired Letter Agreement.

9. <u>LLC Acknowledgement:</u> The Parties acknowledge that Stelor Inc., a Delaware "C"

Corporation, is in the process of converting to a Delaware LLC. Any options granted

SILVERS

3

STELOR_____

to Silvers from the Stelor Inc. "C" Corporation will be converted to a like amount of

unit interests under the LLC.

10. <u>Royalty Advances:</u>

    a.  For as long as the Licensing, Distribution and Manufacturing Agreement

        is in effect, Stelor shall advance Silvers $60,000 a year against future

        royalties.  The advance will be made in equal monthly installments

        payable on the first of each month beginning February 1, 2005.

    b.  For as long as the Licensing, Distribution and Manufacturing Agreement

        is in effect, Stelor will provide Silvers with an additional monthly advance

        on expected future royalties equivalent to that amount required by Silvers

        to maintain his insurance coverage through the Aurora Collection, Inc. (or

        other insurance or medical provider of Silvers' choosing), as long as such

        coverage is offered. Such advance will not exceed $1,000 per month.

    c.  Stelor will reimburse Silvers for insurance premiums through the

        expiration of the "Letter Agreement," not to exceed $4,000. Such

        reimbursements will be provided to Silvers within 15 days of Stelor

        receiving evidence of paid premiums.

11. <u>Recoupment and Termination of Royalty Advances:</u>   Royalties advanced under this

    Agreement will be recaptured by Stelor once royalty payments exceed the amount

    specified in paragraph 8.  Such deductions will not exceed 20% of any given royalty

    payment.

12. <u>Royalty Statements:</u>   Stelor shall confirm in writing that no royalty payments are

    outstanding, and thus no royalty statements are due.

SILVERS _____

4

STELOR_____

13. <u>Trademark Registrations:</u>  Stelor shall provide to Silvers through KTT proof that all applications and registrations for trademarks and domain names with the "GOO" prefix or identified as Googles IP in the License Agreement filed by or on behalf of Stelor show Silvers as the owner.

14. <u>Audit:</u>  Stelor shall cooperate in the audit of the books and records of Stelor by Aronson and Company onsite at Stelor Productions as per section IV of the Licensing, Distribution and Manufacturing Agreement.  Any information obtained by the auditor will be restricted to KTT , on an "attorneys' eyes only" basis and the identity of any licensee, sub-licensee, vendor, or any other third-party shall remain confidential.

15. <u>Licensed Products Samples:</u>  Stelor shall provide Silvers through KTT samples of any Licensed Product that is being offered for sale.

16. <u>USPTO Correspondence:</u>  Stelor's counsel shall keep KTT advised as to the status of any pending or future trademark or domain name disputes filed by Stelor against Google Inc. by copying KTT on all pleadings and correspondence, and by giving notice to KTT of any other trademark or domain name disputes filed against Google Inc.

17. <u>Reservation of Jurisdiction:</u>  The Parties agree to submit to the exclusive continuing jurisdiction of the United States District Court, Southern District of Florida, for enforcement of all provisions of this Agreement.  In the event that a dispute arises concerning the obligations of any Party under this Agreement, the Parties agree to submit any such dispute to this court for resolution.  The successful or prevailing party (as determined by the Court) shall be entitled to recover its reasonable attorneys'

SILVERS

5

STELOR_____

fees and other costs incurred in that litigation from the unsuccessful or non-prevailing party in addition to any other relief to which the prevailing party might be entitled.

18. <u>Injunctive Relief:</u> The Parties hereby agree that there is no adequate remedy of law in the event that either party negotiates or settles the disputes with Google Inc. without the other party. In the event that either party attempts to negotiate with Google Inc. without the other party's participation, that shall be a breach of this Agreement, and such breach will create irreparable harm, and that injunctive relief will be necessary to maintain the rights of the non-breaching party. Accordingly, each party agrees to such injunctive relief.

19. <u>Joint Settlement Negotiations with Google Inc.:</u>

   a.  In view of the current existence of litigation and proceedings in the TTAB, jointly referred to as "Litigation", the parties recognize the need to resolve this Litigation reasonably such that Stelor can continue to develop and promote its business.

   b.  Due to the present status of development of Stelor's business, any event that causes Stelor to delay offering its web-based service to the public will cause severe injury to Stelor. Silvers therefore agrees that, in the event of a settlement with Google Inc., he will not object to Stelor's continued use of the googles.com domain to transition to a new domain name. The length of time of such transition will be at Stelor's sole discretion.

   c.  In the event of a monetary, stock, or similar settlement with Google Inc., Such sale will include a complete sale or assignment of the GOOGLES IP, The proceeds from that settlement shall be divided as follows:

SILVERS _____    6    STELOR_____

Silvers shall receive 70% of the first $30 million; 50% of the next $20 million; 30% of the next $30 million; 20% of the next $20 million; 10% of the next $20 million and 5% of any amount over $120 million, with the remainder in each case going to Stelor  Silver's total share of the proceeds shall not exceed $50 Million in any event.

d. Nothing in this provision creates an affirmative action by either party to enter any settlement with Google Inc., or to sell or assign the GOOGLES IP to Google Inc.  Silvers understands and agrees that he cannot sell or assign the GOOGLES IP to Google Inc. without obtaining Stelor's written approval. Both parties agree that they will negotiate in good faith.

20. <u>Confidentiality and Disposition of this Action:</u>

a. The settlement shall not be provided to the court unless necessary to enforce rights, and then under seal.  A Joint Stipulated motion to withdraw actions shall be filed no later than Friday, January 28, 2005. The fact that a settlement has been reached and all terms and obligations shall be confidential except to the extent necessary to advise Google Inc. that the parties have resolved all differences.

b. The complaint and counterclaim shall be dismissed without prejudice.

21. <u>Exclusive Authority/No Assignment</u>:

a. Stelor and Silvers represent and warrant that no other person or entity has or had any interest in the Claims, demands, obligations, or causes of action

SILVERS _____

7

STELOR_____

released as part of this Agreement, that they have the sole right and

exclusive authority to execute this Agreement and receive the

considerations specified herein, and that they have not sold, assigned,

transferred, conveyed, or otherwise disposed of any of the Claims,

demands, obligations, or causes of action released as part of this

Agreement.

b.  The signatories to this Agreement each warrant that they have the power

to bind the person or entity on whose behalf they signed, and will hold

harmless any party to this Agreement for any attorney fees, costs,

expenses, or damages incurred or paid as a result of finding that such

person or entity lacks such authority, or does not have sole right to the

Claims that are the subject of this Agreement, or that any such Claim has

been assigned.

22. Voluntary Agreement:  Stelor and Silvers each represent that the Agreement is freely

and voluntarily entered into, with the independent advice of each party's attorneys

and they have not been induced to execute this Agreement by reason of the disclosure

or non-disclosure of any fact or representation not set forth in this Agreement.

23. Non-disparagement:  Each Party, on behalf of itself, its officers, directors, attorneys,

agents, and employees, agrees not to make or publish, either orally or in writing, any

disparaging statements concerning the other Party or its current and former officers,

directors, attorneys, agents, shareholders, or employees.

24. Entire Agreement:  This Agreement constitutes the entire agreement between the

parties and supersedes all prior and contemporaneous contracts, agreements, promises

SILVERS _____                    8                    STELOR_____

and understandings, with the exception of the License, Distribution and

Manufacturing Agreement as well as the Letter Agreement previously entered into by

the parties. This Agreement may not be altered, modified or otherwise changed in

any respect except by writing, duly executed by Stelor and Silvers. No

representations, circumstances or conditions existing before the Agreement shall be

used in any way by any party to the Agreement to modify the Agreement.

25. Joint Preparation:   Stelor and Silvers declare that they have read this Agreement, and

know and understand its contents, and they each comprehend and agree to all its

terms, conditions, and meanings and their significance; all signatories and their

counsel have cooperated in the drafting and preparation of this Agreement, and this

Agreement therefore shall not be construed against any signatory. The Agreement

shall not be construed against any of them based upon any claim of unequal

sophistication or bargaining power.

26. Governing Law:   This Agreement shall be deemed to be made under, shall be

construed in accordance with, and shall be governed by the laws of the State of

Florida.

27. Duplicate Originals:   This Agreement may be executed in duplicate originals, each of

which is equally admissible in evidence in an action to enforce this Agreement, and

each original shall fully bind each party who has executed it.

28. Facsimile Signatures:   The signatures required for the execution of this Agreement

may be transmitted by facsimile, and any such signature shall be deemed a duplicate

original, and may be admitted in evidence and shall fully bind the party and person

making such signature.

SILVERS                                    9                         STELOR

29. <u>Effective Date</u>:  The Effective Date of this agreement shall be the date on which all
Parties have signed this Agreement.

30. <u>Each Party Agrees to operate in good faith as to the terms of this agreement.</u>

[Signature Page Follows]

SILVERS

10

STELOR_____

THE FOREGOING IS AGREED TO BY:

DATED: January ___, 2005          Stelor Productions, Inc.

                                  By:    _____

                                  Its:   _____

DATED: January 28th, 2005         Steven A. Silvers

                                  By: _Steven A. Silvers_

APPROVED AS TO FORM AND CONTENT:

DATED: January 28, 2005           Summers Rubinstein, P.C.

                                  By: _____

                                  Yano L. Rubinstein, Esq.

                                  Attorneys for Stelor Productions, Inc.

DATED: January 28, 2005           Kozyak, Tropin & Throckmorton, P.A.

                                  By: _____

                                  Gail McQuilkin, Esq.

                                  Attorneys for Steven A. Silvers

SILVERS_____          11          STELOR_____

# EXHIBIT "C"

LAW OFFICES

## KOZYAK TROPIN & THROCKMORTON, P.A.

2525 PONCE DE LEON • 9TH FLOOR
CORAL GABLES, FLORIDA 33134-6037

GAIL A. MCQUILKIN
DIRECT DIAL (305) 377-0656
gam@kttlaw.com

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

Via Federal Express
AWB# 7929-0844-8480

April 27, 2005

Steven A. Esrig
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland 20874

Re:    Silvers/Stelor License Agreement

Dear Mr. Esrig:

On November 12, 2004, we served notice on Stelor that it was in breach of several material provisions of both the License Agreement and Letter Agreement, a copy of which is attached. Because Stelor did not cure those breaches, on January 13, 2005 we served on Stelor a notice of termination of the License Agreement, a copy of which is attached.

On January 28, 2005, Stelor and Silvers entered into a Settlement Agreement in which Silvers agreed to withdraw his notice of termination provided Stelor perform its obligations under the Settlement Agreement.  Stelor, however, has:

- failed to provide Silvers with unit interests in Stelor LLC under paragraph 9;

- failed to pay Silvers monthly installments on royalty advances on the first of every month under paragraph 10 (a);

- failed to pay on April 1, 2005 the monthly advance on royalties required by Silver to maintain his insurance coverage through the Aurora Collection under paragraph 10 (b);

- failed to cooperate in the audit of the books and records of Stelor under paragraph 14;  and

- failed to provide Silvers samples of Licensed Products that are being offered for sale under paragraph 15.

Furthermore, although Stelor has provided a written statement that it is not offering any

Page 2

Furthermore, although Stelor has provided a written statement that it is not offering any products for sale, and no royalties due, that statement has proven to be false.

Stelor continues to be in breach of the License Agreement as outlined in our letter of November 12, 2004. This is to provide notice to you that due to Stelor's failure to perform its obligations under the Settlement Agreement, and failure to cure the breaches under the License Agreement, Silvers is reinstating his notice of termination of the License Agreement effective immediately.

Pursuant to paragraph X of the License Agreement, Stelor must immediately provide Silvers with a complete schedule of all inventory of Licensed Products on hand or on order. Stelor has six (6) months to continue to sell this Inventory, if any, in accordance with the License Agreement. So long as Stelor is actively selling its inventory of Licensed Products, it may continue the use of the Licensed Intellectual Property associated with the inventory for this period. Outside the scope of its efforts to sell its inventory of Licensed Products, Stelor must immediately cease use of the Licensed Intellectual Property, including names, trademarks, signs, advertising, web site, and anything else that might make it appear that it is still handling the articles and products relating to the Googles IP. Further, Stelor must return to Silvers all material relating to the Licensed Intellectual Property and inform its sub-licensees and those selling Googles related merchandise of the termination of the License Agreement.

Because the License Agreement is now terminated, Stelor may not represent Silvers' interest in any legal proceeding or action.

Sincerely,

Gail A. McQuilkin

c:    Steven A. Silvers
      Laurence Hefter
      Kevin Kaplan

251939.1

LAW OFFICES

# KOZYAK TROPIN & THROCKMORTON, P.A.

2525 PONCE DE LEON • 9TH FLOOR

CORAL GABLES, FLORIDA 33134-6037

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

**Via Federal Express**
**AWB#7927-7747-7745**

November 12, 2004

Steven A. Esrig
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland 20874

  Re: Silvers/Stelor License Agreement

Dear Mr. Esrig:

  We represent Steven Silvers, Licensor under that License, Distribution and Manufacturing Agreement dated June 1, 2002 ("Agreement"). Pursuant to paragraph IX-A of the Agreement, this serves as notice that Stelor has breached the Agreement and that Mr. Silvers will exercise his right to terminate the Agreement unless Stelor cures the following breaches within 60 days:

  a. Failure to pay royalties under paragraph III (A);

  b. Failure to provide a written certified royalty statement under paragraph III (C);

  c. Failure to provide a list of all sub licenses under paragraph III (C);

  d. Failure to use commercially reasonable efforts to promote, market, sell and distribute the Licensed Products under paragraph V (B)(iii);

  e. Failure to accommodate Licensor's request to audit the books and records of Stelor made under paragraph IV (A) and (C);

  f. Failure to provide samples of all Licensed Products you intend to manufacture and sell; and all promotional and advertising materials associated with those products under paragraph VI (C);

  g. Failure to include appropriate legal notices with the Licensed Products under paragraph VI(A);

  h. Failure to maintain the requisite level of quality for the Licensed Products under paragraph VI (B);

Page 2

     i.     Failure to maintain Licensor's Intellectual Property Rights, namely failure to maintain the domain names googlegame.com, googlesgames.com, and googlegame.com, under paragraph VIII;

     j.     Failure to register Licensor's Intellectual Property Rights in the name of Licensor, and instead registering copyrights and trademarks in Stelor's name;

     k.     Failure to oppose trademark applications for the name Googles, and the domain name registration googles.org, and otherwise protect the Licensed Intellectual Property; and

     l.     Unlawful use of the limited power of attorney granted under the Agreement, namely retaining counsel for Mr. Silvers without his knowledge or consent, filing an action in the name of Mr. Silvers to dispute Google, Inc.'s right to use the domain name google.com, and filing an answer in the name of Mr. Silvers in Cancellation Proceeding 92043737.

This also serves as notice under the Letter Agreement dated June 1, 2002, that Stelor has breached the Letter Agreement by its:

     a.  Failure to pay Mr. Silvers consultancy fees and expenses;

     b.  Failure to provide Mr. Silvers with an agreement granting him stock options for 1,000 shares of Stelor's stock;

     c.  Making unauthorized statements and representations on behalf of Mr. Silvers; and

     d.  Attempting to transfer, release and waive Mr. Silvers right, title, and interest in his intellectual property.

Pursuant to paragraph 1 of the Letter Agreement, Mr. Silvers will exercise his right to terminate the License, Distribution and Manufacturing Agreement unless Stelor cures these breaches within 30 days.

Very truly yours,

Gail A. McQuilkin

c:     Steven A. Silvers
       Laurence Hefter

/245615.1

LAW OFFICES

KOZYAK TROPIN & THROCKMORTON, P.A.

2525 PONCE DE LEON • 9TH FLOOR

CORAL GABLES, FLORIDA 33134-6037

GAIL A. MCQUILKIN
DIRECT DIAL (305) 377-0656
garn@kttlaw.com

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

Via Federal Express
AWB# 7914-4506-9106

January 13, 2005

Steven A. Esrig
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland 20874

Re:    Silvers/Stelor License Agreement

Dear Mr. Esrig:

As you know we represent Steven Silvers, Licensor under the License, Distribution and Manufacturing Agreement dated June 1, 2002 ("License Agreement"), and party to the Letter Agreement dated June 1, 2002 ("Letter Agreement"). On November 12, 2004 we served notice on Stelor that it was in breach of several material provisions of both the License Agreement and Letter Agreement, a copy of which is attached.

Pursuant to paragraph 1(c) of the Letter Agreement, and paragraph IX-A of the License Agreement, this serves as notice that Mr. Silvers is exercising his option to terminate the License Agreement for Stelor's failure to cure its breach of the Letter Agreement within thirty (30) days, and breach of the License Agreement within sixty (60) days.

Pursuant to paragraph X of the License Agreement, Stelor must immediately provide Mr. Silvers with a complete schedule of all inventory of Licensed Products on hand or on order. Stelor has six (6) months to continue to sell this Inventory in accordance with the License Agreement. So long as Stelor is actively selling its inventory of Licensed Products, it may continue the use of the Licensed Intellectual Property associated with the inventory for this period. Outside the scope of its efforts to sell its inventory of Licensed Products, Stelor must immediately cease use of the Licensed Intellectual Property, including names, trademarks, signs, advertising and anything else that might make it appear that it is still handling the articles and products of Mr. Silver. Further, Stelor must return to Mr. Silvers all material relating to the Licensed Intellectual Property and inform its sub-licensees of the termination of the License Agreement.

Because the License Agreement is terminated, Stelor may not proceed to represent the interests of Mr. Silvers in TTAB Opposition Proceeding No. 91161251, TTAB Cancellation Proceeding No. 92043496, the domain dispute against Google pending before the National

Steven A. Esrig
Page 2


Arbitration Forum, or participate in TTAB Cancellation Proceeding No. 92043737. And, because the License Agreement is terminated, the action pending in federal district court is now moot. Thus, we will file the appropriate notices in these proceedings.

　　　　Our client regrets that this relationship did not work out, and would like very much to keep the relationship amicable throughout the six month inventory sell-off period.

Sincerely,

Gail A. McQuilkin

c:    Steven A. Silvers
      Laurence Hefter
      Yano A. Rubinstein
      William Borchard

/248587.1

# EXHIBIT "D"

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM   WWW.BWSKB.COM

April 29, 2005

## VIA FACSIMILE AND U.S. MAIL

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

Re:   Silvers/Stelor

Dear Gail:

I write in response to your letter dated April 27, 2005 to Steven Esrig of Stelor Productions purporting to terminate the License Agreement. It is the position of Stelor that the License Agreement and the Settlement Agreement remain enforceable and binding documents and that the purported grounds for termination are all invalid and improper. We will respond to each of those grounds in turn.

First, Stelor has only recently converted to an LLC and Mr. Silvers has been provided an option letter for unit interests, to which he has not responded.

Second, monthly installments on royalty advancements have been paid. Indeed, enclosed are copies of royalty advancement checks for April and May that we are prepared to release upon withdrawal of the notice of termination.

Third, monthly advances on royalties to maintain insurance coverage have also been paid. Enclosed are checks for April and May that we are prepared to release upon withdrawal of the notice of termination. It must be noted, however, that, despite demand, Mr. Silvers has never confirmed the amount of insurance to be paid. As a show of good faith, Stelor has nonetheless paid the maximum each month, but such confirmation must be provided forthwith.

Fourth, Stelor has cooperated in the audit of the books and records. In fact, just a week ago, on April 22, 2005, you sent an email to Kevin Kaplan stating that "[t]he auditor is preparing a letter that will outline the documents and records he will need available at Stelor to do the audit." We have received no such letter. Whenever Stelor receives such a letter, it will cooperate.

Fifth, samples of licensed products have been collected and are available to Mr. Silvers pursuant to the agreement, provided that the notice of termination is withdrawn and it is understood that the agreements remain in place.

Gail A. McQuilkin, Esq.
April 29, 2005
Page 2

Finally, no royalties are owed to your client and the advances paid far exceed royalties that have been accumulated. A royalty statement is enclosed reflecting full payment of any amounts due. To the extent that there are any concerns, they can be raised with us. However, there is simply no basis for termination. Instead, the continuing failure of Mr. Silvers to meet his obligations under paragraph 2 of the Settlement Agreement, which has been the subject of prior correspondence, is a breach that he needs to be cured immediately.

Mr. Silvers is obliged to honor the License Agreement and the Settlement Agreement. We hereby demand receipt of written notice by Noon on Monday, May 2, 2005 that the notice of termination has been withdrawn and that Mr. Silvers agrees to abide by his contractual agreements. We also demand written assurance that Mr. Silvers will make no efforts to interfere in any manner with the business of Stelor. Furthermore, Mr. Silvers needs to agree to the submission to the federal court of a consent decree confirming the enforceability of the agreements and the rights that have been conveyed to Stelor. Failing receipt of such notice and assurances, Stelor will initiate an action seeking to enforce the agreements through declaratory and injunctive relief.

All rights and remedies are reserved. Govern yourselves accordingly.

Sincerely,

Daniel Blonsky

DFB:gr
Enclosures
cc: Client (w/ encls.)
    Kevin C. Kaplan, Esq. (w/ encls.)

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

**STELOR PRODUCTION INC.**
POST OFFICE BOX 1050
GAITHERSBURG, MD 20883

CITIB/ F.S.B.
WASHINGTON
7-216-520

04/28/05

PAY TO THE
ORDER OF    Silvers Entertainment Group                    $ **5,000.00

Five Thousand and 00/100*********************************************************** DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Advance Against Royalty April 05

⑈002751⑈ ⑆052002166⑆ ⑈17597405⑈

---

**STELOR PRODUCTIONS, INC.**

    Silvers Entertainment Group                    04/28/05            2751
    04/28/05                    Bill #roymay                    5,000.00

Citibank Checkin  Advance Against Royalty April 05                    5,000.00



**STELOR PRODUCTIONS, INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

CITIBANK, F.S.B.
WASHINGTON, DC 20036-0967
7-216-520

04/28/05

TO THE
ORDER OF    Silvers Entertainment Group                                      $ **5,000.00

Five Thousand and 00/100************************************************************** DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Advance Against Royalty May 05

⑈002752⑈ ⑆052002166⑆ ⑈175974⑈

---

**STELOR PRODUCTIONS, INC.**
        Silvers Entertainment Group                              04/28/05              2752
    04/28/05                         Bill #royapril                              5,000.00


Citibank Checkin  Advance Against Royalty May 05                              5,000.00



2753

**STELOR PRODUCTIONS, INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

CITIBANK, F.S.B.
WASHINGTON, DC 20036-0967
7-216-520

04/28/05

PAY TO THE
ORDER OF____Silvers Entertainment Group_____ $ **1,000.00

One Thousand and 00/100************************************************************ DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Royalty/insurance advance, Apr '05

⑈002753⑈ ⑈052002166⑈    ⑈17597405⑈

STELOR PRODUCTIONS, INC.
    Silvers Entertainment Group                    04/28/05        2753
    04/28/05                    Bill #052005                    1,000.00

Citibank Checkin  Royalty/insurance advance, Apr '05                    1,000.00



**2755**

**STELOR PRODUCTIONS, INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

CITIBANK, N.S.B.
WASHINGTON, DC 20036-0967
7-216-520

04/28/05

THE
R OF    Silvers Entertainment Group                                                $ **1,000.00

One Thousand and 00/100********************************************************    DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Royalty/insurance advance May '05

⑈002755⑈ ⑆052002166⑆    ⑈17597405⑈

---

**STELOR PRODUCTIONS, INC.**
    Silvers Entertainment Group                      04/28/05              2755
04/28/05                              Bill #042005                        1,000.00


Citibank Checkin  Royalty/insurance advance May '05                              1,000.00



**Royalty Statement**
**Silvers Entertainment Group**
**January 1, 2005 – March 31, 2005**

| Transaction | Net Revenue | Royalty Rate | Royalty Amount | Pre-paid Royalty Balance |
|---|---|---|---|---|
| February advance against royalties | | | $5,000 | $5,000 |
| February advance against royalties for insurance premiums | | | $1,000 | $6,000 |
| Net revenue from licensed properties (iTunes) | $47.35 | 6% | $2.84 | $5,997.16 |
| Net revenue from derivative properties (iTunes) | $1.47 | 3% | $0.04 | $5,997.12 |
| March advance against royalties | | | $5,000 | $10,997.12 |
| March advance against royalties for insurance premiums | | | $1,000 | $11,997.12 |

# EXHIBIT "E"

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134

Telephone (305) 372-1800
Fax (305) 372-3508

Gail A. McQuilkin
gam@kttlaw.com

May 2, 2004

Daniel Blonsky, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive
Miami, Florida 33133

Re:    Stelor Productions, Inc. v. Steven A. Silvers

Dear Dan:

This is in response to your letter of April 29, 2005. My client is not interested in Stelor's offer of late compliance with the terms of the Settlement Agreement or its obligations under the License Agreement. Mr. Silvers has terminated the License and intends to go in a different direction to develop his characters and intellectual property. We expect Stelor to honor its obligations under the termination provisions of the License Agreement.

Sincerely,

Gail A. McQuilkin

/252630.1

# EXHIBIT "F"

**DOMAIN NAMES IN DISPUTE**

GOOBEANIES.COM
GOOBEANIES.NET
GOOBOP.COM
GOOGLEMAIL.NET
GOOGLES.BIZ
GOOGLES.INFO
GOOGLES.NAME
GOOGLES.NET
GOOGLES.US
GOOGLES.WS
GOOGLESADVENTURE.COM
GOOGLESADVENTURES.COM
GOOGLESFROMGOO.COM
GOOGLESFROMGOO.INFO
GOOGLESFROMGOO.NET
GOOGLESMAIL.COM
GOOGLESMAIL.NET
GOOGLESMANIA.COM
GOOGLESMUSIC.COM
GOOHOP.COM
GOOKID.COM
GOOKIDS.COM
GOOKIDS.NET
GOOKIDSMAIL.COM
GOOKIDSMAIL.NET
GOOKIDSRGOORIFFIC.COM
GOOKIDZ.COM
GOOKIDZ.NET
GOOKIDZMAIL.COM
GOOKIDZMAIL.NET
GOOMAIL.NET
GOOMANIA.COM
GOOMUSIC.COM
GOOPETS.COM
GOOPETZ.COM
GOORIFFICENTERTAINMENT.COM
GOORIFFICENTERTAINMENT.NET
GOOSHIP.COM
GOOSHOES.COM
GOOSTUFF.COM
GOOTOPIA.COM
GOOTOPIA.BIZ
GOOTOPIA.INFO
GOOTOYS.COM

GOOTOYS.NET
GOOTUNES.COM
GOOWARE. COM
GOOWEAR.COM
OOGLESADVENTURE.COM
OOGLESFROMGOO.COM
OOGLESFROMGOO.NET
OOGOOS.COM
OOGOOS.NET
PLANETGOO.NET
PLANETOFGOO.COM
PLANETOFGOO.NET
THEGOOCREW.COM
THEGOOGLES.COM
THEGOOGLESADVENTURE.COM
THEGOOGLESADVENTURES.COM
THEGOOGLESFROMGOO.COM
THEGOOGLESFROMGOO.INFO
THEGOOGLESFROMGOO.NET
THEGOOGLESMAIL.COM
THEGOOGLESMAIL.NET
THEGOOKIDSMAIL.COM
THEGOOKIDSMAIL.NET
THEGOOKIDZMAIL.COM
THEGOOKIDZMAIL.NET
THEOOGLES.COM
THEOOGLES.NET
THEOOGLESFROMGOO.COM
THEOOGLESFROMGOO.NET
THEOOGOOS.COM
THEOOGOOS.NET
THEPLANETOFGOO.COM
THEPLANETOFGOO.NET

# EXHIBIT "G"



# KOZYAK · TROPIN
# THROCKMORTON
### ATTORNEYS AT LAW

**Kenneth R. Hartmann**, Esq.
krh@kttlaw.com | 305.377.0657

July 27, 2005

Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
  Kaplan & Blonsky, P.A..
2699 South Bayshore Drive
Penthouse
Miami, FL  33133

Re:    License Termination

Dear Kevin:

Based on Mr. Esrig's recent declaration, it appears that Stelor is continuing to engage in the unauthorized use of Mr. Silvers' intellectual property and may be misrepresenting its status as a licensee.  Because the License Agreement has been terminated, Stelor no longer has authority to act as Mr. Silver's licensee, and must cease and desist from conducting business that relates in any way to the License Agreement.  In fact, the post-termination provisions in the License Agreement require Stelor to immediately inform all sublicensees, or in this instance  potential sublicensees, that its license has been terminated.  Stelor's apparent concealment of its termination is misleading as to these persons.

If Stelor persists in the unauthorized exploitation of Mr. Silvers' intellectual property, we will have no choice but to seek injunctive relief.  To the extent Stelor incurs liability to third parties, based on its unauthorized conduct, or suffers "damages," Stelor obviously bears sole responsibility.

Furthermore, Stelor must make the necessary changes to eliminate all reference to the Googles name and "goo" related words.  While we have tried in good faith and as a courtesy to give Stelor enough time to make this transition, it appears that Stelor has taken no action.  If Stelor fails to make these changes we will file an action for trademark infringement.

Very truly yours,

Kenneth R. Hartmann

KRH/lmm
cc:    Steven Silvers

2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 | Phone 305.372.1800 | Fax 305.372.3508 | kttlaw.com