UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Palm Beach Division

Case No. 05-80387-CIV (Ryskamp/Vitunac)

STEVEN A. SILVERS, an individual )
)
    Plaintiff, )
)
v. )
)
GOOGLE INC., a Delaware corporation )
)
    Defendant, )
_____)
)
GOOGLE INC., a Delaware corporation )
)
    Counterclaimant, )
)
v. )
)
STEVEN A. SILVERS, an individual; )
STELOR PRODUCTIONS, INC., a Delaware )
corporation; STELOR PRODUCTIONS, LLC;)
a business entity of unknown form; and )
STEVEN ESRIG, an individual, )
)
    Counterdefendants, )
_____)

## DEFENDANT AND COUNTERCLAIMANT GOOGLE INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO BIFURCATE DISCOVERY AND TRIAL

    Defendant and Counterclaimant Google Inc. files this reply memorandum of law supporting its motion to bifurcate discovery and trial to determine the threshold issue of whether Silvers has any enforceable trademark rights and, if so, whether Silvers or Google has priority of enforceable rights.

NON-COMPLIANCE OF S.D. fla. L.R. *S. Silas*



I.  **INTRODUCTION**

In opposing Google's motion to bifurcate discovery and trial, Silvers and Stelor attempt to cloud the issue placed before this Court, namely, whether bifurcation of the threshold issue of whether Silvers has any enforceable trademark rights is appropriate. Rather than focus on issues relating to bifurcation or Silvers's rights in the mark GOOGLES AND DESIGN, Silvers and Stelor attempt to recharacterize the issue before the Court as whether Silvers has validly registered the mark. However, in so arguing, Silvers and Stelor fail to address the key question before the Court on this motion for bifurcation: does Silvers have any enforceable trademark rights in the GOOGLES AND DESIGN mark? If he does not, there is no need to conduct discovery or trial on the issue of alleged trademark infringement by Google.

Moreover, both Silvers and Stelor have based their argument upon a fundamental mistake of law. They assume that so-called "incontestable" status of a registration protects trademark rights against abandonment. The law, however could not be clearer: section 33(b)(2) of the Lanham Act identifies as a defect or defense to incontestability the abandonment of a mark, and section 33(b)(1) similarly identifies as a defect or defense instances where incontestable status has been obtained fraudulently. *See* 15 U.S.C. § 1116(b)(1) and (2). If Silvers and Stelor have no enforceable trademark rights, they cannot bring an action for trademark infringement. As Silvers and Stelor should well know from a minimum of research, it is the validity of the *mark*, not the validity of the *registration*, that must be established in a trademark infringement action; while a registration creates a presumption of validity, the presumption is easily rebutted. Silvers's and Stelor's focus on the latter only serves to underscore the weakness of their argument in opposition to the motion for bifurcation.

Throughout Silvers's opposition he argues that, because he filed a declaration of continued use of the mark in the name of Googles Children's Workshop ("GCW") in 2003, he secured supposed "incontestable" status for the registration. What Silvers fails to address is that at the time of filing the declaration of continued use, the GOOGLES AND DESIGN mark had been defunct for over five years, disqualifying the mark from receiving "incontestable" status. As detailed in Google's memorandum in support of its motion to bifurcate, GCW filed an application to register the trademark GOOGLES AND DESIGN with the U.S. Patent and Trademark Office in 1996 and obtained the registration in 1997. Later that same year, GCW dissolved without assets. *Silvers and Stelor do not contest that fact.* Despite this fact, Silvers

attempted to assign the rights in the GOOGLES AND DESIGN mark and registration from the defunct company to himself in 1999. Because the mark was not used in commerce by GCW during the five-year period before the 2003 declaration of continued use and because the supposed transfer of the mark to Silvers, apart from any assets or goodwill, was an invalid assignment-in-gross, and because GCW after its dissolution and after the supposed assignment of the mark to Silvers falsely, fraudulently, and invalidly filed in its own name a declaration of continued use, "incontestable" status could not attach to the registration. More importantly for the purposes of Google's motion to bifurcate, the non-use of the GOOGLES AND DESIGN in commerce and the assignment in gross extinguished any rights Silvers may have had in the mark. It is for this reason that Google requests that the Court bifurcate the preliminary issue of whether Silvers has any enforceable trademark rights and, if so, whether Silvers or Google has priority of enforceable rights before undertaking determination of likelihood of confusion.

Silvers's invocation of New Jersey state law at p. 8 n. 2 of his opposition, relating to conveyance of property of a corporation after dissolution, is a red herring. When GCW dissolved *without assets*, it had no property left to convey -- it had neither a trademark nor goodwill attached to a trademark.

Silvers would have the Court believe that *he* has been using the GOOGLES AND DESIGN trademark for twenty-five straight years. This is simply not the case. Regardless of when Silvers claims to have begun using the mark "Googles," it is clear that the mark was not used continuously in commerce, as required by the Lanham Act; moreover, Silvers and Stelor cannot show continuous use in commerce for over five years as of 2003 by a company which dissolved without assets in 1997.

Silvers argues that Google's motion to bifurcate is nothing more that an attempt to "taint Silvers as an opportunist hoping for a windfall settlement." Reply at 4. While this is not a necessary issue for bifurcation, the facts do speak for themselves. The validity of the GOOGLES AND DESIGN mark withered on the vine along with GCW when the company was dissolved without assets in 1997. It was not until after that dissolution and the emergence of Google as the foremost Internet search engine in the world that Silvers sought to resuscitate the GOOGLES AND DESIGN mark by assigning the mark and registration to himself. It was then that Silvers began seeking investors to support his business efforts. It was also after this time that Silvers filed an intent-to-use application for federal registration of the mark GOOGLES for

3

computer services including email and information transfer. Silvers argues that, if he were able to foresee Google's meteoric rise to success, he would have been better suited to a career on Wall Street. However, it certainly does not take a Wall Street wizard to try to capitalize on Google's success after Google had established itself as one of the most successful companies in the world.

Google's motion requests that this Court bifurcate the case to separate the preliminary issue of validity, scope and priority of rights held by Silvers and/or Stelor, from the trademark infringement and other liability issues raised in Silvers's and Stelor's claims and Googles' counterclaims. Such bifurcation is appropriate under Rule 42(b) of the Federal Rules of Civil Procedure because bifurcation will expedite resolution of this case, conserve judicial resources, and avoid unnecessary prejudice to the parties. Only after determining whether Silvers or Stelor possesses any enforceable trademark rights and the relative priority between Silvers or Stelor and Google should the Court be faced with issues of infringement and liability.

II.     ARGUMENT

   A.     Silvers's Argument Regarding "Incontestable" Status For His Claimed Trademark Registration Does Not Affect This Motion To Bifurcate.

Silvers's Opposition to Google's Motion to Bifurcate ignores one of the most basic premises of trademark infringement law, namely, that a plaintiff must establish *as a prerequisite* that it has enforceable rights in its mark to prevail on a trademark infringement action. *Turner Greenberg Associates, Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1330 (S.D. Fla. 2004) (In order to succeed on a claim for trademark infringement, the plaintiff must establish two elements: (1) valid ownership of the mark; and (2) a likelihood of confusion); *Alliance Metals, Inc. v. Hinely Industries, Inc.*, 222 F.3d 895, 906 (11th Cir. 2000). Ownership and validity of a trademark is not "only one factual issue of one element that the jury will consider in a seven-part test of likelihood of confusion" as Silvers argues. Reply at 1. Rather, it is a threshold inquiry separate and apart from the likelihood of confusion test.

Silvers mischaracterizes Google's position as challenging merely Silvers' trademark registration. The issue is much more fundamental than that: Google is challenging the very existence of trademark rights claimed by Silvers and Stelor, not the mere registration that would depend upon extant trademark rights. Google is asking the Court to bifurcate discovery and trial to allow for a determination of the threshold issue of whether Silvers *has any*

*enforceable trademark rights* in GOOGLES AND DESIGN and, if so, whether Silvers or Google has priority of enforceable rights. The validity of the registration and the validity of the mark are two distinct issues. Unfortunately for Silvers, it is the validity of the mark, not the validity of the registration, that matters for purposes of trademark infringement actions. *Compton v. Fifth Avenue Association*, 7 F. Supp. 2d 1328, 1331 (M.D. Fla. 1998) ("registration of a mark, unaccompanied by prior use, does not create ownership"); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:3 ("the registration does not create the trademark . . . . It is the use of the mark to identify a single source which creates exclusive trademark rights").

Silvers would have this Court believe that GCW's abandonment of any rights it may have had in GOOGLES AND DESIGN merely defeats the "incontestable" status of the registration as opposed to wiping the mark out altogether.[1] This is simply not the case. Should the Court determine that GCW has abandoned whatever rights it may have had in GOOGLES AND DESIGN, Silvers would be unable to meet the initial hurdle for showing trademark infringement and his infringement claim would fail. Abandonment, or lack of actual usage, of a mark as a "trademark" results in a loss of legal rights. 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:9. If a party has no trademark rights, it (and its successor in interest) cannot sue for trademark infringement.

Moreover, despite Silvers's arguments to the contrary, GCW's registration never lawfully acquired incontestable status as provided under 15 U.S.C. § 1065. Under Section 1065, a federally registered mark becomes incontestable only if the mark has been in continuous use for five consecutive years subsequent to the date of registration and other requirements are satisfied.[2] Where a registrant did not use the mark continuously in connection with the sale of goods for the required five-year period following registration, incontestability does not attach to the registration. *Brittingham v. Jenkins*, 914 F.2d 447, 454 (4th Cir. 1990). In *Brittingham*, plaintiff and holder of a federal registration for the mark THRASHER'S brought an action for

---

[1] As set forth in Google's Memorandum in Support of Motion to Bifurcate Discovery and Trial, abandonment of the mark has been demonstrated through the 1999 dissolution without assets by GCW and the subsequent assignment in gross of trademark rights from GCW to Silvers.

[2] One such requirement is that "an affidavit is filed with the Commissioner within one year after the expiration of any such five-year period setting forth those goods or services stated in the registration on or in connection with which such mark has been in continuous use for such five consecutive years and is still in use in commerce." 15 U.S.C. § 1065(3).

trademark infringement after registering his mark and subsequently filing an affidavit with the Patent and Trademark Office attesting to five years of continuous and unchallenged use of the mark. *Id.* at 452-53. In affirming the district court's judgment in favor of defendant and against the mark registrant, the Fourth Circuit found that plaintiff's registration never acquired incontestable status because plaintiff did not use the mark continuously in connection with the sale of goods for the required five-year period following registration. *Id.* at 454.[3] Because the registration did not become incontestable under the Lanham Act, the court found that an individual could dispute the registrant's ownership of the mark, and it affirmed the district court's decision invalidating plaintiff's trademark registrations and entering a permanent injunction against plaintiff's use of the mark. *Id.* at 455.

Factually, *Brittingham* is in accord with this case. As in *Brittingham*, GCW filed a declaration to secure supposed "incontestable" status for the registration. Bridges Decl. ¶ 6 and Exh. H.[4] Also as in *Brittingham*, GCW had not used the GOOGLES AND DESIGN mark continuously in connection with the sale of goods for the five-year period following registration. On this point there can be no debate. After GCW applied to register the trademark GOOGLE and DESIGN with the U.S. Patent and Trademark Office in 1996, it dissolved *without assets* in 1997. Bridges Decl. ¶ 3 and Exh. D. Despite this 1997 dissolution, Silvers purported to cause GCW to assign the mark and registration from GCW to himself in 1999. Bridges Decl. ¶ 4 and Exh. E. The declaration seeking "incontestable" status, however, was filed in the name of the defunct company *after* it had purportedly assigned the mark to Silvers!

Here, not only did GCW fail to use the mark continuously in connection with the sale of goods for the requisite five-year period as demonstrated by the dissolution without assets, but the purported assignment from GCW to Silvers created no rights in Silvers. The law is well-settled that there are no rights in a trademark alone and that no rights can be transferred apart from the business with which the mark has been associated. 15 U.S.C. § 1060; *Int'l Cosmetics Exch., Inc. v. Saba*, No. 00CV2280, 2001 WL 1944733 (S.D. Fla. 2001) (courts will invalidate bare assignment of trademarks as an assignment-in-gross). Because Silvers has not met the

---

[3]   The *Brittingham* court found that 15 U.S.C.A. § 1065 applied "solely to the use of a mark in connection with the sale of goods and services, and not in relation to other business activities." *Brittingham*, 914 F.2d at 454.
[4]   Citations to the Bridges Declaration and Exhibits refer to the Declaration and Exhibits filed with Googles' Memorandum in Support of Motion to Bifurcate Discovery and Trial.

requirements for "incontestable" status of the GOOGLES AND DESIGN trademark, such claimed status should have no bearing on this Court's decision of whether it is appropriate to bifurcate discovery and trial to determine whether Silvers has any enforceable trademark rights and, if so, whether Silvers or Google has priority of enforceable rights.

**B.    The Unusual Circumstances Of This Case Make Bifurcation Appropriate.**

Silvers is correct in his assertion that bifurcation is not routinely ordered. As explained in Google's opening brief, however, this an exceptional situation well suited for bifurcation because the Court's determination of the threshold issue of whether Silvers has any enforceable trademark rights can obviate the need to adjudicate the issue of likelihood of confusion. Whether Silvers has any enforceable trademark rights is not a "small non-dispositive issue" as Silvers characterizes it. Reply at 1. To the contrary, it is a threshold issue that is likely to dispose of Silvers's and Stelor's claims. Bifurcating the case to separate the preliminary issue, namely the validity, scope, and priority of rights held by Silvers, from the trademark infringement and other liability issues in Silvers' claims and Google's counterclaims is appropriate under Rule 42(b) of the Federal Rules of Civil Procedure because bifurcation will expedite resolution of this case, conserve judicial resources, and avoid unnecessary and otherwise inevitable prejudice to Google.

Silvers suggests that the "main principle that informs a court's discretion on the issue of bifurcation" is that the party seeking bifurcation bears the burden of showing that bifurcation is proper. Reply at 8-9. While it is correct that the party seeking bifurcation bears the burden of showing that it is proper, this is certainly not the main principle bearing on the court's discretion.[5] Rather, the main considerations informing the broad discretion conferred by Rule 42(b) are furtherance of convenience, avoidance of prejudice, expedition and economy. Fed. R. Civ. P. 42(b); *Harrington v. Cleburne County Board of Education*, 251 F.3d 935, 938 (11th Cir. 2001) (standard for granting bifurcation is not a high one).

In light of the broad discretion granted to district courts in considering whether to bifurcate a trial and the low standard of "furthering convenience," Google has sufficiently

---

[5]    Moreover, the authority cited by Silvers for the proposition that the "main principle" informing a court's discretion on the issue of bifurcation is that the party seeking bifurcation bears the burden of showing that it is proper does not support Silvers's contention. Indeed, the court notes that the "procedure selected by the trial court should be 'conducive to expedition and economy.'" *Lowe v. Philadelphia Newspapers, Inc.*, 594 F. Supp. 123, 125 (E.D.Pa. 1984).

demonstrated that the Court would be acting well within its discretion if it grants the motion for bifurcation. Silvers's contention that "bifurcation should be ordered solely to alleviate jury confusion" is disingenuous and not supported by the authority cited. Reply at 9. The *In re Koger* court specifically walks through a number of factors courts generally consider in determining whether or not to bifurcate a trial. *In re Koger*, 261 B.R. 528, 532 (Bankr. M.D. Fla. 2001) (factors included separability of the issues, simplification of discovery and the conservation of resources, prejudice to parties, and suitability of bifurcating trial but not discovery). Nowhere does the court indicate that bifurcation should be ordered solely to alleviate jury confusion. While jury confusion is not the sole (or even main) factor to be weighed in considering whether bifurcation is appropriate, it is a consideration.

Here, determining validity and priority of each party's claims alongside each other party's opposing trademark infringement and other liability claims would create complex issues for the trier of fact. Indeed, the infringement and liability claims could not be resolved until the threshold validity and priority issues were first sorted out. The inherent complexity resulting from trying all issues at once would create a serious risk of confusing a jury and causing prejudice to all parties in the case.

Google cited a number of cases where the court has exercised its discretion to bifurcate the trial in a trademark infringement action. *See, e.g., City of Newark v. Beasley*, 883 F. Supp. 3, 4 (D.N.J. 1995) (bifurcating issues of trademark ownership and infringement); *Brooks Shoe Manufacturing Co., Inc. v. Suave Shoe Corp.*, 533 F. Supp. 75, 84 n.16 (S.D. Fla. 1981) (bifurcating liability and damages in trademark action); *St. Charles Man. Co. v. Mercer*, 737 F.2d 891, 892 (11th Cir. 1983) (bifurcating liability and damages); *Isaly Co. v. Kraft, Inc.*, 619 F. Supp. 983, 998 (M.D. Fla. 1985) (bifurcating liability and damages). Notably, *City of Newark v. Beasley* is precisely the type of case Silvers accuses Google of not citing in its opening brief. In *Beasley*, the court specifically stated that it "bifurcated this matter so that issues of copyright and trademark ownership could be decided prior to the issues of infringement and damages." *Beasley*, 883 F. Supp. at 4. The fact that issues of copyright infringement were also present in the case does not detract from the fact that the court exercised its discretion to decide issues of ownership before issues of infringement.

Silvers further argues that patent law is not instructive as to the propriety of separating validity and infringement issues in trademark cases. However, patent cases often

involve the parallel situation where validity and infringement issues must be determined. In such cases, it is within the court's discretion to determine validity first and consider infringement only if validity is decided in favor of the plaintiff. While Silvers cites a number of cases where the court held that bifurcation was not appropriate based on the specific facts in those cases, that has no bearing on whether bifurcation may be appropriate given the factual disposition of this matter. Moreover, where both validity and infringement issues must be determined, courts have severed ownership from infringement in patent cases. *Kahn v. General Motors Corp.*, 865 F. Supp. 210, 215 (S.D.N.Y. 1994). The situation before this court presents similar issues and the reasoning in *Kahn* applies directly. *Id.* ("[r]equiring the parties to prepare to try the whole case at once would be unreasonable and wasteful"). In attempting to distinguish *Kahn*, Silvers characterizes Google's argument as only "claim[ing] Silvers' registration may be invalid due to an allegedly deficient assignment to Silvers by Silvers' company." Reply at 12. The invalidity of the *registration,* as opposed to the invalidity of the claimed *mark*, is not Google's argument, and Silvers's argument only underscores his basic misunderstanding of the issue. For the purposes of this motion, Google is not arguing simply that Silvers's claimed registration is invalid. Rather, Google requests that this Court determine the threshold issue of whether Silvers has any enforceable trademark rights before engaging in an inquiry as to infringement.

### III.   CONCLUSION

Bifurcating the threshold issue of validity from the infringement and liability phase of both discovery and trial is appropriate in this case because doing so serves the interests that Rule 42(b) promotes. Namely, bifurcation would allow for a rapid resolution of the case, streamline and simplify the proceedings, safeguard against confusion between validity and liability issues, and avoid prejudice to the parties. Because the validity issue in this case is an absolute prerequisite to the existence of any case by Silvers or Stelor against Google, it is especially well suited to bifurcation because resolving this initial issue can obviate the need to resolve the infringement claim.

Dated: November 30, 2005

Respectfully submitted,

By: *Andrew P. Bridges*
Jan D. Atlas (Bar No. 226246)
jatlas@adorno.com
ADORNO & YOSS LLP
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida 33301-4217
Phone (954) 763-1200
Fax (954) 766-7800

Andrew P. Bridges (Bar No. 122761)
abridges@winston.com
Jennifer A. Golinveaux (Bar. No. 203056)
jgolinveaux@winston.com
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, California 94111
Phone: (415) 591-1000
Fax: (415) 591-1400

Attorneys for Defendant and Counterclaimant
GOOGLE INC.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon opposing counsel by U.S. mail this 30th day of November, 2005, addressed as follows:

Harley S. Tropin
Kenneth R. Hartmann
Gail A. McQuilkin
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134

Adam T. Rabin
DIMOND KAPLAN & ROTHSTEIN, P.A.
525 S. Flagler Drive, Trump Plaza - Suite 200
West Palm Beach, Florida 33401

Kevin C. Kaplan
David J. Zack
BURLINGTON, WEIL, SCHWIEP, KAPLAN & BLONSKY, P.A.
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Fax: 305-858-5261

Dated: November 30, 2005

Theresa Impang-Lozada

SF:119149.5