Silvers v. Google, Inc.                                                    Doc. 58

Case 9:05-cv-80387-KLR    Document 58    Entered on FLSD Docket 12/27/2005    Page 1 of 36    D.C.

FILED by ___ D.C.
ELECTRONIC

**Dec 23 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  05-80387 CIV RYSKAMP/VITUNIC

STEVEN A. SILVERS, an individual,

      Plaintiff,

v.

GOOGLE INC., a Delaware corporation,

      Defendant.

_____/

GOOGLE INC., a Delaware corporation

      Counterclaimant,

v.

STEVEN A. SILVERS, an individual;
STELOR PRODUCTIONS, INC., a Delaware
Corporation; STELOR PRODUCTIONS, LLC, a
Delaware limited liability company,

      Counterdefendants.

_____/

### STELOR'S OPPOSITION TO SILVERS'
### MOTION TO DISMISS AMENDED CROSS-CLAIM

      Counterdefendant/Crossplaintiff, STELOR PRODUCTIONS, L.L.C., f/k/a STELOR PRODUCTIONS, INC. ("Stelor"), by and through its undersigned attorneys, hereby opposes on the following grounds Steven A. Silvers ("Silvers") Motion to Dismiss Amended Cross-Claim:

## I.  INTRODUCTION

      Silvers wants to prevent this Court from deciding the critical threshold issue in this action of whether the License and Settlement Agreements ("Agreements") between Silvers and Stelor remain in force and effect.  If they do, as Stelor contend, then Stelor is and remains the exclusive, world-wide licensee of the "Googles" intellectual property, including the trademarks on which

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.
_____
OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

1 of 36

58/cj

Dockets.Justia.com

Plaintiff's claims in this action are based.  And Stelor – not Silvers – has the sole right to bring this trademark infringement action against Google Inc.

Whether Silvers likes it or not, that issue must necessarily be decided by this Court in this action.  It must be decided as part of Silvers' claims, since he lacks standing to pursue his claims if the License Agreement remains in effect.  It must be decided as part of Google Inc.'s affirmative defenses and Counterclaim, which raise the issue of Silvers' standing; and it must also be decided as a critical element of Stelor's compulsory Counterclaim against Google Inc., since Stelor's standing to pursue its own trademark infringement claims against Google Inc. depends largely on the continued validity of the Agreements.

Thus, the issue relating to the Agreements between Silvers and Stelor pervade this dispute.  Silvers' attempt to prevent this Court from deciding one set of claims raising this issue is pointless.  The issue will still necessarily need to be decided as part of the claims that will remain, including the parties' trademark claims over which this Court undeniably has subject matter jurisdiction.  Insofar as Stelor's state law claims against Silvers also raise these issues, those claims are so related to the remaining federal claims that they form part of the same case or controversy under Article III of the United States Constitution, and fall within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Accordingly, Silvers' Motion should be denied.

Finally, Silvers incorrectly relies on his state court action against Stelor as a basis to dismiss the breach of contract Cross-Claims.  Silvers fails to cite controlling case law on abstention by federal courts, and the state court action presents no basis for dismissal of the breach of contract Cross-Claims.

## BACKGROUND FACTS

Stelor is the exclusive, world-wide licensee of the "Googles" intellectual property, including the trademarks on which Plaintiff's claims in this action are based.  As Silvers admits, he licensed the property to Stelor pursuant to a License Agreement dated June 2002 (Exhibit "A" to Silvers' Motion).  Under that License Agreement, the exclusive right to institute legal action to protect the property – such as the present action against Google Inc. for trademark infringement – belongs to Stelor, and not Silvers.  *See* Art. I.A; VIII.A & B.

2

Burlington • Weil • Schwiep • Kaplan & Blonsky, P.A.

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com  www.bwskb.com

The provisions of the License Agreement are explicit.  It grants to Stelor "the exclusive (even as to LICENSOR), worldwide, sub licensable right and license" with respect to all of the "Googles" intellectual property and trademarks.  Agreement ¶ 1(A).  The Agreement also expressly grants to Stelor "all right, power and interest to seek, obtain and maintain all Intellectual Property Rights associated with the Licensed Intellectual Property and Licensed Trademarks."  And, eliminating any conceivable doubt as to the scope of Stelor's rights, Article IX of the Agreement titled "INFRINGEMENTS", gives Stelor "[d]uring the Term of this Agreement" "the *sole* right, in its discretion and at its expense, to take any and all actions against third persons to protect the Intellectual Property Rights licensed in this Agreement,"  (Emphasis added).

Critically, the Agreement grants Stelor  "an irrevocable power of attorney to act for and on LICENSOR's behalf".  Agreement ¶ VIII(A).   The Agreement, therefore, gives Stelor the rights to purse these claims, not only in its capacity as licensee, but also "for and on LICENSOR's behalf".

Indeed, presumably motivated to pursue this action against Google Inc. by himself, without having to share with Stelor any portion of the likely recovery, Silvers wrongly and without any justification purported to terminate the License Agreement in April of 2005.  As set forth in Stelor's Counterclaim and Amend Cross-Claim, that termination is wrongful, and the Agreements remain in full force and effect.

Unfortunately, Silvers' improper and unfounded attempt to terminate the Agreements was just the latest in a series of actions designed to disrupt Stelor's rights to the Googles property.  Stelor was previously forced to file an initial lawsuit against Silvers in the Fall of 2004, when Silvers interfered with administrative actions Stelor had brought to protect certain of the "Googles" trademarks.  That action was subsequently resolved, pursuant to the written Settlement Agreement.

Under the Settlement Agreement, Silvers expressly reinstated all provisions of the License Agreement, including the clear requirement that 60 days' notice be provided of any alleged breaches, with an opportunity to cure, as a precondition for termination of the License Agreements. (*See* Article IX of the License Agreement, Mot. to Dismiss Ex. A)  Nevertheless, with no notice whatsoever, Silvers purported to terminate the Agreement by letter dated April 27,

3

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

2005.  The alleged breaches set forth in the Termination Letter, moreover, were entirely unfounded.  Indeed, in the prior action pending before Judge Hurley, Magistrate Hopkins agreed, expressly finding in a Report and Recommendation following an evidentiary hearing on Stelor's motion for preliminary injunction, that Stelor had a substantial likelihood of success on the merits of his claim.[1]

## II. OVERVIEW OF THE PENDING CLAIMS

On May 4, 2005, Silvers filed the present action for trademark infringement against Google Inc.   Google Inc. responded by filing its Answer, Affirmative Defenses and Counterclaim ("Counterclaim") in August of 2005.  Google Inc. claimed in its affirmative defenses that Silvers lacked standing (second affirmative defense) and failed to include an indispensable party (ninth affirmative defense).  In addition, Google Inc. joined Stelor as a counterclaim defendant along with Silvers, alleging generally that Stelor and Silvers have falsely claimed rights in the Googles property.  The Counterclaim seeks declaratory relief, cancellation of Stelor's and Silvers' trademark rights, and alleges trademark infringement under 15 U.S.C. §§ 1114 and 1125(a).  Accordingly, Stelor has been involuntarily joined as a counterclaim (or third-party) defendant to this action.

Stelor, in turn, has filed its Counterclaim and Amended Cross-Claim.  Counts Two and Three of the Counterclaim and Amended Cross-Claim are compulsory counterclaims for trademark infringement against Google Inc.; Count Four is a compulsory counterclaim for common law unfair competition against Google Inc.  (These Counts against Google Inc. will be referred to collectively as "Google Trademark Infringement Claims").   As compulsory counterclaims, Stelor was required to bring these claims in this action pursuant to Fed. R. Civ. P. 14(a) and 13(a).  And, this Court clearly has original, federal question jurisdiction over these Trademark Infringement Claims, pursuant to 15 U.S.C. § 1121 (Lanham Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (trademark and unfair competition), as well as

---

[1] Judge Hurley then entered a TRO implementing the injunction recommended by the Magistrate, although Judge Hurley declined to extend the TRO upon its expiration or otherwise to adopt the Magistrate's additional recommendations.

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

supplemental jurisdiction under 28 U.S.C. § 1367 over the common law unfair competition claim.

In addition, Stelor's Counterclaim and Amended Cross-Claim includes compulsory cross-claims against Silvers – whom Google Inc. made a counterclaim/defendant along with Stelor. Thus, Count One of Stelor's Counterclaim and Amended Cross-Claim seeks a declaratory judgment that Stelor's continued use of the Googles trademarks does ***not*** infringe Silvers' claimed trademark rights, and also that the Agreements between Stelor and Silvers remain in full force and effect.   Counts Five and Six allege breaches by Silvers of the Agreements and applicable warranties under State law.   (These Counts against Silvers will be referred to collectively as the "Silvers Claims").

In short, Stelor's right to pursue the Googles Trademark Infringement Claims depends on the continued validity of the License and Settlement Agreements.   As set forth above, the License Agreement grants to Stelor:

- "the exclusive (even as to LICENSOR), worldwide, sub licensable right and license" with respect to all of the "Googles" intellectual property and trademarks. Agreement ¶ 1(A).

- "all right, power and interest to seek, obtain and maintain all Intellectual Property Rights associated with the Licensed Intellectual Property and Licensed Trademarks"

- as well as "an irrevocable power of attorney to act for and on LICENSOR's behalf".  Agreement ¶ VIII(A).

- And, "the ***sole*** right, in its discretion and at its expense, to take any and all actions against third persons to protect the Intellectual Property Rights licensed in this Agreement."  (Emphasis added). ¶ IX

Clearly, if the License Agreement remains in effect – as Stelor contends – than Stelor has the right to pursue its Googles Trademark Claims.  Conversely, if the License Agreement is terminated (and it is not), then Stelor's rights to pursue the Googles Trademark Claims would be limited.  (Stelor could still pursue the claims, but limited to the period prior to the Agreement's termination).  Accordingly, the issue raised by Stelor in the Silvers Claims – whether the Agreements remain in effect – is a critical threshold issue in this case, and is closely related to

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

the Googles Trademark Claims (over which this Court has original jurisdiction). Those issues, moreover, pervade *ALL* of the claims in this action, including Silvers' own trademark infringement claim against Googles Inc. Thus, the issues about the Agreements' validity would *STILL* necessarily be addressed by this Court even if the Silvers Claims were dismissed.

### III.  THE COURT HAS ORIGINAL JURISDICTION OVER STELOR'S CLAIMS

The Court has original jurisdiction over the Googles Trademark Infringement Claims in Counts Two and Three of Stelor's Counterclaim and Amended Cross-Claim. *See* 15 U.S.C. § 1121 (Lanham Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338 (trademark and unfair competition). The Court also has supplemental jurisdiction over the claim against Google Inc. for common law unfair competition, just as supplemental jurisdiction exists over Silvers' parallel claim against Google Inc. for unfair competition. (DE 10, Ex. A, Count III)

In addition, Count One of Stelor's Counterclaim and Amended Cross-Claim for declaratory relief also falls within the Court's federal question jurisdiction. That Count seeks a judicial declaration that Stelor's continued use of the Googles trademarks does *not* constitute infringement under the Lanham Act. As such, it properly establishes this Court's federal question jurisdiction. *See Household Bank v. JFS Group,* 320 F.3d 1249, 1251 (11th Cir. 2003) ("federal-question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant could file a coercive action arising under federal law"); *Cardtoons, L.C. v. Major League Baseball Players,* 95 F.3d 959, 965 (10th Cir. 1996).[2]

These claims over which the Court has independent bases for jurisdiction necessarily require a decision to be made about the continued validity of the License and Settlement Agreements. Stelor's standing to pursue the Googles Trademark Infringement Claims, as well as

---

[2] Nor could Silvers legitimately contend that the Court should refrain from deciding that claim. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 26 (1983) ("the presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction.); *Verizon Communication, Inc. v. Inverizon International, Inc.* 295 F.3d 870, 874 (8th Cir. 2002) (district court abused discretion in staying federal action seeking declaration of non-infringement under Lanham Act, where pending state court action raised only state law issues).

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

the count seeking a declaratory judgment of non-infringement under the trademark laws, both hinge on that issue.

## IV.  SUPPLEMENTAL JURISDICTION EXISTS OVER STELOR'S STATE LAW CLAIMS

**A.     The Court Has *Power* To Exercise Supplemental Jurisdiction Over Stelor's State Law Claims.**

Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Stelor's state law claims.  Section 1367(a) provides:

> Except as provided in subsection (b) and (c) . . . , in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

As set forth above, the state law claims include a count for common law unfair competition against Google Inc., as well as a count for declaratory judgment that the Agreements remain in full force and effect, and counts for breach of the Agreements and certain of its express warranties.  These claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case and controversy and thus fall within the Court's supplemental jurisdiction.

As the Eleventh Circuit has explained, this section "delineates the *power* of the federal courts to hear supplemental claims and claims against supplemental parties."  *Palmer v. Hospital Auth,* 22 F.3d 1559, 1566 (11th Cir. 1994) (emphasis original).  Subsection (c) of the statute, in turn, "describes the occasions on which a federal court may exercise its *discretion* not to hear a supplemental claim or admit a supplemental party, despite the *power* of the court to hear such a claim."  *Id.* (emphasis original).  As *Palmer* made clear, "supplemental jurisdiction *must* be exercised in the absence of any of the four factors of section 1367(c)."  *Id.* (emphasis original).

In analyzing the first component of the Statute, the Court's power to exercise supplemental jurisdiction, *Palmer* explained that the exercise is proper where – as here – all of the relevant parties are before the Court on an independent ground of original federal

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

jurisdiction. *Id.* As long as the state-law claim arises out of the same nucleus of operative facts, the power to exercise supplemental jurisdiction exists, even where "all the elements of the federal and state claims are certainly not identical, and in some cases quite different." *Id.*

In this connection, supplemental jurisdiction has readily been exercised by the courts over counterclaims and cross-claims by third and even fourth party defendants. As the Court held in *Allstate Ins Co. v. James,* 779 F.2d 1536, 1539 (11th Cir. 1986), cross-claims satisfying the same "transaction or occurrence" test of Rule 13(g) "must, by necessity, by closely related to the original claim, and would, therefore fall within the court's ancillary jurisdiction." Similarly, in *Viacom Int'l, Inc. v. Kearney,* 212 F.3d 721, 727-28 (2d Cir. 2000), the Court overturned an order granting a motion to dismiss, holding that a fourth-party defendant "could file any claims necessary to protect its interests under the court's supplemental jurisdiction". That holding was especially significant, not only because the Court lacked any independent jurisdictional basis over the fourth-party defendant's claims, but also because those claims were inconsistent with the Court's diversity jurisdiction. The Court analyzed the relationship between the fourth-party defendant's claims and the defendant's compulsory counterclaims, finding them sufficiently related to satisfy the requirements of § 1367(a). As the Court reasoned, the exercise of supplemental jurisdiction would promote judicial economy, eliminating the need for duplicate litigation then pending in state court. *Id.* at 728 & n.6.

Indeed, numerous courts have approved the exercise of supplemental jurisdiction over claims by third-party defendants "haled into court against his will", even where no independent basis for jurisdiction exists over any aspect of the claims, *Cam-Ful Indus., Inc. v. Fidelity & Deposit Co.,* 922 F.2d 156, 160 (2d Cir. 1991) (applying parallel doctrine of ancillary jurisdiction). *E.g., State Nat'l Ins. Co. v. Yates,* 391 F.3d 577, 580 (5th Cir. 2004) (noting that limits of supplemental jurisdiction over claims of *plaintiffs* NOT applicable to compulsory cross-claims and counterclaims of defendants); *HB General Corp. v. Manchester Partners, L.P.,* 95 F.3d 1185, 1197-98 (3d Cir. 1996) (emphasizing that the rule of supplemental jurisdiction applies "even to claims asserted by or against additional parties).

Applying these standards here, Stelor's Cross-Claim clearly falls within the Court's *power* to exercise supplemental jurisdiction. Quite simply, the Googles Trademark Infringement Claims brought by Stelor and the nonfederal Silvers Claims "are so tightly interwoven that the

8

BURLINGTON · WEIL · SCHWIEP · KAPLAN &amp; BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

federal claims cannot be resolved unless the federal court also addresses the nonfederal claims," *Cam-Ful,* 922 F.2d at 160 (2d Cir. 1991). Stelor must demonstrate that License Agreement and Settlement Agreements remain in effect in order for Stelor to have standing to pursue its Trademark Infringement Claims against Google Inc. Indeed, that issue is pervasive and will necessarily be litigated as part of Stelor's trademark claims regardless.

Not only is this a critical threshold issue for Stelor's claims, however, it is for Silvers' original claims as well. Thus, if the License Agreement remains in effect, then Silvers does not have standing to pursue its infringement claims against Google Inc. That right, instead, belongs exclusively to Stelor. Silvers' argument against supplemental jurisdiction overlooks the requirement that he prove he – and not his licensee, Stelor – has standing to pursue the trademark claims against Google Inc. *See Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc.,* 934 F.2d 1551, 1557 (11th Cir. 1991); *Paradise Creations, Inc. v. UV Sales, Inc.,* 315 F.3d 1304, 1309 (Fed Cir. 2003) (recognizing exclusive licensee's standing to bring claims).

Again, the License Agreement authorizes Stelor to bring such claims in its capacity as licensee. But, the Agreement does more; it expressly grants Stelor "an irrevocable power of attorney to act for and on LICENSOR's behalf". Agreement ¶ VIII(A). Thus, Stelor controls both its and Silvers' rights, as owner, to bring the Googles Trademark Infringement Claims. Having irrevocably granted Stelor that power of attorney, Silvers cannot properly pursue a claim, even in his own name.

The bottom line is that, if the License Agreement remains in effect (which it does), Silvers is claiming rights he simply does not have. Although Google Inc.'s actions are improper and the trademark claims should proceed against Google Inc., the exclusive right to pursue the claims belongs to Stelor, not Silvers. Nor can Silvers properly avoid litigation of that critical threshold issue, whether raised as a result of Stelor's Counterclaim and Amended Cross-Claim or simply as a component of Silvers' obligation to demonstrate his standing. Like it or not, Google Inc. has already included Stelor as a party and has injected those issues into the case. Accordingly, the issues will necessarily be litigated, with or without the Silvers Claims included in Stelor's Amended Cross-Claim.

9

Burlington · Weil · Schwiep · Kaplan & Blonsky, P.A.

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com  www.bwskb.com

Nor will inclusion of the Cross-Claim in this case "create havoc at trial", as Silvers suggests.[3] If Silvers is concerned that these issues will require evidence and testimony different from what he believes the evidence should be for the "main trademark claim", then Silvers should not have attempted to usurp Stelor's right to pursue this action. But having done so, he cannot suggest piecing off the Cross-Claim from this action, and requiring it to be separately tried before another court. *That* would create havoc. A separate state court proceeding will result in dueling cases, with two courts forced to hear and decide the same issues, and Stelor required to litigate those issues twice. As discussed in more detail in the last section of this paper, not only would parallel lawsuits create inefficiency and unwarranted expense, but also a pronounced risk of inconsistent or conflicting decisions. The reality here is that Silvers has no choice but try these issues in one judicial proceeding.

**B.      No Basis Exists Under 1367(c) for The Court to Decline to Exercise Supplemental Jurisdiction.**

As an initial matter, Silvers has expressly waived any rights regarding the discretionary aspects of supplemental jurisdiction. Although the absence of subject matter jurisdiction cannot be waived, the courts have confirmed that the "discretionary aspect to supplemental jurisdiction is waivable." *See Kieslich v. USA,* 258 F.3d 968, 970-71 (9th Cir. 2001); *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999); *Fein v, District of Columbia,* 93 F.3d 861, 871 (D.C. Cir. 1996). Here, Silvers expressly agreed in the written Settlement Agreement "to submit to the exclusive continuing jurisdiction of the United States District Court, Southern District of Florida." (Settlement Agreement ¶ 17, tab 2.) This provision clearly constitutes a waiver of any right to object to the Court's exercise of that jurisdiction. Accordingly, this Court has supplemental jurisdiction, and under the circumstances should exercise it.

Even if Silvers had not waived his right to object to the discretionary aspect of supplemental jurisdiction, no basis exists here for the Court to decline to exercise supplemental jurisdiction. Although Silvers appears to suggest that a court has broad discretion to decline to exercise supplemental jurisdiction over a closely related state-law claim, that is not the case. Courts may decline such jurisdiction only in four narrowly articulated situations, none of which

---

[3] Even if it did, that would not eliminate the Court's *power* to exercise supplemental jurisdiction or, as set forth below, provide a basis for the Court to decide not to exercise that jurisdiction.

Burlington • Weil • Schwiep • Kaplan & Blonsky, P.A.

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com  www.bwskb.com

apply here.  *See Palmer,* 22 F.3d at 1566 ("Supplemental jurisdiction *must* be exercised in the absence of any of the four factors").

First, supplemental jurisdiction may be declined if the claim raises a novel or complex issue of State law.  Silvers concedes the Cross-Claim "does not raise particularly complex issues of state law".  Motion at 10.  Also unpersuasive is Silvers' suggestion that a novel question is raised by Stelor's claim for declaratory relief that Silvers' termination of the Agreements was improper and that the License and Settlement Agreements remains in full force and effect.   As set forth below, Silvers' argument is misplaced, and at most involves an issue of allowable remedies under State law that is certainly not complex or novel.

Second, supplemental jurisdiction may be declined if the claim "substantially predominates over the claim or claims over which the district court has original jurisdiction."  Here, as set forth above, the issues raised by the Cross-Claim themselves implicate elements of the trademark claims raised by Silvers, and the defenses and counterclaims raised by Google Inc.  Those issues, moreover, will need to be addressed and decided as part of the main claims in any event.  Accordingly, this ground does not apply.

Third, supplemental jurisdiction may be declined if the court has dismissed all claims over which it has jurisdiction, a ground that is obviously inapplicable.

Fourth, jurisdiction may be declined "in exceptional circumstances", where "there are other compelling reasons for declining jurisdiction."  There are no such circumstances here; Silvers does not (and cannot) seek to invoke this provision.

Accordingly, no basis exists in this case for the Court to decline to exercise supplemental jurisdiction.  Nor does Silvers' argument that including the Cross-Claim will create havoc at trial – which it will not – provide a basis for the Court to decline to exercise supplemental jurisdiction.

## V.  STELOR STATES A CLAIM FOR INJUNCTIVE RELIEF

Silvers also attempts to argue that Stelor cannot state a claim for injunctive relief.  The argument is not directed to any specific count in the Cross-Claim, and essentially appears to be nothing more than an unfounded preemptive argument against a motion for preliminary injunction that has not been filed.  Apparently, Silvers contends that, even if he unilaterally and

11

Case No. 05-80387 CIV RYSKAMP/VITUNIC

wrongly terminated that License Agreement, Stelor's only recourse is money damages. According to Silvers, Stelor cannot have the termination declared improper and the License Agreement deemed to be in effect. That argument is preposterous. As the Court succinctly held in *Computer Currents Publishing Corp. v. Jaye Communications, Inc.,* 968 F. Supp. 684, 687 (N.D. Ga. 1997), in rejecting the identical argument by a trademark licensor, "[u]nfortunately, this is a misstatement of the law."

That decision was expressly approved by the Eleventh Circuit in *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1307-08 (11th Cir. 1998), which Silvers ignores. In fact, the *Burger King* decisions frequently cited by Silvers were effectively overruled by the Eleventh Circuit's decision in *Robertson. Id.* at 1308. Adopting the Third Circuit's analysis in *S&R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371 (3d Cir. 1992), *Robertson* held that, before a franchisor could enjoin an allegedly terminated franchisee from continuing to use the trademarks, the franchisee had to show the termination was proper. Absent such a showing by the franchisor, the franchisee's rights to use the trademarks continue.

Silvers' argument also ignores the ruling in *Ron Matusalem & Matusa, Inc. v. Ron Matusalem, Inc.,* 872 F.2d 1547, 1550, 1553 (11th Cir. 1989), where the Eleventh Circuit expressly approved a trial court's decision (issued by Judge Ryskamp following a lengthy bench trial) that a termination of a sub-franchise agreement including trademarks was unwarranted, and that the franchise "is still in existence and . . . should be strictly enforced." Indeed, as the Eleventh Circuit emphasized, Judge Ryskamp had properly recognized that "termination of a franchise is a drastic remedy" and that such franchise rights "should not be set aside lightly". Clearly, the Court in this case has the authority to determine that Silvers' termination was wrongful and that the License remains in existence.

In fact, none of the decisions cited by Silvers – including the *Burger King* cases – supports Silvers' misstatement of the law that the License Agreement ends, even if Silvers' termination was wrongful. Rather, the established rule is as follows:

> Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages.

12

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

12 of 36

*Jiffy Lube,* 968 F.2d at 376. Of course, if the non-breaching party does choose the first option – stopping its performance and assuming the contract is avoided – then its remedy would be limited to money damages. On the other hand, if – as Stelor has done here – the non-breaching party continues to perform under the contract, the party clearly preserves the right to continue to use the trademark should the termination prove to be wrongful. *See Matusa,* 872 F.2d at 1550, 1553.[4]

Even the *Burger King* cases on which Silvers relies confirm this rule. Thus, the *Jiffy Lube* decision quotes the following language from *Burger King v. Austin,* Bus. Fran. Guide (CCH) ¶ 9788 at 22,069 (S.D. Fla. Dec. 26, 1990) (also cited with approval in Silvers' Opposition at 13):

> ***In order to have preserved their right to recover for the alleged breaches and to continue to use the [Plaintiff's] trademark, Defendants should have continued to pay royalties, advertising expenses and rent.***

*See also Burger King Corp. v. Hinton, Inc.,* 203 F. Supp. 2d 1357, 1365 (S.D. Fla. 2002) (quoting same language); *Burger King v. Majeed,* 805 F. Supp. 994, 1004 (S.D. Fla. 1991) (same); *Burger King Corp. v. Hall,* 770 F. Supp. 633, 639 (S.D. Fla. 1991) (same); *In re Tampa Checkmate Food Servs. Inc. v. Checkers Drive-In Restaurants,* 221 B.R. 541, 545-46 (M.D. Fla. Bankr. 1998) (adopting rule and distinguishing *Burger King* cases). Thus, if pending judicial resolution of such a dispute, the licensee continues to perform its obligations under the agreement at issue – such as paying royalties – the licensee preserves its rights under the agreement if the termination is ultimately held to be wrongful.[5]

By continuing to perform its obligations under the License Agreement – notwithstanding Silvers' bogus termination – Stelor has fully preserved its rights as licensee,

---

[4] Notwithstanding the improper termination, Stelor has continues to make royalty payments on a monthly basis as required by the Agreements, but Silvers' counsel has rejected all the payments.

[5] As one commentator put it, "[n]either a franchisor nor a franchisee can play the role of judge and jury in connection with contract defaults. A franchisor needs to strictly abide by the franchise agreement, and any applicable franchise statute, including providing the franchisee a mandated right to cure, if the franchisor expects to be able to enjoin the terminated franchisee from continuing to use the trademark." H. Bruno, *Is Proper Termination Necessary to Obtain a Trademark Injunction?,* 21-SPG Franchise L.J. 204, 207 (2002). The franchisor's simply declaring the agreement to be terminated does not make it so.

13

including the right to continued use of the Googles trademarks upon a judicial determination of wrongful termination by Silvers. Stelor's rights as licensee, moreover, expressly include the right for Stelor – and not Silvers – to pursue this trademark infringement claim against Google Inc.

In essence, Silvers is pre-arguing a motion for preliminary injunction, which is not pending. Thus, all of his cases involve preliminary injunctions, not dismissals of the underlying claims, and are radically distinguishable. For example, although the Court in *Freeplay Music, Inc. v. Verance Corp.,* 80 Fed Appx. 137 (2d Cir 2003), affirmed a denial of a preliminary injunction because, on the facts, no showing of irreparable harm was made, the *Freeplay* Court overturned the lower court's dismissal of the claims for declaratory judgment, breach of contract, and other relief, remanding the matter to the lower court "for proper resolution . . . upon a complete record". The decision in *A.L.K. Corp. v. Columbia Pictures Indus., Inc.,* 440 F.2d 761 (3d Cir. 1971), was similarly limited to an appeal of an order on a preliminary injunction motion. As the decision made clear, moreover, it was based solely on the lack evidence of irreparable harm specific to the circumstances in that case.

The Florida cases cited by Silvers are also limited to preliminary injunction motions, and are clearly distinguishable. *See Shearson Lehman Hutton, Inc. v. Meyer*, 561 So. 2d 1331 (Fla. 5th DCA 1990) (terminated employee had adequate remedy at law); *Jacksonville Elec. Aut. V. Beemik Builders & Con., Inc.*, 487 So. 2d 372 (Fla. 1st DCA 1986) (inadequate proof of irreparable harm); *Airlines Reporting Corp. v. Incentive Int'l Travel, Inc.*, 566 So. 2d 1377 (Fla. 5th DCA 1990) (failure to demonstrate clear legal right preventing termination of contract).

Finally, the so-called *Burger King* cases referenced by Silvers also involve preliminary injunction motions, and are otherwise entirely inapplicable. In fact, *Burger King Corp. v. Hall*, 770 F. Supp. 633, 638-39 (S.D. Fla. 1991), was effectively overruled by the Eleventh Circuit's decision in *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1308 (11th Cir. 1998). The *Robertson* Court rejected *Hall's* finding that the "question of alleged wrongful franchise termination [was] irrelevant," and instead directly addressed the propriety of the alleged termination for purposes of injunctive relief. *Cf. Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992) (court found that franchisee had failed to comply with license agreement). In addition, unlike the facts in this case, another of the cited cases involved a contract that had

14

BURLINGTON • WEIL • SCHWIEP • KAPLAN ⅋ BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

already terminated by its own terms (and not improperly by one of the parties). *E.g., Burger King Corp. v. Agard*, 911 F. Supp. 1499, 1501 (S.D. Fla. 1995) (license expired by its own terms).

Accordingly, Stelor has properly stated a claim for relief. Silvers' Motion is unfounded and should be denied.

## VI. SILVERS' STATE COURT ACTION  DOES NOT JUSTIFY DISMISSAL

Silvers argues that his state court action against Stelor supports dismissal. It does not. The parties expressly agreed in their written Settlement Agreement "to submit to the exclusive continuing jurisdiction of the United States District Court, Southern District of Florida." (Settlement Agreement ¶ 17, attached hereto as tab 2.) Thus, by agreement of the parties, this Court, not the state court, has jurisdiction over this matter. *See  P&S Bus. Machines, Inc. v. Canon USA, Inc*., 331 F.3d 804, 807 (11th Cir. 2003) (*per curiam*)  (parties are bound to their agreement regarding forum).

Silvers also neglects to cite to *Ambrosia Coal and Constr. Co. v. Pages Morales*, 368 F.3d 1320 (11th Cir. 2004).  In *Ambrosia*, the Eleventh Circuit overturned a district court's decision to abstain from hearing a dispute over a leasehold interest, where a competing action had been first filed in Puerto Rico.  The court construed the factors set out in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) for federal abstention based on state litigation.  The *Ambrosia* court stated:

> This general principle [to avoid duplicative litigation] does not apply, however, when the duplicative litigation arises between state and federal courts. As the Supreme Court recognized, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .  Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  A policy permitting federal courts to yield jurisdiction to state courts cavalierly would betray this obligation.  Thus, federal courts can abstain to avoid duplicative litigation with state court only in "exceptional" circumstances.

*Id*. at 1328 (quoting *Colorado River* 424 U.S. at 817 (citations omitted)).  The following factors are to be considered:  1) the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts, 2) convenience, 3)  the desirability of avoiding

piecemeal litigation, 4) the order in which jurisdiction is obtained by concurrent forums, 5) whether state or federal law will be applied, 6) and the adequacy of the state court to protect the parties' rights.  *Id.* at 1328, 1331.   Only the " 'clearest of justifications will warrant dismissal' of the federal action,   " *id.* at 1328-29 (quoting *Colorado River*, 424 U.S. at 819), and the Court must employ "a heavy bias in favor of exercising jurisdiction." *Id.* at 1332.

As to the first and fourth factors (jurisdiction over the property and order in which jurisdiction was obtained), this Court, not the state court, is the first to assume jurisdiction over the parties and over the property rights at issue – the trademarks.  Silvers filed this action, which necessarily raised his standing to bring trademark claims, against Google Inc. in May 4, 2005. (DE 1.)  Google Inc.'s Second Affirmative Defense was filed on August 8, 2005, and it claimed Silvers' lack of standing.  (DE 5.)  For its part, Stelor filed an action for breach of the License Agreement and Settlement Agreement before Judge Hurley (which was dismissed for lack of complete diversity of citizenship – a problem not present here, as discussed above) on May 4, 2005 and filed a Notice of Similar Actions and Request for Transfer and Consolidation to this Court on August 23, 2005, (DE 9), raising the point that it has the exclusive right to bring any trademark action against Google Inc.  Thus, this action, and the issue of the contractual relations between Silvers and Stelor as they pertain to the right to enforce the trademarks herein at issue, arose long before Silvers September 6, 2005 state court complaint.[6]

As the second and third factors (avoidance of piecemeal litigation and convenience), this forum is clearly superior.  As the court in *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169, 1173 (11th Cir. 1982) held, "[p]rinciples of comity suggest that a court having jurisdiction over all matters in dispute should have jurisdiction.  Otherwise, the fractioned dispute would have to be resolved in two courts."  This Court, not the state court, has before it the trademark claims and defenses *and* the standing issues that pervade those claims and defenses.  Principles of comity do not require this Court to leave the state court to decide only one issue where this Court is seized of all the issues between the parties.  Although Silvers

---

[6] The Court should also consider the progress made in the state court action. *Ambrosia*, 368 F.3d at 1333.  The state court action has not progressed beyond the pleading stage.

BURLINGTON • WEIL • SCHWIEP • KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM   WWW.BWSKB.COM

purports to rely on *Merrill*, that case forbids the fractioned dispute resolution process Silvers advocates here.[7]

The remaining *Colorado River* factors (pertaining to the law that applies and the adequacy of the state forum) weigh in favor of this Court's jurisdiction. Federal law governs the trademark issues that pervade the litigation, and the state court is inadequate to resolve the issues because it has before it only a portion of the dispute between Silvers and Stelor because Silvers expressly excluded from his claim in the state court action the Settlement Agreement between the Silvers, Stelor and Google Inc. have asserted their respective trademark claims in *this Court*, not in the state court.

In contrast to *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169, 1173 (11th Cir. 1982), where two courts both had jurisdiction over the "same lawsuit," only **this** court has jurisdiction in this lawsuit by the parties agreement. A court need not yield jurisdiction to another where "one court has exclusive jurisdiction over a portion of the subject matter of the dispute." *Id.* Furthermore, according to Silvers, the state action and the cross-claim are not the "same lawsuit." While Stelor's breach of contract cross-claim is based on both the License Agreement *and* the Settlement Agreement, (Answer, Counterclaim and Amended Cross-claim ¶ 62), Silvers represented to the state court that he "is not asking the Court to interpret or enforce anything in the Settlement Agreement." (Silvers' Mem. of Law in Opp. to Def.'s Mot. to Dismiss, Case No. 05-18033 (Fla. 11th Jud. Cir.) at 2, attached hereto at tab 1.)[8] Also, the state court action does not have before it Stelor's trademark claim. By Silvers' own arguments before

---

[7] The other Florida cases cited by Silvers are likewise distinguishable and inapplicable because they did not involve abstention of a federal district court. In *Sunshine State Servs. Corp. v. Dove Invs. Of Hillsborough*, 468 So. 2d 281, 283 (Fla. 5th DCA 1985), the federal court did not have concurrent jurisdiction over the claims and counterclaims asserted in the state court action and the federal action would resolve only part of the dispute presented in the state court action. Here, the federal court has jurisdiction, and it, unlike the state court, has the entire dispute presented before it. *Cypress Garden Condo. Assoc. v. Mieli*, 804 So. 2d 407 (Fla. 4th DCA 2001) and *Wade v. Clower*, 114 So. 548, 552 (Fla. 1927).

[8] Silvers made that representation in an attempt to avoid application of the forum selection agreement in the Settlement Agreement setting exclusive jurisdiction the Southern District of Florida. The state court apparently relied on his representation as it has indicated it is denying Stelor's motion to dismiss that action for lack of venue and based on this prior pending federal action. Stelor respectfully believes that this ruling is erroneous and will be appealing it..

Burlington · Weil · Schwiep · Kaplan & Blonsky, P.A.

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com  www.bwskb.com

the state court, these are not identical claims. *Cf. Merrill*, 675 F.2d at 1173 ("Principles of comity come into play when separate courts are presented with the ***same*** lawsuit") (emphasis added).

In sum, this case is properly before the federal court and should not be dismissed. This case is not like *Merrill* where dismissal was justified because the state court was seized of all the issues, had already entered a judgment on liability issues, and had scheduled a trial on damages issues prior to the federal claim. *See Leenan v. Ruttgers Ocean Beach Lodge, Ltd.*, 662 F. Supp. 240, 241-42 (S.D. Fla. 1987) (distinguishing *Merrill* and refusing to dismiss federal action based on earlier filed state action under the *Colorado River* factors.)

## VII. CONCLUSION

For the foregoing reasons, Silvers' Motion to Dismiss is unfounded and should be denied.

RESPECTFULLY SUBMITTED,

BURLINGTON, WEIL, SCHWIEP,
   KAPLAN & BLONSKY, P.A.
Attorneys for Stelor Productions, LLC
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261
Email: kkaplan@bwskb.com

By: /s/ Kevin C. Kaplan
    Kevin C. Kaplan
    Florida Bar No. 933848
    David J. Zack
    Florida Bar No. 641685

18

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BWSKB.COM  WWW.BWSKB.COM

Case No. 05-80387 CIV RYSKAMP/VITUNIC

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing was served electronically and via

U.S. mail on this 23rd day of December, 2005 upon the following:

Adam T. Rabin, Esq.
DIMOND, KAPLAN &
     ROTHSTEIN, P.A.
Trump Plaza
525 S. Flagler Drive, Suite 200
West Palm Beach, Florida 33401
arabin@dkrpa.com

Kenneth R. Hartmann, Esq.
Gail M. McQuilkin, Esq.
KOZYAK TROPIN &
     THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
gam@kttlaw.com

Jan Douglas Atlas
ADORNO & YOSS LLP
350 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, Flroida  33301
jatlas@adorno.com

Andrew P. Bridges
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, California 94111
abridges@winston.com

/s/ Kevin C. Kaplan
Kevin C. Kaplan

19

Office in the Grove  Penthouse  2699 South bayshore drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@bwskb.com  www.bwskb.com

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

STEVEN A. SILVERS,
     Plaintiff,

v.

                              CASE NO. 05-18033

STELOR PRODUCTIONS, LLC,
a Delaware limited liability company, and
STEVEN A. ESRIG, an individual
     Defendants,

---

## SILVERS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

**A.**    **Venue Is Proper In This Court**

Silvers filed this action seeking a declaration that a License Agreement with Stelor has

been terminated, and seeking to enjoin Stelor from continuing to represent itself as Silvers'

licensee. *See* Exhibit A. The contract sued upon (drafted by Stelor) provides in Article XVII

that Silvers may bring this action in any court within the State of Florida, and that Stelor waives

all defenses to venue:

> All disputes under this Agreement shall be resolved by the courts of the
> State of Florida including the United States District Court for Florida and
> the parties all consent to the jurisdiction of such courts, agree to accept
> service of process by mail, and hereby waive any jurisdictional or venue
> defenses otherwise available to it.

Very simply, Stelor has waived any venue defense. Florida's venue statute does nothing

to change this fact. And, that statute is inapplicable because Stelor is a non-resident defendant:

> 47.011. Where action may be begun. – Actions shall be brought only in
> the county where the defendant resides, where the cause of action accrued,
> or where the property in litigation is located. **This section shall not apply
> to action against nonresidents.**

By the terms of the agreement sued upon, Silvers has the right to bring this action in any

court within the State of Florida.

---

1

EXHIBIT

1

**B.**    Silvers Has Sued Upon The License Agreement

Furthermore, contrary to Stelor's representation to the Court, Silvers has not sued on the Settlement Agreement between the parties, which pertains to a prior federal court action between the parties. Although Silvers' Complaint has factual allegations regarding the fact that the parties at one time entered into a Settlement Agreement, the contract sued upon in this case is the License Agreement. Silvers is not asking the Court to interpret or enforce anything in the Settlement Agreement, and frankly he could not because the Settlement Agreement has become null and void. Silvers has sued Stelor for breach of the License Agreement based on its failure to abide by the post-termination provisions. The outcome of this case will require this Court to interpret the provisions of only the License Agreement, and whether Silvers was within his rights to terminate Stelor for its continued failure to perform under that agreement.

**C.**    This is The First Filed Action

This action cannot be dismissed or even stayed because it is the first-filed action arising from the contractual dispute between the parties. On September 6, 2005 Silvers filed this breach of contract action immediately after the district court dismissed Stelor's prior breach of contract action against Silvers for lack of diversity. *See* Exhibit A. Three days later on September 9 in an attempt to skirt this Court's jurisdiction, Stelor filed a breach of contract complaint against Silvers as a cross-claim in an action Silvers had filed against Google, Inc. for trademark infringement, which has been pending since May. Attached, as Exhibit B is a file-stamped copy of the cross-claim.[1] Stelor has asked the district court to exercise supplemental jurisdiction over the cross-claim because it is a state breach of contract action and there is no original subject matter jurisdiction. The district court has not granted jurisdiction to hear that cross-claim. In fact, Silvers has a pending a motion to dismiss the cross-claim because it raised state contract

---

[1]    Stelor recently filed an amended cross-claim.

claims that are wholly unrelated to the trademark infringement action against Google, Inc.  In any event, even if the federal court were to exercise supplemental jurisdiction that action will be stayed because federal law recognizes the principal that the first filed action proceeds.  As explained in *Merrill Lynch Pierce Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1173 (11th Cir. 1982), federalism concerns require that a federal court "tread lightly" when a state proceeding is already underway.  And, in absence of compelling circumstances, **the court initially seized of the controversy** should be the one to decide the case. " *Id.* at 1174.  That is precisely what we have here  – the controversy between Silvers and Stelor was initiated by Silvers in this Court, and that is where it should be decided.

In Florida, the seminal case on this is *Wade v. Clower,* 114 So. 548 (Fla. 1927).  In that case, the Florida Supreme Court held that where state and federal courts have concurrent jurisdiction (which is not even the case as the district court has not accepted jurisdiction over Stelor's cross-claim), the court where the jurisdiction first attaches retains it exclusively and will be left to determine the controversy and to fully perform and exhaust its jurisdiction and to decide every issue of question properly arising in the case. *Id.* at 826.  Further, the Court held that even if both the state court and the federal court have jurisdiction, the state court's jurisdiction cannot be taken away or stayed, it is up to the second filed action to stay or dismiss that subsequent action. *Wade v. Clower* is still widely cited for the rule that the first filed action cannot be dismissed or stayed due to a second filed action.

For example, in *Sunshine State Service v. Dove Investments*, 468 So.2d 281 (Fla. 5th DCA 1985), the Fifth District reversed the trial court's order staying the state court action on the basis of a federal action filed subsequent to the state action.  The court held that "the lower court departed from the essential requirement of law in staying the proceedings below, even if there were concurrent jurisdiction of the state claims in counterclaims in federal court, as the state

3

action was initiated prior to the federal action. The Fourth District Court of Appeals similarly reversed a stay of proceedings in *Cypress Gardens Condo v. Mieli*, 804 So.2d 407 (Fla. 4th DCA 2001). There the trial court stayed the state court action because the relief the defendant was seeking in federal court was inextricably intertwined with the state court action. The appeals court reversed holding that the state court action was filed first, and involved matters of state law and therefore must proceed. That case is exactly on point – Silvers action was filed first and involved matters of state law contract construction, thus it must proceed.

Stelor admits that this action is the first-filed but attempts to obscure that detail by claiming that the real first-filed date is the date Silvers filed his complaint against Google, Inc. in federal court. That makes no sense at all. As the Eleventh Circuit held, it is where the *controversy* is initially filed that matters. Silvers initiated this contract action against Stelor in this Court. Stelor initiated the same claim against Silvers three days later in federal court. It makes no difference that the trademark controversy between Silvers and Google, Inc. has been pending since May. That trademark controversy is not related to the contract dispute between Silvers and Stelor, which is the subject matter of this action, and the identical cross-claim filed by Stelor. It is ridiculous to suggest that Stelor can piggy-back on the date that the trademark controversy was filed to its subsequent contract controversy against Silvers. What if Silvers trademark action against Google had been pending for two years before Stelor breached the License Agreement? According to Stelor's logic it could prevent Silvers from filing an action in state court by simply filing the same claim in the pending federal action and claiming its action was filed two years ago. The same then would be true if this state action had been proceeding for some time. A year into this litigation, according to Stelor, it could seek to stay this action by filing the same claims in the federal court action and claim that is the first-filed action. Imagine the prejudice to a litigant this would cause if it were the rule. But, fortunately there is not a

single reported case that supports this twisted logic. The only filing dates that matter is the date

Silvers filed his action – September 6 and the date Stelor filed its cross-claim in federal court –

September 9. Applying the long established first-filed rule, Silvers is entitled to have his breach

of contract action proceed in state court.

The Court should deny Stelor's motion to dismiss so that this matter, now pending for

almost three months, can proceed.

Respectfully submitted this 5th day of December, 2005.



Adam T. Rabin
DIMOND KAPLAN & ROTHSTEIN, PA
525 S. Flagler Drive, Suite 200
West Palm Beach, Florida 33401
T: 561-671-1920 / F: 561-671-1957

Gail A. McQuilkin  (FBN: 969338)
Kenneth R. Hartmann  (FBN: 664286)
KOZYAK TROPIN & THROCKMORTON, PA
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
T: 305-372-1800 / F: 305-372-3508

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served this 5th
day of December, 2005, via first class mail and e-mail on the following:

Kevin C. Kaplan
Burlington Weil Schwiep Kaplan & Blonsky
2699 S. Bayshore Drive, Penthouse, Miami, Florida 33133
E-mail: kkaplan@bwskb.com

3339/104/260457.1

5

## CONFIDENTIAL SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by Stelor Productions, Inc. ("Stelor") and Steven A. Silvers ("Silvers"). Stelor and Silvers are collectively referred to herein as "the Parties."

WHEREAS, Stelor brought a complaint in the United States District Court for the Southern District of Florida (Case No. 04-80954-CIV-HURLEY) against Silvers alleging breach of, (1) the License, Distribution and Manufacturing Agreement; and (2) the Letter Agreement;

WHEREAS, Silvers brought a counter-complaint against Stelor alleging breach of, (1) the License, Distribution and Manufacturing Agreement; and (2) the Letter Agreement;

WHEREAS, Silvers on January 13, 2005 sent a notice of termination of the Licensing, Distribution and Manufacturing Agreement to Stelor;

WHEREAS, Stelor has invested substantial time, effort, and money in developing a business involving the GOOGLES IP and fully intends to continue developing and commercializing such business, including sub-licensing some or all of the GOOGLES IP;

WHEREAS, the Parties intend that full performance by each Party of its obligations under this agreement cures the breaches alleged against each by the other Party, and

WHEREAS, the Parties wish to resolve all of the foregoing disputes to their mutual satisfaction.

//

//

SILVERS _____          1          STELOR _____

THEREFORE, the Parties hereby agree as follows:

1. <u>Domain Name Administration:</u>

   a. Silvers shall give Stelor, as the administrative contact for the GOOGLES  IP domain names, the right to control the DNS records and make changes to the administrative contact information for all GOOGLES IP domain names, and shall advise the domain name registrar known as godaddy.com to this effect. Silvers will provide proof that Stelor has such rights no later than February 15, 2005. Silvers shall cooperate with any other request from Stelor regarding necessary administrative issues relating to the domain names, and all communications by Silvers, relating to domain names, shall be through Kozyak Tropin and Throckmorton ("KTT").

   b. KTT will create and control a domain name renewal database to ensure timely renewal of domain names owned by Silvers, and will communicate with Stelor's counsel regarding any deadlines or other administrative issues.

2. <u>Pending and Future Actions Relating to the GOOGLES IP:</u>  Silvers will cooperate with Stelor and Stelor's counsel in all respects in pending and future trademark and domain name dispute proceedings filed by Stelor, including but without limitation, providing any and all documents and other evidence needed to support Stelor's position.

3. <u>The License, Distribution and Manufacturing Agreement:</u>  Silvers withdraws his notice of termination of the License Agreement, and reaffirms his obligations under

SILVERS                         2                    STELOR_____

THEREFORE, the Parties hereby agree as follows:

1. <u>Domain Name Administration:</u>

   a. Silvers shall give Stelor, as the administrative contact for these domain names, the right to control the DNS records and make changes to the administrative contact information for all GOOGLES IP domain names, and shall advise the domain name registrar known as godaddy.com to this effect. Silvers will provide proof that Stelor has such rights no later than February 15, 2005. Silvers shall cooperate with any other request from Stelor regarding necessary administrative issues relating to the domain names, and all communications by Silvers, relating to domain names, shall be through Kozyak Tropin and Throckmorton ("KTT").

   b. KTT will create and control a domain name renewal database to ensure timely renewal of domain names owned by Silvers, and will communicate with Stelor's counsel regarding any deadlines or other administrative issues.

2. <u>Pending and Future Actions Relating to the GOOGLES IP:</u>  Silvers will cooperate with Stelor and Stelor's counsel in all respects in pending and future trademark and domain name dispute proceedings filed by Stelor, including but without limitation, providing any and all documents and other evidence needed to support Stelor's position.

3. <u>The License, Distribution and Manufacturing Agreement:</u>  Silvers withdraws his notice of termination of the License Agreement, and reaffirms his obligations under

SILVERS _____     2     STELOR_____

the License Agreement.

4. <u>Post-Settlement Communications:</u>  Silvers shall communicate with Stelor solely through KTT.

5. <u>USPTO Correspondent of Record:</u>  Silvers shall change the correspondent on all GOOGLES IP trademark applications and registrations to the name of Stelor's counsel no later than February 15, 2005, and shall not change the correspondent in the future as long as the Licensing, Manufacturing and Distribution Agreement is in effect.  Stelor's counsel shall copy KTT with all correspondence to and from the USPTO

6. <u>Sale or Assignment of the GOOGLES IP:</u>  KTT and Stelor's counsel shall include each other in any and all negotiations and discussions with Google Inc. that relate to resolving the pending trademark and domain name disputes or the sale or assignment of the GOOGLES IP.

7. <u>Domain Name Renewal Expenses:</u>  Stelor agrees to reimburse Silvers for documented expenses incurred to date in renewing GOOGLES IP domain names. Future GOOGLES IP domain name renewal expenses will be reimbursed by Stelor. All requests for reimbursement will be submitted by KTT to Stelor, and all payments by Stelor will be sent to Silvers through KTT.

8. <u>Options Acknowledgement:</u> Stelor agrees that it will confirm in writing that no additional options have been granted that would obligate it to provide such options under the now expired Letter Agreement.

9. <u>LLC Acknowledgement:</u> The Parties acknowledge that Stelor Inc., a Delaware "C" Corporation, is in the process of converting to a Delaware LLC. Any options granted

SILVERS _____          3          STELOR _____

to Silvers from the Stelor Inc. "C" Corporation will be converted to a like amount of
unit interests under the LLC.

10. <u>Royalty Advances:</u>

    a.  For as long as the Licensing, Distribution and Manufacturing Agreement
is in effect, Stelor shall advance Silvers $60,000 a year against future
royalties. The advance will be made in equal monthly installments
payable on the first of each month beginning February 1, 2005.

    b.  For as long as the Licensing, Distribution and Manufacturing Agreement
is in effect, Stelor will provide Silvers with an additional monthly advance
on expected future royalties equivalent to that amount required by Silvers
to maintain his insurance coverage through the Aurora Collection, Inc. (or
other insurance or medical provider of Silvers' choosing), as long as such
coverage is offered. Such advance will not exceed $1,000 per month.

    c.  Stelor will reimburse Silvers for insurance premiums through the
expiration of the "Letter Agreement," not to exceed $4,000. Such
reimbursements will be provided to Silvers within 15 days of Stelor
receiving evidence of paid premiums.

11. <u>Recoupment and Termination of Royalty Advances:</u>  Royalties advanced under this
Agreement will be recaptured by Stelor once royalty payments exceed the amount
specified in paragraph 8. Such deductions will not exceed 20% of any given royalty
payment.

12. <u>Royalty Statements:</u>  Stelor shall confirm in writing that no royalty payments are
outstanding, and thus no royalty statements are due.

SILVERS          4         STELOR_____

13. <u>Trademark Registrations:</u>  Stelor shall provide to Silvers through KTT proof that all applications and registrations for trademarks and domain names with the "GOO" prefix or identified as Googles IP in the License Agreement filed by or on behalf of Stelor show Silvers as the owner.

14. <u>Audit:</u>  Stelor shall cooperate in the audit of the books and records of Stelor by Aronson and Company onsite at Stelor Productions as per section IV of the Licensing, Distribution and Manufacturing Agreement.  Any information obtained by the auditor will be restricted to KTT, on an "attorneys' eyes only" basis and the identity of any licensee, sub-licensee, vendor, or any other third-party shall remain confidential.

15. <u>Licensed Products Samples:</u>  Stelor shall provide Silvers through KTT samples of any Licensed Product that is being offered for sale.

16. <u>USPTO Correspondence:</u>  Stelor's counsel shall keep KTT advised as to the status of any pending or future trademark or domain name disputes filed by Stelor against Google Inc. by copying KTT on all pleadings and correspondence, and by giving notice to KTT of any other trademark or domain name disputes filed against Google Inc.

17. <u>Reservation of Jurisdiction:</u>  The Parties agree to submit to the exclusive continuing jurisdiction of the United States District Court, Southern District of Florida, for enforcement of all provisions of this Agreement.  In the event that a dispute arises concerning the obligations of any Party under this Agreement, the Parties agree to submit any such dispute to this court for resolution.  The successful or prevailing party (as determined by the Court) shall be entitled to recover its reasonable attorneys'

SILVERS

5

STELOR _____

fees and other costs incurred in that litigation from the unsuccessful or non-prevailing party in addition to any other relief to which the prevailing party might be entitled.

18. <u>Injunctive Relief:</u> The Parties hereby agree that there is no adequate remedy of law in the event that either party negotiates or settles the disputes with Google Inc. without the other party. In the event that either party attempts to negotiate with Google Inc. without the other party's participation, that shall be a breach of this Agreement, and such breach will create irreparable harm, and that injunctive relief will be necessary to maintain the rights of the non-breaching party. Accordingly, each party agrees to such injunctive relief.

19. <u>Joint Settlement Negotiations with Google Inc.:</u>

    a.  In view of the current existence of litigation and proceedings in the TTAB, jointly referred to as "Litigation", the parties recognize the need to resolve this Litigation reasonably such that Stelor can continue to develop and promote its business.

    b.  Due to the present status of development of Stelor's business, any event that causes Stelor to delay offering its web-based service to the public will cause severe injury to Stelor. Silvers therefore agrees that, in the event of a settlement with Google Inc., he will not object to Stelor's continued use of the googles.com domain to transition to a new domain name. The length of time of such transition will be at Stelor's sole discretion.

    c.  In the event of a monetary, stock, or similar settlement with Google Inc., Such sale will include a complete sale or assignment of the GOOGLES IP, The proceeds from that settlement shall be divided as follows:

SILVERS        6       STELOR_____

Silvers shall receive 70% of the first $30 million; 50% of the next $20 million; 30% of the next $30 million; 20% of the next $20 million; 10% of the next $20 million and 5% of any amount over $120 million, with the remainder in each case going to Stelor  Silver's total share of the proceeds shall not exceed $50 Million in any event.

    d.  Nothing in this provision creates an affirmative action by either party to enter any settlement with Google Inc., or to sell or assign the GOOGLES IP to Google Inc.  Silvers understands and agrees that he cannot sell or assign the GOOGLES IP to Google Inc. without obtaining Stelor's written approval. Both parties agree that they will negotiate in good faith.

**20. Confidentiality and Disposition of this Action:**

    a.  The settlement shall not be provided to the court unless necessary to enforce rights, and then under seal.  A Joint Stipulated motion to withdraw actions shall be filed no later than Friday, January 28, 2005. The fact that a settlement has been reached and all terms and obligations shall be confidential except to the extent necessary to advise Google Inc. that the parties have resolved all differences.

    b.  The complaint and counterclaim shall be dismissed without prejudice.

**21. Exclusive Authority/No Assignment:**

    a.  Stelor and Silvers represent and warrant that no other person or entity has or had any interest in the Claims, demands, obligations, or causes of action

SILVERS _____    7    STELOR_____

released as part of this Agreement, that they have the sole right and exclusive authority to execute this Agreement and receive the considerations specified herein, and that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the Claims, demands, obligations, or causes of action released as part of this Agreement.

b. The signatories to this Agreement each warrant that they have the power to bind the person or entity on whose behalf they signed, and will hold harmless any party to this Agreement for any attorney fees, costs, expenses, or damages incurred or paid as a result of finding that such person or entity lacks such authority, or does not have sole right to the Claims that are the subject of this Agreement, or that any such Claim has been assigned.

22. Voluntary Agreement: Stelor and Silvers each represent that the Agreement is freely and voluntarily entered into, with the independent advice of each party's attorneys and they have not been induced to execute this Agreement by reason of the disclosure or non-disclosure of any fact or representation not set forth in this Agreement.

23. Non-disparagement: Each Party, on behalf of itself, its officers, directors, attorneys, agents, and employees, agrees not to make or publish, either orally or in writing, any disparaging statements concerning the other Party or its current and former officers, directors, attorneys, agents, shareholders, or employees.

24. Entire Agreement: This Agreement constitutes the entire agreement between the parties and supersedes all prior and contemporaneous contracts, agreements, promises

SILVERS _____    8    STELOR_____

and understandings, with the exception of the License, Distribution and

Manufacturing Agreement as well as the Letter Agreement previously entered into by

the parties. This Agreement may not be altered, modified or otherwise changed in

any respect except by writing, duly executed by Stelor and Silvers. No

representations, circumstances or conditions existing before the Agreement shall be

used in any way by any party to the Agreement to modify the Agreement.

25. <u>Joint Preparation</u>:   Stelor and Silvers declare that they have read this Agreement, and

know and understand its contents, and they each comprehend and agree to all its

terms, conditions, and meanings and their significance; all signatories and their

counsel have cooperated in the drafting and preparation of this Agreement, and this

Agreement therefore shall not be construed against any signatory. The Agreement

shall not be construed against any of them based upon any claim of unequal

sophistication or bargaining power.

26. <u>Governing Law</u>:   This Agreement shall be deemed to be made under, shall be

construed in accordance with, and shall be governed by the laws of the State of

Florida.

27. <u>Duplicate Originals</u>:   This Agreement may be executed in duplicate originals, each of

which is equally admissible in evidence in an action to enforce this Agreement, and

each original shall fully bind each party who has executed it.

28. <u>Facsimile Signatures</u>:   The signatures required for the execution of this Agreement

may be transmitted by facsimile, and any such signature shall be deemed a duplicate

original, and may be admitted in evidence and shall fully bind the party and person

making such signature.

SILVERS_____                   9                   STELOR_____

29. <u>Effective Date</u>: The Effective Date of this agreement shall be the date on which all

Parties have signed this Agreement.

30. <u>Each Party Agrees to operate in good faith as to the terms of this agreement.</u>

[Signature Page Follows]

SILVERS _____        10              STELOR_____

THE FOREGOING IS AGREED TO BY:

DATED: January ___, 2005          Stelor Productions, Inc.

                                  By: _____

                                  Its: _____

DATED: January 28th, 2005         Steven A. Silvers

                                  By: _____

APPROVED AS TO FORM AND CONTENT:

DATED: January 28, 2005           Summers Rubinstein, P.C.

                                  By: _____

                                  Yano L. Rubinstein, Esq.

                                  Attorneys for Stelor Productions, Inc.

DATED: January 28, 2005           Kozyak, Tropin & Throckmorton, P.A.

                                  By: _____

                                  Gail McQuilkin, Esq.

                                  Attorneys for Steven A. Silvers

SILVERS_____                   11                STELOR_____