UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH

Case No. 05-80387-CIV-RYSKAMP/VITUNAC

STEVEN A. SILVERS, an individual,

    Plaintiff,

v.

GOOGLE INC., a Delaware corporation,

    Defendant.
_____/

GOOGLE INC., a Delaware corporation,

    Counterclaimant,

v.

STEVEN A. SILVERS, an individual;
STELOR PRODUCTIONS, INC., a
Delaware corporation; and STELOR
PRODUCTIONS, LLC, a Delaware limited
liability company,

    Counterdefendants.
_____/

FILED by _____ D.C.
FEB - 6 2006
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER GRANTING MOTION TO BIFURCATE DISCOVERY AND TRIAL

THIS CAUSE comes before the Court upon Defendant's Memorandum in Support of Motion to Bifurcate Discovery and Trial **[DE 23]**, filed on October 5, 2005, which the Court



construes as a motion.[1] Plaintiff filed an Opposition to Motion to Bifurcate Discovery and Trial **[DE 43]** on November 3, 2005. In addition, Counterdefendants, Stelor Productions, Inc. and Stelor Productions, L.L.C. (collectively "Stelor"), filed an Opposition to Google Inc.'s Motion to Bifurcate **[DE 48]** on November 14, 2005. Defendant filed a Reply Memorandum in Support of Its Motion to Bifurcate Discovery and Trial **[DE 54]** on December 7, 2005. The motion is now ripe for adjudication.

## I. Introduction

This is an action for alleged "reverse confusion" trademark infringement. *See* First Am. Compl. **[DE 10]**. Plaintiff, Steven A. Silvers ("Silvers"), is the creator of animated characters known as "Googles," described as "lovable, friendly four-eyed alien creatures that live on the planet of Goo" that are used to "communicate to children in non-violent themes social lessons, conceptual awareness and educational values, and give 'children of today, visions of tomorrow.'" *Id.* at ¶ 13. Silvers alleges that he developed the Googles concept in the late 1970s, and began using the name as early as the mid-1980s. *Id.* at ¶ 11. Silvers has obtained several copyright, trademark and patent registrations for artwork, songs, stories and designs relating to his Googles characters. *Id.* at ¶¶ 12, 14, 16, 19, 21, 24, 25, 28. He also authored the children's book, Googles and the Planet of Goo, which was published in 1996. *Id.* at ¶ 22.

In 1997, Silvers obtained the Internet domain name, "googles.com" and began developing an interactive website to promote and sell his Googles-related merchandise. *Id.* at

---

[1]Defendant did not file a separate motion to bifurcate.

¶¶ 26-27. That same year, Larry Page, a graduate student at Stanford University, registered the "google.com" domain name in connection with a prototype Internet search engine. *Id.* at ¶¶ 32-38. In September, 1998, Page and his collaborator, Sergey Brin, incorporated Google Technology, Inc. and continued to operate the Google search engine as a non-commercial experimental model. *Id.* at ¶¶ 40-42. In September, 1999, the Google search engine was "commercially" launched. *Id.* at ¶ 44. Google Technology, Inc. eventually merged with into Defendant, Google Inc. ("Google"), a Delaware corporation. *Id.* at ¶ 45.

Silvers alleges that the Google search engine (along with its related goods and services) "has become so well-known... that it now overwhelms the public recognition of the 'Googles' trademark, domain name, and Website, and is preventing Silvers from flourishing on the Web or entering new markets..." *Id.* at ¶ 59. He further claims that "Google's infringing use of the name 'Google,' which is substantially identical to Silvers' 'Googles' mark, has caused and will continue to cause 'reverse confusion' in that the consuming public will now falsely believe that Silvers' goods and services, 'googles.com' domain name, and Website, are connected, affiliated, associated, sponsored, endorsed or approved by Google, and that Google is the source of origin of the 'Googles' concept, books, music, 'googles.com' domain name, Website, merchandise, and related goods and services..." *Id.* at ¶ 64. Silvers filed a four-count complaint against Defendant, alleging trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. §1125(a), unfair competition under Florida law, and "cancellation of Defendant's registration." *Id.* at 13-20.

In turn, Google filed a Counterclaim **[DE 5]** against Silvers and the Stelor companies,

alleging four counts for declaratory relief, cancellation of Counterdefendants' registration and declaration regarding pending applications, trademark infringement and false designation of origin under 15 U.S.C. §§ 1114 and 1125(a), and unfair competition under 15 U.S.C. §§ 1114 and 1125(a). Specifically, Google alleges that at all relevant times, the true owner of the "Googles and Design" trademark registration was The Googles Children's Workshop, Inc. ("GCW"), a New Jersey corporation that is now dissolved. *See* Counterclaim **[DE 5]**, at ¶¶ 22, 24. GCW was formed in 1994 by Silvers' father to assist with promoting and marketing the Googles concept. *See* First Am. Compl. **[DE 10]**, at ¶ 17. Google further alleges that after its own search engine became widely known, Silvers purported to assign the "Googles and Design" trademark from the defunct GCW company to himself, and sought investors or partners to continue developing his Googles concept. *See* Counterclaim **[DE 5]**, at ¶¶ 26-27; Mot. to Bifurcate **[DE 23]**, at 3. In 2002, his entered into an agreement with Stelor, whereby Stelor was provided with rights exclusive even as to Silvers. *See* Counterclaim **[DE 5]**, at ¶ 51; Mot. to Bifurcate **[DE 23]**, at 3. Defendant claims that the assignment was necessary because Stelor was aware that "negative aspects of Silvers' background... made him unsuited to serve as a figurehead or spokesman for an enterprise aimed at providing wholesome and enriching entertainment to an audience of impressionable children." Crossclaim **[DE 14]**, at ¶ 10. In particular, during the time Silvers claims to have been developing the Googles concept, he was convicted and imprisoned in a federal penitentiary, for his involvement in a cocaine trafficking ring. *See U.S. v. Silvers,* 90 F.3d 94 (4th Cir. 1996). Despite the purported assignment and both Silvers and Stelors' later efforts

to register the Googles trademarks, Google claims that GCW abandoned the Googles trademark and that Counterdefendants never obtained the rights in the Googles trademarks. *See* Counterclaim **[DE 5]**, at ¶ 44-56, 61-69. Accordingly, Google contends that its rights in the Google trademarks are superior to any rights to Googles trademarks. *Id.* at ¶ 66.

Stelor filed a Crossclaim against Silvers **[DE 14, 49]** and a Counterclaim against Google **[DE 49]**. Stelor alleges that it has an exclusive worldwide license covering the Googles trademarks, related intellectual property and the googles.com website, pursuant to a License Agreement and Settlement Agreement executed by Silvers and Stelor. Am. Counterclaim and Crossclaim **[DE 49]**, at ¶¶ 9-11. Stelor further alleges that Silvers wrongfully terminated the Agreements and has engaged in conduct that interferes with its rights. *Id.* at ¶¶ 17-25. Stelor also claims that Google's use of the Google mark, and its efforts to expand into areas of commerce including the market for children's goods and services, infringes upon Stelor's exclusive rights. *Id.* at ¶¶ 15-16. Stelor alleges counts for declaratory judgment against Silvers, trademark infringement under 15 U.S.C. § 1114 against Google, unfair competition under 15 U.S.C. § 1125(a) against Google, unfair competition under Florida law against Google, breach of contract against Silvers, and breach of express warranty against Silvers. *See id.* at 12-20.

Google now moves this Court to bifurcate the discovery and trial of this cause, to allow the Court to first consider the extent and scope of rights, if any, held by Silvers. Google contends that the purported assignment of trademark rights from GCW to Silvers was a nullity because: (1) GCW was dissolved with no assets at the time of the purported

assignment, and a bare "assignment in gross" is invalid under trademark law; and (2) an assignment by a former officer (Silvers, who served as President) of a corporation after the dissolution of the corporation is ineffective as a matter of law. Google also contends that Silvers cannot show that either he or GCW continuously used the Googles trademarks, as required to maintain the registration. As such, Google argues that Silvers does not have enforceable rights in the Googles trademarks that predate Google's adoption and use of the Google trademark. In addition, Google argues that the Crossclaim, which is based upon the dispute between Silvers and Stelor as to which party owns trademark rights against Google, supports bifurcation. Therefore, bifurcation is appropriate, as Google contends, to expedite resolution of this case, conserve judicial resources, and avoid unnecessary prejudice to Google.

Both Silvers and Stelor object to bifurcation. Silvers argues that the ownership/validity of its trademark rights is not at issue in this case, because his trademark registration is incontestable. Additionally, Silvers contends that Google's "technical challenge to the validity of an assignment between Silvers and his company" does not constitute an exceptional issue that warrants bifurcation. *See* Opp. Mem. **[DE 43]**, at 10. Finally, Silvers argues that Stelor's Crossclaim is irrelevant to the issues presented in the dispute between Silvers and Google, and should be dismissed. Stelor joins in the arguments presented by Silvers in Sections A and B of his opposition, and also contends that its Crossclaim does not support bifurcation.

**II.   Discussion**

Pursuant to Rule 42(b), Federal Rules of Civil Procedure, a district court may bifurcate a trial and/or discovery on a contested matter where it is convenient, where it prevents prejudice, where it is conducive to judicial economy, or where separately triable issues arise. *See In re Koger,* 261 B.R. 528, 531 (Bankr. M.D. Fla. 2001). A determination of whether or not to bifurcate trial and/or discovery is left to the broad discretion of a trial court. *See, e.g., Harrington v. Cleburne County Board of Educ.,* 251 F.3d 935, 938 (11th Cir. 2001); *Koger,* 261 B.R. at 531. Bifurcation is not the usual course that is followed, however, and the party requesting bifurcation has the burden to show that bifurcation is warranted in a particular case. *Koger,* 261 B.R. at 531. At the same time, the standard for permitting bifurcation is not a high one, and a "district court's concern for clarifying the issues to be tried suffices to permit the court to separate the trials." *Harrington,* 251 F.3d at 938.

As Google correctly points out, a number of federal courts have bifurcated the issues of ownership of intellectual property rights from issues of infringement. *See Taylor Corp. v. Four Seasons Greetings, LLC,* Civil No. 01-1293 (DSD/SRN), 2003 WL 23527789, at *1 (D. Minn. Dec. 11, 2003); *Victor Co., L.L.C. v. Ortho Organizers, Inc.,* Civ.A. No. 96-2123-GTV, 1996 WL 704404, at *2 (D. Kan. Nov. 5, 1996); *City of Newark v. Beasley,* 883 F. Supp. 3, 4 (D.N.J. 1995); *Kahn v. General Motors Corp.,* 865 F. Supp. 210, 215 (S.D.N.Y. 1994). This is appropriate because if it is determined that a plaintiff does not possess ownership rights, there is no need to conduct a second trial on the infringement-related issues. *See Victor Co.,* 1996 WL 704404, at *2. In such cases,

bifurcation of discovery is also appropriate, and will not serve to prejudice the plaintiff. *See id.*

This Court also finds it useful to employ the standards applied to bifurcation in patent litigation cases. Patent litigation presents perhaps the most common venue for bifurcation, because issues of liability for infringement and corresponding damages are often distinct and complex. *See F&G Scrolling Mouse v. IBM Corp.*, 190 F.R.D. 385, 387 (M.D. N.C. 1999). In patent cases, courts generally consider the following factors in determining whether to bifurcate the trial and/or discovery: (1) separability of the issues; (2) simplification of discovery and the conservation of resources; (3) prejudice to parties; (4) the effect of bifurcation on the potential for settlement; and (5) suitability of bifurcating trial but not discovery. *See id.* at 387-93.

1.  **Separability of the Issues**

The most common justification for separate trials is that the discovery and/or the trial of the two issues are sufficiently complex so that the two issues should proceed separately. *Id.* at 388. The separability inquiry involves measurement of the degree of evidentiary entanglement among the issues to be bifurcated. *Id.* at 387-90. Generally, if a significant evidentiary overlap exists, then any overlapping issues should not be bifurcated. *See id.* at 388. Determination of complexity, thus, requires an examination of the amount and kind of evidence that will be used to support each issue. *Id.*

In this case, the question of ownership involves different factual and legal determinations, compared to the infringement and damages issues. Ownership requires proof

of "both appropriation and use in trade; and [] ownership of a mark and the exclusive right to a mark belongs to the one who first uses the mark on goods placed on the market." *Signature Guardian Sys., Inc. v. Lee*, 209 U.S.P.Q. 81, 87 (T.T.A.B. 1980). Silvers and Stelor contend that there is no issue as to ownership because Silvers' trademark registration of the Googles marks "has incontestable status, which is conclusive evidence of ownership and validity for purposes of proving infringement." Pl. Opp. **[DE 43]** at 1-2. However, "registration of a trademark confers only procedural advantages and does not enlarge the registrant's rights, for ownership of the trademark rests on adoption and use, not on registration." *Turner v. HMH Publishing Co.*, 380 F.2d 224, 228 (5th Cir. 1967). Trademark registration constitutes *prima facie* evidence of the validity of the registration and continued use of the registered mark, it does not end the inquiry. Even an incontestable trademark registration is subject to certain defenses; for example, in this case, the Court must still decide whether the mark was abandoned. *See* 15 U.S.C. § 1115(b)(2).

Infringement, on the other hand, requires proof that the alleged infringer's "actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004). There are generally seven factors used for determining the likelihood of confusion: (1) the type of mark; (2) the similarity of the two marks; (3) the similarity of the goods; (4) the identity of customers and similarity of retail outlets, sometimes called the similarity of trade channels; (5) the similarity of advertising; (6) the intent, that is, good or bad faith, of the alleged infringer; and (7) evidence of actual

confusion, if any. *See Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1311-12 (11th Cir. 1999).

As set forth above, the two issues of ownership and infringement are sufficiently distinct, and there are no areas of substantial evidentiary overlap. There does not appear to be any danger that bifurcation will result in duplicative presentation of evidence. Accordingly, this factor weighs in favor of bifurcation.

### 2. Simplification of Discovery and Conservation of Resources

The simplification inquiry involves determining whether bifurcation of trial and/or discovery might result in a faster and cheaper resolution to a dispute. *F&G*, 190 F.R.D. at 390. "The cost of discovery and trial preparation, including expert witnesses, may convince the court that a stay of discovery and a second trial is best." *Id.* Thus, a measurement of a case's supposedly unique and compelling complexity should be made at this juncture. The party seeking bifurcation bears the burden of showing that a particular issue is so complex that it would best serve judicial economy to risk holding two separate trials in the hopes of avoiding that issue entirely. *Id.*

This factor also weighs in favor of bifurcation. Separating the issues of ownership and infringement at trial will allow a jury to focus on distinct issues without confusion of factual questions that may be only tangentially relevant. Additionally, discovery of the threshold issue of ownership can proceed without delay by the more complicated discovery relating to infringement and damages.

### 3. Prejudice to Parties

10

The prejudice inquiry involves determining the cost of bifurcation to each party. *Id.* at 391. "[B]ifurcating a case [potentially] adds costs to the parties in the form of the additional expense associated with two trials and adds delay in final resolution... the court should examine the individual situation of each party to ensure that no one party is placed at a distinct disadvantage as a result of the court's decision." *Id.*

It does not appear that any party will be substantially prejudiced by bifurcation of the discovery and trial phases of litigation. Silvers claims that it will suffer severe prejudice "by the considerable delay that would result in a separate trial with a separate discovery period on this one small non-dispositive issue, and deprive Silvers of his right to prove his infringement case to a jury in one complete case." Opp. Mem. **[DE 43]**, at 1. To the contrary, there need not be a "considerable delay" created by bifurcation, as the preliminary issue of ownership is relatively less complicated (and should require a shorter discovery period) than the infringement and damages issues. Additionally, Plaintiff does not have an absolute right to have his case tried before a single jury, and the separability of the ownership and infringement issues suggests that the case is quite suitable for trial before different juries. Additionally, the Court believes that bifurcation should, in fact, potentially reduce costs for all parties. If Google demonstrates that Silvers has no enforceable trademark rights, then the case becomes a non-jury action for declaratory and injunctive relief, reducing the costs of a lengthy jury trial for all parties. Thus, bifurcation should not prejudice any party.

4. **Effect of Bifurcation on Potential for Settlement**

In some cases, bifurcation can be counter-productive to settlement if discovery on

damages, for example, is stayed. *See id.* at 392. The *F&G* court noted that discovery on damages assists each party in evaluating essential elements of the matters in issue and in assessing the risks associated with an adverse decision and, consequently, can facilitate settlement discussions. *Id.* Where discovery is stayed, the parties may be deprived of this information. *Id.* On the other hand, the savings in cost of expensive damage discovery may provide greater means for compromise and aid in settlement. *Id.*

This case does not present a situation where bifurcation would likely be counter-productive to settlement. Rather, a delay in lengthy damages discovery should provide savings to all parties, and thereby provide greater means for settlement. Accordingly, this factor also weighs in favor of bifurcation.

### 5. Suitability of Bifurcating Trial but not Discovery

Finally, a court may analyze these factors and determine that trial should be bifurcated but that discovery should nevertheless go on unimpeded. *Id.* at 392. Generally this option should be reserved for situations where bifurcation is ordered solely to alleviate jury confusion, or where the inherent nature of a matter does not reveal whether or not any "evidentiary overlap" will arise. *See id.* In this case, none of the above conditions is present, and bifurcation of the discovery phase is appropriate in the interests of convenience, judicial economy and simplification of the issues.

## III. Conclusion

The Court has considered the motion and the pertinent portions of the record, and based on the reasons stated above, it is hereby,

ORDERED and ADJUDGED that Defendant's Motion to Bifurcate Discovery and Trial **[DE 23]** is GRANTED.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this __6__ day of February, 2006.

_____
HON. KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies provided to:
All counsel of record