UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-80387-CIV (Ryskamp/Vitunac)

STEVEN A. SILVERS, an individual,

        Plaintiff,

v.

GOOGLE INC., a Delaware corporation,

        Defendant.

_____

GOOGLE INC., a Delaware corporation,

        Counterclaimant,

v.

STEVEN A. SILVERS, an individual; STELOR
PRODUCTIONS, INC., a Delaware
corporation; STELOR PRODUCTIONS, LLC,
a business entity of unknown form; and
STEVEN ESRIG, an individual,

        Counter-Defendants.

_____



## DEFENDANT/COUNTERCLAIMANT GOOGLE INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM PLAINTIFF

Plaintiff/Counter-Defendant Steven A. Silvers' ("Silvers") Memorandum in Opposition to Google Inc.'s Motion to Compel Production (the "Opposition") mischaracterizes this Court's decisions regarding the appropriate subjects of Phase I discovery and trial. As a result, Silvers' basis for his refusal to produce admittedly voluminous communications between him and Stelor is misguided. Although Silvers claims to have produced "voluminous documents touching on his use and intent to use

Case No. 05-80387-CIV (Ryskamp/Vitunac)

the mark, his licensees, his marketing and sales of goods bearing the mark, etc.",[1] not one

of the documents produced by Silvers is an e-mail or letter communication (aside from its

agreements) between Silvers and Stelor or any of its representatives.

Silvers does not dispute the existence of these email and other communications

between him and Stelor. Indeed, a recent letter from Silvers' counsel indicates that the

communications between Stelor and Silvers are "volumionous" (*see* Exhibit A attached

hereto), and other documents obtained from the prior litigation between Silvers and

Stelor indicate that Silvers wrote "countless and lengthy emails ... that INSIST Stelor

enforces its legal rights and go after Google, Inc...." *See* Ex. B attached hereto, which

was introduced at the December 13, 2004, Deposition of Steven Esrig as Exhibit 9.

According to a pleading filed by Stelor in the prior Silvers/Stelor litigation, "Stelor is in

possession of in excess of 100 emails and letters wherein Silvers, at a minimum,

discusses litigation against Google Inc., and in some cases all-out demands that Stelor

take immediate legal action." *See* Ex. C. attached hereto at p. 3, note 2.

In his Opposition, Silvers contends that he need not produce communications

between him and Stelor/Esrig because the only subjects to be covered during Phase I are

"(1) whether Silvers abandoned his mark; and/or (2) whether the assignment of the

"Googles" trademark registration to Silvers by his company, Googles Children's

Workshop, and subsequent filings with the U.S.P.T.O. served to nullify Silvers' federal

registration for the mark", and any emails between Silvers and Stelor focus on their

"differences of opinion about Stelor's compliance with Silvers' license and other

agreements between Silvers and Stelor." Opp'n at 2. Additionally, Silvers contends that

---

[1]    To date, in addition to attachments to his pleadings, Silvers has produced approximately 1,661 pages of documents.

Stelor's cross-claim will be addressed in Phase II and therefore such emails are not responsive. *See* Opp'n at 2.

First, Silvers' reading of this Court's orders addressing Phase I is incorrect. This Court's February 6, 2006, Bifurcation Order [DE # 68] is not as narrow as Silvers suggests. Instead, the Court has ordered that the parties will first resolve the threshold issue of the extent and scope of rights, if any held by Silvers. Nowhere in the Court's Order is there a limitation to the two specific issues Silvers suggests in his Opposition. Moreover, the Court's February 27, 2006, Order expanded the scope of Phase I to include "the contract issues raised in the Cross-Claim [which] can be efficiently resolved with the ownership issues during the first phase of this litigation." [DE #71 at 10]. Therefore, even if it were true that the communications between Silvers and Stelor are relevant only to Stelor's cross-claims, they would be relevant to Phase I of the litigation pursuant to the Court's February 27, 2006, Order.

Silvers claims that the communications between Silvers and Stelor are "none of Google's business." Opp'n at 2. However, Silvers cannot seriously dispute that "differences of opinion about Stelor's compliance with Silvers' license" go directly to the issue of abandonment. For example, Silvers has claimed that he was not kept apprised of or consulted regarding Stelor's alleged development of the licensed goods. In a letter dated November 12, 2004 from Silvers' counsel to Stelor's counsel, Silvers threatens Stelor with termination of the license agreement for, among other things, "[f]ailure to provide samples of all Licensed Products you intend to manufacture and sell; and all promotional and advertising materials associated with those products ..." *See* Ex. D attached hereto. "Licensing a mark without adequate control over the quality of goods or

services sold under the mark by the licensee may cause the mark to lose its significance as a symbol of equal quality, hence, abandonment." McCarthy on Trademarks and Unfair Competition, Vol. 3, § 17.6, 17-9-10 (Thomson/West 2006).

Moreover, many of the communications between Silvers and Stelor are relevant to Silvers' intent (or lack thereof) to use his mark for a commercial purpose, a subject which Silvers does not dispute is relevant to Phase I. Instead, it appears that Silvers' primary focus—as discussed in hundreds of emails to Stelor—was to take legal action against Google. See Exs. B and C; *see, e.g.* Ex. E (3/1/04 email from Silvers to Stelor filed by Stelor as exhibit to pleading in Silvers/Stelor litigation). Accordingly, these communications should be produced.

Lastly, Silvers fails to articulate any undue burden that would be imposed upon him in producing these communications. Email communications between Silvers and Stelor representatives are easily copied from Silvers' computer to a disk, and any letters can be copied as well.

## CONCLUSION

Wherefore Defendant/Counterclaimant Google Inc. respectfully requests that this Court grant its Motion to Compel Silvers' production of communications between Silvers and Stelor representatives, together with such other and further relief as this Court deems just and proper.

Case No.  05-80387-CIV (Ryskamp/Vitunac)

Respectfully submitted,

By: _____

Jan Douglas Atlas
Florida Bar No.: 226246
jatlas@adorno.com
Samantha Tesser Haimo
Florida Bar No.: 0148016
stesser@adorno.com
ADORNO & YOSS LLP
350 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, Florida 33301
Phone: (954) 763-1200
Fax:    (954) 766-7800

Johanna Calabria
California Bar No.: 226222
jcalabria@perkinscoie.com
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, California 94111
Phone: (415) 344-7000
Fax:    (415) 344-7050

Attorneys for Defendant/Counterclaimant
Google Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by email and mail on the addressee(s) listed on the attached schedule on this 24th day of July, 2006.

_____
Samantha Tesser Haimo

{SNT/213526.0001/N0617534_1}

ADORNO & YOSS LLP
350 East Las Olas Boulevard • Suite 1700 • Fort Lauderdale, Florida 33301 • Telephone (954) 763-1200  •  Facsimile (954) 766-7800

Case No. 05-80387-CIV (Ryskamp/Vitunac)

## SERVICE LIST

| | |
|---|---|
| Harley S. Tropin, Esq.<br>hst@kttlaw.com<br>Kenneth R. Hartmann, Esq.<br>krh@kttlaw.com<br>Gail A. McQuilkin, Esq.<br>gam@kttlaw.com<br>**KOZYAK, TROPIN, THROCKMORTON, P.A.**<br>2525 Ponce de Leon, 9th Floor<br>Miami, FL 33134<br>Telephone: (305) 372-1800<br>Facsimile: (305) 372-3508<br><br>Adam T. Rabin, Esq.<br>arabin@dkrpa.com<br>**DIMOND, KAPLAN & ROTHSTEIN, P.A.**<br>525 South Flagler Drive<br>Trump Plaza, Suite 200<br>West Palm Beach, FL 33401<br>Telephone: (561) 671-1920<br>Facsimile: (561) 671-1951<br><br>Kevin C. Kaplan, Esq.<br>kkaplan@bwskb.com<br>**BURLINGTON, WEIL, SCHWIEP, KAPLAN & BLONSKY, P.A.**<br>2699 South Bayshore Drive<br>Miami, FL 33133<br>Telephone: (305) 858-2900<br>Facsimile: (305) 858-5261 | Steven A. Silvers<br>8983 Okeechobee Blvd.<br>Suite 202 – PMB 203<br>West Palm Beach, Florida 33411<br>Email: gewrue@hotmail.com<br>Telephone: (954) 445-6788<br>Facsimile: (561) 784-9959<br><br>Ramsey M. Al-Salam, Esq.<br>Washington Bar. No. 18822<br>ralsalam@perkinscoie.com<br>William C. Rava, Esq.<br>Washington Bar No. 29948<br>wrava@perkinscoie.com<br>**PERKINS COIE LLP**<br>1201 Third Avenue<br>Suite 4800<br>Seattle, WA 98101-3099<br>Telephone: (206) 359-6338<br>Facsimile: - (206) 359-7338 |

{SNT/213526.0001/N0617534_1}

ADORNO & YOSS LLP
350 East Las Olas Boulevard • Suite 1700 • Fort Lauderdale, Florida 33301 • Telephone (954) 763-1200 • Facsimile (954) 766-7800

# EXHIBIT A

LAW OFFICES

KOZYAK TROPIN & THROCKMORTON, P.A.

2525 PONCE DE LEON • 9TH FLOOR

CORAL GABLES, FLORIDA 33134-6037

KENNETH R. HARTMANN
DIRECT DIAL (305) 377-0657

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

June 30, 2006

Johanna Calabria, Esq.
Perkins Coie, LLP
180 Townsend Street
3rd Floor
San Francisco, CA 94107

Re:    Silvers/Google, Inc. - Discovery

Dear Johanna:

As we discussed on Thursday, June 29, 2006, Mr. Silvers is amenable to producing documents relating to his license with Aurora, including communications and development of Silvers' IP.

As to Stelor, we have some materials relating to Stelor's use of the mark, and can provide those. The "communications" between Stelor and Silvers, however, are voluminous. Can you specify the subjects you believe are within the Phase One discovery, so that Silvers can determine what is responsive?

Very truly yours,

Kenneth R. Hartmann

KRH/lmm
cc:    Gail McQuilkin, Esq.
       Steve Silvers

3339/102/266791.1

# EXHIBIT B



# *Good Vibrations International Inc.*

PORT ST. CHARLES, SUITE 329, ST. PETER, BARBADOS, WEST INDIES
Tel/Fax: (866) 267-5885    E-mail: goodvibes@5pillars.com    www.5pillars.com/goodvibes

Steve,

It has come to my attention that we are having more trouble with Mr. Silvers.
As you know, I have $600,000 invested in Stelor (the largest investor), not the least of which are many hours of my personal time, and even though I am now on the board of directors, I am extremely worried. This is beginning to seriously endanger mine and your future.

After the meeting in New York (June) with Silvers and his lawyers (Stumpf), and regardless of what you told me, I knew that this matter wasn't over. Now you are confirming my worst fear, by telling me that Silvers is destroying Stelor's ability to bring in the much needed capital - you know we require, in order to bring googles.com to market.

I was certain that after the board instructed you to file the law suit against Silvers, this action would legally protect my investment. However, now Silver's attorney has successfully defeated the emergency nature of our suit and has, furthermore, set about negotiating with Google, Inc.!

I have seen countless and lengthy emails from Steven A. Silvers personally, that INSIST Stelor enforces its legal rights and go after Google, Inc.; DEMANDING we file suit! And, now you tell me that Silver's lawyer (expecting a piece of the settlement) has submitted a document stating that "Mr. Steven Silvers does not dispute Google, Inc.'s right to its domain name..." How convenient!

Steve! What the hell is going on? Are you on top of this? Is there a chance that I have been wrong about you and that you don't know what you're doing? I am seriously considering action against you personally. I hope I am making myself very clear. Do something about this! Protect our investment! Protect our company from this despicable, conniving and crazed person... I would hate to think of the consequences that would surely follow!

Regrettably yours,



_____
Michael A. DiMuccio


c.c. Paul Hawa

P.S. I am emailing this to you for urgency sake, however, a registered original is following by mail – take it seriously.



EXHIBIT
DLO 12-13-04

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

STELOR PRODUCTIONS, INC.,
(a Delaware Corporation)

              Plaintiff

    v.

STEVEN A. SILVERS,
(a resident of Palm Beach County, Florida).

              Defendant.

CASE NO. 04-80954–CIV–HURLEY

Magistrate: Judge James M. Hopkins

---

**PLAINTIFF'S REPLY TO SILVERS' MEMORANDUM IN
OPPOSITION TO STELOR'S MOTION FOR PRELIMINARY INJUNCTION**

### I. INTRODUCTION

Plaintiff, Stelor Productions, Inc. ("Stelor"), by and through undersigned counsel, hereby replies to Defendant's, Steven A. Silvers' ("Silvers"), Memorandum in Opposition to Stelor's Motion for Preliminary Injunction:

Stelor merely seeks to conduct its business free from interference by Silvers. That is exactly what Silvers licensed Stelor to do, pursuant to the License, Distribution and Manufacturing Agreement ("License Agreement") entered into by the parties in 2002.

Contrary to Defendant's assertions, an order granting Stelor's request for an injunction is needed to protect Stelor's rights under that License Agreement, by prohibiting Silvers from interfering with the foundation of Stelor's business, the Licensed "GOOGLES" Intellectual Property. As the evidence demonstrates, Stelor has been, and in the absence of injunctive relief will continue to be, irreparably harmed.

### II. BRIEF STATEMENT OF FACTS

Notwithstanding Defendant's overstatement of his role in bringing the Googles from Goo to market, the fact remains that Stelor is truly responsible for the progress Mr. Silvers' original concept has made over the past two years. Silvers lacked the resources, drive, and credibility to turn the concept into a commercially successful reality. One of the key reasons Defendant was unable to commercialize his property on his own was his felony conviction for cocaine



some time, and perhaps even more revealing is that the "et. al." referred to in the amendment is Steven A. Esrig and the soon to be formed Stelor Productions, Inc.

Also indicative of Silvers' desire to engage in legal actions against Google Inc. relative to his trademark registration are the countless emails and letters sent by him to Stelor before, during, and after Stelor's inception.[2] In those emails Defendant prods Stelor to "sue these bastards now" (July 27, 2003) and "bring them [Google Inc.] down or better yet put the fear of God in them" only after railing against Google's founders stating "I hate looking at the cover of Time Mag with those two yuppies gloating like the[y] are" (April 15, 2004). *See* Exhibit "B," two emails from Silvers to Steve Esrig, CEO of Stelor Productions, Inc. (Due to their length, the relevant portion of each email has been highlighted for the court.) It was clear to Stelor that Silvers not only foresaw, but eagerly anticipated, litigation with Google Inc. As a result, the License Agreement requires that Silvers "cooperat[e] in every way necessary and desirable to strengthen, establish or maintain the "Googles' intellectual property and related assets." *See* License Agreement, Article VIII(E). This provision directly relates to anticipated litigation between Stelor and Google Inc, or any other infringer, and requires Silvers to cooperate with Stelor. Defendant's emails indicate he has always, until recently, been willing to cooperate with any dispute with Google, Inc. Silvers' conduct to date, relative to the disputes with Google Inc., has been anything but desirable and in fact has prejudiced Stelor's ability to protect the GOOGLES IP.

### III. THE PROPER STANDARD FOR PRELIMINARY INJUNCTION

Stelor requests injunctive relief in order to maintain the status quo during the pendency of this action. To this end, Stelor requests that Silvers be ordered to cease interfering with the actions now pending in the USPTO and the NAF. Silvers' attempt to characterize the injunction as seeking mandatory relief is inaccurate. Stelor asks the court to prohibit Silvers from taking action, and not to force Silvers to take any affirmative actions. *See* Plaintiff's Emergency Motion for Preliminary Injunction, pp. 2-3.

Although Clause "E" of Plaintiff's motion does request that the court order Silvers to immediately and fully cooperate with Stelor, Silvers' opposition acknowledges his obligation

---

[2] Stelor is in possession of in excess of 100 emails and letters wherein Silvers, at a minimum, discusses litigation against Google Inc., and in some cases all-out demands that Stelor take immediate legal action.

# EXHIBIT D

LAW OFFICES

KOZYAK TROPIN & THROCKMORTON, P.A.

2525 PONCE DE LEON • 9TH FLOOR

CORAL GABLES, FLORIDA 33134-6037

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

Via Federal Express
AWB#7927-7747-7745

November 12, 2004

Steven A. Esrig
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland 20874

Re:    Silvers/Stelor License Agreement

Dear Mr. Esrig:

We represent Steven Silvers, Licensor under that License, Distribution and Manufacturing Agreement dated June 1, 2002 ("Agreement"). Pursuant to paragraph IX-A of the Agreement, this serves as notice that Stelor has breached the Agreement and that Mr. Silvers will exercise his right to terminate the Agreement unless Stelor cures the following breaches within 60 days:

a.    Failure to pay royalties under paragraph III (A);

b.    Failure to provide a written certified royalty statement under paragraph III (C);

c.    Failure to provide a list of all sub licenses under paragraph III (C);

d.    Failure to use commercially reasonable efforts to promote, market, sell and distribute the Licensed Products under paragraph V (B)(iii);

e.    Failure to accommodate Licensor's request to audit the books and records of Stelor made under paragraph IV (A) and (C);

f.    Failure to provide samples of all Licensed Products you intend to manufacture and sell; and all promotional and advertising materials associated with those products under paragraph VI (C);

g.    Failure to include appropriate legal notices with the Licensed Products under paragraph VI(A);

h.    Failure to maintain the requisite level of quality for the Licensed Products under paragraph VI (B);

Page 2

     i.    Failure to maintain Licensor's Intellectual Property Rights, namely failure to maintain the domain names googlegame.com, googlesgames.com, and googlegame.com, under paragraph VIII;

     j.    Failure to register Licensor's Intellectual Property Rights in the name of Licensor, and instead registering copyrights and trademarks in Stelor's name;

     k.    Failure to oppose trademark applications for the name Googles, and the domain name registration googles.org, and otherwise protect the Licensed Intellectual Property; and

     l.    Unlawful use of the limited power of attorney granted under the Agreement, namely retaining counsel for Mr. Silvers without his knowledge or consent, filing an action in the name of Mr. Silvers to dispute Google, Inc.'s right to use the domain name google.com, and filing an answer in the name of Mr. Silvers in Cancellation Proceeding 92043737.

     This also serves as notice under the Letter Agreement dated June 1, 2002, that Stelor has breached the Letter Agreement by its:

     a.  Failure to pay Mr. Silvers consultancy fees and expenses;

     b.  Failure to provide Mr. Silvers with an agreement granting him stock options for 1,000 shares of Stelor's stock;

     c.  Making unauthorized statements and representations on behalf of Mr. Silvers; and

     d.  Attempting to transfer, release and waive Mr. Silvers right, title, and interest in his intellectual property.

     Pursuant to paragraph 1 of the Letter Agreement, Mr. Silvers will exercise his right to terminate the License, Distribution and Manufacturing Agreement unless Stelor cures these breaches within 30 days.

                      Very truly yours,

                      Gail A. McQuilkin

c:     Steven A. Silvers
      Laurence Hefter

/245015.1

# EXHIBIT E



Stelor Productions, Inc.
Attn: Steve Esrig, President/CEO & Stelor Board of Directors
14701 Mockingbird Drive
Darnestown, Maryland 20874

March 1, 2004

Re:    Formal Notice & Request For Action & Written Dispositions

Dear Steve:

I would like to preface this letter by informing you that I would not be a responsible Licensor if I didn't choose to address, at this time, the issues you are about to read. Kindly review them in an unbiased manner. Thank you!

This letter shall serve as a formal notice to Stelor, in accordance with our existing Licensing Agreement, regarding certain issues that have yet to be resolved to my satisfaction.

I know that you and I have spoken several times on the issues that I'm about to formally address, however, as I have recently placed in writing to you via an e-mail that was addressed to Julie on Wednesday, February 25, 2004, I had explained therein that I would be sending Stelor a formal notice outlining the issues that I believe are still in need of resolving so that we may move forward in a non-adversarial manner.

# IRRELEVANT MATERIAL REDACTED



6).    Last but not least, I want to spend a little time on my concerns regarding the issues of the pendings Google.com and other similar potentially infringing parties surrounding the Google's IP. First of all I want to make myself perfectly clear so that there are no misunderstandings. I have heard you repeat to me on more than one occasion about my having granted Stelor the "exclusive" power of attorney as it appears in our existing Licensing Agreement. I've read and reread this clause and while I fully acknowledge that this is the case, I do not subscribe to your theory of what your lawyers are supposedly informing you, as you've recently indicated to me that in the event of any litigation on behalf of protecting the Google's IP that such cause of action shall be brought on behalf of Stelor and not on me at all. If you read the agreement properly you will note that I am still the agreement IP owner. And while Stelor may have the power of attorney or in essence the exclusive right to sign my name to legal papers as if I was personally present, nevertheless that right only exist as it pertains to defend MY name and not Stelor's. Thus, any and all causes of action regarding the infringement of or the protection of the Google' IP shall be brought in my name and only my name and anything to the contrary will ultimately wind both of us in a serious adversarial role. You have the right to insure of the Licensee that your rights are properly protected and as such you have the right to bring if you so choose legal action against any and all potential infringement or violators against the Google's IP. However, any and all such cause of action shall be brought in my name as the owner of the IP and since there is NO mention in any of our Agreement that speaks to the issue of settlement from such violators and/or infringements, (which was most likely an oversight on both of our parts) we will have to, as I now see it, go back to the drawing board and eke out a fair and equitable arrangement that we can both live with regarding dispersement of any and all compensation whether monetary or otherwise, should a settlement, compromise, award or arbitration/mediation take place that results in a favorable outcome for me as the Licensor from any litigation(s) that are now evident and for which we must now vigorously pursue. You have recently apprised me of your dilemma regarding pursuing such litigations and the sending of cease and desist letters and/or initiating any WIPO/UDRP proceedings against existing offenders that I have brought to your attention such as Google.com, Googles.org, and those that you have brought to my attention such as Zoogles, Boogle, etc., and I'm sure that as time goes by there will be others we'll need to go after. However, you have also made it equally clear to me that at this time Stelor is not in any position to champion an attack against any of these infringers, cap. that of Google.com due to the financial hardship this could potentially cost Stelor. While I can certainly appreciate Stelor's position in this regard, as the Licensor you must equally appreciate my position in trying to maintain a sense of balance between your needs and those of the Google's trademark(s) and all those who have seen fit to infringe upon my IP rights. I can not afford to stand by and wait much longer as to whether or not Stelor is going to opt to go after most importantly the Google.com search engine and the Google.org entities. I informed you on several occasions, both verbally and via e-mails, about the legal position of "Slather", the untimely

filing and unreasonable delay "legal defenses" that are likely to be raised by the defendants that we will have to overcome. The more time that goes by the weaker our position becomes in this regard. It would be patently unfair for me to stand by and wait until Stelor is in a better financial position to litigate these matters only to learn that I may have lost the opportunities to do so based upon unreasonable delays. I told you that I strongly disagree with the advice you have informed me that your counsel has given you regarding the filing of a WIPO/UDRP proceeding against the Google.com giant and the other immediate infringer Googles.org. I explained to you about the issue of "confusion" in the market place. About the fact that I don't believe we have any strong trademark infringement case against Google.com, but clearly we could make a case based upon confusion, especially as it pertains to the Internet. I have urged you many times to try and seek an audience with Google's executives so that we can advise them of our position and we could perhaps learn more about theirs. Then we'd have a much better understanding as to how we should proceed against them. You have chosen to seek interest from MicroSoft and Yahoo and while I believe this may be a sound strategy, I also believe these are long shots at best. Much better to go directly to the horse's mouth and seek an audience NOW with Google.com and see how receptive or non-receptive they may be in wanting to cut a deal with us. I doubt seriously if MicroSoft or Yahoo will act swiftly in cutting us a deal, regardless of their interest levels. Approaching Google.com NOW is the only way I see for us to nip this in the butt once and for all. Either they agree to play ball with us or we will seek redress before the federal courts and they in turn will know we mean business one way or the other. So here is my proposal on this matter. As it now stands, Google seemingly has pushed their IPO release for sometime in mid-September and that is still very speculative. The trade show for us is rapidly approaching in June, only a few short months away. I am formerly requesting a disposition as to whether or not Stelor is prepared to move forward against both the Google.com search engine and the Googles.org, at the very least, coupled with the filing of either a WIPO/UDRP and/or a simultaneously filed cease and desist letter within the next (30) thirty-days from the receipt of this letter or give me, in writing, Stelor's position as to why they are not prepared to do so and what course of action you are planning to execute to properly protect the Googles' trademark and its intellectual property rights on behalf of the Licensor? Just so you know, I am fully prepared to go this alone if need be based upon the strategy I outlined to you when we last met. I am fully confident that I can properly prepare and subsequently file a motion in federal court to at least start the ball rolling against both of these infringers and then eventually seek competent counsel to further champion the cause to seek redress before the courts. As a responsible Licensor, if I don't take this position I could run the risk of losing my opportunity to bring a cause of action in a timely fashion to protect my Googles' IP rights. I'm certain that no court in the land would rule otherwise. Not having proper funding to pursue these matters is not going to be a viable position for you to take when push comes to shove. I have been preaching to Stelor this issue and my position for quite some time now. I also know that doing so, on Stelor's behalf, will require a strong financial commitment that you may not be in a position to timely execute. But like I stated above, this is not a defense that I



can unfortunately accept. We must strike timely while the iron is hot. Waiting too much longer could prove a disaster for all parties concerned. I will expect to hear from you or your counsel, in writing, within the reasonable timeframe granted and set forth above.

IRRELEVANT MATERIAL REDACTED

# IRRELEVANT MATERIAL REDACTED

Respectfully submitted by,

*Steve*

Steven A. Silver

P.S. I'm still waiting to speak with Henry, as you indicated to me we would speak via a conference call on two separate occasions last week. What happened?

P.S.S. Thanks for sending my December 2003 Consulting Fee Check, I received it on February 27, 2004 along with my 1099 for year ending December 2003.

SENT VIA FEDEX ON March 1, 2004 USING AIRBILL
TRACKING NUMBER: 842190092158