UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80387 CIV RYSKAMP/VITUNIC

STEVEN A. SILVERS, an individual,

    Plaintiff,

v.

GOOGLE INC., a Delaware corporation,

    Defendant.
_____/

GOOGLE INC., a Delaware corporation,

    Counterclaimant,

v.

STEVEN A. SILVERS, an individual;
STELOR PRODUCTIONS, INC., a Delaware
Corporation; STELOR PRODUCTIONS, LLC, a
Delaware limited liability company,

    Counterdefendants.
_____/

## NOTICE OF FILING ORIGINAL EXPERT REPORTS

Stelor Productions, LLC hereby gives notice of filing the original expert

BURLINGTON · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL INFO@BSKBLAW.COM  WWW.BSKBLAW.COM

reports of Gary D. Krugman (attached hereto as Exhibit A) and James F. Fitzsimmons (attached hereto as Exhibit B).

        Respectfully submitted,

        BURLINGTON, SCHWIEP, KAPLAN &
           BLONSKY, P.A.
        Counsel for STELOR PRODUCTIONS, LLC
        2699 South Bayshore Drive, Penthouse
        Miami, Florida 33133
        Tel: 305-858-2900
        Fax: 305-858-5261
        Email: kkaplan@bwskb.com

By: _____
        Kevin C. Kaplan
        Florida Bar No. 933848
        David J. Zack
        Florida Bar No. 641685

BURLINGTON · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BSKBLAW.COM  WWW.BSKBLAW.COM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via U.S. Mail on this 14th day of August, 2006 upon the following:

Steven A. Silvers
Suite 202 – PMB 203
8983 Okeechobee Boulevard
West Palm Beach, Florida 33411
Tel: 954-4445-6788
Fax: 561-784-9959
E-mail: gewrue@hotmail.com

Jan Douglas Atlas
ADORNO & YOSS LLP
350 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, Florida 33301

Kenneth R. Hartmann, Esq.
Gail M. McQuilkin, Esq.
KOZYAK TROPIN &
    THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134

Adam T. Rabin, Esq.
DIMOND, KAPLAN &
    ROTHSTEIN, P.A.
Trump Plaza
525 S. Flagler Drive, Suite 200
West Palm Beach, Florida 33401

Ramsey Al-Salam, Esq.
William C. Rava, Esq.
Johanna Calabria, Esq.
PERKINS, COIE LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099

Johanna Calabria
Perkins Coie LLP
Suite 2400
Four Embarcadero Center
San Francisco, CA 94111
Tel: 415-344-7124
Fax: 415-344-7050
E-mail: jcalabria@perkinscole.com

/s/ _____
Kevin C. Kaplan
David J. Zack

BURLINGTON · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE 2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: INFO@BSKBLAW.COM   WWW.BSKBLAW.COM

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| STEVEN A. SILVERS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>Defendant.<br>_____<br>GOOGLE INC., a Delaware corporation,<br><br>Counterclaimant,<br><br>v.<br><br>STEVEN A. SILVERS, an individual;<br>STELOR PRODUCTIONS, INC., a Delaware<br>corporation; STELOR PRODUCTIONS, LLC,<br>a Delaware limited liability company,<br><br>Counterdefendants<br>_____ | Case No. 05-80387 CIV<br>RYSKAMP/VITUNIC |

## EXPERT WITNESS REPORT OF GARY D. KRUGMAN

1.    I have been retained by Stelor Productions, LLC (hereinafter "Stelor") to offer my opinions in connection with Case No. 05-80387 now pending in the U.S. District Court for the Southern District of Florida. My opinions are based on my experience as a Trademark Examining Attorney, an Administrative Trademark Judge with the Trademark Trial and Appeal Board and my familiarity with trademark law as more fully noted below.

2034858_1.DOC

ATTACHMENT / EXHIBIT

## I.  QUALIFICATIONS

2. I received a Bachelor of Science Degree (B.S.) from the State University of New York at Albany, Albany, New York in June, 1969 and a Law Degree (J.D.) from Case Western Reserve University School of Law in Cleveland, Ohio in June, 1973.

3. After passing the Bar Examination in the District of Columbia in 1973, I was admitted to the District of Columbia Court of Appeals on December 7, 1973.

4. From 1974 through 1978, I was an Examining Attorney in the Trademark Examining Operation of the U.S. Patent and Trademark Office (PTO). As an Examining Attorney, I reviewed applications for trademark registration, both for inherent registrability and for conflicts with existing registrations and earlier filed pending applications.

5. In 1978, I was appointed to the position of Attorney Examiner at the Trademark Trial and Appeal Board (TTAB or Board).

6. In 1982, I was appointed to the TTAB as an Administrative Trademark Judge and I served in that capacity until August, 1989.

7. The TTAB is the Administrative Trademark Court of the Patent and Trademark Office and the TTAB Administrative Trademark Judges serve as the final agency decision makers in trademark registrability questions in the context of appeals taken by an applicant from the Trademark Examining Attorney's refusal of registration. The TTAB also serves as the final agency decision maker in inter partes trademark registrability proceedings including oppositions to prevent registration of a trademark and cancellations to cancel existing trademark registrations.

8.   In my position as an Administrative Trademark Judge, I authored final agency decisions on registrability issues and participated on three-Judge panels with respect to final decisions authored by other Judges.

9.   In August, 1989, I left government service and joined the firm of Sughrue Mion, PLLC (formerly Sughrue, Mion, Zinn, Macpeak & Seas, PLLC) in Washington D.C. I am currently a partner in that firm, specializing in trademark law, unfair competition and litigation before state and federal courts and the PTO.

10.  In addition to being admitted to practice before the D.C. Court of Appeals, I am admitted before the U.S. District Court for the District of Columbia, the U.S. Court of Appeals for the District of Columbia Circuit, the U.S. Court of Appeals for the Federal Circuit and the U.S. Supreme Court.

11.  I have lectured frequently on subjects relating to trademark law, trademark protection and practice before the TTAB at meetings, seminars and conferences sponsored by the District of Columbia Bar, the International Trademark Association, the American Intellectual Property Law Association and various other state and city bar associations. I have also lectured in Beijing, China and Tokyo, Japan on trademark law matters as an invited lecturer of associations of trademark practitioners in those countries.

12.  I have authored several articles on various aspects of trademark law and protection which have been published in <u>IP Litigator</u>, <u>The Trademark Reporter</u>, The American Intellectual Property Law Association <u>Selected Legal Papers</u> and the D.C. Bar Intellectual Property Law Section Newsletter. I am the author of a book entitled <u>Trademark Trial and</u>

Appeal Board Practice and Procedure which was first published in April, 1997 and is updated annually. In addition, I am a former adjunct faculty member at The Catholic University School of Law in Washington, D.C., where I taught trademark law and unfair competition for a number of years.

13. I am a former Chair of the Public Advisory Committee to the trademark operation of the U.S. Patent and Trademark Office. I am a former co-Chair of the Steering Committee of the Intellectual Property Law Section of the D.C. Bar, a former Chair of the Trademark Committee of the Intellectual Property Law Section of the Bar Association of the District of Columbia and a former Chair of the ABA Sub-Committee on TTAB Affairs. I am a former editor of the Trademark Reporter, a quarterly publication on matters of interest to the trademark bar. I have been named on several occasions in the "Guide to the World's Leading Trademark Law Practitioners" sponsored by Managing Intellectual Property magazine and I have been named on several occasions in the "International Who's Who of Trademark Lawyers." A current resume setting forth my education, experience and publications is attached hereto as Exhibit No. 1. In addition, attached hereto as Exhibit 2 is a listing of cases in connection with which I have testified as an expert at trial or by deposition within the preceding four years.

14. With respect to my compensation in connection with time expended in reviewing this matter and providing my testimony or other opinions, I am being compensated at my usual rate of $490.00 per hour.

## II.   BASES FOR TESTIMONY

15.   In preparing for my testimony, I have familiarized myself with the issues in this case by reviewing:

(a)   Plaintiff's Motion For Leave To File First Amended Complaint And Memorandum Of Law In Support Thereof.

(b)   Plaintiff's First Amended Complaint And Demand For Jury Trial (with Exhibits).

(c)   Google Inc.'s Answer, Affirmative Defenses, Counterclaim and Demand for Jury Trial (with Exhibits).

(d)   Stelor Defendants' Answer, Affirmative Defenses, Counterclaim Against Google Inc. And Amended Cross-Claim Against Silvers.

(e)   Memorandum In Support Of Motion To Bifurcate Discovery And Trial.

(f)   Plaintiff's Opposition To Motion To Bifurcate Discovery And Trial.

(g)   Stelor's Opposition To Google Inc.'s Motion To Bifurcate.

(h)   Defendant And Counterclaimant Google Inc.'s Reply Memorandum Of Law In Support Of Its Motion To Bifurcate Discovery And Trial.

(i)   Rough excerpts from a preliminary transcript of the Deposition Of Steven A. Silvers dated July 13, 2006 (and exhibits).

(j)   Court order granting Motion to Bifurcate Discovery and Trial.

16. I have reviewed all of the foregoing materials in light of the Trademark Act of 1946 (Lanham Act), as well as applicable decisions of the courts, the Trademark Trial and Appeal Board and recognized treatises on trademark law.

### III. SUMMARY OF TESTIMONY

17. It is my intention to testify on the limited grounds upon which a registration that is more than five years old can be challenged by way of cancellation action and the limited defenses available against an incontestable registration.

18. It is further my intention to testify on the nature of a trademark assignment, specifically, whether a trademark assignment can be effectuated orally and whether an oral assignment can be subsequently memorialized by a writing.

19. It is further my intention to testify on the filing of a Sections 8 and 15 Declaration and whether mistakes in such a declaration can be the basis for challenging or invalidating a registration.

### IV. EXPECTED TESTIMONY

A. Limitations On Grounds For Challenging A Registration More Than Five Years Old.

20. The Trademark Act provides that, once a Principal Register registration reaches its five year anniversary, it may only be cancelled on the grounds enumerated in 15 U.S.C. 1064(3)(5). These grounds, which can be the basis for canceling a registration at any time, including the following:

- Genericness - if the registered mark has become generic for the goods or services covered by the registration.

- - Functional - if the registered mark comprises a configuration of the goods or the container for the goods and is shown to be de jure functional (i.e., functional in law).

  - Abandonment - if the registered mark has become abandoned.

  - Fraud - if the registered mark was obtained or maintained fraudulently.

  - Immoral, deceptive, or scandalous matter - if the registered mark is shown to consist of or compose immoral, deceptive or scandalous matter; or matter that may disparage or falsely suggest a connection with persons, living or dead, institutions, beliefs or national symbols, or bring them into contempt, or disrepute; or a geographical indication that, when used with wine or spirits, identifies a place other than the origin of the goods and is first used on wines or spirits one year or longer after the WTO Agreement enters into force with respect to the United States.

  - Flags, coat of arms, or other insignia - if the registered mark is shown to consist of or compose the flag or coat of arms, or any other insignia of the United States, or of any state or municipality, or of any foreign nation, or simulation thereof.

  - Name, portrait or signature - if the registered mark is shown to consist of or compose a name, portrait, or signature identifying a particular living individual except by his or her written consent, or the name, signature, or portrait of a deceased president of the United States during the life of the widow.

  - Misrepresentation of source - if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services in connection with which the mark is used.

The Trademark Act (15 U.S.C. 1115) also limits the defenses one can assert against an incontestable registration, which defenses include that the registration was obtained fraudulently; that the registered mark has become abandoned; et al.

21.     In the present case, Reg. No. 2,087,590 for the mark GOOGLES and Design issued on the Principal Register on August 12, 1997, almost nine years ago and is incontestable.

Such registration cannot be cancelled under the Trademark Act, except under the enumerated grounds set forth in 15 U.S.C. 1064(3)(5) noted above, and the defenses against such an incontestable registration are limited as set forth in 15 U.S.C. 1115. It is clear that a challenge to such a more than five year old registration cannot be made to the extent that such a challenge is based on an assertedly invalid or otherwise improper assignment of rights in the registration, or to the extent that such a challenge is based on an alleged mistake in a Sections 8 and 15 Declaration.

B.  Trademark Assignments

22. As set forth above, an issue regarding the validity of an assignment of a registration cannot be raised now as a basis for attempting to cancel a registration that is more than five years old, and incontestable, as it is not one of the enumerated grounds for cancellation under 15 U.S.C. 1064(3)(5), and is not one of the enumerated defenses under 15 U.S.C. 1115. Even if such issue could be raised now, which it cannot, it is my opinion, as more fully set forth below, that the assignment is valid.

23. A trademark is considered property and, like any other type of property, it can be bought, sold, licensed or used as collateral in connection with a security interest. A trademark is considered to be a symbol of the goodwill of the business in connection with which the mark is used. For that reason, a trademark cannot be properly sold or assigned except as part of an assignment of the mark together with the goodwill of the business associated with the mark. This is black letter trademark law and has been codified at 15 U.S.C. 1060 with respect to federal trademark registrations and applications for registration.

24.     An oral assignment of a trademark is valid and it is not necessary for an assignment of a trademark to be reduced to a written instrument in order to properly transfer rights in a trademark from one entity to another.

25.     In the present case, it is my understanding that one of Defendant's challenges to Plaintiff's Reg. No. 2,087,590 for the mark GOOGLES and Design is that the registration is invalid. Specifically, it is my understanding that Defendant asserts that the application to register GOOGLES and Design was filed on August 2, 1996 by The Googles Children's Workshop, Inc., a New Jersey corporation; that on August 12, 1997, Reg. No. 2,087,590 issued in the name of The Googles Children's Workshop, Inc.; that on October 22, 1997, The Googles Children's Workshop, Inc. dissolved as a corporation; and that on May 18, 1999, Plaintiff Steven Silvers executed an assignment of the GOOGLES and Design mark and Reg. No. 2,087,590 from The Googles Children's Workshop, Inc. to Steven Silvers as an individual.

26.     Defendant concludes, based on the foregoing assertions, that Registration No. 2,087,590 is invalid because the assignment was a nullity. Specifically, Defendant asserts that The Googles Children's Workshop, Inc. was a non-existent entity on May 18, 1999, when the assignment from The Googles Children's Workshop, Inc. to Steven Silvers was executed; that, at the time the assignment was executed, The Googles Children's Workshop, Inc. had no assets and had no business or goodwill to assign and that, therefore, the assignment on May 18, 1999 was an invalid "assignment in gross."

27.     Defendant further asserts that since The Googles Children's Workshop, Inc. had dissolved prior to the purported assignment of the trademark, the assignment is ineffective as a

matter of law and the assignee did not own the trademark assertedly assigned by The Googles Children's Workshop, Inc.

28.     As discussed above, there is no requirement for an assignment, to be valid, to be in writing, and an oral assignment of a trademark (and related goodwill) is no less valid than a written assignment.

29.     In the present case, the testimony of Steven Silvers (deposition of July 13, 2006) indicates that when The Googles Children's Workshop, Inc. was dissolved, Mr. Silvers was the sole proprietor of the corporation and he wanted to retain ownership rights in the trademark. Mr. Silvers further indicates that, when he dissolved the corporation, he had assigned the trademark of the corporation to himself as an individual. Mr. Silvers further indicates that, at some later point, he realized that no assignment had been recorded and he then proceeded to file the paperwork relating to the assignment in May, 1999.

30.     Under the circumstances described above, the assignment of the mark, together with the goodwill of the business, to Mr. Silvers was valid and did not constitute an invalid assignment in gross.

C.      <u>Sections 8 and 15 Declarations Filed In The Name Of A Mistakenly Identified Entity</u>

31.     As discussed above, any challenges to the validity of a registration more than five years old under 15 U.S.C. 1064(3)(5) and any defenses to an incontestable registration under 15 U.S.C. 1115 are limited to the grounds enumerated in the statute (e.g., fraud, abandonment, genericness, et al.).

32.     It is my understanding that Defendant is challenging the validity of the GOOGLES and Design Registration No. 2,087,590 based on the assertion that the Sections 8 and 15 Declaration filed in the U.S. Patent and Trademark Office on or about March 16, 2003 was invalid. Defendant asserts that this Declaration was filed on behalf of The Googles Children's Workshop, Inc., which entity had been dissolved several years prior to the filing of the Declaration. Defendant further asserts that, at the time the Declaration was filed, The Googles Children's Workshop, Inc. was not the owner of the mark.

33.     It is my understanding that the assignment from The Googles Children's Workshop, Inc. to Mr. Silvers had not yet been recorded in the U.S. Patent and Trademark Office Assignment Division, at the time the Sections 8 and 15 Declaration was filed. In this regard, it is my understanding that an assignment of Reg. No. 2,087,590 from The Googles Children's Workshop, Inc. to Steven Silvers was intended to be filed for recordation with the Patent and Trademark Office on May 24, 1999, but was mistakenly or inadvertently recorded against a different trademark application (Serial No. 75/547,007). For that reason, a search of the assignment records of the Patent and Trademark Office with respect to Reg. No. 2,087,590 would not have shown any assignment of that registration at the time the Sections 8 and 15 Declaration was filed on or about March 16, 2003.

34.     Not only did the Sections 8 and 15 Declaration mistakenly set forth The Googles Children's Workshop, Inc. as the owner of Reg. No. 2,087,590, but the Patent and Trademark Office, as noted above, also listed The Googles Children's Workshop, Inc. as the owner of the registration at that time. If, at the time the Sections 8 and 15 Declaration was filed in the name

of The Googles Children's Workshop, Inc., the U.S. Patent and Trademark Office had any questions or issues related to the ownership of the registration, the Patent and Trademark Office would have refused to accept the Declaration for the reason that it was not filed in the name of the owner of the registration, according to the records of the U.S. Patent and Trademark Office. In this situation, the Patent and Trademark Office would have advised Mr. Edell of the discrepancy between the registration owner of record and the party in whose name the Declaration was filed. The Patent and Trademark Office practice in this situation is to give the owner time to either demonstrate that the Declaration was filed by the correct owner or to file a substitute Declaration in the name of the correct owner. That practice was not followed in the present case simply because, according to the records of the Patent and Trademark Office, there was no discrepancy to be explained since the registration was in the name of The Googles Children's Workshop, Inc. which agreed with the name of the entity on whose behalf the Declaration was filed. This appears to be due to the mistake regarding the filing of an assignment of Reg. No. 2,087,590 in May, 1999, but that assignment being mistakenly recorded against a different application.

35. In any event, it is clear that a challenge to a more than five year old registration, and a defense to an incontestable registration, cannot be made, to the extent that such a challenge or defense is based on a Sections 8 and 15 Declaration filed on behalf of a mistakenly identified entity, since that is not one of the enumerated grounds set forth in the Act. As noted above, such grounds are limited to fraud, abandonment, genericness, et al. Based on my understanding of the

facts and my review of the materials, the mistake in the Declaration does not appear to constitute fraud, in my opinion.

36.     It is my understanding that, in this case, the Silvers deposition has not been completed; that other discovery is ongoing and that facts are still developing. I reserve the right to modify my opinions and offer additional opinions, based on facts that subsequently become known to me.

I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Gary D. Krugman

August 1, 2006

**BUDD LARNER**
A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW

150 JOHN F. KENNEDY PARKWAY
SHORT HILLS, NJ 07078-2703
973.379.4800
FAX 973.379.7734
www.buddlarner.com

August 2, 2006

**Via Telecopier (305-858-5261)**
**And First Class Mail**

Kevin C. Kaplan, Esq.
Burlington, Schwiep, Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133

    Re:    **Silvers v. Google, Inc.**
             **Case No. 05-80387**

Dear Mr. Kaplan:

    In connection with the above-referenced case, your client, Stelor Productions, Inc., has engaged me to provide it with an expert legal opinion solely on the issue of whether a corporation formed pursuant to the laws of the State of the New Jersey has the ability to assign its assets to a third party after it has filed a certificate of dissolution with the State of New Jersey. Please accept this letter as my opinion in connection with this engagement.

    I.    **Qualification**. As I have previously informed you, I am an experienced attorney practicing law in the State of New Jersey specializing in general corporate matters. For your convenience my professional CV is attached to this letter as Exhibit "A".

    II.    **Scope of Opinion**. The opinions provided for in this letter are limited as to the specific legal issue identified above and to the current status of New Jersey law.[1] I have not verified or interpreted any factual circumstance surrounding or pertaining to the above-referenced lawsuit. This letter is for the express purposes stated herein and may not be used for any other purpose.

    III.    **Conclusions**: Pursuant to the New Jersey Business Corporation Act, the filing of a Certificate of Dissolution with the State of New Jersey does not immediately terminate the existence of a corporation. Specifically, N.J.S.A. §14A:12-9(1) provides as follows:

> *"Except as a court may otherwise direct, a dissolved corporation shall continue its corporate existence but shall carry on no business except for the purpose of winding up its affairs by*

---

[1] The New Jersey statute which is relevant for purposes of the opinion provided in this letter is N.J.S.A. §14A:12-9. This statute has not been amended since the time The Googles Children's Workshop, Inc. filed its certificate of dissolution with the State of New Jersey.


ATTACHMENT / EXHIBIT

Kevin C. Kaplan, Esq.  
August 2, 2006  
Page 2

BUDD LARNER  
A PROFESSIONAL CORPORATION

    i. *collecting its assets;*  
    ii. *conveying for cash or upon deferred payments, with or without security, such of its assets as are not to be distributed in kind to its shareholders;*  
    iii. *paying, satisfying and discharging debts and other liabilities; and*  
    iv. *doing all other acts required to liquidate its business and affairs.*

Moreover, N.J.S.A. §14A:12-9(2) expressly provides that:

> "Subject to the provisions of subsection 14A:12-9(1), and except as otherwise provided by court order, the corporation, its officers, directors and shareholders shall continue to function in the same manner as if dissolution had not occurred. In particular, and without limiting the generality of the foregoing,
>
> (a) the directors of the corporation shall not be deemed to be trustees of the assets and shall be held to no greater standard of conduct that that prescribed in section 14A:6-14;.
> (b) title to the corporation's assets shall remain in the corporation until transferred by it in the corporate name;
> (c) . . .
> (d) . . .
> (e) the corporation may sue and be sued in its corporate name and process may issue by and against the corporation in the same manner as if dissolution had not occurred;
> (f) . . ."

    Under the above statute, the dissolution of a corporation does not deprive it of all vitality.[2] A corporation which has already dissolved and has filed a certificate of dissolution with the State of New Jersey is permitted to continue to function in the same manner as if dissolution had not occurred, subject to the limitations set forth in N.J.S.A. §14A:12-9(1). Specifically, N.J.S.A. §14A:12-9(2) provides that the corporation's assets shall remain in the name of the corporation after the filing of the corporation's certificate of dissolution until the time that such assets are duly transferred by the corporation. It would not be unusual, for example, for a corporation to identify assets following dissolution that it was not aware of at the time of dissolution. Typical examples would include refunds from government agencies, vendors or customers or other items of unclaimed property. The corporation is still deemed to be the owner of such assets, and will be entitled to transfer such assets, even though it has already filed a Certificate of Dissolution pursuant to the laws of the State of New Jersey.

---

[2] See, Pachman, Stuart L, <u>New Jersey Statutes, Title 14A Corporations, Commentaries and Annotations</u>, Note 3 of the Commentary to N.J.S.A. §14A:12 (2006 Edition).

Kevin C. Kaplan, Esq.          BUDD LARNER
August 2, 2006                 A PROFESSIONAL CORPORATION
Page 3

    The persons who are the directors of the corporation at the time of dissolution retain title to any undistributed assets of the corporation. The directors may not carry on any corporate business of the dissolved corporation but they may take steps in winding up its affairs and do retain the power to discharge corporate debts.[3] Case law also suggests that an officer of a dissolved corporation may transfer assets of the dissolved corporation subject to the approval of the directors of the corporation (not unlike a pre-dissolution transfer of assets outside of the ordinary course of business which would require approval of the directors of the corporation).

    Therefore, based upon my review of current New Jersey law and in my opinion as an experienced attorney practicing law in the State of New Jersey specializing in general corporate matters, a New Jersey corporation has the ability, after filing a certificate of dissolution with the State of New Jersey, to assign its assets to its shareholders or to a third party. This opinion is subject to further modification based upon development of the facts in this case.

    Please contact me at your convenience if you have any further questions or concerns regarding this matter.

                                    Very truly yours,

                                    JAMES F. FITZSIMMONS

606796

---

[3] *See Id.*