UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

NIGHT BOX
FILED
OCT - 2 2006
CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

CASE NO. 05-80387 CIV RYSKAMP/VITUNAC

STEVEN A. SILVERS, an individual,

Plaintiff,

v.

GOOGLE INC., a Delaware corporation,

Defendant.

---

GOOGLE INC., a Delaware corporation,

Counterclaimant,

v.

STEVEN A. SILVERS, an individual;
STELOR PRODUCTIONS, INC., a
Delaware corporation; STELOR PRODUCTIONS, LLC,
a business entity of unknown form; and
STEVEN ESRIG, an individual,

Counterdefendants.

______________________________________/

**GOOGLE INC.'S (1) OPPOSITION TO STELOR PRODUCTIONS, LLC'S MOTION FOR PROTECTIVE ORDER AND RECONSIDERATION ON THAT BASIS OF SEPTEMBER 11, 2006 ORDER GRANTING GOOGLE INC.'S MOTION TO COMPEL; (2) CROSS MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND PRIVILEGE LOG FROM STELOR AND ESRIG; AND (3) MOTION FOR COSTS AGAINST STELOR AND ESRIG**

130

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .....1

II. BACKGROUND .....2

III. STELOR'S MOTION SHOULD BE DENIED .....7

A. The September 11, 2006 Order Compels Production Of All Non-Privileged Communications Between Stelor And Silvers Related To The GOOGLES Mark .....7

B. Stelor's Interpretation Of The Work Product Privilege Is Overreaching .....8

1. The License Agreement alone did not give rise to a common interest privilege .....8

2. Stelor represented to this Court that it never shared a common interest with Silvers in enforcing intellectual property rights under the License Agreement. .....9

C. Even If There Was A Common Legal Interest At The Inception Of The Licensing Relationship, It Was Destroyed When Silvers And Stelor Became Adverse .....11

IV. STELOR SHOULD BE COMPELLED TO PRODUCE DOCUMENTS AND A PRIVILEGE LOG THAT COMPLIES WITH THE RULES .....13

A. Stelor Should Be Compelled To Produce Communications Between Stelor Representatives And Silvers Relating To The GOOGLES Mark .....13

B. Stelor Should Be Ordered To Comply With FRCP 26(b)(5) and S.D.Fla. LR 26.1(G)(3)(c) And Produce An Adequate Privilege Log .....14

V. GOOGLE SHOULD BE AWARDED COSTS FOR BRINGING THIS MOTION .....15

VI. CONCLUSION .....16

## Cases

*Ageloff v. Noranda, Inc.*,
936 F. Supp. 72 (D.R.I. 1996) ........ 11

*Akamai Techs, Inc. v. Digital Island, Inc.*,
No. C-00-3508 CW(JCS), 2002 WL 1285126 (N.D. Cal. May 30, 2002) ........ 11, 12

*Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212 (N.D. Ill. 2001) ........ 8

*Dexia Credit Local v. Rogan*,
231 F.R.D. 287 (N.D. Ill. 2005) ........ 11

*In re Benun*,
339 B.R. 115 (Bankr. D.N.J. 2006) ........ 11

*In re LTV Securities Litigation*,
89 F.R.D. 595 (N.D. Tex. 1981) ........ 12

*In re Rivastigmine Patent Litig.*,
No. 05 MD 1661 (HB/JCF), 2005 WL 2319005 (S.D.N.Y. Sept. 22, 2005), *aff'd* 2005 WL 3159665 (S.D.N.Y. Nov. 22, 2005) ........ 9

*In re Santa Fe Int'l Corp.*,
272 F.3d 705 (5th Cir. 2001) ........ 14

*Old Tampa Bay Enters., Inc. v. Gen. Elec. Co.*,
745 So. 2d 517 (Fla. Dist. Ct. App. 1999) ........ 12

*SCM Corp. c. Xerox Corp.*,
70 F.R.D. 508 (D. Con.. 1976) ........ 8

*Vermont Gas Sys., Inc. v. U.S. Fidelity & Guar. Co.*,
151 F.R.D. 268 (D. Vt. 1993) ........ 9

*Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*,
559 F.2d 250 (5th Cir. 1977) ........ 12

## Statutes

17 U.S.C. § 1127 ........ 13

## Other Authorities

2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 17:9 at 17-11 (4th ed. 2005) ........ 13

Federal Rule of Civil Procedure 26(b)(1) ........ 15

Federal Rule of Civil Procedure 26(b)(5) ........ 1, 13, 14

Federal Rule of Civil Procedure 37(a)(4)(A) ........ 15

S.D. Fla. L.R. 26.1(G)(3)(c)........................................................................................ 1, 13, 14

Defendant/Counterclaimant Google Inc. ("Google") hereby opposes Stelor Productions, LLC's ("Stelor") Motion for Protective Order as to Privileged Communications with Steven Silvers ("Silvers") and Reconsideration on that Basis of September 11, 2006 Order Granting Google Inc.'s Motion to Compel ("Stelor's Motion"). In addition, Google hereby cross-moves to compel Stelor and Counter-defendant Steven A. Esrig's (the CEO and founder of Stelor)("Esrig") production of communications between Stelor representatives and Silvers regarding the GOOGLES mark. Google also cross-moves to compel Stelor and Esrig to comply with F.R.C.P. 26(b)(5) and S.D. Fla. L.R. 26.1(G)(3)(c) and produce a privilege log that would allow Google to evaluate Stelor and Esrig's privilege claims. Lastly, Google moves to recover costs associated with filing of this motion against Stelor and Esrig.

## I. INTRODUCTION

On September 11, 2006, this Court (1) granted Google Inc.'s Motion to Compel the Production of Documents Responsive to Google Inc.'s First Set of Requests for Production to Steven A. Silvers [DE 118]; and (2) denied Silvers' Motion for Protective Order [DE 119]. In response, Stelor filed a motion seeking a protective order as to privileged communications with Silvers and for reconsideration of the Court's denial of Silvers' motion for protective order.

In its Motion, Stelor appears to take the position that communications between Stelor representatives and Silvers which fell within the scope of the parties' licensing relationship are subject to the work product privilege because such communications were prepared in anticipation of litigation against Google. As an initial matter, it is unclear whether Stelor is claiming that *all* communications between Stelor and Silvers are protected by the work product privilege by virtue of the licensing relationship and/or anticipated litigation against Google since the beginning of that relationship, or whether Stelor's privilege claim extends only to the 132 documents identified in its single-entry privilege log (which was produced to Google for the first time when Stelor filed its Motion). In either event, Stelor's position is legally flawed, unsupported by its written agreements with Silvers, and contrary to representations it has

previously made to this Court about the nature of Silvers and Stelor's relationship. Accordingly, Stelor's Motion should be denied.

For the same reasons, Stelor and Esrig should be compelled to produce all non-privileged communications between Stelor representatives and Silvers, and ordered to produce a privilege log to Google identifying each individual document, in compliance with the Federal Rules of Civil Procedure and Local Rules. Google respectfully requests that it be permitted to file a motion challenging Stelor's claims of privilege, if necessary, once Google has had an opportunity to evaluate Stelor's privilege log. Lastly, Google should be awarded its costs of bringing this motion against Stelor and Esrig.

## II. BACKGROUND

In June 2002, Silvers and Stelor entered into a License, Distribution and Manufacturing Agreement and Consulting Agreement (collectively, the "License Agreement") (*see* Exhibits A and B attached to Stelor's Motion) pertaining to Silvers' Googles intellectual property.

**Stelor's First Lawsuit Against Silvers for Alleged Breach of the License Agreement**

Two years later, on October 18, 2004, Stelor brought an action against Silvers in this Court for alleged breaches of the License Agreement. In that action, styled *Stelor Productions, Inc. v. Steven A. Silvers*, Case No. 04-80954-Civ-Hurley (S.D. Fla.), Stelor claimed that Silvers breached the License Agreement by, among other things, interfering with Stelor's efforts to enforce the alleged intellectual property rights in the GOOGLES mark. *See* Stelor's Complaint for Injunctive, Declaratory and Other Relief, attached as Exhibit 1 to the Declaration of Johanna Calabria filed herewith ("Calabria Decl.").

In its Complaint, Stelor claimed that Silvers "unilaterally" and "without authorization from Stelor" instructed the United States Patent & Trademark Office ("USPTO") to send all correspondence related to the GOOGLES marks to Silvers instead of Stelor's attorneys. Stelor claimed that Silvers' actions were in violation of Stelor's "sole right, power, and duty to deal with

the USPTO" regarding the GOOGLES marks and were "***not authorized under his limited role as a creative consultant and violate the parties' agreement***." (emphasis added). Calabria Decl. Exh. 1 at p. 12, ¶ 28(a). Stelor further alleged that Silvers breached the License Agreement by "instruct[ing] Stelor's counsel to take no action in the proceeding brought by [Google] …at the TTAB to cancel the registration for [the GOOGLES mark]" and that Silvers had "***indicated to Stelor that he intends to defend the cancellation proceeding himself, although the License Agreement gives Stelor the sole right to do so***." (emphasis added) Calabria Decl. Exh. 1 at p. 14, ¶ 28(e).

In support of its contention that Silvers violated the License Agreement by interfering with Stelor's control over litigation against Google, Stelor filed with this Court a number of communications between Silvers and representatives of Stelor indicating that the parties were never in agreement over joint litigation against Google. For example, a letter dated October 5, 2004 from Silvers to Stelor's counsel was attached as an exhibit to Stelor's Memorandum of Points and Authorities in support of its Emergency Motion for Preliminary Injunction. In that letter, Silvers wrote:

> I was NEVER informed about any legal action being planned against Google.com. As a matter of fact, Mr. Esrig told me the opposite all along. … Next thing I learn is Stelor sued Google.com without me, as the Licensor, ever being consulted nor asked about my opinion…. [I]t certainly now is more apparent than ever that Stelor and Silvers now have severe 'conflict of interest' issues.

Calabria Decl. Exh. 2 at Exhibit 5, p. 5, ¶ 10. Indeed, Silvers retained separate counsel in response to Stelor's actions who demanded on Silvers' behalf that Stelor "immediately dismiss [proceedings] against Google and advise Google that this action was not authorized by [Silvers.]" See Calabria Decl. Exh. 3 at Exhibit A, filed by Stelor in support of Stelor's Opposition to Silvers' Mmotion to Strike "Emergency" Label of Stelor's Motion for Preliminary Injunction.

According to Stelor—at least in that litigation—Silvers' tireless urging to pursue legal action against Google was one of the ways in which Silvers interfered with Stelor's rights under the License Agreement. For example, Stelor cited to a March 1, 2004, letter from Silvers to Esrig—attached as an exhibit to Stelor's Request to Reconsider and Vacate the Court's Order Denying Emergency Status for Stelor's Motion for Preliminary Injunction—wherein Silvers exhorted Stelor to sue Google and sets forth his legal position regarding same. *See* Calabria Decl. Exh. 4. In another one of its submissions to this Court, Stelor argued:

> Also indicative of Silvers' desire to engage in legal actions against Google relative to his trademark registration are the countless emails and letters sent by him to Stelor before, during, and after Stelor's inception. Stelor is in possession of in excess of 100 emails and letters wherein Silvers, at a minimum, discusses litigation against Google Inc., and in some cases all-out demands that Stelor take immediate legal action. In those emails, [Silvers] prods Stelor to 'sue these bastards now' (July 27, 2003) [Exhibit B to Stelor's Reply Memorandum] and 'bring them [Google Inc.] down or better yet put the fear of God in them' only after railing against Google's founders stating 'I hate looking at the cover of Time Mag with those two yuppies gloating like the[y] are' (April 15, 2004)." [Exhibit C to Stelor's Reply Memorandum].

Calabria Decl. Exh. 6 at p. 3 and Exhibits B and C attached thereto. Rather than share in Silvers' "common interest," Stelor's CEO submitted a declaration under oath stating that that these kinds of communications from Silvers were an interference in Stelor's sole right to enforce intellectual property rights relating to the GOOGLES mark. *See* Exhibit F attached to Stelor's Reply to Silvers' Memorandum in Opposition to Stelor's Motion for Preliminary Injunction, attached to the Calabria Declaration as Exhibit. 5.

**Silvers Terminates the License Agreement**

On November 12, 2004, Silvers gave Stelor written notice of default for Stelor's alleged failures to abide by the License Agreement's compensation requirements. *See* Calabria Decl. Exh. 7. By letter dated January 13, 2005, Silvers terminated the License Agreement. *See* Calabria Decl. Exh. 8.

On January 28, 2005, Silvers and Stelor entered into a Confidential Settlement Agreement ("Settlement Agreement") (*see* Calabria Decl. Exh. 9)[1] in which Stelor dismissed its claims against Silvers and Silvers agreed to withdraw his termination of the License Agreement.

Three months later, on April 27, 2005, Silvers again terminated the License Agreement for Stelor's alleged failure to cure all alleged defaults. *See* Calabria Decl. Exh. 10.

On May 4, 2005, in an action styled *Stelor Productions LLC, f/k/a Stelor Productions, Inc. v. Steven A. Silvers*, Case No. 05-80393-Civ-Hurley (S.D. Fla.), Stelor again sued Silvers in this Court for alleged breach of the License Agreement, and for alleged breach of the Settlement Agreement. *See* Verified Complaint, attached as Exhibit 11 to the Calabria Declaration.

**Silvers Sues Google, and Stelor Files Cross-Claims Against Silvers**

The next day, on May 5, 2005, Silvers filed the instant action against Google alleging trademark infringement and unfair competition under a theory of "reverse confusion."[2] On August 8, 2005, Google filed a Counterclaim against Silvers, Stelor and Esrig for trademark infringement and unfair competition. [DE 5] Stelor filed a Cross-Claim against Silvers on September 9, 2005 [DE 14], which was amended on November 14, 2005. [DE 49] The Amended Cross-Claim contains essentially the same allegations of breach of contract as Stelor's two previous lawsuits against Silvers. [DE 49] In addition, Stelor filed a Counterclaim against Google alleging trademark infringement and unfair competition. [DE 49]

On August 23, 2005, Stelor requested a transfer and consolidation with this action of its action against Mr. Silvers. [DE 9] However, the request was denied as moot on October 19, 2005 [DE 32] following Judge Hurley's dismissal without prejudice and closing of the related case on October 5, 2005. [Case No. 05-80393-CIV-HURLEY-DE 80].

---

[1] Silvers and Stelor apparently intended the Settlement Agreement to remain confidential. However, both parties have attached the Settlement Agreement as an exhibit to pleadings filed with this Court.

[2] Silvers amended the Complaint on October 11, 2005. [DE 29]

On February 6, 2006, the Court granted Google's motion to bifurcate the discovery and trial of this case. [DE 68] Additionally, on February 27, 2006, the Court denied Silvers' Motion to Dismiss Stelor's Amended Cross-Claim. [DE 71] In its Order, the Court determined that, since it had already bifurcated the discovery and trial in this case, "the contact issues raised in the Cross-Claim can be efficiently resolved with the ownership issues during the first phase of this litigation." [DE 71 at 10]

**Silvers and Stelor Fail to Comply with Google's Phase I-Related Discovery Requests**

Following the Court's Orders regarding the scope of the first trial, Google served its First Set of Document Requests ("RFPs") on Stelor Productions.[3] *See* Calabria Decl. Exh. 12. The RFPs seek documents or things relating to whether and to what extent Stelor has used the "GOOGLES" trademark in a manner that could support the GOOGLES registration and, in particular that bear on whether or not the Section 8/15 affidavits filed to maintain the registration were truthful.

Stelor responded to the RFPs on June 2, 2006 (*see* Calabria Decl. Exh. 12), but did not produce a single document until August 9, 2006. Calabria Decl. ¶ 18.[4] Stelor's production remains deficient as detailed herein, and Stelor has refused to produce these documents despite repeated requests from Google. In particular, Stelor has failed to produce the following relevant classes of documents:

(a) Documents concerning Google, Inc. (RFPs 69-71);

(b) Documents concerning Silvers' alleged interference with Stelor's alleged efforts to promote the marks (RFPs 82-83; 85-88);

---

[3] Google also served Silvers with Requests for Production which sought documents concerning communications between Stelor representatives and Silvers related to the GOOGLES mark. Google filed a motion to compel, which the Court granted on September 11, 2006. [DE 118]

[4] Stelor continued to produce responsive documents after its 30(b)(6) deposition and even after the close of fact discovery. In fact, Stelor recently produced approximately 700 more pages of responsive documents. Calabria Decl. ¶ 19.

(c) Communications between Silvers (including Silvers' prior counsel) and Stelor (RFPs 38-39, 61-62, 85-86). *See* Calabria Decl. Exh. 14, setting forth Google's document requests and Stelor's responses.

Stelor and Esrig have refused to produce these documents and, as is evident by the instant Motion challenging the Court's September 11, 2006 Orders, have no intention of doing so. Stelor's apparent basis for withholding production of all communications between Silvers and Stelor is that all such communications are subject to a joint defense privilege between Silvers and Stelor.

Google's Cross-Motion is filed in good faith and not for purposes of delay. In addition, the undersigned certifies that a good faith attempt to resolve these issues has been made prior to filing the instant Motion.

## III. STELOR'S MOTION SHOULD BE DENIED

### A. The September 11, 2006 Order Compels Production Of All Non-Privileged Communications Between Stelor And Silvers Related To The GOOGLES Mark

Aside from the License Agreement itself and a handful of documents evidencing negotiations over that agreement, neither Stelor nor Silvers have produced to Google *any* communications between them related to the GOOGLES mark in spite of the Court's September 11, 2006, Orders. Stelor's single-entry privilege log (attached as Exhibit D to Stelor's Motion) purportedly identifies 132 privileged communications, though it is beyond dispute that there are many more documents evidencing communications between Silvers and Stelor regarding the GOOGLES mark. Correspondence from Silvers' counsel confirms that email communications between Stelor and Silvers are "voluminous." *See* Calabria Decl. Exh. 15. Esrig testified during his deposition that Stelor had copies of "hundreds and hundreds" of emails from Silvers. *See* Calabria Decl. Exh. 16 at 43:19:23. In fact, in its Motion, Stelor characterized Silvers' and

Stelor's relationship as "highly detailed" and "scrupulously documented." Stelor Mot. at 5. Yet none of these emails has been produced to Google.

**B. Stelor's Interpretation Of The Work Product Privilege Is Overreaching**

In its Motion, Stelor appears to take the position that communications between Stelor representatives and Silvers which fell within the scope of the parties' licensing relationship are subject to the work product privilege because such communications—apparently *all* such communications—were prepared in anticipation of litigation against Google. Stelor points to the License Agreement, the Consulting Agreement, and the Joint Privilege Agreement as confirmation of Silvers' and Stelor's common interest and argues that Silvers' role as a consultant under these agreements "for the express purpose of enforcing and perfecting the rights to the intellectual property in the Googles name" gave rise to a common interest privilege. Stelor Mot. at 6. In addition, Stelor cites case law for the proposition that a common interest privilege can arise from an agency relationship, implying that such a relationship existed between Stelor and Silvers. To the extent Stelor is claiming that *all* communications between Stelor representatives and Silvers are privileged by virtue of the licensing relationship, Stelor's position lacks merit.

**1. The License Agreement alone did not give rise to a common interest privilege.**

The mere fact that a licensing relationship exists does not create a work product privilege. The "common interest doctrine applies to any parties who have a 'common interest' in current or potential litigation, either as actual or potential plaintiffs or defendants. To maintain the privilege, the common interest must relate to a litigation interest, and not merely a common business interest." *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001) (internal citations omitted). Simply sharing some economic motivation is insufficient; the parties must share a common legal interest for the privilege to apply. *SCM Corp. c. Xerox Corp.*, 70 F.R.D. 508, 513 (D. Con.. 1976) (holding that although "the overall profitability of the joint enterprise was a general consideration in which both parties' interests converged [this] does not

lessen the significance of their divergent interests. Their interests regarding antitrust considerations were not sufficiently common to justify extending the protection of the attorney-client privilege to their discussions.").

Nor does the language in the License Agreement or Consulting Agreement lend support to Stelor's position. To the contrary, Paragraph 2 of the Consulting Agreement—titled "Relationship of the Parties"—expressly states that "[n]othing in this Agreement shall be construed to ... constitute the parties as principal and agent." Consulting Agreement ¶ 2 (attached as Exhibit B to Stelor's Motion). Indeed, the License Agreement states that it is exclusive even as to Silvers, and Stelor's position in this and previous litigation has been that the License Agreement gave Stelor exclusive discretion and control over the enforcement of any purported intellectual property rights as to third parties.

**2. Stelor represented to this Court that it never shared a common interest with Silvers in enforcing intellectual property rights under the License Agreement.**

Stelor cannot credibly claim that it *ever* shared a common legal interest with Silvers in enforcing any purported rights in the GOOGLES marks in light of its prior representations to this Court about the adverse nature of its relationship with Silvers. Because there was never a common interest between Silvers and Stelor as to enforcement of rights as to third parties, the communications between them should be produced. *See Vermont Gas Sys., Inc. v. U.S. Fidelity & Guar. Co.*, 151 F.R.D. 268, 277 (D. Vt. 1993) (holding that where there is an adversarial relationship between insured and insurer as to existence of coverage, the parties never shared litigation counsel or strategy, and documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by the parties, common interest did not exist); *In re Rivastigmine Patent Litig.*, No. 05 MD 1661 (HB/JCF), 2005 WL 2319005, at * 4 (S.D.N.Y. Sept. 22, 2005), *aff'd* 2005 WL 3159665 (S.D.N.Y. Nov. 22, 2005) (the common

interest doctrine applies "insofar as [the parties'] interests were in fact identical; communications relating to matters as to which they held opposing interests would lose any privilege.").

Stelor previously told this Court that Silvers was "not authorized under his limited role as a creative consultant" to have communications with the USPTO regarding the GOOGLES marks because Stelor had the "sole right, power, and duty to deal with the USPTO" under the License Agreement. *See* Calabria Decl. Exh. 1. In fact, Stelor maintained that the License Agreement gave Stelor the "sole right" to defend cancellation proceedings against Google in spite of Silvers' indication to Stelor that he intended to defend such proceedings himself. *Id.* Likewise, according to Stelor, Silvers' attempt to instruct Stelor's counsel regarding litigation against Google was in violation of the License Agreement. *Id.* Indeed, Stelor viewed Silvers' "countless emails and letters" to Stelor—the same ones it now claims are privileged—as a nuisance and a breach of the License Agreement, not as a shared common legal interest. Calabria Decl. Exh. 6. This kind of wrangling over enforcement of rights as to third parties hardly reflects a common legal interest between Silvers and Stelor.

Silvers' contemporaneous communications confirm that he did not share a common legal interest with Stelor over enforcement of the GOOGLES marks. Before any litigation even began between Silvers and Stelor, Silvers wrote that he was "never informed about any legal action being planned against [Google]," that Esrig told him "the opposite all along," and that Stelor brought legal action against Google without Silvers "ever being consulted [or] asked about [his] opinion." Calabria Decl. Exh. 2. Silvers even went so far as to demand that Stelor dismiss proceedings against Google and advise Google that the action was not authorized by Silvers. Calabria Decl. Exh. 3. Accordingly, no common interest ever existed between Silvers and Stelor as to enforcement of rights in the Googles marks.

**C. Even If There Was A Common Legal Interest At The Inception Of The Licensing Relationship, It Was Destroyed When Silvers And Stelor Became Adverse**

As is evident from Stelor's pleadings in the prior litigation, Stelor and Silvers were at odds—and still are at odds—as to who is the proper litigant against third parties. Even if Silvers and Stelor shared a common interest with respect to enforcement of rights in the GOOGLES marks against third parties (they did not), any common interest was destroyed when Stelor sued Silvers over that right. The common interest privilege dissolves "when the two parties having the original common interest become adversaries." *In re Benun*, 339 B.R. 115, 127-28 (Bankr. D.N.J. 2006); *see also Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 295 (N.D. Ill. 2005) (holding that an "exception to the assertion of the common interest privilege exists when the participants in the common interest become adverse to each other in litigation."); *Ageloff v. Noranda, Inc.*, 936 F. Supp. 72, 76 (D.R.I. 1996) (describing this law as "well-settled").

Curiously, the Joint Defense Agreement (produced to Google for the first time attached as Exhibit C to Stelor's Motion) was memorialized in September 2004, one month before Stelor sued Silvers for breach of the License Agreement and two months before Silvers notified Stelor of his intention to terminate that Agreement. The timing of the Joint Defense Agreement, as well as Silvers' and Stelor's attempt to contract around waiver of the joint defense privilege in the event of adversity between them, indicates that Silvers and Stelor intended this agreement to shield their past differences from third parties, a goal which is unsupported by the common interest doctrine.

Google is unaware of any case law supporting the proposition that parties may contract away the waiver of attorney-client privilege that results from their direct adversity. Adverse parties may, at most, form some common interest in settlement, but not in the underlying dispute itself, since by definition their legal positions are not in accord. *See, e.g., Akamai Techs, Inc. v. Digital Island, Inc.*, No. C-00-3508 CW(JCS), 2002 WL 1285126, at * 9 (N.D. Cal. May 30,

2002) (denying motion to compel based on alleged waiver of privilege resulting from counsel's provision of a privileged memorandum discussing the availability of damages).

The Joint Defense Agreement between Silvers and Stelor is atypical of most joint defense agreements, which provide that no party may waive the privilege without the consent of all parties. Instead, the Joint Defense Agreement here attempts to make Silvers' and Stelor's litigation, as a whole, a "private" matter from third parties; this reverses the typical scope of such agreements, which limits only parties to the agreement. As such, the Silvers-Stelor Agreement does not appear to fall within the public policy concern underlying the common interest doctrine, which seeks to encourage co-defendants or co-plaintiffs to share information and resources in support of a common legal position. Instead, Stelor merely seeks to shield its past differences with Silvers from discovery. Stelor should not be permitted to distort the law by using the privilege as both a shield and a sword at Stelor's convenience.

None of the cases cited by Stelor supports its claim of privilege under the circumstances here. Instead, these cases address attorney disqualifications resulting from joint defenses, which is not at issue here. *See Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977) (holding that an attorney could not proceed against a codefendant where confidential information was exchanged between the various codefendants in preparation of a joint defense); *Old Tampa Bay Enters., Inc. v. Gen. Elec. Co.*, 745 So. 2d 517, 518 (Fla. Dist. Ct. App. 1999) (same). Likewise, *In re LTV Securities Litigation*, 89 F.R.D. 595, 605 (N.D. Tex. 1981), stands for the unremarkable proposition that disclosure of company materials to its auditor and to a "Special Officer" appointed by the corporation to implement a consent decree with the SEC did not dissolve the "common interest" privilege between the company and its auditor, who shared a common interest in defending themselves against a shareholder's derivative suit. This case did not address the instant situation where, as here, Stelor disclosed some of the purportedly privileged communications in the context of litigation against Silvers.

## IV. STELOR SHOULD BE COMPELLED TO PRODUCE DOCUMENTS AND A PRIVILEGE LOG THAT COMPLIES WITH THE RULES

Google has requested from Stelor the same category of documents it requested from Silvers, which this Court has ordered Silvers to produce. Additionally, Stelor has produced a single-entry privilege log which purports to set forth the basis for Stelor's claim of privilege as to 132 separate documents. Google is unable to determine whether Stelor's privilege claims are appropriate because Stelor's privilege log does not comply with the applicable rules. Accordingly, Stelor should be ordered to produce all non-privileged communications between Silvers and Stelor representatives in accordance with this Court's ruling on Stelor's Motion. Stelor should also be order to comply with Fed. R. Civ. P. 26(b)(5) and S.D. Fla. L.R. 26.1(G)(3)(c) and produce a privilege log reflecting separate entries for each document withheld on privilege grounds.

### A. Stelor Should Be Compelled To Produce Communications Between Stelor Representatives And Silvers Relating To The GOOGLES Mark

This Court has already ruled that the communications between Silvers and Stelor related to the GOOGLES mark are relevant to Phase I and should be produced. [DE 118] Indeed, Google has repeatedly requested and attempted to obtain, without court intervention, documents that are relevant to the issue of whether and to what extent Stelor has made a *bona fide* use in commerce of a GOOGLES mark. In particular, Google seeks communications between Silvers and Stelor to determine whether Silvers and Stelor merely intended to preserve rights in the GOOGLES mark as a way to sue Google. *See* 17 U.S.C. § 1127 (definition of "use in commerce"); *see also* 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 17:9 at 17-11 (4th ed. 2005) ("It is actual usage of a symbol as a 'trademark' in the sale of goods which creates and builds up rights in a mark. Therefore, lack of actual usage of a symbol as a 'trademark' can result in a loss of legal rights.) Such evidence is directly relevant to the enforceability of the GOOGLES registration, as well as the contract dispute between

Silvers and Stelor, issues which are within the scope of Phase I. Accordingly, Stelor should be compelled to produce these communications.

**B. Stelor Should Be Ordered To Comply With FRCP 26(b)(5) and S.D.Fla. LR 26.1(G)(3)(c) And Produce An Adequate Privilege Log**

Rule 26(b)(5) requires a party claiming privilege to "make the claim expressly and [] describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). Compliance with this rule is accomplished "by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (citation comitted); *see also* S.D. Fla. L.R. 26.1(G)(3)(c).

Stelor has failed to provide a privilege log in accordance with the applicable rules, and has claimed it need not do so. As Appendix D to Stelor's Motion, Stelor submitted a privilege log that "is general in nature due to the volume of the documents." Stelor Mot. at 4. The log consists of one entry, claiming both attorney-client and work-product privilege, for 132 emails "exchanged between Steven Silvers and Steve Esrig that involved or discussed legal related issues with respect to various intellectual properties and the subject matter of the agreements between the parties" between "November 2001 and December 2004." Stelor Mot. Exh. D. Stelor's submission flies in the face of the Federal Rules.

Stelor's position that it need to produce a more detailed log "due to the volume of the documents" is belied by its submission of a privilege log on behalf of third-party Ira C. Edell, Stelor's former counsel and the lawyer who filed the Section 8 & 15 Affidavit. See Calabria Decl. Exh. 16. The Edell privilege log contains almost individual 100 entries, each specifying the date, author and recipient, and general subject matter of the communication, as well as the

basis for the assertion of privilege. Stelor's refusal to provide an appropriate privilege log with respect to its communications with Silvers is nothing short of gamesmanship and in bad faith.

## V. GOOGLE SHOULD BE AWARDED COSTS FOR BRINGING THIS MOTION

The Federal Rule of Civil Procedure provide that a party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ." Fed. R. Civ. P. 26(b)(1). If the "motion is granted or if the disclosure or requested in discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require [the producing party] to pay to the moving party the reasonable expenses incurred in making the motion, including attorneys' fees, unless the court finds that the motion was filed without the movants first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4)(A).

Here, there can be no substantial justification for Stelor's failure to produce documents which the Court has already determined are subject to discovery. Even if Stelor is correct (and it is not) that some of its communications with Silvers are privileged, the rest of those "countless" communications should have been produced long ago. Nor is there any substantial justification for Stelor's failure to produce a privilege log in compliance with the rules. To the contrary, the circumstances here justify an award of expenses related to this motion.

## VI. CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court enter and Order denying Stelor's Motion for Protective Order as to Privileged Communications with Steven Silvers and Reconsideration on that Basis of September 11, 2006 Order Granting Google Inc.'s Motion to Compel, and granting Google's Cross-Motion to Compel, together with such other and further relief as this Court deems just and proper.

Dated: October 2, 2006.

Respectfully submitted,

Stephen C. [signature] Fla. Bar No. 191582
for Samantha Tesser Haimo

Jan Douglas Atlas, Esq.
Florida Bar No. 226246
jda@adorno.com
Samantha Tesser Haimo, Esq.
Florida Bar No. 0148016
stesser@adorno.com
**ADORNO & YOSS LLP**
350 East Las Olas Boulevard, Ste. 1700
Fort Lauderdale, FL 33301
Telephone : (954) 763-1200
Facsimile: (954) 766-7800

**PERKINS COIE LLP**
Ramsey M. Al-Salam, Esq.
Washington Bar. No. 18822
ralsalam@perkinscoie.com
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: (206) 359-6338
Facsimile: - (206) 359-7338

Johanna Calabria, Esq.
California Bar No. 226222
jcalabria@perkinscoie.com
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Case No. 05-80387-CIV (Ryskamp/Vitunac)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by e-mail and mail on this 2nd day of October, 2006 on the addressee(s) listed on the attached service list.

Florida Bar No. 191582
For Samantha Tesser Haimo

Case No. 05-80387-CIV (Ryskamp/Vitunac)

**SERVICE LIST**

Kevin C. Kaplan, Esq.
kkaplan@bwskb.com
**BURLINGTON, SCHWIEP, KAPLAN & BLONSKY, P.A.**
2699 South Bayshore Drive
Miami, FL 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

Steven A. Silvers
Suite 202 – PMB 203
8983 Okeechobee Boulevard
West Palm Beach, Florida 33411
Tel: 954-4445-6788
Fax: 561-784-9959
E-mail: gewrue@hotmail.com