with Stelor's ongoing business dealings surrounding the Googles' project as it relates to children. However, in the second clause it gives the rights to make available to Stelor, on a "right of first refusal" basis other projects that I may create or develop by myself or with other third parties or that I may acquire or joint venture with other third parties, which shall be presented to Stelor and within 120 days Stelor shall either accept or reject such other projects presented by me. However, the agreement doesn't clarify what rights Silvers may have in the event that Stelor shall decline to participate in any of the Intellectual Properties presented to Stelor for which it chooses to reject or decline nor does it stipulate in the event that Stelor decides to accept, under what terms and conditions and how long Stelor may have to develop and bring to market such other Intellectual Properties presented to them by me. These two clauses are at best ambiguous; thus in need of clarification.

I shall be seeking the following clarification. In the event that I bring to Stelor a project that I have either developed or joint ventured with another party, or that I shall represent on behalf of another party, and within 120 days of such formal presentation, Stelor is unable to fund, market, develop and bring to market said project within a reasonable period of time thereafter, not to exceed six (6) months from time of introduction to complete the contractual phase of the project with certain performance caveats then Stelor shall agree that I shall have the right to take the project elsewhere without owing Stelor any further obligation. This goes for any and all projects whether they are related to preschool children or older children.

    2). I would further like a clarification as to the clause in my Consulting Agreement noted at: [Number 2. Relationship of Parties….wherein it stipulates that "during the term of this agreement, Licensor shall not initiate or maintain any relationship or conversations with Licensee's current or prospective clients, vendors, any company relationships with the media (press etc.) without prior express written request by Licensee"]. I maintain that I have previously had both business and personal relationships with several of Stelor's current clients and vendors, prior to the execution of both the existing

-5-

Dockets.Justia.com

Consulting and Licensing Agreements with Stelor. These relationships should not be part and partial to this clause or at best, should I choose to communicate with any of these relationships on a personal basis whether in person or via other current means of communication that I shall not be prevented from doing so. It is hard to conceive that such a "gag order" would be enforceable given the circumstances of this issue. All I'm requesting is a clarification of this clause so that I may continue to maintain my personal relationships with those individuals that could be construed as current vendors or clients of Stelor without further fearing retaliation by Stelor for my doing so. This seems ludicrous, at best, especially in view of the fact that I have been granted, by Stelor, the title of "Executive Creative Consultant" according to the existing Consulting Agreement and as such I am being granted the ability to offer my creative input to the Stelor and thus I should not be prevented from having conversations with those directly and/or indirectly involved with the creative process in bringing to market the successful launching of the "Googles from Goo" intellectual property. It should be duly noted that this caveat is also listed in Mr. Silvers Licensing Agreement at: [page 5, at VIII. E]. I shall agree that my conversations with such entities covered by this clause be strictly related to personal and unrelated Googles business unless otherwise authorized.

4). I would also like a further clarification as to the clause in my existing Licensing Agreement noted at: [page 7, Indemnity clause, at letter C.], wherein it clearly stipulates that I shall have the express right, in the event that Stelor shall decline to pursue upon notice by me, to properly protect and defend against other such third parties or entities, any trademark, patent, or any other intellectual property rights afforded me in order to protect my intellectual property known as the Googles from such other violators. It seems clear that according to this clause that I shall have the right, at my "sole expense to defend if necessary, or file suit if desired, made by or filed against another party...." Thus, should I inform Stelor of a concern that I may have surrounding the proper protection of his intellectual property rights, and should Stelor decline to institute such proceedings against such third party or parties, then I, at my sole expense, shall have the right to defend and pursue such claims and/or suits.

-6-

It has been brought to my attention that Stelor does not share the same legal view in this regard. Thus the need for a clarification of this issue as well. I shall agree that should I decide to bring suit against any third party or other entity that may become or shall threaten the existence of the Googles' intellectual property and all of its surrounding rights, that I will timely inform the Board of my intentions and in the event Stelor is not able nor interested in pursuing such litigation, then Stelor shall waive all rights to same and shall have no further obligation to fund such litigation. However, in the event that Stelor shall inform me of it's intentions to move forward with such litigation within a reasonable period of time, then I shall respect Stelor's position and either try and work something mutually agreeable between all parties concerned or in the event there is a favorable judgment and outcome of such litigation then Silvers shall agree to provide Stelor, after all reasonable expenses have been allocated, a participation, to be shared with all of it's shareholders, of 20% of my net proceeds of any such litigation.

5).     I would like an updated clarification as to the status of the pending trademark filings and applications that have or should have been perfected on my behalf and I am further seeking copies of all such filings for my records and for which I believe I am entitled to with an understanding by Stelor that any and all future filings should be copied and immediately forwarded to me for my review and input.

As the Licensor of the Googles from Goo intellectual property, I believe that I am entitled to copies of any and all legal documents executed on my behalf by Stelor in a timely fashion. To date, I've received no such copies.

6).     According to my existing Consulting Agreement, Stelor has agreed to provide me with health insurance coverage during the term of my Agreement. The clause reads at [page 1 of said Consulting Agreement, at number 1.b.] that: "Company will continue to reimburse The Aurora Collection, Inc. for the existing health plan if available, or if not available, will reimburse consultant $300.00 per month during the term of this Agreement." I am questioning why, if the "existing health plan is still being made available by Aurora" that I have had to pay an

-7-

assessed increase of $144.00 each month when it clearly stipulates in the agreement that Stelor shall reimburse the Aurora Collection for the existing health plan if available during the term of this agreement? Why have I had to allocate each month for the past eleven (11) months now, the sum of $144.00 when clearly I shouldn't have had to do so? I am seeking reimbursement of all such funds that I've laid out and for which I clearly should not have had to do so and for the remainder of the Agreement that Stelor will take care of the full coverage as called for by the Agreement.

7).    Last on this clarification list is the issue of "Reversionary Rights". I have brought to your attention on many occasions, supported by documentation and as clearly noted in our existing Agreements and those executed between Stelor and Aurora the highly sensitive issue of reversionary rights, when and if there is a "material" breach found in my favor by a court of competent jurisdiction and as clearly outlined in our Licensing Agreement. However, the issue here is that Stelor has seen fit to grant this right to both myself and Aurora. Thus, clearly creating a conflict. Please note that my Licensing Agreement was executed on May 9, 2002. In this Agreement Stelor granted me "Reversionary Rights" noted therein at:    [page 6, at X. Post Termination Rights, letter C.] wherein it states: "Upon the expiration or "termination" of this Agreement, "all the license rights of Licensee under this Agreement shall forthwith terminate and immediately revert to Licensor and Licensee, except as detailed above in Section (B) of the "Post Termination Rights" Section, shall immediately discontinue all use of the Licensed Property and the like, at no cost whatsoever to Licensor."

Of course this reversionary right only goes into effect if and when a material breach is alleged by me and such is ruled in my favor by a court of competent jurisdiction as the existing Agreement mandates.

However, in an Agreement signed and executed between Stelor and Aurora dated just 14 days after I executed my Licensing Agreement with Stelor, the exact date is May 23, 2002, Stelor proceeded to grant

-8-

Stelor the same "Reversionary Rights" which was otherwise unlawful to do so.

Please note the clause at: [page 6, of the Stelor/Aurora Asset Purchase Agreement, at number 11. Reversionary Rights, wherein it reads as follows: "In the event that Buyer (Stelor) is unwilling or unable to fulfill its financial obligations to Steven A. Silvers under the terms of any of Sellers' (Aurora) agreements with Silvers that are assumed by Buyer as a result of this transaction, Buyer will give written notice to Seller.  If the breach is not cured or waived by Silvers within a reasonable period of time after receiving written notification by Silvers and Seller thereafter assumes such liability to Silvers, all rights assigned herein by Seller to Buyer shall revert back to Seller without obligation by Seller to Buyer.  Buyer shall execute such documents as are necessary to affect the intent of this clause concerning reversionary rights without unreasonable delay."

Accordingly, it seems patently confirmed that these two agreements are in clear conflict with one another and it is my stern position that in the event of an alleged breach between myself and Stelor; for which I should prevail, that my "reversionary rights" clearly supercede those granted to Aurora by Stelor.

I hereby seek clarification as to why these "Reversionary Rights" were granted to Aurora when, in fact, they were granted to me fourteen (14) days prior to the execution of any Agreement with Aurora?

In closing, I would like to reiterate the fact that I prefer not to assert any adversarial position at this time with Stelor.  I only desire what I am entitled to according to the mandates outlined in our Agreements. Nothing more and nothing less.  If after reading and reviewing this letter with your Corporate Counsel, they choose not to advise you to do the right thing as called for and as I've clearly outlined in this lengthy letter, then I am fully prepared to seek a formal breach against Stelor for the many violations I've cited above and we will let the chips fall where they fall.  This is not to be taken as any threat.  I'm tired of all of this anxiety that I've had to endure all of these months and it's time to

-9-

put an end to it once and for all.

I would also state that once you take the "visionary" out of the "vision" you are doomed to fail.

I assure you, if you place me in an "active" role, that I am fully prepared to execute come the first of the year, and place me in charge of the creative process of the project, allowing me to do what I do best, and working with all those you have thus far entrusted, except me, with the creative process and the creative delivery of the project, within (6) months time you will see miracles unfold. I can guarantee this! If you choose to continue to exclude me from the creative process, as has been the case these past 17 months, then the consequences will fall on your shoulders not mine. Either way, I'm fully prepared to act. I hope and trust you choose the former chartered course of action.

In Stelor's response to this letter kindly be specific as to addressing each and every clause as requested by me so that we can have a clear understanding as to Stelor's position regarding the issues outlined above.

Should you care to contact me to discuss this matter further I can be reach at: 954-445-6788, otherwise I shall expect your reply within the next 10 days as I'm leaving to go out of the country on November 15, and I won't be returning until December 25, 2003.

In the event that I don't have your response within the next 10 days as requested, then my options will be limited and I shall proceed accordingly.

-10-

Also, please take notice that my new mailing address has once again changed and you should direct all future correspondence to me at:

Steven A. Silvers
8983 Okeechobee Blvd.
Suite #202, PMB 203
West Palm Beach, FL 33411-1826


Sincerely,

Steven A. Silvers


*This document is being sent in accordance with our Agreement requirements dated May 9, 2002 by way of FedEx (Tracking Number: 842190092180.)

-11-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 04-80954-CIV-HURLEY**

STELOR PRODUCTIONS, INC.,
     plaintiff,

vs.

STEVEN A. SILVERS,
     defendant.
_____/

**CLOSED CASE**

### ORDER OF FINAL DISMISSAL WITHOUT PREJUDICE AND CLOSE-OUT

THIS CAUSE is before the court upon the parties' joint stipulation for dismissal without prejudice filed February 8, 2005. Having considered the stipulation, it is hereby

**ORDERED AND ADJUDGED:**

1. This case is **DISMISSED WITHOUT PREJUDICE,** with each side to bear its own costs and attorneys' fees.

2. There being nothing further for the court to resolve, it is further ordered that the Clerk of the Court shall enter the case as **CLOSED** and terminate all pending motions as **MOOT.**

DONE and SIGNED in Chambers at West Palm Beach, Florida this 1st day of February, 2005.

Daniel T. K. Hurley
United States District Judge

Copies furnished:
Adam T. Rabin, Esq.
Kenneth R. Hartmann, Esq.
Yano Rubinstein, Esq.

FILED by ___MC___ D.C.
ELECTRONIC

**Feb 8 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

STELOR PRODUCTIONS, INC.,                    CASE NO. 04-80954-CIV-HURLEY
a Delaware corporation,                             Magistrate Judge James M. Hopkins

     Plaintiff,

v.

STEVEN A. SILVERS,
a resident of Palm Beach County, Florida

     Defendant.

_____

### JOINT STIPULATION FOR DISMISSAL,
### WITHOUT PREJUDICE, OF ALL CLAIMS

     Plaintiff, Stelor Productions, Inc. and Defendant Steven A. Silvers, hereby jointly stipulate,

pursuant to Fed.R.Civ.P.41(a)(1), to the dismissal, without prejudice, of all claims asserted by each

party against the other party in this action.

     Respectfully submitted,


Adam T. Rabin                              Kenneth R. Hartmann  (FBN: 664286)
DIMOND KAPLAN & ROTHSTEIN, PA              Gail A. McQuilkin  (FBN: 969338)
200 S.E. First Street, Suite 708           KOZYAK TROPIN & THROCKMORTON, PA
Miami, FL 33131                            2525 Ponce de Leon, 9th Floor
T: 305-374-1920                            Coral Gables, Florida 33134
Co-Counsel for Defendant                   T: 305-372-1800 / F: 305-372-3508
                                           Counsel for Defendant


Yano L. Rubinstein, Esq.
SUMMERS RUBINSTEIN
580 California Street, 16th Floor
San Francisco, California 94104
Counsel for Plaintiff

3339/101/249255.1


1 of 1                                                                        49/cj



BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: KKAPLAN@BWSKB.COM    WWW.BWSKB.COM

April 14, 2005

## VIA HAND-DELIVERY

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

   Re: Stelor Productions, Inc. v. Silvers,
     Case No. 04-80954-CIV-HURLEY/HOPKINS

Dear Gail:

   Attached please find the three Stelor checks.

        Sincerely,

        Kevin C. Kaplan

KCK:mjp
Enclosure

**STELOR PRODUCTIONS, INC.**
PO BOX 8000
GAITHERSBURG, MD 20883

2621

CITIBANK, F.S.B.
WASHINGTON, DC 20080-0897
7/2/816-520

03/07/05

PAY TO THE
ORDER OF    Kozyak Tropin & Throckmorton Trust Accoun

$ **2,000.00

Two Thousand and 00/100******************************************************** DOLLARS

Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL  33134

MEMO  TRUST ACCOUNT- Royalty/insurance advanc

⑈00 26 2 1⑈  ⑈05 200 2 166⑈  ⑈⑈ 1 7597 1 05 1⑈

---

**STELOR PRODUCTIONS, INC.**
Kozyak Tropin & Throckmorton Trust Accoun
02/28/05                    Bill #roy

03/07/05

2621

2,000.00

STELOR PRODUCTIONS, INC.
PO BOX 9000
GAITHERSBURG, MD 20885

262

03/07/05

CITIBANK, FSB
WASHINGTON, DC 20086-0867
2-219/520

PAY TO THE
ORDER OF ___ Kozyak Tropin & Throckmorton Trust Accoun

$ **318.00

Three Hundred Eighteen and 00/100**********************************************  DOLLARS

Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL  33134

MEMO  TRUST ACCOUNT Domain name registrations

⑈00262311⑈ ⑆052002169⑆  ⑈1759174050⑈

STELOR PRODUCTIONS, INC.
Kozyak Tropin & Throckmorton Trust Accoun
02/28/05                                              Bill #DOMAIN

2623
318.00

03/07/05



STELOR PRODUCTIONS, INC.

| | |
|---|---|
| Kozyak Tropin & Throckmorton Trust Accoun | |
| 02/28/05 | Bill #INS |
| 03/07/05 | 2622 |
| | 4,000.00 |
| | 4,000.00 |

Citibank Checkin  TRUST ACCOUNT Insurance Reimbursemen

## Kevin C. Kaplan

| | |
|---|---|
| **From:** | GAIL A MCQUILKIN [gam@kttlaw.com] |
| **Sent:** | Sunday, April 17, 2005 4:38 PM |
| ɔ: | Kevin C. Kaplan |
| ᴊubject: | Re: Inc |

Kevin -

  Got the checks.


Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com
>>> "kevin kaplan" <kkaplan@bwskb.com> 04/17/05 4:00 PM >>>
Gail,

I've left you a bunch of messages but haven't heard back. Please confirm you received the
checks, and let me know when you're available for a call tomorrow. Steve has some issues
to discuss. By the way, for efficiency of our ongoing communications, I have no problem
with Steve talking to you directly and authorize you to talk to him directly even if I am
unavailable.

Kevin

*****************************************

ᴋevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
  Kaplan & Blonsky, PA
2699 S. Bayshore Drive, Penthouse
Miami, Florida 33133
Tel:  (305) 858-2900
Fax: (305) 858-5261
kkaplan@bwskb.com

*****************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the
law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or
privileged. The information is intended to be for the use of the individual or entity
named above. If you are not the intended recipient, please immediately delete this e-mail
and be aware that any disclosure, copying, distribution or use of the contents of this
information is prohibited.


Sent wirelessly via BlackBerry from T-Mobile.

**Kevin C. Kaplan**

| | |
|---|---|
| **From:** | GAIL A MCQUILKIN [GAM@kttlaw.com] |
| **Sent:** | Friday, April 08, 2005 10:44 AM |
| **To:** | Kevin C. Kaplan |
| **Subject:** | silvers |

Kevin -

Can you please resolve these pending issues -

Settlement Agreement:

1.  Check for reimbursement of health insurance payments

2. Checks for Feb, March and April advance against royalties for health insurance

3. Reimbursement for domain name renewal costs

4. Options

5. All checks are to be made out to Silvers Entertainment Group. THe check we received for April was made out to Steven Silvers.  Why do we have to keep telling Stelor this?

License Agreement:

1. Royalty statements are due for the 3d and 4th quarter of 2004, and first quarter of 2005.

2. We need to see the Products Liability Insurance has Silvers names as an insured.

3. We need to see all promotional materials Stelor intends to use.

4. Stelor is suppose to place on all materials the phrase "created by Steven A. Silvers."  Stelor persists on placing those words in tiny font and using the phrase "based on a concept created by" rather than "created by" as required.  We went though this once before and Stelor agreed to change it, but still they keep doing it.

5. There are still issues relating to the list of trademarks and domain names, but I will address those with Larry Hefter.

Let me know about all this.

Gail.

5/21/2005

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

**Subject: Re: Silvers royalty advance check**
**Date:** Saturday, April 9, 2005 2:42 PM
**From:** GAIL A MCQUILKIN <gam@kttlaw.com>
**To:** <julie@stelorproductions.com>

Not a problem at all. Let me know about the health insurance. Going forward the
simplist way to do this is to combine the 5k and 1k amounts into one 6k check. In case
you do not know this, these payments are an advance against future royalties. Make sure
you are booking these correctly and keeping track of the amounts so that when royalties
begin to be paid by Stelor they are offset by these amounts. Thanks for your help.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com
>>> "Julie" <julie@stelorproductions.com> 04/09/05 10:17 AM >>>
Gail,

I just got your email at home. I had already left the office for the day
yesterday when you sent your email- I can have the check there on Tuesday
morning - will that be alright? I'll ask Steve about the health insurance.

Thanks for understanding! You have a great weekend yourself!

Regards,

Julie
----- Original Message -----
From: "Gail A. McQuilkin, Esq." <gam@kttlaw.com>
To: "Julie DePue" <julie@stelorproductions.com>
Sent: Friday, April 08, 2005 6:15 PM
Subject: Re: Silvers royalty advance check


No problem, stuff happens. You can send it for Monday delivery. There
should also be a check for $1000 to cover his health care premiums. Ask
Steve if you can send that too. Thanks. Have a good weekend.
-----Original Message-----
From: "Julie DePue" <julie@stelorproductions.com>
Date: Fri, 08 Apr 2005 17:48:42
To:<qmcquilkin@tmo.blackberry.net>
Subject: Silvers royalty advance check

Dear Gail,

  Steve just told me about the error on Silvers check  I am so sorry! Its
completely my fault  I have been sort of put back into the accountants chair
rather abruptly and just went a little too fast through my tasks.

  Id be happy to cut another check and send it Fed Ex Saturday delivery if
you want. Please let me know as soon as you can, and where youd like it
sent.

  Sorry for the trouble,

  Julie DePue

Stelor Productions

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134
(305)372-1800 office
(305)372-3508 fax
gam@kttlaw.com

# Stelor Productions
## Transactions by Vendor
### January through December 2005

05/2005

| Type | Date | Num | Memo | Clr | Amount |
|---|---|---|---|---|---|
| **Kozyak Tropin & Throckmorton, PA.** | | | | | |
| Bill Pmt -Check | 03/07/05 | 2621 | TRUST ACCOUNT- Royalty/Insurance advance | * | 2,000.00 |
| Bill Pmt -Check | 03/07/05 | 2622 | TRUST ACCOUNT Insurance Reimbursement | * | 4,000.00 |
| Bill Pmt -Check | 03/07/05 | 2623 | TRUST ACCOUNT Domain name registrations | * | 318.00 |
| **Silvers Entertainment Group** | | | | | |
| Check | 02/11/05 | 2555 | VOID: Advances Against Future Royalties-Feb05 | ✓ | 0.00 |
| Bill Pmt -Check | 02/28/05 | 2587 | VOID: consulting | ✓ | 0.00 |
| Bill Pmt -Check | 03/08/05 | 2624 | Advance against Royalty, Feb 05 | ✓ | 5,000.00 |
| Bill Pmt -Check | 03/08/05 | 2625 | Advance against Royalty, Mar 05 | ✓ | 5,000.00 |
| Check | 04/08/05 | 2711 | Advance Against Royalties | ** | 5,000.00 |
| Bill Pmt -Check | 04/28/05 | 2751 | Advance Against Royalty April 05 | | 5,000.00 |
| Bill Pmt -Check | 04/28/05 | 2752 | Advance Against Royalty May 05 | | 5,000.00 |
| Bill Pmt -Check | 04/28/05 | 2753 | Royalty/Insurance advance, Apr '05 | | 1,000.00 |
| Bill Pmt -Check | 04/28/05 | 2755 | Royalty/Insurance advance May '05 | | 1,000.00 |
| **Steven A. Silvers** | | | | | |
| Check | 02/01/05 | 2527 | VOID: Advances Against Future Royalties | ✓ | 0.00 |
| Bill Pmt -Check | 04/04/05 | 2685 | VOID: Advances against future royalties | ✓ | 0.00 |
| | | | | | 33,318.00 |

**Kevin C. Kaplan**

**From:**    GAIL A MCQUILKIN [GAM@kttlaw.com]
**Sent:**    Friday, April 22, 2005 1:35 PM
**To:**    Kevin C. Kaplan
**Subject:** audit

Kevin -

The auditor is preparing a letter that will outline the documents and records he will need available at Stelor to do the audit. He needs to schedule the date for his visit. Please give me a date in the next two weeks, other than April 28th and 29th which are not good for him, for the visit. Thanks.

Gail.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com

**Kevin C. Kaplan**

| | |
|---|---|
| **From:** | GAIL A MCQUILKIN [gam@kttlaw.com] |
| **Sent:** | Tuesday, April 26, 2005 8:20 PM |
| **To:** | Kevin C. Kaplan |
| **ıbject:** | Re: Stelor/Silvers/Inc |

Kevin -

    I cannot get into this with you right now.  I assure you I will get back to you and
Stelor by Friday.

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, PA
2525 Ponce de Leon
Coral Gables, FL 33134
(305) 372-1800 office
(305) 372-3508 fax
gam@kttlaw.com
>>> "Kevin C. Kaplan" <kkaplan@bwskb.com> 04/26/05 12:35 PM >>>
Gail,


As we discussed, we were impressed and pleased when we received your recent email




ıs I have advised you, the Stelor information is in my office, and we have been attempting
 ɔ set up a time for you to review it.

******************************************

Kevin C. Kaplan, Esq.

Burlington, Weil, Schwiep,

   Kaplan & Blonsky, PA

2699 S. Bayshore Drive, Penthouse

Miami, Florida 33133

Tel:  (305) 858-2900

Fax: (305) 858-5261

kkaplan@bwskb.com

******************************************

CONFIDENTIALITY NOTE:  This electronic message transmission contains information from the law firm of Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please immediately delete this e-mail and be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

NOV-17-2004(WED) 16:45    GUILD INSURANCE BROKERS    (FAX)204 728 1515    P. 002/002

# AVIVA INSURANCE COMPANY OF CANADA

## CERTIFICATE OF INSURANCE

This is to certify that the following policies have been issued by the Insuring Company and are in full force and effect as of the date of this certificate and in favour of Named Insured:

Team Tools Ltd. and Ultra Media Inc. et al
PO Box 20162
Brandon MB R7A 6Y8

If the insurance provided under the said policy(s) is altered, cancelled or changed in a manner as to affect this certificate of insurance the Insuring Company hereby agrees to give fifteen (15) days written notice of such alteration, change or cancellation to:

Steven A. Silvers & Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, MD 20874
Attention: Julie DePue or Marty Jeffery

| Policy Number | Policy Term | Kind of Insurance or Operations Covered | Limits of Liability or Amount Insured | |
|---|---|---|---|---|
| CMP81108401 | July 1, 2004 to July 1, 2005 | Commercial General Liability | $2,000,000 | Each occurrence limit |
| | | | $2,000,000 | Products-Completed Operations Hazard Aggregate Limit |

Note: Steven A. Silvers and Stelor Productions, Inc. is hereby added as additional insured but only with respect to the vicarious liability of the Named Insured.

Canadian Currency Clause Applies

This document is furnished as a matter of courtesy and only as information of the fact that Policies have been concurrently prepared. It is not a contract, confers no right upon any person and imposes no liability on the insuring company.

AVIVA Insurance Company of Canada

November 17, 2004
Dated

900 - 201 Portage Avenue
Winnipeg, Manitoba R3B 3K6

Authorized Representative
Guild Insurance Brokers Inc.

| ACORD. | CERTIFICATE OF LIABILITY INSURANCE | CSR TT STELO-1 | DATE (MM/DD/YYYY) 04/28/05 |
|---|---|---|---|

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

The Insurance Exchange, Inc.
751 Rockville Pike, #1A
Rockville MD 20852
Phone: 301-279-5500  Fax: 301-424-2829

| INSURED | INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|---|
| | INSURER A: Hartford Fire Insurance Co. | |
| Stelor Productions | INSURER B: | |
| Greg Langford | INSURER C: | |
| 14701 Mockingbird Drive | INSURER D: | |
| Darnestown MD 20874 | INSURER E: | |

**COVERAGES**

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | X | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY | 42SBABW8494 | 04/25/05 | 04/25/06 | EACH OCCURRENCE | $2,000,000 |
| | | ☐ CLAIMS MADE X OCCUR | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300000 |
| | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | PERSONAL & ADV INJURY | $2,000,000 |
| | | | | | | GENERAL AGGREGATE | $4,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY X PRO-JECT ☐ LOC | | | | PRODUCTS - COMP/OP AGG | $4,000,000 |
| A | | **AUTOMOBILE LIABILITY** ANY AUTO | 42SBABW8494 | 04/25/05 | 04/25/06 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | | SCHEDULED AUTOS | | | | | |
| | | X HIRED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | | X NON-OWNED AUTOS | | | | | |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY** | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | ANY AUTO | | | | OTHER THAN EA ACC AUTO ONLY: AGG | $ $ |
| A | | **EXCESS/UMBRELLA LIABILITY** ☐ OCCUR ☐ CLAIMS MADE | 42SBABW8494 | 04/25/05 | 04/25/06 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | AGGREGATE | $ |
| | | | | | | | $ |
| | | DEDUCTIBLE | | | | | $ |
| | | X RETENTION $10,000 | | | | | $ |
| | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | | WC STATU- TORY LIMITS OTH- ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | | **OTHER** | | | | | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS
Certificate holder is additional insured as respects operations by the
insured.

| CERTIFICATE HOLDER | STESTEV | CANCELLATION |
|---|---|---|
| | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __10__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. |
| Steven A. Silvers EMB 203 8983 Okeechobee Blvd., Ste 202 West Palm Beach FL 33411 | | AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08)                                                                 © ACORD CORPORATION 1988

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

STELOR PRODUCTIONS, L.L.C., a            CASE NO. 05-80393-CIV-HURLEY
Delaware corporation, f/k/a STELOR       Magistrate Hopkins
PRODUCTIONS, INC.,

     Plaintiff,

v.

STEVEN A. SILVERS, a Florida resident,

     Defendant,

_____/

### NOTICE OF FILING DECLARATION OF STEVEN A. SILVERS

    Defendant, Steven Silvers, hereby gives notice of filing the Declaration of Steven A. Silvers

in support of his Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction dated

May 20, 2005.

                    Respectfully submitted,

DIMOND, KAPLAN & ROTHSTEIN, P.A.    KOZYAK TROPIN & THROCKMORTON, P.A.
Co-Counsel for Defendant                 Counsel for Defendant
200 S.E. First Street, Suite 708         2525 Ponce de Leon, 9th Floor
Miami, FL 33131                          Coral Gables, Florida 33134
Telephone: (305) 374-1920               Telephone: (305) 372-1800
Adam T. Rabin, Esq.

              By: _____
                 Kenneth R. Hartmann
                 Florida Bar No: 664286
                 Gail M. McQuilkin
                 Florida Bar No. 969338

3339/101/253510.1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was hand-delivered this 20th day of May, 2005, to: Kevin C. Kaplan, Esq., Daniel F. Blonsky, Esq. and David Zack, Esq., Burlington, Weil, Schwiep, Kaplan & Blonsky, P.A., Counsel for Plaintiff, Office in the Grove, Penthouse A, 2699 South Bayshore Drive, Miami, FL 33133.

By: _____

Kenneth R. Hartmann

3339/101/253510.1