Dockets.Justia.com





















Stelor Productions © 2005
The Googles from Goo™ are a creation of Steven A. Silvers



# Exhibit
# J

KOZYAK · TROPIN
THROCKMORTON
ATTORNEYS AT LAW

**Gail A. McQuilkin, Esq.**
gam@kttlaw.com | 305.377.0656

<u>Via e-mail</u>

June 21, 2005

Kevin C. Kaplan, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse A
Miami, Florida 33133

    Re:   <u>Stelor Productions, Inc. v. Steven A. Silvers</u>

Dear Kevin:

    This is in response to your June 21, 2005 letter. As you know, our position is that the Settlement Agreement and License Agreement have been terminated due to Stelor's failure to perform under both. Your letter once again confirms that Stelor did not perform, and is simply another attempt post-termination to cure some but not all of Stelor's breaches. This is not acceptable to Mr. Silvers.

    Your statement about tending checks is wrong. The late checks were never tendered. You sent us *copies* of checks post-termination. Besides, tendering checks post-termination does nothing to cure breaches that occur pre-termination.

    Further, even if the Settlement Agreement were in effect – which it is not because Stelor did not perform -- Stelor is once again trying to impose conditions. There is no requirement that Silvers provide proof of payment for the $1000 royalty advance. It is Silvers' option to take up to $1000 per month against *his* future royalties. And, let me remind you that Silvers has already provide a declaration that he requires the $1000 to cover his health insurance premium payments, despite that he had no obligation to so (another condition you imposed before Stelor would honor its obligations).

    Also, there is no condition on Silvers' right to audit Stelor that his auditor provide Stelor a list of information needed for the audit. The License Agreement states that he is entitled to see all the books and records and all documents and material related to the License Agreement.

    As for the options, we will determine the status of the LLC certificates when we conduct discovery. On the topic of discovery, two weeks ago I offered to have a Rule 26 conference. That offer was met with stone cold silence. I am again offering to hold a

---

Page 2

Rule 26 conference so we can get this matter set for trial on an expedited track (assuming the Court does not dismiss the action). I am available this Friday to hold that conference.

Finally, this is to advise you that the federal discovery rules require that Stelor maintain all electronic documents and communications, including email sent and received. This means that *all* electronic materials must be maintained and preserved to avoid spoliation of evidence.

Sincerely,

Gail A. McQuilkin

3339/101/254634.1

# Exhibit
# K

BURLINGTON · WEIL · SCHWIEP · KAPLAN (&) BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM    WWW.BWSKB.COM

June 24, 2005

**VIA E-MAIL**

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

      Re:    Silvers/Stelor

Dear Gail:

      I write in response to your letter dated June 21, 2005. First, please be advised that the letter was apparently not emailed to me until 2:48 p.m. on Wednesday, June 22, 2005. A copy of the email I received is attached.

      With respect to the substance of your letter, we take issue with your attempt to misconstrue our letter of June 21st as confirmation "that Stelor did not perform". Stelor has fully performed its obligations under the Agreements, and our letter in no way states otherwise. Indeed, as a fair reading of our June 21st letter and its enclosures demonstrates, it was sent as part of Stelor's efforts to continue to comply with the Agreements, notwithstanding Mr. Silvers' ongoing disregard for those Agreements. Stelor's efforts in continuing to comply do not mean that Stelor previously failed to comply.

      To the extent your letter suggests that Stelor has cured some, "but not all of [its] breaches", please advise immediately in writing what breaches you contend remain uncured. Stelor is unaware of and disputes that any breaches exists, but Stelor will continue to make every reasonable effort to ensure that all obligations under the Agreements are discharged.

      With respect to the $1000 payment pursuant to paragraph 10(b) of the Settlement Agreement, your reading of the provision ignores the plain language of the paragraph. The payment is to be "equivalent to that amount required by Silvers to maintain his insurance coverage". Unlike paragraph 10(a), paragraph 10(b) includes no time provision for the payment. Paragraph 10(c), though, expressly provides that the payments for such insurance "will be provided to Silvers within 15 days of Stelor receiving evidence of paid premiums." That language does not allow Silvers simply to decide how much he wants, but instead requires him to provide evidence of paid premiums. The requirement is not difficult to satisfy. Silvers need only forward a cancelled check or a statement or invoice for the insurance premium. Rather than attempting to re-write the Agreement, Silvers should simply comply.

Gail A. McQuilkin, Esq.
June 24, 2005
Page 2

With respect to the audit, you were the one who expressly committed to providing us a letter listing the information needed for the audit. In doing so, you clearly recognized that some advance indication of the required information was appropriate, and you committed to providing it. We are simply asking you to stand by your commitment. If you are now changing your position, and want to proceed with an audit without any advance assembly of information, then say so. In fact, what your letter really says – coupled with the inconsistent positions you have taken on the audit in the past (asking that it be scheduled, then deferring it, then advising that a letter would be provided itemizing the required documents, and then terminating the agreement for failing to provide dates before the time frame you yourself suggested) – is that Silvers has no intention of proceeding with an audit, and probably never intended to in the past. Silvers is simply trying to set Stelor up, misdirecting Stelor as to what Silvers intends to do, requiring Stelor to take action not required by the Agreements, and then purporting to terminate the Agreements claiming Stelor failed to perform.

Stelor's obligation under the Settlement Agreement was and is to cooperate with Silvers with respect to the audit, which we have been trying to do. Again, we provided you the date of Monday, June 27, 2005 to conduct that audit. Clearly, Silvers has a corresponding obligation to cooperate as well. And, providing an advance indication of what information will be required – in order to ensure that the audit will be efficient and avoid unnecessary disruption to Stelor's operations – is a basic component of that cooperation. Providing a clear response to our proposed date is also an obvious element of cooperation. It is now Friday, June 24, 2005, and you have not bothered to confirm whether or not you plan to perform the audit on the 27th, or whether you propose a different date. We assume, based on your letter, that Silvers does not plan to proceed with the audit on the 27th. If our assumption is wrong, please advise me immediately in writing.

With respect to the options, your letter ignores the option letter Stelor sent to Silvers on December 10, 2004. Again, Stelor has no record of receiving Silvers' executed copy of that letter. If Silvers contends he sent it, then please provide us with a copy of the executed letter. If Silvers did not send it, then please have Silvers execute the letter now, and deliver it to us. If Silvers is unwilling to execute the letter and does not want the options, then please confirm that in writing. Clearly, however, Silvers cannot simply continue to ignore the letter and his failure to respond, while claiming that Stelor somehow breached an obligation to provide options.

Finally, I spoke to your partner Ken Hartmann about the prior request to schedule a Rule 26 conference on Friday, June 10, 2005. I told him I was unavailable as my wife and I were going to Islamorada for our wedding anniversary. I told him I would be happy to schedule a conference the following week, at your convenience. I never heard back, at least until your letter of June 21st, where your failure to follow up with a date has been translated into my "stone cold silence." I propose that we schedule the conference on June 29 or 30th. Please confirm which date you prefer.

Gail A. McQuilkin, Esq.
June 24, 2005
Page 3


In addition, we attach hereto documents pertaining to the prosecution of GOO-formative trademark applications, and other proceedings related to Stelor's efforts to protect the intellectual property.

Finally, we attach a supplemental royalty statement for the first quarter of 2005. It confirms the information on the statement we previously provided, and provides some additional information about units sold, countries of sale, and invoice amounts. With respect to your suggestion that Stelor was required to provide royalty statements for the last two quarters of 2004, paragraph 12 of the Settlement Agreement expressly provides that, once Stelor confirms in writing as it has done, that no royalty payments are outstanding, no royalty statements are due. Nevertheless, although Stelor is obviously not required to do so, we enclose statements for the last two quarters of 2004, confirming there have been no sales.

Of course, this letter does not and is in no way intended to constitute a waiver of any of Stelor's rights and remedies, all of which are expressly reserved.

Sincerely,

Kevin C. Kaplan

KCK/map