# Exhibit

# 20

Dockets.Justia.com

KOZYAK · TROPIN
THROCKMORTON
ATTORNEYS AT LAW

**Gail A. McQuilkin,** Esq.
gam@kttlaw.com | 305.377.0656

<u>Via email and Federal Express</u>

July 6, 2005

Kevin C. Kaplan, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse A
Miami, Florida 33133

Re:    <u>Stelor Productions, Inc. v. Steven A. Silvers</u>

Dear Kevin:

In light of Judge Hurley's Order, I am returning to you the checks I have been holding.

Sincerely,

Gail A. McQuilkin

3339/101/255069.1

**STELOR PRODUCTIONS, LLC**
**OPERATING ACCOUNT**
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

1502

05/31/05

PAY TO THE
ORDER OF        Silvers Entertainment Group                                    $    **1,000.00

One Thousand and 00/100*********************************************************

DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO    Royalty/Insurance Advance June '05

AUTHORIZED SIGNATURE                                MP

⑈001502⑈ ⑆252073018⑆ 0005920132⑈

STELOR PRODUCTIONS, LLC                                                1502
        Silvers Entertainment Group              05/31/05
                                                        1,000.00

Provident - Oper   Royalty/Insurance Advance June '05                    1,000.00

**STELOR PRODUCTIONS, LLC**
OPERATING ACCOUNT
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

1501

05/31/05

PAY TO THE
ORDER OF___ Silvers Entertainment Group _____ $ **5,000.00

Five Thousand and 00/100************************************************************* _____ DOLLARS

Silvers Ent. Group
8983 Okeechobee Blvd
PMB 203 Suite 202
West Palm Beach, FL 33411

MEMO
Advance Against Royalty June 05

AUTHORIZED SIGNATURE

MP

⑈001501⑈ ⑆252073018⑆ 000592013⑈2⑈

---

STELOR PRODUCTIONS, LLC                                                    1501

Silvers Entertainment Group                          05/31/05
                                                                    5,000.00

Provident - Oper  Advance Against Royalty June 05                      5,000.00

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM    WWW.BWSKB.COM

July 29, 2005

**VIA TELEFAX AND US MAIL**

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

   Re: Silvers/Stelor

Dear Gail:

  Pursuant to Article III of the License Agreement, we hereby provide on behalf of Stelor Productions, LLC a royalty statement for the period April 1, 2005 through June 30, 2005. As the statement reflects, the advance royalties paid to Silvers still greatly exceed the amount of royalties earned for the past quarter. Accordingly, no additional payment is due at this time. Please advise us immediately in writing if you have any questions or believe any additional information should be provided at this time.

      Sincerely,

      Kevin C. Kaplan

KCK/mjp
attachment



## Silver's Entertainment Group Royalty Schedule

Country: All Countries
Period: 4/1/05 to 6/30/05

| Month | Description | Item | Country | Units Sold | Quantity Shipped | Gross Invoice | Amount Billed To Customers | Discounts | Net Billed To Customers | Allowances | Returns | Reportable Sales | Cash Collected | Royalty Rate | Amt. Of Royalty |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apr-05 | Album | N/A | N/A | 0 | 0 | $ - | $ - | 0 | $ - | $ - | 0 | $ - | $ - | 6% | $ - |
| Apr-05 | Single | N/A | N/A | 0 | 0 | $ - | $ - | 0 | $ - | $ - | 0 | $ - | $ - | 6% | $ - |
| May-05 | Album | Download | USA | 0 | 0 | $ - | $ - | 0 | $ - | $ - | 0 | $ - | $ - | 6% | $ - |
| May-05 | Single | Download | USA | 25 | 25 | $16.25 | $16.25 | 0 | $16.25 | $4.06 | 0 | $12.19 | $12.19 | 6% | 0.73 |
| May-05 | Derivative Work | Download | USA | 0 | 0 | $ - | $ - | 0 | $ - | $ - | 0 | $ - | $ - | 3% | $ - |
| May-05 | Single | Download | UK | 3 | 3 | $2.67 | $2.67 | 0 | $2.67 | $0.67 | 0 | $2.00 | $2.00 | 6% | 0.12 |
| May-05 | Album | Download | EU | 1 | 1 | $8.74 | $8.74 | 0 | $8.74 | $2.19 | 0 | $6.56 | $6.56 | 6% | 0.39 |
| May-05 | Single | Download | EU | 1 | 1 | $0.89 | $0.89 | 0 | $0.89 | $0.22 | 0 | $0.67 | $0.67 | 6% | 0.04 |
| Jun-05 | Album | N/A | N/A | 0 | 0 | $ - | $ - | 0 | $ - | $ - | 0 | $ - | $ - | 6% | $ - |
| Jun-05 | Single | N/A | N/A | 0 | 0 | $ - | $ - | 0 | $ - | $ - | 0 | $ - | $ - | 6% | $ - |
| Total | | | | 30 | 30 | $28.55 | $28.55 | 0 | $28.55 | $7.14 | 0 | $21.41 | $21.41 | | 1.28 |

Advance against royalties (April 1)    $ 11,997.11
Advances against royalties (2Q05)    $ 18,000.00
Balance of advanced royalties    $ 29,995.83
Payment due    $ -

To the best of my knowledge, I certify this schedule to be accurate.

Signature _____ President & CEO    Date 7/28/05

Stelor Proprietary and Confidential

LAW OFFICES
BURLINGTON, WEIL,
SCHWIEP, KAPLAN & BLONSKY, P.A.
*OFFICES IN THE GROVE*

## FACSIMILE TRANSMITTAL SHEET

TO:      GAIL MCQUILKIN

FROM:    KEVIN C. KAPLAN, ESQ.

FAX NUMBER:    (305) 372-3508

PHONE NUMBER: (305) 372-1800

TOTAL NUMBER OF PAGES (INCLUDING COVER PAGE): 3

RE:      STELOR PRODUCTIONS, LLC VS SILVERS

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for the postage. Thank you.

**PLEASE NOTIFY US IMMEDIATELY IF NOT RECEIVED PROPERLY.**

FILE NO.  1882.001                    DATE:  July 29, 2005

2699 SOUTH BAYSHORE DRIVE, PENTHOUSE, MIAMI, FL 33133
TELEPHONE: (305) 858-2900 * FAX: (305) 858-5261 *
EMAIL: INFO@ABWLAW.COM

TRANSMISSION VERIFICATION REPORT

```
TIME   : 07/29/2005 16:56
NAME   : BURLINGTONWEILETAL
FAX    : 3058585261
TEL    : 3058582900
SER.#  : BROC5J232435
```

```
DATE,TIME                07/29  16:54
FAX NO./NAME             40#1882#001#3053723508#
DURATION                 00:01:28
PAGE(S)                  03
RESULT                   OK
MODE                     STANDARD
```

KOZYAK · TROPIN
THROCKMORTON
ATTORNEYS AT LAW

**Gail A. McQuilkin**, Esq.
gam@kttlaw.com | 305.377.0656

Via Federal Express
And Email

August 10, 2005

Kevin C. Kaplan, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse A
Miami, Florida 33133

Re:    Stelor Productions, LLC v. Steven A. Silvers

Dear Kevin:

Enclosed are checks sent to Mr. Silvers by Stelor. While Mr. Silvers appreciated
Mr. Esrig's kind wishes for a speedy recovery, the checks are being returned because the
License Agreement has been terminated. Please inform Mr. Esrig that he is not to
communicate directly with Mr. Silvers.

Sincerely,

Gail A. McQuilkin

3339/101/256394.1



July 29, 2005

Mr. Steven Silvers
2495 Sailfish Cove Drive
West Palm Beach, FL  33411

Dear Steve:

It has come to my attention that you are not in good health.  I want you to know that you are in our prayers.   The dream of your father to finally give birth to the Googles from Goo is taking form.

I am sending your advance royalty checks for both July and August directly to you.  I have also enclosed your advance royalty checks for insurance premiums for July and August.

Despite everything that has transpired recently, I want you to know that I am still your friend and wish you a speedy recovery.

Sincerely,

Steven A. Esrig
President & CEO

**STELOR PRODUCTIONS, LLC**
**OPERATING ACCOUNT**
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

1654

07/29/05

PAY TO THE
ORDER OF        Steven A. Silvers                                                                $  **5,000.00

Five Thousand and 00/100*********************************************************
_____ DOLLARS

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, FL 33411

MEMO   Advance against royalties - August 2005

AUTHORIZED SIGNATURE                                                                                    MP

⑈00⑇1654⑈ ⑆252073018⑆ 0005920132⑆

---

STELOR PRODUCTIONS, LLC                                                                  1654
       Steven A. Silvers                                          07/29/05
  07/28/05                    Bill #August 2005                                   5,000.00


Provident - Oper  Advance against royalties - August 2                        5,000.00

**STELOR PRODUCTIONS, LLC**
**OPERATING ACCOUNT**
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

1655

07/29/05

PAY TO THE
ORDER OF___Steven A. Silvers_____   $ **5,000.00

Five Thousand and 00/100**************************************************************** _____ DOLLARS

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, FL 33411

MEMO   Advance against royalties - July 2005

AUTHORIZED SIGNATURE                                                                    MP

⑈001655⑈ ⑆252073018⑆ 000542843 2⑈

---

STELOR PRODUCTIONS, LLC                                                                    1655
    Steven A. Silvers                                      07/29/05
07/14/05                          Bill #                                      5,000.00




Provident - Oper  Advance against royalties - July 200                           5,000.00

**STELOR PRODUCTIONS, LLC**
OPERATING ACCOUNT
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

1657

07/29/05

PAY TO THE
ORDER OF _____ Steven A. Silvers _____ $ **1,000.00

One Thousand and 00/100*********************************************************** DOLLARS

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, FL 33411

MEMO   Royalty/Insurance Advance - Aug 2005

AUTHORIZED SIGNATURE                MP

⑈001657⑈ ⑆252073018⑆   000592013 2⑈

---

STELOR PRODUCTIONS, LLC                                          1657
    Steven A. Silvers                          07/29/05
07/28/05                      Bill #August 2005              1,000.00

Provident - Oper  Royalty/Insurance Advance - Aug 2005          1,000.00

**STELOR PRODUCTIONS, LLC**
OPERATING ACCOUNT
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

**1658**

07/29/05

PAY TO THE
ORDER OF    Steven A. Silvers

$ **1,000.00

One Thousand and 00/100********************************************************

DOLLARS

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, FL 33411

MEMO    Royalty/Insurance Advance - July 2005

AUTHORIZED SIGNATURE    MP

⑈001658⑈ ⑈252073018⑈    000592013 2⑈

---

STELOR PRODUCTIONS, LLC    **1658**

Steven A. Silvers    07/29/05

07/14/05    Bill #    1,000.00

Provident - Oper  Royalty/Insurance Advance - July 200    1,000.00



BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE PENTHOUSE 2699 SOUTH BAYSHORE DRIVE MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM   WWW.BWSKB.COM

September 13, 2005

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

      Re:   Stelor Productions, LLC v. Silvers,
             Case No. 05-80393-Civ-Hurley/Hopkins

Dear Gail:

    On behalf of Stelor Productions, L.L.C., enclosed please find the September 2005 advances against royalties for Mr. Silvers in the amounts of $5,000.00 and $1,000.00.

                    Sincerely,

                    Kevin C. Kaplan

KK/mjp
cc:   Stelor Productions, LLC



**STELOR PRODUCTIONS, LLC**
OPERATING ACCOUNT
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

**1748**

09/01/05

PAY TO THE
ORDER OF___Steven A. Silvers_____|  $ **5,000.00

Five Thousand and 00/100*************************************************____ DOLLARS

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, FL 33411

MEMO
Advance against royalties - Sept. 2005

AUTHORIZED SIGNATURE                MP

⑈001748⑈ ⑆252073018⑆  000592013 2⑈

---

STELOR PRODUCTIONS, LLC

**1748**

Steven A. Silvers                                09/01/05
09/01/05                    Bill #Sept 2005                          5,000.00

Provident - Oper  Advance against royalties - Sept. 20                        5,000.00



**STELOR PRODUCTIONS, LLC**
**OPERATING ACCOUNT**
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

1749

09/01/05

PAY TO THE
ORDER OF___Steven A. Silvers_____

$ **1,000.00

One Thousand and 00/100*********************************************************** DOLLARS

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, FL 33411

MEMO
Royalty/Insurance advance - Sept. 2005

AUTHORIZED SIGNATURE

⑈001749⑈ ⑆252073018⑆ 0005920132⑈

---

STELOR PRODUCTIONS, LLC                                              1749

Steven A. Silvers                                    09/01/05
09/01/05                          Bill #Sept 2005                        1,000.00

Provident - Oper  Royalty/Insurance advance - Sept. 20                   1,000.00

KOZYAK · TROPIN
THROCKMORTON
A T T O R N E Y S   A T   L A W

**Gail A. McQuilkin**, Esq.
gam@kttlaw.com | 305.377.0656

September 15, 2005

Kevin C. Kaplan, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse A
Miami, Florida 33133

Re:    Steven A. Silvers

Dear Kevin:

Once again I am returning checks to you together with a copy of the Complaint filed to enjoin Stelor Productions.

Sincerely,

Gail A. McQuilkin

3339/101/256302.1

2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 | Phone 305.372.1800 | Fax 305.372.3508 | kttlaw.com

BURLINGTON · WEIL · SCHWIEP · KAPLAN & BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM    WWW.BWSKB.COM

September 13, 2005

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

            Re:    Stelor Productions, LLC v. Silvers,
                   Case No. 05-80393-Civ-Hurley/Hopkins

Dear Gail:

        On behalf of Stelor Productions, L.L.C., enclosed please find the September 2005 advances against royalties for Mr. Silvers in the amounts of $5,000.00 and $1,000.00.

                                    Sincerely,

                                    Kevin C. Kaplan

KK/mjp
cc:    Stelor Productions, LLC

**STELOR PRODUCTIONS, LLC**
OPERATING ACCOUNT
P.O. BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

1748

09/01/05

PAY TO THE
ORDER OF____Steven A. Silvers_____    $ **5,000.00

Five Thousand and 00/100***************************************************** DOLLARS

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, FL 33411

MEMO
  Advance against royalties - Sept. 2005

AUTHORIZED SIGNATURE                MP

⑈001748⑈ ⑆2520730181⑆    0005920132⑈

---

STELOR PRODUCTIONS, LLC                                                    1748

     Steven A. Silvers                                    09/01/05
   09/01/05                    Bill #Sept 2005                          5,000.00

Provident - Oper   Advance against royalties - Sept. 20                  5,000.00

**STELOR PRODUCTIONS, LLC**
OPERATING ACCOUNT
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

1749

09/01/05

PAY TO THE
ORDER OF   Steven A. Silvers                                    $ **1,000.00

One Thousand and 00/100********************************************************   DOLLARS

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, FL 33411

MEMO
Royalty/Insurance advance - Sept. 2005                              AUTHORIZED SIGNATURE        MP

⑈001749⑈ ⑆252073018⑆      000592013 2⑈

---

**STELOR PRODUCTIONS, LLC**                                          1749

- Steven A. Silvers                                    09/01/05
09/01/05                     Bill #Sept 2005                        1,000.00

Provident - Oper  Royalty/Insurance advance - Sept. 20              1,000.00

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.

05-18033  CA 03

STEVEN A. SILVERS,

      Plaintiff,

vs.

STELOR PRODUCTIONS, LLC,

      Defendant,

_____/

### COMPLAINT

Plaintiff, Steven A. Silvers, sues Stelor Productions, LLC and alleges:

1. This is an action for declaratory, supplementary and injunctive relief brought pursuant to Florida's Declaratory Judgment Act, Florida Statutes Section 86.011, et seq., and for breach of contract.

2. Silvers is an individual residing in Palm Beach County, Florida with a business address at 8983 Okeechobee Blvd., #202, West Palm Beach, FL 33411.

3. Defendant Stelor Productions, LLC is, upon information and belief, a limited liability company organized under Delaware law, with a place of business at 14701 Mockingbird Drive, Darnestown, Maryland. Defendant is, on information and belief, the successor in interest to Stelor Productions, Inc., a corporation organized under Delaware law. Both entities are referred to here as "Stelor."

4. Silvers is the author of the children's book "GOOGLES and the Planet of Goo" and creator of numerous characters, illustrations and concepts based on the GOOGLES family of characters.

5. Silvers is the owner of 25 "GOOGLES" related trademarks, including "The GOOGLES and Design" mark, and "GOOGLES.com" domain name.

6. Silvers has registered and owns more than 120 domain names related to the GOOGLES concept and characters, including "GOOGLES.com."

7. Silvers also owns numerous copyrights and patents for the characters, illustrations, music and designs encompassed by the GOOGLES concept. The trademarks, copyrights, patents, domain name registrations and related derivative intellectual property are collectively referred to as "GOOGLES Intellectual Property."

8. Effective June 1, 2002, Silvers entered into a License, Distribution and Manufacturing Agreement ("License Agreement") with Stelor by which he granted Stelor a license to use the GOOGLES Intellectual Property, and to manufacture and promote products and services based on the GOOGLES Intellectual Property ("Licensed Products"). Exhibit A.

9. Effective June 1, 2002, Silvers entered into a Consulting Agreement with Stelor which provided, among other things, that Silvers could terminate the License Agreement if Stelor breached the Consulting Agreement's compensation provisions. Exhibit B.

10. On November 12, 2004, Silvers sent a Notice of Termination, advising Stelor it had sixty (60) days to cure numerous breaches under the License Agreement or face termination as Silvers' licensee. Exhibit C. Silvers also invoked Stelor's breaches of the Consulting Agreement as a basis for termination.

11. On January 13, 2005, Silvers terminated the License Agreement for Stelor's failure to cure its numerous breaches. A copy of the termination letter is attached as Exhibit D.

12. On January 28, 2005, Silvers and Stelor entered into a Settlement Agreement under which Silvers agreed to withdraw the January 13, 2005 termination letter, but not the Notice of

2

Termination, provided Stelor fully cured the breaches by its performance under the Settlement Agreement.

13. On April 27, 2005 Silvers reinstated his termination because Stelor had not performed its obligations under the Settlement Agreement.  See Exhibit E.

14. The License Agreement provides, at ¶X(C):

> Upon the expiration or termination of this Agreement, all the license rights of LICENSEE under this Agreement shall forthwith terminate and immediately revert to LICENSOR and LICENSEE, except as detailed above in Section (B) of the "Post Termination Rights" Section, shall immediately discontinue all use of the Licensed Property and the like, at no cost whatsoever to LICENSOR.

15. Silvers has advised Stelor on numerous occasions that the License Agreement is terminated, and demanded that Stelor comply with the post-termination provisions of the license Agreement. Copies of Silvers' letters to that effect are attached as Exhibit F.

16. The License Agreement, ¶X, sets out Stelor's rights and obligations upon termination. Stelor is allowed to continue using the GOOGLES Intellectual Property on a limited basis for a limited period, but only if it meets certain requirements.  The key requirement for Stelor to use the GOOGLES Intellectual Property post-termination is the submission of an inventory of Licensed Product on hand.  License Agreement, ¶X(B).

17. Stelor has failed to provide an inventory of Licensed Products.  The 30 day period for Stelor to comply with this requirement expired on May 27, 2005.

18. Stelor has also failed to actively sell Licensed Products post-termination, according to the purported royalty statements Stelor has provided to Silvers.

3

19. Because Stelor has not complied with its post-termination requirements under the License Agreement, it has no right to use the GOOGLES Intellectual Property for any purpose, even for a limited period.

20. Notwithstanding the termination, the reversion of all rights to Silvers, and Stelor's loss of any limited right to use the GOOGLES Intellectual Property, Stelor continues to do.  Upon information and belief, Stelor used the GOOGLES Intellectual Property at the Licensing Exhibition in New York City in July, 2005, to promote its own (non-licensed) website services.  Stelor's website (stelorproductions.com) continues to feature the GOOGLES trademarks, characters and concept, GOOGLES graphics and illustrations, GOOGLES music, and GOOGLES.com domain name.

21. Stelor' use of the GOOGLES Intellectual Property is without Silvers' authority or consent.

22. Silvers has repeatedly demanded that Stelor cease and desist from its unauthorized use of the GOOGLES Intellectual Property.

23. Stelor has refused to comply with Silvers' demand to cease and desist, and continues to use the GOOGLES Intellectual Property without Silvers' authorization.

24. Silvers has retained the undersigned attorneys and agreed to pay them a reasonable fee.

### COUNT ONE - DECLARATORY RELIEF

25. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 24 as though fully set forth.

26. Up until April 27, 2005, Silvers licensed his GOOGLES Intellectual Property to Stelor, pursuant to the License Agreement.  On April 27, 2005, Silvers reinstated his prior termination of the License Agreement.

4

27. Pursuant to the License Agreement, ¶X, upon termination all licensed rights revert to Silvers, and Stelor is required to cease and desist from using the GOOGLES Intellectual Property.

28. Since April 27, 2005, Stelor has disregarded the termination of the License Agreement and continues to hold itself as Silvers' licensee. Stelor continues to use Silvers' GOOGLES Intellectual Property, without Silvers' authority or consent.

29. An actual and ripe controversy exists as to the effect of the termination of the License Agreement and Stelor's rights, or lack thereof, to use the GOOGLES Intellectual Property.

**WHEREFORE**, Silvers requests that this Court declare the rights of the parties and provide the following relief:

A.    A declaration that the License Agreement is terminated, and that Stelor is no longer a licensee of Silvers.

B.    An order enjoining Stelor from:

1.    Using the GOOGLES Intellectual Property (including but not limited to Silvers' trademarks, domain names, copyrights, patents, and derivatives);

2.    Representing to others that it is Silvers' licensee, or that it is authorized to use or sublicense the GOOGLES Intellectual Property; and

3.    Selling or promoting any Licensed Product.

C.    A full accounting from Stelor of the commercialization of the GOOGLES Intellectual Property during the period the License Agreement was in effect, i.e. June 1, 2002 to April 27, 2005;

D.    Attorneys fees pursuant to contract and Florida Statutes Section 57.105;

E.    Costs; and

F.    Such other relief as the Court deems equitable.

5

## COUNT II

## BREACH OF CONTRACT

30. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 24 as though fully set forth.

31. This is an action for breach of the post-termination provisions of the License Agreement.

32. On April 27, 2005, Silvers' duly terminated the License Agreement.

33. Pursuant to the License Agreement, ¶X, Stelor is required, upon termination, to cease and desist using the GOOGLES Intellectual Property or selling any Licensed Property.

34. While Paragraph X of the License Agreement affords Stelor a limited period of time to use the GOOGLES Intellectual Property, such use is conditioned on Stelor (i) providing an inventory of Licensed Product; and (ii) actively selling Licensed Product. Stelor has done neither, and therefore its right to use the GOOGLES Intellectual Property has been extinguished.

35. Notwithstanding the termination of the License Agreement, Stelor continues to use the GOOGLES Intellectual Property. Such use is without Silvers' authority or consent.

36. Stelor has breached Paragraph X of the License Agreement.

37. As a result of Stelor's breach, and unauthorized use of the GOOGLES Intellectual Property, Silvers has been denied the exclusive use of and control over his own trademarks, copyrights, patents and domain names, as well as derivative products.

**WHEREFORE**, Silvers requests that this Court enter judgment in his favor and against Stelor and award the following relief:

        A.     Enjoining Stelor from using the GOOGLES Intellectual Property, including but not limited to Silvers' trademarks, domain names, copyrights and patents;

6

B.    Requiring Stelor to account to Silvers for commercializing the GOOGLES Intellectual Property from April 27, 2005 to the present, including all sales of Licensed Product and Derivatives, and to disgorge all revenues gained from such unauthorized conduct; and

C.    Requiring Stelor, consistent with Paragraph X of the License Agreement, to return to Silvers all material relating to the GOOGLES Intellectual Property and derivatives, and to any inform sublicensees of the termination.

D.    Attorneys' fees pursuant to contract and Florida Statutes Section 57.105.

E.    Costs; and

F.    Such other relief as the Court deems equitable.

**DATED** this 6th day of September, 2005.

Respectfully submitted,

DIMOND, KAPLAN & ROTHSTEIN, P.A.
Co-Counsel for Plaintiff
525 S. Flagler Drive, Suite 200
West Palm Beach, FL 33401
Telephone: (561) 671-2110
Adam T. Rabin, Esq.

KOZYAK TROPIN & THROCKMORTON, P.A.
Counsel for Plaintiff
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Fax: (305) 372-3508

By: _____
Kenneth R. Hartmann
Florida Bar No: 664286
Gail M. McQuilkin
Florida Bar No. 969338

3339/104/257119.1

7

EXHIBIT "A"

# LICENSE, DISTRIBUTION
## AND MANUFACTURING AGREEMENT

This LICENSE, DISTRIBUTION AND MANUFACTURING AGREEMENT between Steven A. Silvers and Stelor Productions, Inc. is effective as of June 1, 2002 and is entered into by and between Steven A. Silvers (LICENSOR), an Individual, whose official address is 3741 NE 163rd Street, PMB #325, North Miami Beach, FL 33160 and Stelor Productions, Inc. (LICENSEE), a Delaware corporation with its current offices located at: 14701 Mockingbird Drive, Darnestown, Maryland, 20874.

## WITNESSETH

WHEREAS, LICENSOR is the sole and exclusive owner of the GOOGLES characters identified more fully in "Schedule A" attached hereto (the "Licensed Property");

WHEREAS, LICENSOR is the sole and exclusive owner of the GOOGLES trademarks identified more fully in "Schedule A" attached hereto (the "Licensed Trademarks");

WHEREAS, LICENSOR has the power and authority to grant to LICENSEE the right, privilege and license to use, manufacture, distribute, and sell those types of products that incorporate or are otherwise based on the Licensed Property as identified in "Schedule A" attached hereto (the "Licensed Products") and to use the Licensed Trademarks on or in association with such Licensed Products;

WHEREAS, LICENSEE has or will have the ability to manufacture, have manufactured, have sub-manufactured, distribute and sell or have sold and distributed the Licensed Products in the Licensed Territory more clearly defined in Schedule A (the Territory) and to use the Trademark(s) on or in association with the Licensed Products;

WHEREAS, LICENSEE desires to obtain from LICENSOR an exclusive license to use, manufacture, have manufactured and sell Licensed Products in the Territory and to use the Licensed Trademarks on or in association with the Licensed Products;

WHEREAS, LICENSEE has agreed, pursuant to a letter agreement, to act as a consultant for LICENSOR; and

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, the parties, each intending to be legally bound hereby, do hereby agree as follows:

## I. LICENSE GRANT

A.     LICENSOR hereby grants to LICENSEE, for the Term of this Agreement as recited in "Schedule A" attached hereto, the exclusive (even as to LICENSOR), worldwide, sub licensable right and license to use, reproduce, modify, create derivative works of, manufacture, have manufactured, market, advertise, sell, distribute, display, perform, and otherwise commercialize the Licensed Products and Licensed Properties in the Territory. The license includes a license under any and all intellectual property rights and interests therein, including by way of explanation, products which deal with the creative characters known as The Googles, anything that contains the letters GOO (in upper or lower case) together with any and all products, which comprise and which will comprise those characters, likenesses, which include Iggle, Oogle, Oggle, Gooroo, Gootian(s), the planet Goo, slides, computer web site(s), membership lists, clubs, materials, patterns, prototypes, logos, trademarks, service marks, clothing, merchandise, educational products, marketing and promotional data and tools, packaging and advertising, modifications, updates and variations, and all other items associated therewith whether in singular or plural

B.    LICENSOR hereby grants to LICENSEE for the term of this Agreement as recited in "Schedule A" attached hereto, the exclusive (even as to LICENSOR), worldwide, sub licensable right and license to use the Licensed Trademarks on or in association with the Licensed Products as well as on packaging, promotional, and advertising material associated therewith.

C.    LICENSEE shall have the right to sublicense LICENSEE's rights under this Agreement, provided that any and all such sublicenses shall be subject to the terms and conditions of this Agreement.

D.    No licenses will be deemed to have been granted by either party to any of its Intellectual Property Rights, except as otherwise expressly provided in this Agreement.

E.    LICENSEE agrees to place on all Licensed Products, where practicable, the phrase "created by Steven A. Silvers" or other similar wording.

## II.  TERM OF THE AGREEMENT

This Agreement and the provisions hereof, except as otherwise provided, shall be in full force and effect commencing on the date of execution by both parties and shall extend for a Term as recited in "Schedule A" attached hereto (the "Term").

## III.  COMPENSATION

A.    In consideration for the licenses granted hereunder, LICENSEE agrees to pay to LICENSOR, during the Term of this Agreement, a royalty in the amount recited in "Schedule A" attached hereto (the "Royalty") based on LICENSEE's Net Sales of Licensed Products. "Net Sales" shall mean the gross revenues on a cash basis (i.e., actually collected by LICENSEE but without counting any gross revenues twice) excluding shipping and handling charges, sales taxes, VAT, and other taxes imposed upon sales less (i) customary trade discounts, (ii) allowances actually shown on the invoice (except cash discounts not deductible in the calculation of Royalty) (iii) bona fide returns, charge backs, refunds or credits (net of all returns actually made or allowed as supported by memoranda actually issued to the customers), (iv) sales of remainder inventory made at less than the total of LICENSEE's actual cost of goods and actual direct selling costs solely for purposes of liquidation or close-out, (v) other uncollectible accounts, (vi) cooperative advertising allowances, (vii) sales commissions paid.

B.    The Royalty owed LICENSOR shall be calculated on a quarterly calendar basis on collected funds (the "Royalty Period") and shall be payable no later than thirty (30) days after the termination of the preceding full calendar quarter, i.e., commencing on the first (1st) day of January, April, July and October with the exception of the first and last calendar quarters which may be "short" depending upon the effective date of this Agreement.

C.    With each Royalty Payment, LICENSEE shall provide LICENSOR with a written royalty statement in a form acceptable to Licensor. Such royalty statement shall be certified as accurate by a duly authorized officer of Licensee, reciting on a country-by-country basis, the stock number, item, units sold, description, quantity shipped, gross invoice, amount billed to customers less discounts, allowances, returns and reportable sales for each Licensed Product. Such statements shall be furnished to Licensor whether or not any Licensed Products were sold during the Royalty Period. The LICENSEE hereby further agrees to provide the LICENSOR with a list of all of it's sub licensees added during the current royalty period.

D.    If LICENSEE sells any Licensed Products to any party affiliated with LICENSEE, or in any way directly or indirectly related to or under the common control with LICENSEE, at a price less than the average weighted price charged to other parties, the Royalty payable to LICENSOR shall be computed on the basis of the averaged weighted price charged to other parties if the Licensed Products are not ultimately resold to unaffiliated third parties.

E.   All payments due hereunder shall be made in United States currency drawn on a United States bank, unless otherwise specified between the parties and may offset or be offset from any other payments due to LICENSEE under this or any other agreement between the parties.

F.   Late payments shall incur interest at the rate of ONE PERCENT (1%) per month from the date such payments were originally due.

## IV.  AUDIT

A.   LICENSOR shall have the right, at its own expense, to have a nationally recognized certified public accounting firm, upon at least thirty (30) days written notice and no more than twice per calendar year, to inspect during normal business hours, LICENSEE's books and records and all other documents and material in the possession of or under the control of LICENSEE with respect to the subject matter of this Agreement at the place or places where such records are normally retained by LICENSEE.

B.   In the event that such inspection reveals an underpayment discrepancy greater than 5% of the amount of Royalty owed LICENSOR from what was actually paid, LICENSEE shall have the opportunity to conduct its own audit. If LICENSEE agrees to the amount, if any, of any discrepancy, LICENSEE shall pay such discrepancy, plus interest, calculated at the rate of ONE AND ONE-HALF PERCENT (1 1/2%) per month. Upon settlement of any underpayment discrepancy, no further audit by LICENSOR shall be requested that year. That period end date shall represent the new period start date for future audits for underpayment discrepancies. In the event that such discrepancy is in excess of TEN THOUSAND UNITED STATES DOLLARS ($10,000.00), LICENSEE shall also reimburse LICENSOR for the cost of auditing fees in connection therewith.

C.   All books and records relative to LICENSEE's obligations hereunder shall be maintained and kept accessible and available to LICENSOR for inspection for at least three (3) years after the expiration of the initial or any subsequent term.

D.   In the event that an investigation of LICENSEE's books and records is made, certain confidential and proprietary business information of LICENSEE may necessarily be made available to the person or persons conducting such investigation. It is agreed that such confidential and proprietary business information shall be held in confidence by LICENSOR and shall not be used by LICENSOR or disclosed to any third party for a period of two (2) years from the date of disclosure, or without the prior express written permission of LICENSEE unless required by law, except LICENSOR may not disclose at any time to any third party any such confidential and proprietary business information which are trade secrets of LICENSEE. It is understood and agreed, however, that such information may be used by LICENSOR in any proceeding based on LICENSEE's failure to pay its actual Royalty obligation.

## V.  WARRANTIES AND OBLIGATIONS

A.   LICENSOR represents and warrants that:

(i)   the execution, delivery and performance of this Agreement have been duly authorized by all necessary action of LICENSOR and this Agreement is a valid and binding obligation of LICENSOR, enforceable in accordance with its terms;

(ii)   the execution, delivery and performance by LICENSOR of this Agreement will not violate or conflict with any applicable U.S. law or regulation, or any order, writ, judgment or decree of any court or governmental authority to which LICENSOR is subject, or result in a violation, breach of, or default under any contract, lease, or other agreement binding on LICENSOR;

(iii)   LICENSOR owns the exclusive rights in and to the Licensed Intellectual Property, Licensed Trademarks, Licensed Patents and Licensed Copyrights necessary to effectuate the granting of the Licensing Rights from the LICENSOR to the LICENSEE as contemplated herein.



(iv) _____ the Licensed Intellectual Property and Licensed Trademarks do not infringe the rights, including without limitation, Intellectual Property Rights, of any third party; and

(v) except as set forth in Schedule B attached hereto, LICENSOR has not received any notice from any third party of any alleged or actual infringement of the Licensed Intellectual Property or Licensed Trademarks and the Licensed Intellectual Property and/or Licensed Trademarks are not the subject, and has not been the subject, of any previous or pending litigation with the exception of the Ganz litigation which has been resolved.

B. LICENSEE represents and warrants that:

(i) the execution, delivery and performance of this Agreement have been duly authorized by all necessary action of LICENSEE and this Agreement is a valid and binding obligation of LICENSEE, enforceable in accordance with its terms;

(ii) the execution, delivery and performance by LICENSEE of this Agreement will not violate or conflict with any applicable U.S. law or regulation, or any order, writ, judgment or decree of any court or governmental authority to which LICENSEE is subject, or result in a violation, breach of, or default under any contract, lease, or other agreement binding on LICENSEE; and

(iii) it will use its commercially reasonable efforts to promote, market, sell and distribute the Licensed Products.

C. Disclaimer of Warranties. EXCEPT AS EXPRESSLY PROVIDED ABOVE, NEITHER PARTY MAKES ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND, EITHER EXPRESS OR IMPLIED, REGARDING THIS AGREEMENT AS TO ANY MATTER INCLUDING, BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

D. LICENSEE shall be solely responsible for the manufacture, production, sale and distribution of the Licensed Products or to have such Licensed Products manufactured, produced, sold and distributed, and will bear all related costs associated therewith.

## VI. NOTICES, QUALITY CONTROL, AND SAMPLES

A. The Licensed Products, as well as all promotional, packaging and advertising material relative thereto, shall include all appropriate legal notices.

B. The Licensed Products shall be of a high quality which is at least equal to comparable products manufactured and marketed by LICENSEE and in conformity with a standard sample provided by LICENSEE.

C. Prior to the commencement of manufacture and sale of the Licensed Products, LICENSEE shall submit to LICENSOR for his input, at no cost to LICENSOR, a reasonable number of samples of all Licensed Products which LICENSEE intends to manufacture and sell and of all promotional and advertising material associated therewith.

## VII. NOTICES AND PAYMENT

A. Any notice required to be given pursuant to this Agreement shall be in writing and delivered personally to the other designated party at the above-stated address or mailed by certified or registered mail, return receipt requested or delivered by a recognized national overnight courier service.

B. Either party may change the address to which notice or payment is to be sent by written notice to the other in accordance with the provisions of this paragraph.

## VIII. INTELLECTUAL PROPERTY PROTECTION

A.      LICENSOR hereby grants LICENSEE all right, power and interest to seek, obtain and maintain all Intellectual Property Rights associated with the Licensed Intellectual Property and Licensed Trademarks, Licensed Copyrights and any other Intellectual Property Rights granted herein. LICENSOR further agrees to assist LICENSEE as may be required to apply for and obtain recordation of and from time to time enforce, maintain and defend such Intellectual Property Rights. LICENSOR hereby grants LICENSEE an irrevocable power of attorney for the initial and any subsequent terms of this Agreement to act for and on LICENSOR's behalf and instead of LICENSOR, at LICENSEE's expense, to execute and file any such document(s) and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by LICENSOR.

B.      LICENSOR shall retain all rights, title and interest in the Licensed Intellectual Property and Licensed Trademarks and any modifications thereto based solely on such Licensed Intellectual Property. LICENSEE acknowledges LICENSOR's exclusive rights in the Licensed Intellectual Property and, further, acknowledges that the Licensed Intellectual Property and/or the Licensed Trademarks rights are unique and original to LICENSOR and that LICENSOR is the owner thereof. LICENSEE shall not, at any time during or after the effective Term of the Agreement, dispute or contest, directly or indirectly, LICENSOR's exclusive right and title to the Licensed Intellectual Property and/or the Licensed Trademarks(s) or the validity thereof.

C.      LICENSEE agrees that its use of the Licensed Intellectual Property and/or the Licensed Trademarks(s) inures to the benefit of LICENSOR and that the LICENSEE shall not acquire any rights in the Licensed Intellectual Property and/or the Licensed Trademarks(s) except for the license granted herein.

D.      LICENSOR shall retain all rights, title and interest in and to the Licensed Intellectual Properties. The LICENSOR owns the exclusive rights to the Licensed Intellectual Property. LICENSOR hereby waives and releases LICENSEE from any and all current or future claims or causes of actions by third parties, whether known or unknown, arising out of or relating to such Licensed Intellectual Properties including, but not limited to, any claim that Licensed Products violate, infringe on or misappropriate any of LICENSOR's Intellectual Property Rights.

E.      Each party shall execute all papers, testify on all matters, and otherwise cooperate in every way necessary and desirable to effect any of the provisions under this Section (Intellectual Property Protection). The party requesting such shall reimburse the other party for the expenses incurred as a result of such cooperation. The parties agree to take any actions or prepare or execute any documents reasonably requested by the other party. Furthermore, during the term of this agreement, LICENSOR shall not initiate or maintain any relationship or conversations with LICENSEE'S current or prospective clients, vendors, any Company relationships with the media (press etc.) without the prior express written request by LICENSEE.

## IX. TERMINATION

A.      Right to Terminate on Notice. This Agreement may be terminated by either party upon sixty (60) days written notice to the other party in the event of a breach of a material provision of this Agreement by the other party, provided that, during the sixty (60) days period, the breaching party fails to cure such breach.

B. LICENSEE shall have the right to terminate this Agreement at any time on thirty (30) days written notice to LICENSOR. In such event, all moneys paid to LICENSOR shall be deemed non-refundable and LICENSEE's obligation to pay any unpaid royalties shall be accelerated and shall become immediately due and payable.

C. Additionally, if, after five years of the initial intellectual property license, there are three consecutive years during which royalty payments to LICENSOR are less than one hundred thousand dollars ($100,000.00), LICENSOR has the option to cancel this Agreement in accordance with Section IX. TERMINATION, Para. A.

## X. POST TERMINATION RIGHTS

A. Not less than thirty (30) days prior to the expiration of this Agreement or immediately upon termination thereof, LICENSEE shall provide LICENSOR with a complete schedule of all inventory of Licensed Products then on hand or on order (the "Inventory").

B. Upon expiration or termination of this Agreement, LICENSEE shall be entitled, for an additional period of six (6) months, to continue to sell such Inventory. Such sales shall be made subject to all of the provisions of this Agreement and to an accounting for and the payment of a Royalty thereon. Such accounting and payment shall be due and paid within thirty (30) days of the quarterly calendar cited as the period basis for royalty calculation. LICENSEE shall have the right to continue the use of the name(s) associate with the products and articles that encompass this Agreement for so long as LICENSEE is actively selling its inventory of articles and products. At the conclusion of LICENSEE'S efforts in this regard, LICENSEE agrees to discontinue the use of names, trademarks, signs, advertising and anything else that might make it appear that the LICENSEE is still handling the articles and products of LICENSOR.

C. Upon the expiration or termination of this Agreement, all of the license rights of LICENSEE under this Agreement shall forthwith terminate and immediately revert to LICENSOR and LICENSEE, except as detailed above in Section (B) of the "Post Termination Rights" Section, shall immediately discontinue all use of the Licensed Property and the like, at no cost whatsoever to LICENSOR.

D. Upon termination of this Agreement for any reason whatsoever, LICENSEE agrees to immediately return to LICENSOR all material relating to the Licensed Intellectual Property. Furthermore, upon termination or expiration of this Agreement, LICENSEE agrees to immediately inform all of it's sub licensees regarding the said termination or expiration of this Agreement.

## XI. INFRINGEMENTS

A. During the Term of this Agreement and any and all option/renewal periods, LICENSEE shall have the sole right, in its discretion and at its expense, to take any and all actions against third persons to protect the Intellectual Property Rights licensed in this Agreement.

B. Upon request by either party to the other, the other party shall execute all papers, testify on all matters, and otherwise cooperate in every way necessary and desirable for the prosecution of any such lawsuit. Each party shall reimburse the other party for the expenses incurred as a result of such cooperation.

## XII. INDEMNITY

A. LICENSEE agrees to indemnify and hold harmless LICENSOR, its agents, heirs, assigns and representatives, against all costs, expenses and losses (including reasonable attorneys' fees and costs) incurred through claims of third parties against LICENSOR based on product liability but excluding any claims based solely upon the use of the Licensed Intellectual Property or Licensed Trademarks by LICENSEE in accordance with the terms of this Agreement.

