B.    LICENSOR agrees to indemnify and hold harmless LICENSEE, its officers, directors, agents and employees, against all costs, expenses and losses (including reasonable attorneys' fees and costs) incurred through claims of third parties against LICENSEE based on or arising from (i) any infringement, misappropriation or other related action involving the Licensed Intellectual Property or Licensed Trademarks; or (ii) any breach of LICENSOR's obligations, representations, warranties or duties under this agreement.

C.    With respect to any claims falling within the scope of the foregoing indemnifications: (i) each party agrees promptly to notify the other of and keep the other fully advised with respect to such claims and the progress of any suits in which the other party is not participating; (ii) each party shall have the right to assume, at its sole expense, the defense of a claim or suit made or filed against the other party; (iii) each party shall have the right to participate, at its sole expense, in any suit instituted against it; and (iv) a party assuming the defense of a claim or suit against the other party shall not settle such claim or suit without the prior written approval of the other party, which approval shall not be unreasonably withheld or delayed.

## XIII.  LIMITATION OF LIABILITY

A.    IN NO EVENT WILL EITHER PARTY BE LIABLE UNDER THIS AGREEMENT FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT (INCLUDING LOSS OF PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), NO MATTER WHAT THEORY OF LIABILITY, EVEN IF THE EXCLUSIVE REMEDIES PROVIDED FOR IN THIS AGREEMENT FAIL OF THEIR ESSENTIAL PURPOSE AND EVEN IF EITHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OR PROBABILITY OF SUCH DAMAGES. THE PROVISIONS OF THIS SECTION "LIMITATION OF LIABILITY" ALLOCATE THE RISKS UNDER THIS AGREEMENT BETWEEN LICENSOR AND LICENSEE AND THE PARTIES HAVE RELIED UPON THE LIMITATIONS SET FORTH HEREIN IN DETERMINING WHETHER TO ENTER INTO THIS AGREEMENT.

B.    EACH PARTY'S LIABILITY TO THE OTHER UNDER THIS AGREEMENT FOR CLAIMS RELATING TO THIS AGREEMENT, WHETHER FOR BREACH OF CONTRACT OR IN TORT, SHALL BE LIMITED TO THE AGGREGATE ROYALTY FEES PAID BY LICENSEE TO LICENSOR DURING THE TWELVE MONTH PERIOD PRECEDING THE CLAIM.

## XIV.  INSURANCE

LICENSEE shall, throughout the Term of this Agreement, obtain and maintain at its own cost and expense from a qualified insurance company licensed to do business as required by state and federal law(s), standard Product Liability Insurance naming LICENSOR as an additionally named insured. Such policy shall provide protection against any and all claims, demands and causes of action arising out of any defects or failure to perform, alleged or otherwise, of the Licensed Products or any material used in connection therewith or any use thereof. The amount of coverage shall be as specified in "Schedule A" attached hereto. LICENSEE agrees to furnish LICENSOR a certificate of insurance evidencing same within ninety (90) days after issuance of same, and, in no event, shall LICENSEE manufacture, distribute or sell the Licensed Products prior to receipt by LICENSOR of such evidence of insurance.

## XV.  FORCE MAJEURE

LICENSEE shall not be liable for any failure of performance hereunder due to causes beyond its reasonable control, including but not limited to acts of God, fire, explosion, vandalism, strikes, lockouts, work stoppages, other labor difficulties, supplier failures, storm or other similar catastrophes, any law, order, regulation, direction, action or request of the state, local or federal government or of any government agency, commission, court, bureau, corporation or other instrumentality of any one or more of such governments, or of any civil or military authority, national emergencies, insurrections, riots, or wars.

## XVI. JURISDICTION AND DISPUTES

A. This Agreement shall be governed in accordance with the laws of the State of Florida without regard to its principles of conflicts of laws.

B. All disputes under this Agreement shall be resolved by the courts of the State of Florida including the United States District Court for Florida and the parties all consent to the jurisdiction of such courts, agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it.

## XVII. AGREEMENT BINDING ON SUCCESSORS

The provisions of the Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their heirs, administrators, successors and assigns.

## XVIII. WAIVER

No waiver by either party of any default shall be deemed as a waiver of prior or subsequent default of the same or other provisions of this Agreement.

## XIX. SEVERABILITY

If any term, clause or provision hereof is held invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other term, clause or provision and such invalid term, clause or provision shall be deemed to be severed from the Agreement.

## XX. NO JOINT VENTURE

Nothing contained herein shall constitute this arrangement to be employment, a joint venture or a partnership.

## XXI. ASSIGNABILITY

Neither party may assign by any act or operation of law the rights and obligations of this Agreement unless in connection with a transfer of substantially all of the assets of LICENSOR and/or with the consent of LICENSOR, which shall not be unreasonably withheld or delayed. By way of example and not limitation, LICENSEE may freely assign its rights and obligations under this Agreement to Stelor Productions, Inc.

## XXII. INTEGRATION

This Agreement constitutes the entire understanding of the parties, and revokes and supersedes all prior agreements between the parties, including any option agreements which may have been entered into between the parties, and is intended as a final expression of their Agreement. It shall not be modified or amended except in writing signed by the parties hereto and specifically referring to this Agreement. This Agreement shall take precedence over any other documents which may be in conflict with said Agreement.

## XXIII. RATIFICATION

The LICENSOR hereby agrees to the transfer of this License from the LICENSEE (The Aurora Collection, Inc.) to Stelor Productions, Inc. as contemplated by the Asset & Purchase Agreement, dated May 1st, 2002, and       executed       between       the       above       mentioned       parties



IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have each caused to be affixed hereto its or his/her hand and seal the day indicated.

STEVEN A. SILVERS

Steve A. Silvers
Title: Owner/LICENSOR
Dated: 5/09/02

Received Ten Thousand Dollar signing bonus ($10,000.00)

STELOR PRODUCTIONS, INC.

By: _____
Printed Name: Steven A. Esrib
Title: President
Dated: 5/9/02

MICHAEL LUM
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires April 1, 2003

5/9/02

## "SCHEDULE A"

## LICENSED INTELLECTUAL PROPERTY

The following Licensed Intellectual Property forms part of this Agreement: A License under any and all intellectual property rights and interests therein, including by way of explanation, products which deal with a creative character known as Googles, anything that contains the letters GOO (in upper or lower case), together with any and all products, which comprise and which will comprise those characters, likenesses, which include Iggle, Oogle, Oggle, Gooroo, Gootian(s), the Planet Goo, slides, computer web site(s), membership lists, clubs, materials, patterns, prototypes, logos, trademarks, service marks, clothing, merchandise, educational products, marketing and promotional data and tools, packaging and advertising, modifications, updates and variations, and all other items associated therewith whether in singular or plural

## LICENSED TRADEMARKS

The following Licensed Trademarks form part of this Agreement: (i) "The Googles" (word and design) Trademarks in International Class Code (016) of the U.S.P.T.O. and the co-existent Trademarks Agreement with Ganz, Inc. of Canada in International Class Code (028) of the U.S.P.T.O., which is hereto attached and made a part of this "Schedule A" document, (ii) "Oogle", (iii) "Iggle", (iv) "Oggle", (v) "GooRoo", (vi) "Planet Goo", (vii) "GooMu", (viii) "GooToons", (ix) "GooStuff", (x) "GooKids", (xi) "GooStore" and (xii) any other trademarks, whether registered, pending or future or common law, used in connection with the Licensed Property, including ., but not limited to, any trademark incorporating the phrase "Goo" currently in existence.

## LICENSED PRODUCTS

The following Licensed Products form part of this Agreement: all products which comprise the likenesses, stories, ideas, concepts, or designs of the Licensed Property, including without limitation, stuffed toy figurines, videos, stickers, t-shirts or other clothing items, slides, movies, cartoons, books (comic and otherwise), posters, playing, trading and collector cards, CDs, cassette tapes, DVDs, TV programs, motion pictures, all other forms of communication and publication, programs, computer Web site(s), membership lists and clubs, and any other products.

## DERIVATIVES

A Derivative as defined in this agreement shall mean a product or service that is utilized by the LICENSEE and developed by a party other than the LICENSOR but is used in conjunction with licensed products, articles and /or services. It can be a product or service produced by the LICENSEE or a third party (inventor, sub licensee etc.) that in its use enhances the value of the Googles Universe but does not have a conflict with an already existing Googles product idea or concept as outlined in this agreement. It may not possess the "Googles" or "GOO" in it's name and would therefore fall under the LICENSOR'S exclusive ownership as defined in the amended agreement but can be used in conjunction with the "Goo" Universe by the LICENSEE.

## TERRITORY

The following countries shall constitute the Territory: Global/Worldwide rights.

## TERM

This Agreement shall commence on the date executed below by both parties and shall be for a thirty (30) year term. This Agreement shall automatically renew for one additional ten (10) year term on the same terms and conditions provided for herein ("Renewal Term"). Upon expiration of the first Renewal Term of ten (10) years, this Agreement shall automatically renew for a second ten (10) year extended Term on the

same terms and conditions provided for herein, unless LICENSOR provides written notice of its intention to not to renew this Agreement within one hundred eighty (180) days prior to expiration of the Renewal Term.

## ROYALTY RATE

LICENSEE shall pay the following royalty rates: (i) SIX PERCENT (6%) of Net Sales of Licensed Products that are based solely on the Licensed Intellectual Property and (ii) THREE PERCENT (3%) of Net Sales of Licensed Products that are based solely on Derivative Products and (iii) In the case of Sub Licenses royalties will be TEN PERCENT (10%) of Net sales after subtracting licensing costs and royalties paid to third parties only.

## PRODUCT LIABILITY INSURANCE

Minimum Product Liability Insurance shall be Two Million U.S. dollars ($2,000,000.00) combined single limit for each single occurrence for bodily injury and/or for property damage.

5/9/02

*Succession*
*Rights of Survivor*

1. In the event of the Death of Licensor all of the Licensor's rights under this agreement shall go to his heirs, assigns or legal representatives as he has lawfully designated in writing.

5/09/02

5/9/02

MICHAEL LUM
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires April 1, 2003

5/9/02

# EXHIBIT "B"

June 1, 2002

Mr. Steven Silvers
3741 N.E. 163rd Street
PMB # 324
North Miami Beach, FL 33160

Dear Steven:

This letter agreement ("Agreement") will serve to memorialize the terms of the consultantcy arrangement between Stelor Productions, Inc. ("Company") and Steven A. Silvers ("Consultant").

1.    Engagement of Consultant.

a.    Company hereby engages Consultant as an independent contractor to the Company. Consultant's title shall be Executive Creative Consultant. Company is relying on Mr. Silvers to continue his role of "Papa Googles" and continue to offer his creative input to the Company.

b.    In consideration for the covenants of Consultant contained herein, Company will pay Consultant the following: (i) a signing bonus of ten thousand dollars ($10,000) and (ii) a monthly consultancy fee of five thousand five hundred dollars ($5,500) beginning on June 1, 2002, and continuing each month thereafter for twelve (12) months. Company shall pay Consultant six thousand dollars ($6,000) monthly for a second 18-month period, beginning June 1, 2003.  All payments made to Consultant will not be offset against any royalties paid by the Company to Consultant pursuant to the License, Distribution and Manufacturing Agreement. Company will continue to reimburse The Aurora Collection, Inc. for the existing health plan if available, or if not available, will reimburse consultant $300 per month during the term of this Agreement. During the term of the Agreement, Company will reimburse The Aurora Collection, Inc. for, if available, the use of a leased company vehicle, with company to reimburse The Aurora Collection, Inc for insurance coverage. Consultant agrees to pay all costs of maintenance and upkeep. Stelor will write an agreement with Consultant granting him options for 1,000 shares of Stelor's stock under Stelor's stock option plan. If the number of options available under the Stelor Productions current plan is increased during the Consultant's service Company will issue an additional one thousand option shares (1,000)

c.    It is agreed by company that in the event the Company fails to compensate the Consultant as outlined in this Agreement and in accordance with the terms of this Agreement (including all option periods surrounding same) for two consecutive months and if after thirty (30) days fails to cure alleged breach, then Consultant has the right (option) to terminate this Agreement and among other legal remedies afforded Consultant to seek redress before the Court, the License Agreement shall, likewise immediately terminate. This caveat shall exist only if Consultant is not paid for other than "good Cause" termination as outlined below at section five (5) b of this Agreement.

2.    Relationship of Parties.  The relationship of Company and Consultant established under this Agreement is of an independent contractor. Nothing in this Agreement shall be construed to give any party the power to direct or control the daily activities of any of the other parties, or to constitute the parties as principal and agent, employer and employee, franchiser and franchisee, partners, joint venturers, co-owners, or otherwise as participants in a joint undertaking. The parties understand and agree that none of the parties grants any other party the power or authority to make or give any agreement, statement, representation, warranty, or other commitment on behalf of any other party, or to enter into any contract or otherwise incur any liability or obligation, express or implied, on behalf of any other party, or to transfer, release, or waive any right, title, or interest of any other party. Furthermore, during the term of

this agreement, LICENSOR shall not initiate or maintain any relationship or conversations with LICENSEE'S current or prospective clients, vendors, any Company relationships with the media (press etc.) without the prior express written request by LICENSEE.

3.    <u>Duties of Consultant.</u>  Consultant's duties hereunder are as follows:

a.    Consultant shall use his best efforts to perform such services as may be requested by Company from time to time consistent and commensurate with his position as Executive Creative Consultant, including, but not limited to, executing all papers, testifying on all Company related matters and otherwise cooperating in every way necessary and desirable to strengthen, establish or maintain any intellectual property right granted under this Agreement or the License, Distribution and Manufacturing Agreement (as amended) between Company and Consultant The Consultant shall make himself available to the Company by way of telephone, fax, email, video conferencing (if deemed necessary) on an as needed basis and during reasonable business hours Monday through Friday. Consultant shall further make himself available, in person, if deemed necessary, to the Company so long as the Consultant is given a minimum of ten (10) days written notice if Consultant is, at the time of said request, residing outside of the Continental United States and three (3) days written notice by the Company if Consultant is residing, at the time of said request, within the Continental United States. In either case, Consultant must maintain a United States address for purposes of receiving correspondence, samples, checks etc. Written notice may also be deemed given if communicated via Consultant's personal email address or a fax number to be provided to the Company. Written notice must be sent via U.S. Mail certified, return receipt requested, or via a nationally recognized mail carrier service with "signature" required. Written notice may also be sent if communicated via Consultant's personal email address or a fax number to be provided to the Company. However, the latter shall not be used for any "official" notice purposes.

b.    During the term of this Agreement and for a period of (1) years after the termination or expiration of this Agreement, Consultant shall not, either individually or in conjunction with a third party, engage in any business, trade, or profession as owner, officer, manager, employee, consultant or otherwise if such business competes in any material way with Company's business of developing, creating, selling, manufacturing, distributing, or marketing products, media or materials for children.

c.    Consultant shall offer Company a right of first refusal to license, develop, manufacture, market or sell any and all children's characters or other products, ideas, inventions or creations created by Consultant that are not within the scope of this Agreement or the License, Distribution and Manufacturing Agreement (as amended) between Company and Consultant. If Consultant provides Company with any new idea's either relating to The Googles as well as anything entirely new that may not relate to the current universe of characters and/or idea's, that upon submission of such new idea or concept which shall be placed in writing Company shall have one hundred and twenty (120) days to accept and enter into an agreement for said property.

d.    Consultant agrees to hold harmless, defend and indemnify Company and its officers, directors, employees, agents and servants from and against any and all claims, damages and expenses, including reasonable legal fees and expenses, of whatever kind and nature directly or indirectly arising out of or on account of or resulting from the Consultant's activities (other than as expressly authorized by Company) including, without limitation, Consultant's failure to comply with his obligations under this Agreement, acts or omissions.

4.    <u>Duties of Company.</u>

a.    Company shall reimburse Consultant for all reasonable travel and living expenses that are deemed to be essential to Company's success and are pre-approved by an authorized officer of the Company and incurred as a direct result of Consultant's obligations under this Agreement such as attending tradeshows, board meetings, etc. The Company shall, upon proper documentation having been presented to the Company, or its official/designated representative, within seven (7) days of receipt of same, reimburse Consultant said incurred expenses as approved by Company.

5.    Term and Termination.

a.    Subject to the provisions for termination as provided herein, this Agreement shall commence upon execution and shall have a term of thirty (30) months.

b.    Company may immediately terminate this Agreement upon the occurrence of any of the following: (i) a material breach of any provision of this Agreement by Consultant; (ii) a failure by Consultant, after written notice, to perform such duties required of Consultant as outlined in this agreement; (iii) the initiation of any bankruptcy, receivership, trust deed, creditors arrangement, composition or comparable proceeding by Consultant, or if any such proceeding is instituted against Consultant; (iv) the conviction of Consultant of any felony crime; (v) any use, sale or possession by Consultant of any illegal drug or controlled substance that is prosecutable under US Federal Laws. Written notice to mean by way of Certified mail, return receipt requested, or by way of a Nationally recognized mail service, Courier service etc.

c.    Upon termination or expiration of this Agreement by either party, Consultant shall immediately return to Company all Proprietary Information (as defined below) in Consultant's possession, custody or control in whatever form held (including copies, compilations, summaries, or embodiments thereof relating to Proprietary Information) and provide written certification that all such material has been returned.

d.    Company agrees to provide Consultant thirty (30) days Notice, from date of said written notice of termination by the Company, within which to cure any alleged breach it has made against the Consultant identified in paragraph three (3) under "Duties of Consultant".

6.    Proprietary Information; Proprietary Rights.

a.    In the course of performing his duties under this Agreement, Consultant may obtain information relating to Company and/or its customers, suppliers or other third parties that is of a confidential and proprietary nature ("Proprietary Information"). Such Proprietary Information may include, without limitation, trade secrets, research and development, customer lists, vendor lists, schedule of accounts, plans, programs, inventions, computer software, know-how, inventions, product information, techniques, processes, schematics, data, financial information and sales and marketing plans. Consultant shall, at all times, both during the term of this Agreement and for a period of two (2) years thereafter its termination, keep in trust and confidence all such Proprietary Information, and shall not use such Proprietary Information other than in the course of performing his duties as expressly provided in this Agreement, nor shall Consultant disclose any such Proprietary Information to any person without Company's prior written consent except as required or needed in any legal and/or Court action by Consultant against the Company or any other third party. This pertains to only that information not otherwise gathered from public sources, knowledge already in the public eye or a matter of public record, and/or any other third party other than Consultant.

3

b. The Company acknowledges that the Consultant is not being hired as a work for hire but rather is being compensated, pursuant to this Consulting agreement, as a Consultant for the express purpose of advising, recommending, counseling, and otherwise utilizing Consultant's expertise in the decision making process as it pertains to the existing and "further development" of the Google's project only.

c. The services and rights which Company is granting to Consultant hereunder are extraordinary and unique and cannot be replaced or adequately compensated in money damages, and any breach by Consultant of this Agreement will cause irreparable injury to Company. Therefore, Consultant agrees that in the event of a breach of this Agreement, Company, in addition to any other remedies that might be available to it, shall be entitled to bring suit at law or equity for money or other damages. Consultant shall not oppose such relief on the grounds that there is an adequate remedy at law, and such right shall be cumulative and in addition to any other remedies at law or in equity (including monetary damages) which Company may have upon the breach of the obligations of confidentiality hereunder.

7.  Limitations of Liability.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ANY THIRD PARTY FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, INDIRECT, SPECIAL, PUNITIVE, OR EXEMPLARY DAMAGES) FOR ANY CLAIM BY ANY OTHER PARTY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

8.  Miscellaneous.

This Agreement is a legally binding agreement between Company and Consultant and shall be governed by and construed in accordance with the laws of the State of Florida. This Agreement may be executed in one or more counterparts, each of which shall be an original Agreement, and all of which taken together shall constitute one and the same instrument. This Agreement may not be assigned by consultant without the prior written consent of Company. This Agreement shall not be modified, amended, or in any way altered except by an instrument in writing signed by both Company and Consultant. Each party shall refrain from making or issuing any statements, disclosures, or other communications related to this Agreement, the subject matter of this Agreement, or the services provided hereunder. This Agreement constitutes the entire agreement between Company and Consultant with respect to the subject matter of this Agreement, and supersedes all prior agreements, whether written or oral, with respect to the subject matter contained in this Agreement.

Please indicate your acceptance of the terms of this Agreement by signing in the space indicated below.

STEVEN A. SILVERS    Date  5/09/02

Stelor Productions, Inc.

By:    Date  5/9/02
Name:  Steven A Esq    Title:  President

Received Ten Thousand Dollar signing bonus ($10,000.00)

MICHAEL LUM
NOTARY PUBLIC STATE OF MARYLAND

4

EXHIBIT "C"

LAW OFFICES

## KOZYAK TROPIN & THROCKMORTON, P.A.

2525 PONCE DE LEON • 9TH FLOOR

CORAL GABLES, FLORIDA 33134-6037

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

Via Federal Express
AWB#7927-7747-7745

November 12, 2004

Steven A. Esrig
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland 20874

Re:     Silvers/Stelor License Agreement

Dear Mr. Esrig:

We represent Steven Silvers, Licensor under that License, Distribution and Manufacturing Agreement dated June 1, 2002 ("Agreement"). Pursuant to paragraph IX-A. of the Agreement, this serves as notice that Stelor has breached the Agreement and that Mr. Silvers will exercise his right to terminate the Agreement unless Stelor cures the following breaches within 60 days:

a.     Failure to pay royalties under paragraph III (A);

b.     Failure to provide a written certified royalty statement under paragraph III (C);

c.     Failure to provide a list of all sub licenses under paragraph III (C);

d.     Failure to use commercially reasonable efforts to promote, market, sell and distribute the Licensed Products under paragraph V (B)(iii);

e.     Failure to accommodate Licensor's request to audit the books and records of Stelor made under paragraph IV (A) and (C);

f.     Failure to provide samples of all Licensed Products you intend to manufacture and sell, and all promotional and advertising materials associated with those products under paragraph VI (C);

g.     Failure to include appropriate legal notices with the Licensed Products under paragraph VI(A);

h.     Failure to maintain the requisite level of quality for the Licensed Products under paragraph VI (B);

Page 2

i.    Failure to maintain Licensor's Intellectual Property Rights, namely failure to maintain the domain names googlegame.com, googlesgames.com, and googlegame.com, under paragraph VIII;

j.    Failure to register Licensor's Intellectual Property Rights in the name of Licensor, and instead registering copyrights and trademarks in Stelor's name;

k.    Failure to oppose trademark applications for the name Googles, and the domain name registration googles.org, and otherwise protect the Licensed Intellectual Property; and

l.    Unlawful use of the limited power of attorney granted under the Agreement, namely retaining counsel for Mr. Silvers without his knowledge or consent, filing an action in the name of Mr. Silvers to dispute Google, Inc.'s right to use the domain name google.com, and filing an answer in the name of Mr. Silvers in Cancellation Proceeding 92043737.

This also serves as notice under the Letter Agreement dated June 1, 2002, that Stelor has breached the Letter Agreement by its:

a.  Failure to pay Mr. Silvers consultancy fees and expenses;

b.  Failure to provide Mr. Silvers with an agreement granting him stock options for 1,000 shares of Stelor's stock;

c.  Making unauthorized statements and representations on behalf of Mr. Silvers; and

d.  Attempting to transfer, release and waive Mr. Silvers right, title, and interest in his intellectual property.

Pursuant to paragraph 1 of the Letter Agreement, Mr. Silvers will exercise his right to terminate the License, Distribution and Manufacturing Agreement unless Stelor cures these breaches within 30 days.

Very truly yours,

Gail A. McQuilkin

c:    Steven A. Silvers
      Laurence Hefter

1145615.1

# EXHIBIT "D"

LAW OFFICES .

## KOZYAK TROPIN & THROCKMORTON, P.A.

2525 PONCE DE LEON · 9TH FLOOR

CORAL GABLES, FLORIDA 33134-6037

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

GAIL A. MCQUILKIN
DIRECT DIAL (305) 377-0656
gam@kttlaw.com

Via Federal Express
AWB# 7914-4506-9106

January 13, 2005

Steven A. Esrig
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland 20874

Re:    Silvers/Stelor License Agreement

Dear Mr. Esrig:

As you know we represent Steven Silvers, Licensor under the License, Distribution and Manufacturing Agreement dated June 1, 2002 ("License Agreement"), and party to the Letter Agreement dated June 1, 2002 ("Letter Agreement"). On November 12, 2004 we served notice on Stelor that it was in breach of several material provisions of both the License Agreement and Letter Agreement, a copy of which is attached.

Pursuant to paragraph 1(c) of the Letter Agreement, and paragraph IX-A of the License Agreement, this serves as notice that Mr. Silvers is exercising his option to terminate the License Agreement for Stelor's failure to cure its breach of the Letter Agreement within thirty (30) days, and breach of the License Agreement within sixty (60) days.

Pursuant to paragraph X of the License Agreement, Stelor must immediately provide Mr. Silvers with a complete schedule of all inventory of Licensed Products on hand or on order. Stelor has six (6) months to continue to sell this Inventory in accordance with the License Agreement. So long as Stelor is actively selling its inventory of Licensed Products, it may continue the use of the Licensed Intellectual Property associated with the inventory for this period. Outside the scope of its efforts to sell its inventory of Licensed Products, Stelor must immediately cease use of the Licensed Intellectual Property, including names, trademarks, signs, advertising and anything else that might make it appear that it is still handling the articles and products of Mr. Silver. Further, Stelor must return to Mr. Silvers all material relating to the Licensed Intellectual Property and inform its sub-licensees of the termination of the License Agreement.

Because the License Agreement is terminated, Stelor may not proceed to represent the interests of Mr. Silvers in TTAB Opposition Proceeding No. 91161251, TTAB Cancellation Proceeding No. 92043496, the domain dispute against Google pending before the National

Steven A. Esrig
Page 2

Arbitration Forum, or participate in TTAB Cancellation Proceeding No. 92043737. And, because the License Agreement is terminated, the action pending in federal district court is now moot. Thus, we will file the appropriate notices in these proceedings.

Our client regrets that this relationship did not work out, and would like very much to keep the relationship amicable throughout the six month inventory sell-off period.

Sincerely,

Gail A. McQuilkin

c:    Steven A. Silvers
      Laurence Hefter
      Yano A. Rubinstein
      William Borchard

124836 7.1

EXHIBIT "E"

LAW OFFICES

KOZYAK TROPIN & THROCKMORTON, P.A.

2525 PONCE DE LEON • 9TH FLOOR

CORAL GABLES, FLORIDA 33134-6037

GAIL A. MCQUILKIN
DIRECT DIAL (305) 377-0856
gam@kttlaw.com

TELEPHONE (305) 372-1800
TELECOPIER (305) 372-3508

Via Federal Express
AWB# 7929-0844-8480

April 27, 2005

Steven A. Esrig
Stelor Productions, Inc.
14701 Mockingbird Drive
Darnestown, Maryland 20874

Re:    Silvers/Stelor License Agreement

Dear Mr. Esrig:

On November 12, 2004, we served notice on Stelor that it was in breach of several material provisions of both the License Agreement and Letter Agreement, a copy of which is attached. Because Stelor did not cure those breaches, on January 13, 2005 we served on Stelor a notice of termination of the License Agreement, a copy of which is attached.

On January 28, 2005, Stelor and Silvers entered into a Settlement Agreement in which Silvers agreed to withdraw his notice of termination provided Stelor perform its obligations under the Settlement Agreement. Stelor, however, has:

> failed to provide Silvers with unit interests in Stelor LLC under paragraph 9;

> failed to pay Silvers monthly installments on royalty advances on the first of every month under paragraph 10 (a);

> failed to pay on April 1, 2005 the monthly advance on royalties required by Silver to maintain his insurance coverage through the Aurora Collection under paragraph 10 (b);

> failed to cooperate in the audit of the books and records of Stelor under paragraph 14; and

> failed to provide Silvers samples of Licensed Products that are being offered for sale under paragraph 15.

Furthermore, although Stelor has provided a written statement that it is not offering any

Page 2

Furthermore, although Stelor has provided a written statement that it is not offering any products for sale, and no royalties due, that statement has proven to be false.

Stelor continues to be in breach of the License Agreement as outlined in our letter of November 12, 2004. This is to provide notice to you that due to Stelor's failure to perform its obligations under the Settlement Agreement, and failure to cure the breaches under the License Agreement, Silvers is reinstating his notice of termination of the License Agreement effective immediately.

Pursuant to paragraph X of the License Agreement, Stelor must immediately provide Silvers with a complete schedule of all inventory of Licensed Products on hand or on order. Stelor has six (6) months to continue to sell this Inventory, if any, in accordance with the License Agreement. So long as Stelor is actively selling its inventory of Licensed Products, it may continue the use of the Licensed Intellectual Property associated with the inventory for this period. Outside the scope of its efforts to sell its inventory of Licensed Products, Stelor must immediately cease use of the Licensed Intellectual Property, including names, trademarks, signs, advertising, web site, and anything else that might make it appear that it is still handling the articles and products relating to the Googles IP. Further, Stelor must return to Silvers all material relating to the Licensed Intellectual Property and inform its sub-licensees and those selling Googles related merchandise of the termination of the License Agreement.

Because the License Agreement is now terminated, Stelor may not represent Silvers' interest in any legal proceeding or action.

Sincerely,

Gail A. McQuilkin

c:   Steven A. Silvers
     Laurence Hefler
     Kevin Kaplan

251939.1

EXHIBIT "F"

ozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134

Gail A. McQuilkin
gam@kttlaw.com

Telephone (305) 372-1800
Fax (305) 372-3508

May 2, 2004

Daniel Blonsky, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive
Miami, Florida 33133

Re:    Stelor Productions, Inc. v. Steven A. Silvers

Dear Dan:

This is in response to your letter of April 29, 2005.  My client is not interested in Stelor's offer of late compliance with the terms of the Settlement Agreement or its obligations under the License Agreement.  Mr. Silvers has terminated the License and intends to go in a different direction to develop his characters and intellectual property.  We expect Stelor to honor its obligations under the termination provisions of the License Agreement.

Sincerely,

Gail A. McQuilkin

/252630.1

KOZYAK · TROPIN
THROCKMORTON
ATTORNEYS AT LAW

Gail A. McQuilkin, Esq.
gam@kttlaw.com | 305.377.0656

<u>Via e-mail</u>

June 21, 2005

Kevin C. Kaplan, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse A
Miami, Florida 33133

Re:    <u>Stelor Productions, Inc. v. Steven A. Silvers</u>

Dear Kevin:

This is in response to your June 21, 2005 letter. As you know, our position is that the Settlement Agreement and License Agreement have been terminated due to Stelor's failure to perform under both. Your letter once again confirms that Stelor did not perform, and is simply another attempt post-termination to cure some but not all of Stelor's breaches. This is not acceptable to Mr. Silvers.

Your statement about tending checks is wrong. The late checks were never tendered. You sent us *copies* of checks post-termination. Besides, tendering checks post-termination does nothing to cure breaches that occur pre-termination.

Further, even if the Settlement Agreement were in effect – which it is not because Stelor did not perform -- Stelor is once again trying to impose conditions. There is no requirement that Silvers provide proof of payment for the $1000 royalty advance. It is Silvers' option to take up to $1000 per month against *his* future royalties. And, let me remind you that Silvers has already provide a declaration that he requires the $1000 to cover his health insurance premium payments, despite that he had no obligation to so (another condition you imposed before Stelor would honor its obligations).

Also, there is no condition on Silvers' right to audit Stelor that his auditor provide Stelor a list of information needed for the audit. The License Agreement states that he is entitled to see all the books and records and all documents and material related to the License Agreement.

As for the options, we will determine the status of the LLC certificates when we conduct discovery. On the topic of discovery, two weeks ago I offered to have a Rule 26 conference. That offer was met with stone cold silence. I am again offering to hold a

Page 2

Rule 26 conference so we can get this matter set for trial on an expedited track (assuming the Court does not dismiss the action). I am available this Friday to hold that conference.

Finally, this is to advise you that the federal discovery rules require that Stelor maintain all electronic documents and communications, including email sent and received. This means that *all* electronic materials must be maintained and preserved to avoid spoliation of evidence.

Sincerely,

Gail A. McQuilkin

3339/101/254634.1

Corr.

KOZYAK · TROPIN
THROCKMORTON
ATTORNEYS AT LAW

Gail A. McQuilkin, Esq.
gam@kttlaw.com | 305.377.0656

Via Federal Express
And Email

August 10, 2005

Kevin C. Kaplan, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse A
Miami, Florida 33133

    Re:   <u>Stelor Productions, LLC v. Steven A. Silvers</u>

Dear Kevin:

    Enclosed are checks sent to Mr. Silvers by Stelor. While Mr. Silvers appreciated Mr. Esrig's kind wishes for a speedy recovery, the checks are being returned because the License Agreement has been terminated. Please inform Mr. Esrig that he is not to communicate directly with Mr. Silvers.

Sincerely,

Gail A. McQuilkin

3339/101/256394.1

KOZYAK · TROPIN
THROCKMORTON
ATTORNEYS AT LAW

Kenneth R. Hartmann, Esq.
krh@kttlaw.com | 305.377.0657

July 27, 2005

Kevin C. Kaplan, Esq.
Burlington, Weil, Schwiep,
    Kaplan & Blonsky, P.A..
2699 South Bayshore Drive
Penthouse
Miami, FL 33133

Re:     License Termination

Dear Kevin:

Based on Mr. Esrig's recent declaration, it appears that Stelor is continuing to engage in the unauthorized use of Mr. Silvers' intellectual property and may be misrepresenting its status as a licensee. Because the License Agreement has been terminated, Stelor no longer has authority to act as Mr. Silver's licensee, and must cease and desist from conducting business that relates in any way to the License Agreement. In fact, the post-termination provisions in the License Agreement require Stelor to immediately inform all sublicensees, or in this instance potential sublicensees, that its license has been terminated. Stelor's apparent concealment of its termination is misleading as to these persons.

If Stelor persists in the unauthorized exploitation of Mr. Silvers' intellectual property, we will have no choice but to seek injunctive relief. To the extent Stelor incurs liability to third parties, based on its unauthorized conduct, or suffers "damages," Stelor obviously bears sole responsibility.

Furthermore, Stelor must make the necessary changes to eliminate all reference to the Googles name and "goo" related words. While we have tried in good faith and as a courtesy to give Stelor enough time to make this transition, it appears that Stelor has taken no action. If Stelor fails to make these changes we will file an action for trademark infringement.

Very truly yours,

Kenneth R. Hartmann

KRH/lmm
cc:     Steven Silvers

BURLINGTON · WEIL · SCHWIEP · KAPLAN (&) BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE 2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900  F: 305.858.5261
EMAIL: DBLONSKY@BWSKB.COM    WWW.BWSKB.COM

October 11, 2005

Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, Florida 33134

Re:     Stelor Productions, LLC v. Silvers,
        Case No. 05-80393-Civ-Hurley/Hopkins

Dear Gail:

On behalf of Stelor Productions, L.L.C., enclosed please find the October 2005 advances against royalties for Mr. Silvers in the amounts of $5,000.00 and $1,000.00.

Sincerely,

Kevin C. Kaplan

KK/mjp
cc:     Stelor Productions, LLC



**STELOR PRODUCTIONS, LLC**
OPERATING ACCOUNT
P.O. BOX 6000
GAITHERSBURG, MD 20883

1780

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
77301/2201

09/21/05

PAY TO THE
ORDER OF    Steven A. Silvers    $ **5,000.00

Five Thousand and 00/100*************************************    DOLLARS

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, Fl 33411

MEMO    Advance against royalties - Oct 2005

1780

5,000.00

STELOR PRODUCTIONS, LLC
Steven A. Silvers
09/21/05                                09/21/05

Bill #Oct 2005

Provident - Oper  Advance against royalties - Oct 2005

5,000.00



STELOR PRODUCTIONS, LLC
OPERATING ACCOUNT
P.O. BOX 8000
GAITHERSBURG, MD 20883

1781

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
55-730/2520

09/21/05

PAY TO THE
ORDER OF   Steven A. Silvers                    $ ***1,000.00

One Thousand and 00/100************************

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, FL 33411

MEMO   Royalty/Insurance advance - Oct 2005

⑈00⑆78⑈⑈⑆ ⑆2520730⑈8⑈⑆ 0005920⑈3⑈2⑈

STELOR PRODUCTIONS, LLC
Steven A. Silvers          Bill #Oct 2005                    09/21/05          1,000.00
09/21/05

Provident - Oper   Royalty/Insurance advance - Oct 2005                    1,000.00



KOZYAK · TROPIN
THROCKMORTON
ATTORNEYS AT LAW

**Gail A. McQuilkin**, Esq.
gam@kttlaw.com | 305.377.0656

Via Federal Express

October 19, 2005

Kevin C. Kaplan, Esq.
Burlington Weil Schwiep Kaplan & Blonsky, P.A.
2699 South Bayshore Drive, Penthouse A
Miami, Florida 33133

   Re:  Stelor Productions, LLC v. Steven A. Silvers

Dear Kevin:

  Enclosed are checks sent to Mr. Silvers by Stelor.  The checks are being returned because the License Agreement has been terminated.

        Sincerely,

        Gail A. McQuilkin

**STELOR PRODUCTIONS, LLC**
**OPERATING ACCOUNT**
P O BOX 8000
GAITHERSBURG, MD 20883

PROVIDENT BANK OF MARYLAND
GAITHERSBURG, MD 20878
7-7301/2520

1780

09/21/05

PAY TO THE
ORDER OF____ Steven A. Silvers _____ | $ **5,000.00

Five Thousand and 00/100************************************************************

_____ DOLLARS

Steven A. Silvers
2495 Sailfish Cove Dr.
West Palm Beach, FL 33411

MEMO    Advance against royalties - Oct 2005

AUTHORIZED SIGNATURE                MP

⑈001780⑈ ⑇252073018⑇    000592013 2⑈

---

STELOR PRODUCTIONS, LLC

Steven A. Silvers                                            09/21/05              1780
09/21/05                    Bill #Oct 2005                                    5,000.00


Provident - Oper   Advance against royalties - Oct 2005                         5,000.00