# Exhibit
# 22

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.05-80393-Civ-Hurley/Hopkins

STELOR PRODUCTIONS, L.L.C.,
        Plaintiff,

vs.

STEVEN A. SILVERS,
        Defendant.

_____/

FILED by _____ D.C.

JUN 0 3 2005

CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION CONCERNING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DE 2)

**THIS CAUSE,** having come before this Court upon an Order Referring Plaintiff's Motion for Preliminary Injunction to Magistrate Judge for a Report and Recommendation, (DE 7), and being otherwise advised on the premises, it is hereby **RECOMMENDED** that Plaintiff's motion for preliminary injunction, enjoining Defendant from violating the terms of the parties' Settlement and License Agreements be **GRANTED.**

### BACKGROUND

Defendant is the owner of various intellectual property relating to the Googles concept, created by the Defendant. (DE 2). Defendant entered into a License Agreement with Plaintiff, whereby Plaintiff was granted exclusive license to the

1

DOCKETED

6/17

Googles intellectual Property. (DE 2). The relationship between the parties has been somewhat contentious, resulting in Plaintiff filing a lawsuit for breach of contract against the Defendant in October, 2004, *Stelor Productions, Inc. v. Steven Silvers*, Case No. 04-80954-Civ-HURLEY, and in Defendant terminating the License Agreement in January, 2005. (DE 11, ex. 1). In January, 2005, the parties entered into a Settlement Agreement. (DE 4).

Apparently the relationship has not improved between the parties. On April 27, 2005, Defendant again notified Plaintiff that he was terminating their relationship. (DE 11, ex. I). Following receipt of Defendant's letter, and other actions by Defendant, on May 5, 2005, Plaintiff filed the instant motion seeking a preliminary injunction enjoining Defendant from taking unilateral actions that materially breach his contractual obligations. (DE 2). Defendant filed his response on May 20, 2005. (DE 13). An evidentiary hearing was held on May 23, 2005, and Plaintiff filed its reply on the same day. (DE 18).

## THE EVIDENTIARY HEARING

On May 23, 2005, an evidentiary hearing was held at the courthouse in Fort Pierce, Southern District of Florida. Plaintiff Stelor Productions, L.L.C. was represented by Kenneth Kaplan, Esq, and Mr. Steven Esrig was present as a

representative of Stelor Productions. Defendant Steven A. Silvers was represented by Kenneth Hartman, Esq. The Defendant was not present at the hearing.

At the hearing, Plaintiff stated that Defendant has unilaterally and improperly terminated the License Agreement between the parties as well as shut the Googles.com website down. Plaintiff stated that the website is needed to successfully proceed with a planned product launch at a trade show in June. Plaintiff asserted that it has spent over $100,000 preparing for the trade show. Plaintiff stated that Stelor Productions has invested over $4 million in the Googles concept since 2002, has developed proprietary technology making its website safe for children, and has developed Googles characters and storylines.

Plaintiff asserted that it has a strong likelihood of success on the merits, and that Defendant did not properly comply with the notice provision of the termination clause. Plaintiff further responded to the alleged breaches specified in Defendant's April 27, 2005 letter. Plaintiff asserted that it has complied with the requirements of the agreements between the parties. Plaintiff also noted that Defendant filed an action against Google, Inc. on May 4, 2005 - a right which, under the License Agreement, belongs to Plaintiff. In addition to seeking an injunction preventing the Defendant from violating the terms of the License Agreement, Plaintiff requests that Defendant be enjoined from proceeding in the Google, Inc. action.

3

Defendant asserted that under the terms of the License Agreement and the Settlement Agreement, Defendant had the right to terminate the License Agreement without additional notice. Defendant asserted that the November 12, 2004 notice was not withdrawn, nor did Plaintiff cure the breaches listed in that notice. Defendant stated that godaddy.com, the registrar of the Googles.com domain name, shut down the Googles.com website upon being notified of the instant action. Defendant additionally noted that the contents of the Googles.com website could be accessed at www.stelorproductions.com. Defendant enumerated the alleged breaches listed in his April 27, 2005 letter, asserting that Plaintiff has not complied with the terms of the agreements between the parties, nor has it cured the breaches of which it was notified on November 12, 2004. Defendant additionally asserted that the Plaintiff failed to comply with the terms of the Settlement Agreement, thus the breaches listed in the November 12, 2004 letter were not cured.

At the hearing, both parties agreed that the main issue of the case was whether the termination letter issued by the Defendant on April 27, 2005 effectively terminated the License Agreement between the parties.

## FINDINGS OF FACT

Based upon the submissions of the parties, and the evidence presented at the May 23, 2005 hearing, this Court makes the following findings of fact:

4

1) Steven Silvers is the creator of the Googles, and the owner of various Googles related intellectual property, including domain names, drawings, books and figures. (DE 11);

2) Silvers and Stelor Productions entered into a License Agreement, effective June 1, 2002, granting Stelor an exclusive license to the Googles intellectual property. (DE 11, ex. B);

3) The License Agreement contains a termination clause which provides:

> This Agreement may be terminated by either party upon sixty (60) days written notice to the other party in the event of a breach of a material provision of this Agreement by the other party, provided that, during the sixty (60) days period, the breaching party fails to cure such breach.

(DE 1, ex. A);

4) Silvers and Stelor also entered into a Letter Agreement (a consulting agreement), which expired by its terms at the end of 2004. (DE 13, ex. B);

5) On October 18, 2004, Plaintiff filed the action *Stelor Productions, Inc. v. Steven Silvers,* Case No. 04-80954-Civ-HURLEY, asserting breach of contract claims against the Defendant, and seeking an injunction enjoining the Defendant from breaching the License Agreement;

6) On November 12, 2004, Defendant sent notice of breach to Plaintiff, asserting breach of the License Agreement and the then valid Letter Agreement. (DE

5

11, ex. G);

7) On January 13, 2005, Defendant sent notice of termination to Plaintiff, terminating the License Agreement effective immediately. (DE 11, ex. I);

8) On January 28, 2005, the parties entered into a Settlement Agreement. (DE 4);

9) The Settlement Agreement provides that: "full performance by each Party of its obligations under this agreement cures the breaches alleged against each by the other Party. . ." (DE4 at 1);

10) Under the Settlement Agreement, Silvers withdrew his notice of termination of the License Agreement, and reaffirmed his obligations under the License Agreement. (DE 4 at 2);

11) On April 27, 2005, Defendant notified Plaintiff that, due to Plaintiff's breaches of both the Settlement Agreement and the License Agreement, Defendant was terminating the License Agreement, effective immediately. (DE 11, ex I);

12) The website located at www.Googles.com has been redirected, and no longer contains the Plaintiff's information. (DE 1);

13) Plaintiff has invested over $4 million in the expansion of the Googles website and products. (DE 18);

14) Plaintiff has invested over $100,000 for a product launch at a June 21, 2005

trade show. (DE 16);

## Procedural Objections

In addition to the Defendant's objections on the merits of the motion, Defendant asserts two procedural objections. Defendant asserts that Plaintiff has failed to properly allege subject matter jurisdiction, and Defendant further asserts that Plaintiff does not have standing to bring the instant action. (DE 13).

A) Subject Matter Jurisdiction

28 U.S.C. § 1332 grants federal jurisdiction over actions in which the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332 (a), (a)(1). Defendant asserts that the Plaintiff has not specifically alleged diversity of citizenship of the parties. (DE 13).

Although Plaintiff points out that the parties have consented to jurisdiction in the Southern District of Florida, (DE 18), this Court notes that, regardless of the parties' choice of venue, the District Court has no jurisdiction to hear the case unless Plaintiff can sufficiently demonstrate subject matter jurisdiction. 28 U.S.C. § 1332.

"The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is properly challenged, that party also bears the burden of proof." *Ray v. Bird and Son and Asset Realization Company, Inc.,* 519

7

F.2d 1081, 1082 (5th Cir. 1975)[1]; *Rolling Greens MHP, LP v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). "When a preliminary injunction is challenged on the basis of jurisdiction, a plaintiff need only establish 'a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Securities and Exchange Comm. v. Unique Financial Concepts, Inc.*, 196 F.3d 1195, 1198 (11th Cir. 1999) (internal citations omitted).

For the purposes of diversity jurisdiction, a Limited Liability Company (LLC) is a citizen of any state in which any of its members is a citizen. *Rolling Greens,* 374 F.3d 1020, 1022. In order to sufficiently allege the citizenship of the LLC, Plaintiff must "list the citizenships of all the members of the limited liability company..." *Id.*

Defendant is a resident of the State of Florida. (DE 1). Although Plaintiff has failed to attach a list of the citizenships of all of its members, Plaintiff has asserted that none of its members resides in Florida. (DE 18).

While the Plaintiff has failed to adequately demonstrate diversity of the parties, this Court finds that the Plaintiff has sufficiently pled diversity of citizenship of the parties so that this Court can find, for the purposes of this motion, that the District Court likely has subject matter jurisdiction in this matter.

---

[1] The holding of this case is binding on the 11th Circuit pursuant to the holding of *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981).

8

B) Standing

Defendant asserts that Plaintiff lacks standing to bring this action. (DE 13). Defendant notes that under the License Agreement, Stelor Productions, Inc. is precluded from assigning its rights to another entity without Defendant's consent. (DE 13; DE 13, ex. A). The true party to the License Agreement is Stelor Productions, Inc. (DE 13, ex. A). However, the Plaintiff in this lawsuit is Stelor Productions, L.L.C. (DE 1). Defendant asserts that he has not given the required consent for assignment of the License Agreement, thus Stelor Productions, LLC has no standing in this matter. (DE 13).

This Court notes that the assignability provision of the License Agreement provides:

> Neither party may assign by any act or operation of law the rights and obligations of this Agreement unless in connection with a transfer of substantially all of the assets of LICENSEE and/or with the consent of LICENSOR, which shall not be unreasonably withheld or delayed. By way of example and not limitation, LICENSEE may freely assign its rights and obligations under this Agreement to Stelor Productions, Inc. (DE 13, ex. A).

It is clear that this provision contemplates a change in corporate structure such as occurred in the transition from Stelor Productions, Inc. to Stelor Productions, LLC, and requires no consent on the part of the Defendant to assign the License Agreement.

9

Plaintiff has not responded to Defendant's assertion that the License Agreement was not properly assigned. However, this Court finds that it is likely that the parties contemplated such a transition, and that such an assignment would be proper.[2] Thus, this Court finds for the purposes of this motion that the Plaintiff likely has standing.

## PRELIMINARY INJUNCTION ANALYSIS

The *Erie* doctrine dictates that, when jurisdiction rests in diversity of citizenship, the substantive law of the forum state applies, and procedural issues are governed by Federal law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Eleventh Circuit, noting that "federal courts are required to apply the federal rules of civil procedure to the exclusion of any contrary state procedure as long as the rule is both constitutional and within the scope of the rules' enabling act," has held that Federal Rule of Civil Procedure 65 governs the determination of issuance of a preliminary injunction. *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991).

In order to obtain a preliminary injunction, a Plaintiff must demonstrate the

---

[2]This Court additionally notes that the Settlement Agreement specifically discusses the transition of Stelor Productions from Stelor Productions, Inc. to Stelor Productions, LLC. (DE 4).

10

following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and, (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." *McDonald's*, 147 F.3d at 1306.

The goal of a preliminary injunction is to prevent irreparable harm in order to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).[3] "[T]he most compelling reason in favor of (granting a preliminary injunction) is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." *Id.* at 573.

A) Likelihood of Success on the Merits

The importance of the "substantial likelihood of success upon the merits"

---

[3]The holding of this case is binding on the 11th Circuit pursuant to the holding of *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981).

11

factor "varies with the relative balance of threatened hardships facing each of the parties." *Canal*, 489 F.2d at 576 (although the court further notes that it would be inequitable to grant a preliminary injunction if the Plaintiff had *no* chance of success on the merits). As will be discussed below in Section C, this Court finds that the relative balance of the hardships in this case weighs heavily in favor of the Plaintiff.

### 1) Breach of Contract Claim

Under the *Erie* doctrine, the law of the forum state should be applied to substantive issues where jurisdiction lies in diversity of citizenship. *Erie*, 304 U.S. at 78. Thus, the likelihood of Plaintiff's success on the merits of the breach of contract claim will be analyzed under Florida state law.

Pursuant to Florida state law, the following must be established to prove a breach of contract claim: 1) existence of a contract; 2) breach of the contract; and, 3) damages. *A.R. Holland, Inc. v. Wendco Corp.*, 884 So.2d 1006, 1008 (Fla. 1st Dist. Ct. App. 2004).

### a) Existence of a Contract

The issue of existence of a contract in this cases rests on whether the Defendant properly terminated the License Agreement. If, in fact, the termination was proper, then Plaintiff has no contract on which to base its breach of contract claim. The parties dispute the validity of the Defendant's termination of the License Agreement.

12

(DEs 13, 18). The basis of the parties' dispute on this issue centers on whether the Defendant complied with the notice requirement of the termination clause of the License Agreement. (DEs 13, 18). Furthermore, Plaintiff asserts that, even had the Plaintiff breached the Settlement or License Agreement, as Defendant asserts as the basis for his termination of the License Agreement, there were no *material* breaches of the contract, thus Defendant's termination of the License Agreement was not proper. (DE 18).

The termination clause of the Licensing Agreement (Agreement) provides:

> This Agreement may be terminated by either party upon sixty (60) days written notice to the other party in the event of a breach of a material provision of this Agreement by the other party, provided that, during the sixty (60) days period, the breaching party fails to cure such breach.

(DE 1, ex. A).

Termination, on appropriate notice, is only proper if the breaches alleged by Defendant are material, and were not cured by the Plaintiff during the notice period.

The Settlement Agreement entered into between the parties contains a provision wherein "full performance by each Party of its obligations under this agreement cures the breaches alleged against each by the other party. . ." (DE 4). Thus, if the Settlement Agreement has been fully performed by the parties, the November 12, 2004 notice of breach would not properly serve as notice under the

13

termination clause of the License Agreement, as the alleged breaches listed within would be considered cured. In other words, the License Agreement could only be terminated by the Defendant on the basis of the November 12, 2004 letter if the Settlement Agreement was not fully performed by the Plaintiff.[4]

i) Defendant's Assertions and Plaintiff's Response

Defendant's April 27, 2005 termination letter lists a number of alleged breaches by the Plaintiff of the Settlement Agreement. (DE 11, ex. I). Plaintiff has responded to these assertions (DE 18):

1) Defendant asserts that Plaintiff "failed to provide Silvers with unit interests in Stelor LLC under paragraph 9 [of the Settlement Agreement]." (DE 11, ex. I).

Plaintiff contends that the conversion to LLC was only completed in March, and that no shareholder or option holder has yet been provided with documentation

---

[4]A number of terms of the Settlement Agreement are vague and poorly drafted. Florida law permits extraneous evidence to be utilized in interpreting a contract provision when the contract is vague, ambiguous or silent on an issue. *See Bunnell Medical Clinic, P.A. v. Barrerra*, 419 So.2d 681, 683 (Fla. 5th Dist. Ct. App. 1982)(permitting extraneous evidence to be introduced where there was a latent ambiguity in an agreement which specified that insurance was to be provided, but did not specify who should apply for the insurance, or by what means insurability would be determined. The Court defined a latent ambiguity as one "where the language in a contract is clear and intelligible and suggests a single meaning, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two possible meanings"); *see also NCP Lake Poser, Inc. v. Florida Power Corp.*, 781 So.2d 531, 537 (Fla. 5th Dist. Ct. App. 2001) (finding that extrinsic evidence is admissible to explain matters on which the contract is silent, as well as to show custom and usage in the industry and the parties' course of dealing). As the License Agreement is more clearly drafted, and as the parties clearly intended to reaffirm the License Agreement in the Settlement Agreement, this Court will utilize the License Agreement to identify the parties' intentions where the Settlement agreement is vague, ambiguous or silent on an issue. Although the Settlement Agreement does contain a merger clause, the clause clearly excludes the License Agreement, therefore not supplanting or invalidating the License Agreement. (DE 4 at 8-9).

14

of unit interests. (DE 18).

2) Defendant asserts that Plaintiff "failed to pay Silvers monthly installments on royalty advances on the first of every month under paragraph 10(a) [of the Settlement Agreement]." (DE 11, ex I).

Plaintiff asserts that "Silvers' own counsel confirmed the payment was timely made, but that Silvers insisted the check be re-issued with different payee information." (DE 18 at 9). The Declaration of Steven Esrig attaches copies of e-mails and checks related to this issue. (DE 16, exs. E, F, G).

3) Defendant asserts that Plaintiff "failed to pay on April 1, 2005 the monthly advance on royalties required by Silver to maintain his insurance coverage through the Aurora Collection under paragraph 10(b) [of the Settlement]." (DE 11, ex. I).

Plaintiff asserts that it is Defendant's failure to "satisfy his obligation pursuant to paragraphs 10(b) & (c) of the Settlement Agreement to provide 'evidence of paid premiums" which is the cause of any payment related delay. (DE 18 at 9). Plaintiff further asserts that the payment was made along with the royalty payment previously discussed. (DE 16).

4) Defendant asserts that Plaintiff "failed to cooperate in the audit of the books and records of Stelor under paragraph 14 [of the Settlement]." (DE 11, ex. I).

Plaintiff asserts that in April, Defendant's counsel deferred the audit, and then

15

renewed the request for audit on April 22, 2005. (DE 18). The Declaration of Steven Esrig attaches an e-mail from Defendant's counsel, Gail McQuilkin, discussing a date for the audit. (DE 16, ex. H). The audit was not rescheduled as Defendant terminated the Agreement on April 27, 2005. (DE 18).

5) Defendant asserts that Plaintiff "failed to provide Silvers samples of Licensed Products that are being offered for sale under paragraph 15 [of the Settlement]." (DE 11, ex. I).

Plaintiff asserts that Defendant's counsel inspected the licensed products at Stelor's offices in February, 2005. (DE 18). The Declaration of Steven Esrig attaches an April 26, 2005 e-mail exchange in which samples were made available to Defendant's counsel. (DE 16, ex. I). The Defendant terminated the Agreement prior to additional inspection. (DE 18).

6) Defendant additionally asserts that "although Stelor has provided a written statement that it is not offering any products for sale, and no royalties due, the statement has proven to be false." (DE 11, ex. I).

Defendant alleges that Plaintiff failed to include products sales via CafePress and itunes, and CD sales on royalty statements. (DE 13). At the hearing Plaintiff asserted that it has no knowledge of any marketing of Googles.com products by CafePress.com. If the marketing is unauthorized by the Plaintiff, it is unreasonable

16

06/06/05  11:55  FAX 305 536 7274          FAX BACK                                      ☑018

to expect that income from such products would appear on royalty statements. As per the Settlement Agreement and License agreement, a royalty statement is not due unless income has been received and royalty payment is due Defendant. (DE 11, ex B; DE 4). Plaintiff also asserted at the hearing that it has already provided royalty statements to the Defendant, which were rejected by the Defendant. Plaintiff has attached a copy of a royalty statement, which includes sales to itunes, to its complaint. (DE 1, ex. D).

### ii) Materiality of Plaintiff's Alleged Breaches

While the Settlement Agreement is silent on the matter of materiality and notice of breach required prior to termination, the License Agreement is not. (DE 14; DE 11, ex. B). The License Agreement clearly requires that a breach be material and that notice with 60 days opportunity to cure be provided prior to termination. (DE 11, ex. B). Although a breach of the Settlement Agreement may be cause to terminate the License Agreement, the requirements of termination of the License Agreement must be met before the License Agreement can be terminated. Furthermore, Defendant reaffirmed his obligations under the License agreement, one of which is to provide notice of material breaches and 60 days cure period prior to termination. (DE 4).

Moreover, contract law requires that a breach be material before the other party may avoid performance. *Atlanta Jet v. Liberty Aircraft Services, LLC*, 866 So.2d 148,

150 (Fla. 4th Dist. Ct. App. 2004) (finding that as the defendant's breach was not material, the plaintiff was not entitled to terminate the contract and recover the non-refundable deposit). In other words, a material breach is required to terminate the Settlement and License agreement, along with notice and an opportunity to cure.

As the issue of materiality is central to the issue of whether Defendant properly terminated the agreements between the parties, this Court will now address the materiality of Plaintiff's alleged breaches of the Settlement Agreement.

As discussed above, Defendants asserts that certain payments were not timely made by Plaintiff. (DE 11, ex. I; DE 13). In response to Defendants assertions, Plaintiff has provided copies of checks written to Defendant. (DE 16, ex. E, F, G). Additionally, Plaintiff asserts that some of the checks were late because Defendant rejected the checks, requesting that they be reissued in a different name. (DE 18). Plaintiff has also provided copies of e-mails discussing the submission of payments to Defendant. (DE 16, ex. E, F, G; DE 11, ex. F).

Plaintiff's payments, submitted to the Defendant after the first of the month, while not in strict compliance with the terms of the Settlement Agreement, is unlikely to rise to the standard of material breach. (DE 4).

> To constitute a vital or material breach, a defendant's nonperformance of a contract must be such as to go to the essence of the contract, it must be the type of breach that would discharge the injured party from further

18

contractual duty on his part but a defendant's failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach.

*Atlanta Jet,* 866 So.2d at 150.

Although Plaintiff's payments may have been untimely, they were made to Defendant. Plaintiff additionally asserts that the payments were only slightly overdue, made within the month they were due. (DE 16, 18). Under *Atlanta Jet,* a material breach must be so egregious so as to discharge the other party from further obligation under the contract. *Id.*

> The modern trend of decisions concerning brief delays by one party in performance of a contract or conditions thereunder, in the absence of an express stipulation in the contract that time is of the essence, is not to treat such delays as a failure of a constructive condition, discharging the other party unless performance on time was clearly an essential and vital party of the bargain.

*Sublime, Inc. v. Boardman's Inc.,* 849 So.2d 471 (Fla. 4th Dist. Ct. App. 2003)(internal citation omitted).

In *Sublime,* the Florida court found that time was of the essence, thus failure to pay on time was a material breach, when the parties had included a grace period and acceleration clause in the term regarding payment. *Id.* at 471. The court held that by including such terms, the other party was put on notice that failure to make timely payments was an essential part of the bargain. *Id.* at 472. The court distinguished this result from *Rose v. Ditto,* 804 So.2d 351 (Fla. 4th Dist . Ct. App. 2001), where the court found the breach was not material where the contract included no grace period

19

which would put the defendant on notice that time was of the essence and breach would be material. *Id.* at 473.

Pursuant to *Atlanta Jet* and *Sublime,* it is unlikely that the late payments claimed by Defendant would constitute material breach.

Defendant asserts Plaintiff has failed to issue proper royalty statements, and that such a breach is not technical, as Plaintiff contends, but material, as royalties go to the essence of the contract. (DE 13). Defendant asserts that Plaintiff failed to account for the sale of music downloads and CD's, failing to include the sales on royalty statements and failing to pay royalties. (DE 13). This Court agrees that royalty payments clearly go to the essence of an agreement based upon the licensing of intellectual property. This Court notes that Defendant failed to specifically allege these music sales in the April 27, 2005 letter. (DE 11, ex. I). Plaintiff contends that a royalty statement for the first quarter of 2005 was submitted to Defendant at the end of April. (DE 18). The royalty statement is attached as an exhibit to Plaintiff's complaint. (DE 1, ex. D). The royalty statement reflects revenue earned from music sales, and royalties owed. (DE 1, ex. D). It also reflects that the advances paid to the Defendant far exceed royalties owed. (DE 1, ex. D). Furthermore, Plaintiff disavows any knowledge of CafePress sales. (DE 18). If such sales were unauthorized, it would be unreasonable to expect Plaintiff to account for the sales in a royalty

statement. Thus, while a breach of royalty obligations would be material, Plaintiff has demonstrated compliance with the royalty requirements.

Defendant additionally asserts that Plaintiff has failed to: 1) provide Silvers with unit interests in Stelor LLC; 2) cooperate in the audit of the books and records; and, 3) provide Silvers samples of Licensed Products that are being offered for sale. (DE 11, ex. I). This Court notes that not only has Plaintiff demonstrated that Plaintiff has made samples available to the defendant (DE 16 at 12), and that Plaintiff has attempted to schedule the audit (DE 16, ex. H; DE 11, ex. F), and that Plaintiff has not provided the LLC shares as they are not yet available, but this Court further notes that the Settlement Agreement contains no time by which performance was due on these issues. (DE 4).

> As a general rule, time is considered to be of the essence where an agreement specifies, or where such may be determined from the nature of the subject matter of the contract, or where treating time as non-essential would produce a hardship, or where notice has been given to the defaulting party requiring that the contract be performed within a stated time, which must be a reasonable time according to the circumstances.

*Id.* (internal citation omitted).

Before Plaintiff can materially breach these terms, the time for performance must arrive. No such time for performance is documented for several terms of the Settlement Agreement. (DE 4). Nor has Defendant offered evidence that he has

21

given notice that the terms concerning the issuance of LLC options, viewing samples, or scheduling the audit must be performed within a particular time. As such, there is no indication that time is of the essence, and, it cannot be concluded that Plaintiff's alleged failure to perform prior to a certain date is a material breach. *See id.* (holding that the purchaser was not entitled to terminate the contract when there was no indication that time was of the essence, and therefore no material breach).

As full performance of the Settlement Agreement cures any prior alleged breaches, in order to terminate the License Agreement, assuming the Settlement Agreement was fully performed, the Defendant would have to assert breaches occurring after the Settlement Agreement was executed. Such new breaches could not be noticed by the November 12, 2004 letter, as the breaches listed therein are considered cured if the Settlement Agreement is fully performed. This Court finds a substantial likelihood that the Settlement Agreement has been fully performed by the Plaintiff. Thus, Defendant must rely on breaches occurring later than the date of the Settlement Agreement to terminate the License Agreement. As such, Defendant must provide notice and 60 days to cure, as required by the License Agreement prior to terminating the License Agreement. Plaintiff asserts that Defendant has provided no such notice, and Defendant does not dispute that no notice has been issued since the November 12, 2004 letter. (DEs 2, 18).

Plaintiff has provided substantial documentation that the Settlement Agreement has not been materially breached, if it has been breached at all. Plaintiff has also provided substantial documentation of cure of any non-material breaches alleged by Defendant. (DEs 16, 18). As the License Agreement requires material breach and notice, and such requirements are also necessary to terminate the License Agreement utilizing any breach of the Settlement Agreement, this Court finds that there is a substantial likelihood that the agreements between the parties were improperly terminated, thus are still in effect. As such, Plaintiff has demonstrated the existence of a contract, the initial requirement of its breach of contract claim.

b) Breach

The issue of whether the Defendant is complying with the terms of the license Agreement is uncontested. Defendant has effectively admitted to breach of contract in his response. (DE 13 at 5) ("Silvers is admittedly not complying with the License Agreement because he is no longer bound by it").

Plaintiff asserts, *inter alia*, that Defendant has hijacked the contents of the Googles.com website, as well as changed 78 Googles domain names to his control, in violation of the License Agreement. (DE 2). Plaintiff further asserts that Defendant has filed an action against Google, Inc., also in violation of the License Agreement. (DE 2). Defendant does not deny that he has taken these actions, nor

23

does Defendant deny that such actions would constitute breach of contract, absent proper termination of the contract.

Defendant asserts that these actions are not in breach of the License Agreement, as he has terminated the Agreement. (DE 13). However, as this Court finds that the License Agreement was likely improperly terminated, Defendant's actions are, in fact, in breach of the License Agreement.

### c) Damages

Plaintiff asserts that Defendant's actions "have caused Stelor significant damage and essentially put it out of business." (DE 2 at 13). Plaintiff alleges that the Googles.com website has over 600,000 registered users who have not been able to access the website. (DE 16). Plaintiff asserts that they are losing customers and goodwill as a result of Defendant's actions. (DE 2). Plaintiff notes that it has invested more than $4 million in expanding the Googles concept, and that its investment, and in fact its entire business, is at risk because of the Defendants actions. (DE 2). Without access to the Googles.com website, Plaintiff cannot display its product or meet with potential licensors. (DE 2). Furthermore, Plaintiff asserts that without access to the website, Stelor cannot prepare for the impending trade show and product launch. (DE 2). Plaintiff also asserts that Defendant has made it impossible for Plaintiff to protect the Googles intellectual property. (DE 2).

24

Defendant does not dispute Plaintiff's asserted damages, nor address the damage his actions may cause the Plaintiff.

Plaintiff has demonstrated that a contract likely exists, and that Defendant's actions are in breach of the License Agreement. This Court finds that Plaintiff has demonstrated that Defendant's actions are causing Plaintiff damage.

B) Irreparable Harm

1) Plaintiff has Established Irreparable Harm

Plaintiff asserts that Defendant's actions "have caused, and will continue to cause, Stelor irreparable harm that cannot possibly be remedied through the payment of mere money damages." (DE 2 at 13). Defendant does not refute Plaintiff's assertions of irreparable harm.

"The purpose of a preliminary inunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal*, 489 F.2d at 576. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ferrero*, 923 F.2d at 1449 (internal citation omitted).

Plaintiff asserts that if Defendant continues his actions, Plaintiff will suffer loss of goodwill and customers. (DE 2). Plaintiff cites several cases holding that loss of profits, goodwill and reputation constitutes irreparable harm. *See McDonald's*, 147 F.3d at 1310 (finding that damage to reputation and loss of customers due to

25

trademark infringement constituted irreparable harm); *see also Ferrero*, 923 F.2d at 1449(finding that loss of customers and loss of goodwill constitutes irreparable harm).

Plaintiff asserts that continued loss of the Googles.com website will lead to loss of customers and goodwill. (DE 2). Plaintiff's information has not been available through the Googles.com website since the contents of the website have been redirected. (DE 16). Despite the existence of 600,000 registered users of the Googles.com website, the number of hits to the website has dropped to zero following Defendant's actions. (DE 16). Although Defendant notes that the Plaintiff's website information can be accessed through the Stelor Productions website, this Court recognizes the unlikelihood that Googles.com users will know to proceed to the Stelor Productions website to access the information.[5] Plaintiff has invested time and money preparing for the impending trade show and launch, which will likely be unsuccessful without the Googles.com website and availability of other Googles IP. (De 16).

Furthermore, Plaintiff points to the Second Circuit decision in *Doherty v. Saban Entertainment, Inc.*, 60 F.2d 27(2nd Cir. 1995). In *Doherty*, the Second Circuit

---

[5]Furthermore, if, as the Defendant contends, the Agreement was terminated, such access to Googles IP through the Stelor website could, in fact, be illegal use of Defendant's IP.

found irreparable harm where the Plaintiff would "lose an opportunity to become a major publisher of children's books–that is to say, it will lose an opportunity to become a sufficiently well-known publisher of children's books to attract additional authors and owners of characters." *Id.* at 38. Analogously, Plaintiff asserts that it will lose a major opportunity if it does not regain control of the website prior to the June 21 trade show, where Plaintiff has secured a booth between several major children's entertainment companies- Dreamworks, Disney and Nickelodean. (DE 16).

This Court finds that Plaintiff has clearly demonstrated irreparable harm which will occur if the Preliminary Injunction is not issued.

2) Irreparable Harm Establishes the Propriety of Injunctive Relief

Defendant asserts that injunctive relief is not available in this case. To support this, Defendant cites a number of Florida state cases holding that an injunction requiring specific performance of a terminated contract is inappropriate, and a proper remedy is one at law, not equity. (DE 13). *See e.g. Dillard Homes v. Carroll,* 152 So.2d 738 (3d Dist. Ct. App. 1963); *see also Collins v. Pic-town Water Works, Inc.,* 166 So.2d 760 (2nd Dist. Ct. App. 1964). For further support, Defendant cites to a string of *Burger King* cases holding that a claim for wrongful termination is the appropriate remedy for a licensee, and that the licensee's continued use of the *Burger King* marks is inappropriate. *See Burger King Corp. v. Hall,* 770 F.Supp. 633, 638-

27

39 (S.D.Fla. 1991)[6]; *see also Burger King Corp. v. Majeed*, 805 F.Supp. 994, 1003 (S.D.Fla. 1992); *see also Burger King v. Agad*, 911 F.Supp. 1499 (S.D.Fla. 1995).

These cases are distinguishable from the instant case, however. As this Court has concluded that the contract was not properly terminated, and is, in fact, still in effect, the conclusion that specific performance of a terminated contract is inappropriate is inapplicable in this case. Rather, the availability of equitable relief is more properly determined by considering whether Plaintiff's claims can be remedied by monetary relief.

The question of whether a preliminary injunction is appropriate, stated another way, lies within the issue of irreparable harm. By its definition, the element of irreparable harm requires that the harm cannot be remedied in an action for money damages. *See Ferrero*, 923 F.2d at 1449. Clearly, if irreparable harm is established, the Plaintiff cannot adequately be remedied in an action for money damages. Thus, the Plaintiff must seek remedy in an equitable action.

Plaintiff cites to a number of cases in which plaintiffs in contract claims sought, and were granted, injunctive relief in Federal court where plaintiff established

---

[6]Plaintiff notes in its reply that the holding of *Burger King v. Hall* may be in question following the Eleventh Circuit's decision in *McDonald's*. (DE 18); *McDonald's*, 147 F.3d at 1308. *McDonald's* rejects the *Burger King v. Hall* holding, and held that preliminary injunctions may be appropriate where there has been a showing of an unauthorized use of trademarks. *Id.*

irreparable harm due to potential loss of goodwill, customers and business.[7]  *See e.g.*
*McDonald's*, 147 F.3d at 1310; *Florida Businessmen for Free Enterprise v. City of*
*Hollywood*, 648 F.2d 956, 958 & n. 2 (11th Cir. 1981); *Ferrero*, 923 F.2d at 1449.

This Court agrees with the Plaintiff's assertion that where irreparable harm is
established, injunctive relief is proper.   Further, as Plaintiff has established
irreparable harm, injunctive relief, not a money action, is proper in this case.

C) Balance of Hardship

Plaintiff has asserted substantial irreparable harm which would result if the
preliminary injunction is not granted. (DE2; DE 18).  Defendant has failed to assert
any harm that would be caused to him if a preliminary injunction were granted.
Additionally, as asserted by Plaintiff, Defendant stands to profit from Plaintiff's
marketing if Plaintiff is permitted to continue its business.  Furthermore, Defendant
is still free to terminate the License Agreement in a manner that complies with the
agreements between the parties - based upon material breach, following notice and
opportunity to cure.

D) Public Interest

Plaintiff asserts, and Defendant does not dispute, that the public interest will

---

[7]As discussed above, under *Erie*, Federal law, governs the elements, including irreparable
harm, necessary for the issuance of a preliminary injunction. *Ferrero*, 923 F.2d at 1448.

29

not be harmed by the issuance of a preliminary injunction. (DE 2). Plaintiff notes that the public has an interest in parties complying with their contractual obligations. (De 2). This Court agrees that the public interest would not be disserved if a preliminary injunction is granted.

E) Heightened Burden

Defendant asserts that the injunction sought by Plaintiff is mandatory in nature, as it alters the status quo, and is thus subject to a heightened burden. (DE 13).

The Defendant, in his reply, cites to a number of cases relying on the Second Circuit decision in *Doherty*. (DE 13); *see Doherty*, 60 F.3d 27. However, *Doherty* is distinguishable from the case at hand. *See id.* In *Doherty*, the preliminary injunction required the Defendant to license a children's book, a requirement that was not in the original agreement between the parties. *See id.* at 35 (noting that the agreement between the parties only allowed a right of first refusal, and an injunction requiring Defendant to license Plaintiff to publish a book requires much more than a right of first refusal). This facts and agreements of *Doherty* are distinguishable from the License Agreement between the parties in the case at hand. (DE 11, ex. B). The relief sought by the Plaintiff does not go beyond what the Defendant was required to perform under the License Agreement. The Plaintiff seeks no action that the Defendant would not be otherwise obligated to perform if the Defendant had not

improperly terminated the Agreement. *Doherty* is further distinguishable as, once the book is licensed and published, such an act cannot be undone. *Id.* In the case at hand, even if the Defendant is required to comply with the terms of the License Agreement, the Defendant has asserted no claim that irreversible acts will be committed.

Defendant asserts that, as the contract is terminated, any injunction would be seeking specific performance (compelling Defendant to "act in compliance with the terms of the License Agreement").[8] (DE 13 at 5). However, because this Court finds that the contract was invalidly terminated, and still in effect, the Defendant was, in fact, obligated to perform under the contract. Thus, an injunction enjoining the Defendant from breaching his obligations under the License and Settlement Agreements is prohibitory, not mandatory, in nature. Accordingly, no heightened burden applies.

## Conclusions of Law

As discussed above, based upon analysis of the parties' submissions, the evidence presented at the May 23, 2005 hearing, and relevant case and statutory law,

---

[8]The Second Circuit in *Doherty* also noted that in a breach of contract action, the same preliminary injunction could be interpreted as mandatory by a defendant and prohibitory by the Plaintiff - and that "the confusion may stem from the meaning of "status quo."*Doherty*, 60 F.3d at 34.

this Court makes the following conclusions of law:

1) It is likely that Defendant's April 27, 2005 termination of the License Agreement between Stelor and Silvers was improper;

2) There is a substantial likelihood that Plaintiff will succeed on the merits of its breach of contract claim and declaratory action;

3) Irreparable harm to the Plaintiff's business will likely result if a preliminary injunction is not granted;

4) The balance of hardships weighs heavily in favor of the Plaintiff;

5) The interests of the public will not be disserved by the issuance of a preliminary injunction;

6) As the Agreement was not likely validly terminated, and as the Defendant is obligated to perform under the Agreement, an injunction prohibiting Defendant from breaching the agreements between the parties would be prohibitory in nature, not mandatory, thus not subject to a higher burden.

## SECURITY

Federal Rule of Civil Procedure 65(c) provides that:

[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred

32

or suffered by any party who is found to have been wrongfully enjoined
or restrained.
Fed. R. Civ. P. 65(c).

Plaintiff requests that it be required to post security in an amount no greater
than $5,000. (DE 2). Plaintiff asserts that Defendant will incur no money damages
if the injunction is issued. (DE 2). Defendant's reply made no objection to Plaintiff's
request for minimal security. (DE 13). Moreover, Defendant has failed to assert any
damages that he may incur as a result of the issuance of a preliminary injunction. (DE
13).

Rule 65(c) "requires security only in 'such sum as the court deems proper.'
Rule 65(c), F.R.C.P. The amount of security required is a matter for the discretion
of the trial court; it may elect to require no security at all." *Corrigan Dispatch Co.
v. Casa Guzman, S.A.,* 569 F.2d 300, 303 (5th Cir. 1978)[9]; *Carillon Importers, Ltd. v.
Frank Pesce Int'l Group Ltd.,* 112 F.3d 1125, 1127 (11th Cir. 1997) (finding that
$50,000 bond was sufficient in a trade dress infringement case); *see also Prudential
Securities, Inc. v. Kucinski,* 947 F.Supp. 462, 467(M.D. Fla. 1996) (requiring that
$1.00 security be filed prior to the injunction becoming effective).

As the courts clearly have discretion in determining the appropriate security,

---

[9]The holding of this case is binding on the 11th Circuit pursuant to the holding of *Bonner
v. Prichard,* 661 F.2d 1206 (11th Cir. 1981).

33

and as the Defendant has failed to allege any damages he may suffer as the result of a preliminary injunction, this Court finds that Plaintiff should not be required to post security.

## RECOMMENDATION TO THE DISTRICT COURT

In summary, this Court **RECOMMENDS** that the Plaintiff's Motion for Preliminary Injunction be **GRANTED**.   (DE 2).   Further, this Court **RECOMMENDS** that the preliminary injunction include the following language:

1) Defendant is to comply with terms of the License Agreement and the Settlement Agreement between the parties, and refrain from breaching those agreements, including, but not limited to, the termination clause of the License Agreement.

2) Defendant is to remedy all breaches resulting from Defendant's April 27, 2005 termination, including, but not limited to, returning control and use of the Googles.com website and its contents to Plaintiff within five (5) days of the District Court's order.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, District Court Judge for

the Southern District of Florida, within ten (10) days of being served with a copy of

this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C); *United States v.*

*Warren*, 687 F.2d 347, 348 (11ᵗʰ Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983).

Failure to timely file objections shall bar the parties from attacking on appeal the

factual findings contained herein.  *See LoConte v. Dugger*, 847 F.2d 745 (11ᵗʰ Cir.

1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d

1144, 1149 (11ᵗʰ Cir. 1993).

**DONE and SUBMITTED** in Chambers this 3 day of ~~May~~ *June,* 2005, at West

Palm Beach in the Southern District of Florida.

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Daniel T. K. Hurley
Kevin C. Kaplan, Esq. (Counsel for Plaintiff)
Kenneth Hartman, Esq. (Counsel for Defendant)