# Exhibit 26

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH

Case No. 05-80387-CIV-RYSKAMP/VITUNAC

STEVEN A. SILVERS, an individual,

    Plaintiff,

v.

GOOGLE INC., a Delaware corporation,

    Defendant.
_____/

GOOGLE INC., a Delaware corporation,

    Counterclaimant,

v.

STEVEN A. SILVERS, an individual;
STELOR PRODUCTIONS, INC., a
Delaware corporation; and STELOR
PRODUCTIONS, LLC, a Delaware limited
liability company,

    Counterdefendants.
_____/



FILED by _____ D.C.
FEB 27 2006
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B

## ORDER DENYING SILVERS' MOTION TO DISMISS AMENDED CROSS-CLAIM

THIS CAUSE comes before the Court upon Silvers' Motion to Dismiss Stelor's Amended Cross-Claim and Supporting Memorandum **[DE 51]**, filed on December 2, 2005. Counter-Defendant/Cross-Claimant, Stelor Productions, L.L.C., f/k/a Stelor Productions, Inc. ("Stelor") filed its Opposition to Silvers' Motion to Dismiss Amended Cross-Claim **[DE 58]** on December 23, 2005, and Silvers filed a Reply in Support of Motion to Dismiss Amended Cross-Claim **[DE 64]** on January 12, 2006. The motion is now fully briefed and ripe for adjudication.



I.   **Introduction**

This is an action for alleged "reverse confusion" trademark infringement. *See* First Am. Compl. **[DE 10]**. Plaintiff, Steven A. Silvers ("Silvers"), is the creator of animated characters known as "Googles," described as "lovable, friendly four-eyed alien creatures that live on the planet of Goo" that are used to "communicate to children in non-violent themes social lessons, conceptual awareness and educational values, and give 'children of today, visions of tomorrow.'" *Id.* at ¶ 13. Silvers alleges that he developed the Googles concept in the late 1970s, and began using the name as early as the mid-1980s. *Id.* at ¶ 11.

In 1997, Silvers obtained the Internet domain name, "googles.com" and began developing an interactive website to promote and sell his Googles-related merchandise. *Id.* at ¶¶ 26-27. That same year, Larry Page, a graduate student at Stanford University, registered the "google.com" domain name in connection with a prototype Internet search engine. *Id.* at ¶¶ 32-38. In September, 1998, Page and his collaborator, Sergey Brin, incorporated Google Technology, Inc. and continued to operate the Google search engine as a non-commercial experimental model. *Id.* at ¶¶ 40-42. In September, 1999, the Google search engine was "commercially" launched. *Id.* at ¶ 44. Google Technology, Inc. eventually merged with into Defendant, Google Inc. ("Google"), a Delaware corporation. *Id.* at ¶ 45.

Silvers alleges that the Google search engine (along with its related goods and services) "has become so well-known... that it now overwhelms the public recognition of the 'Googles' trademark, domain name, and Website, and is preventing Silvers from flourishing on the Web or entering new markets..." *Id.* at ¶ 59. He further claims that "Google's infringing use of the name 'Google,' which is substantially identical to Silvers' 'Googles' mark, has caused and will

2

continue to cause 'reverse confusion' in that the consuming public will now falsely believe that Silvers' goods and services, 'googles.com' domain name, and Website, are connected, affiliated, associated, sponsored, endorsed or approved by Google, and that Google is the source of origin of the 'Googles' concept, books, music, 'googles.com' domain name, Website, merchandise, and related goods and services..." *Id.* at ¶ 64. Silvers filed a four-count complaint against Defendant, alleging trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. §1125(a), unfair competition under Florida law, and "cancellation of Defendant's registration." *Id.* at 13-20.

In turn, Google filed a Counterclaim **[DE 5]** against Silvers and the Stelor companies, alleging four counts for declaratory relief, cancellation of Counter-Defendants' registration and declaration regarding pending applications, trademark infringement and false designation of origin under 15 U.S.C. §§ 1114 and 1125(a), and unfair competition under 15 U.S.C. §§ 1114 and 1125(a). Stelor also filed a Cross-Claim against Silvers **[DE 14, 49]** and a Counterclaim against Google **[DE 49]**.

In its Amended Cross-Claim **[DE 49]**, Stelor alleges that it has an exclusive worldwide license covering the Googles trademarks, related intellectual property and the googles.com website, pursuant to a License Agreement and Settlement Agreement executed by Silvers and Stelor.[1] Am. Counterclaim and Cross-Claim **[DE 49]**, at ¶¶ 9-11. Specifically, Stelor claims that

---

[1]The assignment of rights was made exclusive even as to Silvers, apparently because "negative aspects of Silvers' background... made him unsuited to serve as a figurehead or spokesman for an enterprise aimed at providing wholesome and enriching entertainment to an audience of impressionable children." Cross-Claim **[DE 14]**, at ¶ 10. In particular, during the time Silvers claims to have been developing the Googles concept, he was convicted and imprisoned in a federal penitentiary, for his involvement in a cocaine trafficking ring. *See U.S. v. Silvers*, 90 F.3d 94 (4th Cir. 1996).

3

the License Agreement gave it "all right, power, and interest to seek, obtain and maintain all Intellectual Property Rights associated with [the Googles trademarks]" as well as "the sole right... to take any and all actions against third parties to protect the Intellectual Property Rights licensed in this Agreement." *Id.* at ¶ 10 (quoting License Agreement, at ¶¶ VIII(A), XI(A)). Stelor further alleges that Silvers wrongfully terminated the Agreements and has engaged in conduct that interferes with its right to pursue a trademark infringement action against Google.[2] *Id.* at ¶¶ 17-25. Stelor alleges counts for declaratory judgment, breach of contract and breach of express warranty against Silvers. *See id.* at 12-20.

Silvers now moves this Court to dismiss the Amended Cross-Claim [DE 49] on the ground that the facts and issues raised by Stelor's contract claims are not sufficiently related to the facts and issues of the original trademark infringement claim brought by Silvers against Google, such that the Court should decline to exercise supplemental jurisdiction over them. Additionally, Silvers contends that the Court should dismiss the Amended Cross-Claim because there is a similar action pending in state court which was filed earlier. Stelor contends in response that the Court has original jurisdiction over the declaratory judgment count of its Amended Cross-Claim, which has been brought under the Declaratory Judgment Act, 28 U.S.C. § 2201 and the Lanham Act, 15 U.S.C. § 1121. Stelor also contends that the Court can exercise supplemental jurisdiction in this matter because its claims against Silvers are so tightly interwoven with the federal trademark infringement claims in this lawsuit such that the latter cannot be addressed without resolution of the former. In other words, Stelor argues Silvers'

---

[2]Silvers claims that the Stelor breached the License Agreement because "Stelor simply ignored most of its contractual obligations and has done little over the past three years other than spend investor money to fund the lifestyle of its principals." Mot. to Dismiss [DE ], at 4.

4

standing to bring a trademark infringement claim is a critical threshold issue that must be addressed with regard to both Silvers' and its trademark claims against Google. Lastly, Stelor argues that under the federal abstention doctrine, this Court need not dismiss this action in light of the pending state court action.

## II. Discussion

### A. Standard of Law on Motions to Dismiss

In general, a court should only grant a motion to dismiss for failure to state a claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also* Fed. R. Civ. P. 12(b)(6). A motion to dismiss merely tests the sufficiency of the complaint; it does not decide the merits of the case. *See Wein v. American Huts, Inc.*, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004). Moreover, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and construe them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche et al.*, 144 F.3d 732, 735 (11th Cir. 1998). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to

5

state a claim is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) (quotations omitted). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action. *See Wein*, 313 F. Supp. 2d at 1359.

Additionally, the party invoking jurisdiction bears the burden of demonstrating that this matter is within this Court's subject matter jurisdiction. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). This Court must dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of how far the case has progressed. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). Motions to dismiss that are founded upon an attack on subject matter jurisdiction come in two forms. First, "facial attacks" on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting source omitted). On a facial attack, the court must consider the allegations of the complaint to be true. *Id.* On the other hand, "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* On a factual attack, the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Id.* Thus, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.*

Some factual attacks on federal court jurisdiction involve facts that are also determinative of the merits of the action. *Commodity Futures Trading Comm'n v. G7 Advisory Servs., LLC*,

406 F. Supp. 2d 1289, 1292 (S.D. Fla. 2005). When a motion to dismiss implicates both jurisdictional and actual facts, the court should treat the motion "as a direct attack on the merits" and proceed under either Rule 12(b)(6), which requires it to take the complaint at face value, or Rule 56, which allows it to rule on the merits. *Id.*

The Court now addresses Silvers' jurisdictional attacks in light of the principles above.

**B.    Original Jurisdiction**

As an initial matter, the Court agrees with Stelor that it has original jurisdiction over Stelor's Cross-Claim. Stelor contends that its declaratory judgment count against Silvers, which has been brought under the Declaratory Judgment Act, 28 U.S.C. § 2201 and the Lanham Act, 15 U.S.C. § 1121, gives the Court original jurisdiction over the Cross-Claim. Silvers is correct that the Declaratory Judgment Act does not itself confer jurisdiction upon a federal court; rather, a suit brought under the Act must state some independent source of jurisdiction. *See Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989). *See also Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003) ("The Declaratory Judgment Act... requires that the plaintiff allege facts showing that the controversy is within the court's original jurisdiction").

However, a federal court has subject-matter jurisdiction over a declaratory judgment action where the defendant could have brought a federal claim in a coercive action. *See Household Bank*, 320 F.3d at 1258. The Court has subject matter jurisdiction over this action, so long as there is a possibility of litigation under federal law. *Id.* at 1259. In this case, Stelor seeks a declaration that its use of the Googles trademarks does not violate the Lanham Act. Additionally, 28 U.S.C. § 1338(a) gives the district court original jurisdiction over any civil action "arising under any Act of Congress relating to patents... copyrights and trademarks."

Although the dispute between the parties is centered around the License and Settlement Agreements, Stelor's trademark claim is not entirely derivative of the underlying contract issues such that it cannot be said that the case arises under federal law. Moreover, at least one court has rejected an unduly narrow reading of Section 1338(a). *See Scandinavian Satellite System, AS v. Prime TV Ltd.*, 291 F.3d 839, 845 (D.C. Cir. 2002). Therefore, the Court concludes that it has original jurisdiction over Stelor's Cross-Claim.

### C.    Supplemental Jurisdiction

Next, the Court also concludes that even in the absence of original jurisdiction, it would be appropriate to exercise supplemental jurisdiction over Stelor's Cross-Claim. It was well-settled in the common law that a district court had discretion to exercise pendant jurisdiction over state law claims "if the court ha[d] jurisdiction over a substantial federal claim and the federal and state law claims '[arose] out of the same nucleus of operative facts and [were] of such a nature that a plaintiff would be expected to try them all in the same proceedings.'" *Edwards v. Okaloosa County*, 5 F.3d 1431, 1433 (11th Cir. 1993) (quoting source omitted). Pendant jurisdiction was not the right of a plaintiff, but rather, a "doctrine of discretion" that needed not be exercised in every case. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). In deciding whether to exercise pendent jurisdiction, a district court considered factors such as judicial economy, convenience, fairness, comity, whether state issues would predominate, and potential jury confusion. *Edwards*, 5 F.3d at 1433.

The Judicial Improvements Act of 1990, codified in 28 U.S.C. § 1367, replaced the common law doctrine of pendant jurisdiction. The statute outlines a district court's supplemental jurisdiction over pendant or ancillary claims and is similar to the common law pendant

8

jurisdiction doctrine. It provides that, subject to certain exceptions, a district court *shall* exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The statute is worded in mandatory terms; thus, there is a strong presumption in favor of exercising supplemental jurisdiction. *See, e.g., Borges v. City of West Palm Beach*, 858 F. Supp. 174, 177 n.5 (S.D. Fla. 1993). The court may decline to exercise supplemental jurisdiction if: (1) the claim raises novel or complex issues of state law; (2) the claim substantially predominates over the claim(s) over which the district court has original jurisdiction; (3) the court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

In this case, none of the above-stated reasons for declining supplemental jurisdiction are present. First, even Silvers agrees that Stelor's Cross-Claim does not raise any particularly complex issues of state law. Silvers does contend, however, that it presents at least one novel question of state law, namely whether Stelor would be entitled to reinstatement of the terminated License Agreement. To the contrary, Florida state courts have recognized that there may be circumstances that would allow the trial court to impose an injunction to reinstate a contract after its wrongful termination. *See Vela v. Kendall*, 905 So. 2d 1033, 1035 (Fla. 5th DCA 2005) (stating that although a trial court generally cannot by use of an injunction extend the terms of a contract after its termination, "[t]here may be times, however, where the equities involved make this a necessary and proper action"). Moreover, where a contract has been improperly terminated, a court can find the termination ineffective and order specific performance

thereunder. *See, e.g., Adrian Developers Corp. v. de la Fuente,* 905 So. 2d 155, 156 (Fla. 3d DCA 2004). Thus, the Court does not consider the issues raised in Stelor's Cross-Claim to be especially novel.

Next, the state law claims do not substantially dominate over the federal claims over which the Court has original jurisdiction. The contract issues raised in the Cross-Claim, which primarily deal with the ownership of the trademarks, are relatively straightforward and need to be addressed before the Court can reach the trademark infringement claims. Moreover, the Court has already bifurcated the discovery and trial in this case **[DE 68]**, such that the contract issues raised in the Cross-Claim can be efficiently resolved with the ownership issues during the first phase of this litigation. Finally, none of the federal claims in this lawsuit have been dismissed, nor are there any exceptional circumstances or compelling reasons to decline exercising supplemental jurisdiction.

### D.    Concurrent Jurisdiction

Lastly, the Court does not consider the pending state court action to warrant a dismissal of the Cross-Claim. A federal court is allowed to dismiss or stay a case when a concurrent state proceeding provides a more appropriate forum under "limited" and "exceptional" circumstances.[3] *Colorado River Water Conserv. Dist. v. U.S.,* 424 U.S. 800, 817-18 (1976). The principles of the concurrent jurisdiction doctrine "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at

---

[3]The Eleventh Circuit has held that the preferred course of action is to stay, rather than dismiss without prejudice, a case in which the district court has abstained from exercising its jurisdiction pursuant to the doctrine of *Colorado River. See Moorer v. Demopolis Waterworks & Sewer Bd.,* 374 F.3d 994, 998 (11th Cir. 2004).

10

817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). The Supreme Court modified the doctrine in *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1 (1983), stating that federal courts should consider six factors in determining whether abstention in favor of a concurrent state proceeding is appropriate: (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties. *See id.* at 16-26. The Supreme Court indicated that these criteria could not be applied according to a rigid formula; no one factor is necessarily dispositive, although a court can abstain based on one factor alone. *See id.* at 16; *Moorer*, 374 F.3d at 997.

A federal court considering abstention must weigh these factors with a heavy bias in favor of exercising jurisdiction, since federal courts have a "virtually unflagging obligation" to exercise jurisdiction where it exists. *See id.*; *Colorado River*, 424 U.S. at 817. Stated differently, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quakenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Abstention by a federal court is the exception, not the rule. *See Ortego Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262, 1265 (11th Cir. 2000). Thus, in determining whether abstention is appropriate, the Court's task is "not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25-26.

11

As an initial matter, the Court must determine whether the concurrent state and federal lawsuits are parallel such that the *Colorado River* analysis is appropriate. *See Lisa, S.A. v. Mayorga*, 232 F. Supp. 2d 1325, 1328 (S.D. Fla. 2002). *See also AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001); *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). The lawsuits need not be identical to be considered parallel; rather, "[s]uits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *AAR Int'l*, 250 F.3d at 518 (internal quotations omitted). "The question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case." *Id.* (internal quotations omitted). "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction..." *Id.* at 520.

In this case, the Court cannot conclude that the state and federal actions are parallel, such that resolution in the state court will dispose of all claims presented in this case. Although both parties reference the state court action in general terms, neither has attached a copy of the Complaint such that this Court can independently determine whether the claims are in fact substantially the same. Silvers contends that "[t]he factual issues that will resolve whether Silvers properly terminated are the very same factual issues that will resolve the outcome of Stelor's wrongful termination claim," while Stelor argues that the two actions are not the same the Settlement Agreement is not at issue in the state court action. Without more, the Court cannot decide between the parties' competing views and must adhere to its "virtually unflagging obligation" to exercise jurisdiction in this case. *Colorado River*, 424 U.S. at 817.

Additionally, the Court cannot conclude that the abstention factors constitute the "clearest of justifications" to overcome its judicial duty to exercise jurisdiction. *See Colorado River*, 424 U.S. at 817. First, the Court agrees with Stelor that the federal court in fact assumed jurisdiction over the parties and the property rights at issue before the state court. Stelor filed its state court action on September 6, 2005. However, the instant action was filed by Silvers on May 4, 2005, and Stelor filed an action for breach of the License Agreement and Settlement Agreement on August 8, 2005. Although the latter action has not been transferred to the undersigned, it remains pending in this district under Judge Daniel T.K. Hurley. Therefore, based on the two actions filed in this district, the Court cannot agree that the state court first assumed jurisdiction over the parties and the trademark property at issue.

Next, the parties do not suffer any significant inconvenience if this Cross-Claim remains in federal court versus state court, both of which are located in Palm Beach County. Additionally, principles of comity suggest that this Court should resolve the contractual issues because the related standing and ownership issues, trademark claims and defenses are pending before it. Therefore, abstention is not appropriate under the circumstances presented.

### III. Conclusion

The Court has reviewed the motion and the pertinent portions of the record, and being fully advised in the premises, it is hereby,

ORDERED and ADJUDGED that:

(1)  Silvers' Motion to Dismiss Stelor's Amended Cross-Claim **[DE 51]** is DENIED.

(2)  Pursuant to this Court's Order Denying Plaintiff's Motion to Compel Google to Comply with Pretrial Procedures **[DE 36]**, the parties are ORDERED to hold a scheduling

conference within fourteen (14) days of the date of this Order, and to file a Scheduling Report and Joint Proposed Scheduling Order seven (7) days thereafter.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 27 day of February, 2006.

*[signature]*

HON. KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies provided to:
All counsel of record