UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80387 CIV RYSKAMP/VITUNAC

STEVEN A. SILVERS, an individual,

    Plaintiff,

v.

GOOGLE INC., a Delaware corporation,

    Defendant.
_____/

### STELOR PRODUCTIONS, LLC'S REPLY TO SILVERS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Cross-Claim Plaintiff STELOR PRODUCTIONS, L.L.C. ("Stelor"), by and through undersigned counsel, hereby replies as follows to Silvers' Memorandum of Law In Opposition to Stelor's Motion for Summary Judgment (DE # 193) ("Opposition"):

### INTRODUCTION

Having failed to comply with the express contractual requirement to provide 60 days' notice and an opportunity to cure prior to terminating the parties' License Agreement, Silvers' termination is invalid. Silvers' argument that he somehow preserved the right at any time, without notice, to terminate the Agreements is inconsistent with their clear provisions and the governing law.

Even if Silvers could avoid his failure to provide notice – and he cannot – his allegations of breach are entirely unfounded. As a threshold matter, Silvers limits his argument to four issues: (1) a royalty advance of $5,000.00, (2) a health insurance reimbursement of $1,000.00 (both for April 2005), and alleged failures (3) to provide samples of licensed products and (4) to schedule an audit. Silvers thus concedes the absence of genuine issues of material fact regarding his unsupported allegations of other breaches by Stelor, and partial summary judgment should be entered deeming those facts uncontested for purposes of trial (if any).

Nor is there any basis whatsoever even for the four limited breaches Silvers continues to allege. His case is a sham, as he himself admitted at deposition when he at last confirmed he was

in fact paid (prior to termination) the $5,000.00 advance royalty payment for April! Stelor's payments to reimburse Silvers for his health insurance payments was not even due until 15 days after Silvers provided evidence of his payment for that insurance, which he refused to provide. Samples were only required of licensed products, and Stelor provided samples for its Googles music, the only licensed product it sells. Finally, the record is clear that Silvers' agreed to postpone the scheduling of an audit, and did not renew his request for an audit until April 22, 2006, just five days before his improper termination of the Agreements.

No genuine issues of fact exist. As a matter of law, summary judgment should be entered in favor of Stelor, declaring the Agreements to be in full force and effect, relieving Stelor of any obligation to pay advance royalties since the date of Silvers' wrongful termination, and awarding Stelor its reasonable attorneys' fees and costs in an amount to be determined.

### SILVERS FAILED TO PROVIDE NOTICE

This case begins and ends with Silvers' failure to provide the required notice prior to terminating the License Agreement in April of 2005. As set forth in Stelor's Motion (DE #140, at 10-11), courts strictly enforce contractual notice and cure provisions. *E.g., Alliance Metals, Inc. v. Hinely Indus., Inc.,* 222 F.3d 895, 905 (11th Cir. 2000). Having admittedly failed to comply with the License Agreement's notice and cure provision (*see* Silvers' Depo. at 209:22-210:21)[1], Silvers' purported termination of the Agreements is invalid and Stelor's motion should be granted. In fact, as Silvers confessed to Stelor's CEO just a few months ago, Silvers believes his own lawyer, "Ms. McQuilkin[,] blew it in terms of the notice"! Depo. at 67:1-6.

Nor can Silvers legitimately argue that he somehow retained the right under the Settlement Agreement to terminate the License at any time, without notice, if Stelor failed fully to perform any of its obligations. Paragraph 3 of the Settlement Agreement confirms **both** that (1) "Silvers withdraws his notice of termination of the License Agreement," and (2) "***reaffirms his obligations under the License Agreement.***" Focusing exclusively on the first phrase, Silvers would ignore the second, claiming the Agreements somehow remained subject to a November 2004 notice of default. As a matter of law, by "reaffirming" the License Agreement –

---

[1] All deposition citations are to the Deposition of Silvers ("Depo.") on October 10 & 13, 2006, previously filed with the Court (DE # 182). Excerpts are attached hereto Exhibit "A".

unconditionally and without qualification – Silvers wiped the slate clean, confirmed the License was fully effective, and relinquished any prior claims of invalidity or default.

The law is clear that a party who ratifies and accepts the benefits of an agreement after declaring a default thereby waives any right later to enforce that default.  As the Florida Supreme Court explained in *Hendricks v. Stark,* 126 So. 293, 297 (Fla. 1930) (emphasis added),

> all that justice or equity requires . . . is that [a party] should have **but one fair opportunity**, after full knowledge of his rights, to decide whether he will affirm and take the benefits of the contract, or disaffirm it and demand the consequent redress.  Any other rule would be regarded as unjust, even toward the party guilty of the wrong out of which grows the right to rescind.

Similarly, the Court in *Scocozzo v. General Development Corp.,* 191 So. 2d 572, 579 (Fla. 3d DCA 1966) (emphasis added) held that

> a person by the acceptance of benefits may be estopped from questioning the validity and effect of a contract; and, where one has an election to ratify or disaffirm a conveyance, **he can either claim under or against it, but he cannot do both**, and having adopted one course with knowledge of the facts, he cannot afterwards pursue the other.

*see Sea-Land Serv., Inc. v. Sellan,* 64 F. Supp. 2d 1255, 1262 (S.D. Fla. 1999); *District Board of Trustees v. Morgan,* 890 So. 2d 1155, 1160 (Fla. 5th DCA 2004); *Americana Assoc's, Ltd. v. WHUD Real Estate Limited Partnership,* 715 So. 2d 955, 956 (Fla. 5th DCA 1998); *J. Allen, Inc. v. Castle Floor Covering, Inc.,* 543 So. 2d 249, 252 (Fla.2d DCA 1989).

This principle is especially applicable here, where Silvers reaffirmed the Agreements and accepted the benefits thereunder, by depositing at least six Stelor checks for payments in excess of $21,000.00 under the Agreements during the period February through April 2005.  (A19; DE # 200-9).  *See, e.g., Stevenson v. Stevenson,* 661 So. 2d 367, 369 (Fla. 4th DCA 1995) (wife's taking and cashing of $5,500 check was acceptance of benefits mandating legal ratification of contract even if she evidenced contrary intent); *Rank v. Sullivan,* 132 So. 2d 32, 36 (Fla. 2d DCA 1961) (acceptance of subsequent installment payments waived any breach related to initial installment payment); *Miami Dade Indus. Park, Inc. v. Miami Dyeing & Printing, Inc.,* 14 B.R. 947 (S.D. Fla. Bankr. 1981) (acceptance of rent after notice of default constitutes a waver of the default); *see also Rissman v. Kilbourne,* 643 So. 2d 1136, 1139 (Fla. 1st DCA 1994), and *Smith v. Landy,* 402 So. 2d 441, 441 (Fla. 3d DCA 1981), cited in Motion at 12.

Silvers, however, wants to "do both." While accepting the benefits of Stelor's performance under the Agreements, Silvers also wants Stelor to operate under a perpetual cloud of default. Neither the Agreements nor the law allow him to do that.

Nor can Silvers alter the clear legal effect of the "reaffirmation" provision in the body of the Settlement Agreement by relying on language in the second-to-last whereas clause regarding the parties' general intent in entering into the Settlement. (A3, at 1; DE # 199-4, at 2). Whereas clauses "are merely prefatory recitations of the facts that lead the parties to enter the agreement," *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.,* 351 F.3d 1067, 1074 (11th Cir. 2003); they are not "binding, operative provisions . . . and [are] not an essential part of the operating portions of the contract," *Johnson v. Johnson,* 725 So. 2d 1209, 1212 (Fla. 3d DCA 1999).[2]

Silvers' failure to provide notice invalidates his purported termination of the Agreements, and as a matter of law, requires entry of summary judgment for Stelor.

## THE ALLEGATIONS OF BREACH ARE UNFOUNDED

Even if Silvers could overcome his failure to provide notice, and he cannot, the underlying allegations of breach are totally unfounded.

**A.      Silvers Concedes Numerous of His Alleged Breaches Are Unfounded.**

Silvers limits the discussion in his Opposition to four alleged breaches by Stelor: (1) the alleged failure to pay a $5,000.00 advance royalty in April of 2005; (2) the alleged failure to pay a $1,000.00 reimbursement for health insurance in April of 2005; and alleged failures (3) to provide product samples to Silvers; and (4) to schedule an audit.

Silvers does not address or oppose in any way Stelor's demonstration that his allegations of multiple other breaches were entirely unfounded.[3] Silvers offers no support for his allegation that Stelor failed to provide unit interests or options in Stelor Productions, LLC (S26-28); or for

---

[2] As detailed in Stelor's initial Motion (DE #140, at 11-12), even if the November 2004 Letter could conceivably be deemed to have remained in effect after entry into the Settlement Agreement, that Letter would not have been legally sufficient notice for the breaches that Silvers claimed as the basis for termination in his April 27, 2005 letter. *See Alliance Metals, Inc., v. Hinely Indus.,* 222 F.3d at 903-04.

[3] Silvers Statement of Disputed Facts (DE # 202) contests only the facts contained in 4 of the 37 paragraphs of Stelor's Statement of Material Facts (DE # 142). The disputed paragraphs of Stelor's Statement are 9, 11, 34 and 35. Accordingly, the facts as set forth in the other 34 paragraphs of Stelor's Statement are deemed admitted. *See* Local Rule 7.5.D.

his allegations related to royalties and royalty statements, beyond the $5,000.00 payment for April (S29-33). Thus, Silvers abandons any allegation that Stelor failed to provide the required certification regarding past royalties (S29) (or that Stelor provided a false certification (S30)); that Stelor failed to pay commissions on iTunes downloads (S30); or that Stelor in any way breached the Agreements based on the CafePress internet store or the unfounded allegations in a declaration by Paul Worsham (S31-33).

Summary judgment, therefore, should be entered in favor of Stelor rejecting these or any other unsupported allegations of breach as a basis for termination. *See* Rule 56(d), Fed. R. Civ. P.; *Meek v. Metropolitan Dade County, Florida,* 805 F. Supp. 958, 963 (S.D. Fla. 1992) (partial summary judgment adjudicates "that certain issues shall be deemed established for the trial of the case . . . accelerat[ing] litigation by framing and narrowing the triable issues, and by eliminating, before trial, matters that contain no genuine issue of material fact").

**B.** **Advance Royalty Breach.**

Nor is there any substantiation for the four limited issues Silvers does address in his opposition. With respect to the $5,000.00 advance royalty payment for April 2005, Silvers has misrepresented the facts. Finally, he admitted at deposition that he had in fact received that payment, as well as the payments for February and March. Silvers Depo. at 304-306. Thus, he identified an April 8, 2005 check (A19, DE # 200-9, at 7), and explained that it was paid directly to him and deposited by him into his bank account! Depo. at 305:13-306:5. Accordingly, the record contains three cancelled $5,000.00 checks for the February, March and April advance royalty payments (A19, DE # 200-9, at 5-7) (also attached as Exhibit "B" hereto). There is clearly no breach on this basis; Silvers has engaged in an egregious sham.

**C.** **Health Insurance Payments.**

Silvers' arguments regarding the health insurance reimbursement payments – in an amount not to exceed $1,000.00 a month, pursuant to paragraph 10(b) of the Settlement Agreement – are equally unfounded. First, Silvers again confirms that he received – and cashed – reimbursement checks for February and March, 2005 (A10, ¶ 15; DE # 199-19, at 15), thus waiving any claim of default related to those payments. *See* cases cited supra at 3. The sole issue raised by Silvers, therefore, is an alleged delay in payment of $1,000.00, which Stelor tendered to Silvers on April 29, 2005. (A4; DE # 199-25, at 6). Even if a breach at all – and it is not – that delay is hardly a material breach supporting termination of a License Agreement with a

30 year term after the Licensee has invested millions of dollars. *See* Magistrate's Report at 17-23 (A22), citing *Atlanta Jet v. Liberty Aircraft Servs., LLC,* 866 So. 2d 148, 150 (Fla. 4th DCA 2004); *Sublime, Inc. v. Boardman's Inc.,* 849 So. 2d 471 (Fla. 4th DCA 2003).

Stelor, however, is only required to reimburse Silvers for his health insurance payments "within 15 days of Stelor receiving evidence of paid premiums." Settlement Agreement, Para 10(c). Silvers never provided that evidence. (A4; DE # 199-5, at 11-12). He admitted at deposition that he had the checks showing his payments and "could easily have provided [them] to Stelor", but he never did. Depo at 294:9-17. This claim of breach, therefore, is baseless as well.

**D.     Samples.**

Silvers again misconstrues the controlling agreements in arguing that Stelor failed to provide samples. Stelor's requirement to provide samples is limited to "any ***Licensed Product that is being offered for sale.***" License Agreement, Para. 15 (emphasis added). Silvers admitted at deposition that such samples would not need to be provided until a reasonable time prior to manufacture, which he set at 30 days. Depo. at 120:9-121:13.

The only licensed product Stelor is now offering for sale, however, is the Googles music being sold on iTunes, and Silvers has admitted (and does not contest in his Opposition) that he received samples of that music. (S35). This claimed breach is entirely bogus as well.[4]

**E.     The Audit Allegations.**

Relying on alleged conversations between counsel, that are entirely unsubstantiated and in fact inconsistent with the extensive email exchanges between them[5], Silvers attempts to deny that he agreed to postpone the audit. Tellingly, the declaration from his prior counsel, Ms. McQuilkin, contains no specific denial of Stelor's allegation that she agreed to postpone the audit. (A10; DE # 199-19). Instead, she attempts to avoid the issue, mischaracterizes the content

---

[4] Silvers also ignores in his Opposition the fact that his own lawyer herself inspected various products still in the development stage at Stelor's offices in February 2005 (S35); that Silvers' counsel was invited (but refused to come) to review additional materials at the offices of Stelor's counsel in April of 2005 (prior to the declared breach) (S36); and that Silvers' counsel herself advised the entire issue was a matter of appeasing her client, and she had no intention of even communicating to Stelor the input her client might give to her regarding any such samples! (S37 – a fact not contested by Silvers).

[5] Avoiding arguments based on alleged telephone conversations demonstrates precisely the importance of a written notice and cure provision.

of certain emails written during the early weeks of April 2005, and simply ignores other emails confirming that the issue of the audit – in her mind as well – was deferred at that time. (The emails are attached hereto as Composite Exhibit "C", for ease of reference).

Thus, by email dated March 23, 2005, Ms. McQuilkin herself confirms the agreement to postpone the audit. (S34). Although Ms. McQuilkin refers to emails dated April 12 and 13, 2005, neither of those emails even mentions the audit! (A10, ¶¶ 22 & 23, Exs. S & T; DE ## 199-19, at 8; 199-20 at 3-4). In fact, her email of April 8, 2005 (A10, Ex. XX; DE # 199-20, at 24), which specifically catalogs the "pending issues" Silvers claims to exist under the Settlement Agreement, does not mention the audit at all.

The first communication regarding the audit after that March 23rd email is the email dated April 22, 2005 (A10, Ex. U; DE # 199-20, at 4), which advises that "the auditor is preparing a letter that will outline the documents and records he will need available at Stelor to do the audit" and asks for a date "in the next two weeks". Of course, before a date could be set, Silvers sent his termination letter. Indeed, Silvers himself agreed at deposition that Stelor could reasonably have expected, based on that email, to have at least a week or two to schedule the date. Depo. at 311:13-19. Under these circumstances, Stelor's alleged failure to provide a date for an audit within 5 days following the April 22nd email cannot be deemed a breach of the Agreement.

## NO POST TERMINATION BREACHES EXIST

Stelor's new allegations of breach are also entirely unfounded. Stelor detailed the reasons why, in a written item-by-item response to Silvers' August 2006 notice, but Silvers fails to include the Response Letter and ignores it in his Opposition. *See* Esrig Declaration in Support of Motion for Summary Judgment (filed herewith), ¶ 3, Ex. A.

Silvers first complains about a reference on Stelor's corporate website to its award winning Googles music. As Stelor's Response Letter explains, a BETA or preliminary version of a new corporate website for Stelor Productions was inadvertently released live on the internet before final review and approval. As soon as Stelor learned of the issue, Stelor immediately corrected the content on the website. Accordingly, the current version of the site omits the reference to a Grammy Award, and correctly refers to the music as "award winning". The "One GooWorld" album of music received a prestigious, Certificate of Recognition in March of 2006 from the Dove Foundation. *Id.* ¶ 5.

With respect to Silvers' complaint about Stelor's use of the name "Troodles from Troo", Stelor advised in its Response Letter that the name referred to a different character set that Stelor has developed.  Based on that explanation, the Response Letter advised that Stelor was "unsure exactly what Silvers believes the issue to be", and asked Mr. Silvers and his counsel to "advise us immediately if and how Mr. Silvers believes the development of another character set constitutes a violation of the License Agreement."  Clearly, it does not, which Silvers conceded by failing ever to respond.

Silvers' claim that Stelor has failed to register other trademarks, such as one for "Goo Roo", is utterly disingenuous.  Indeed, Silvers himself has disrupted Stelor's efforts to pursue such trademark registrations by removing Stelor's counsel as the correspondent with the USPTO, and substituting himself.  *Id.* ¶ 7.  Having interfered for no apparent reason with Stelor's ability to pursue this registration, Silvers cannot legitimately now complain about the situation!

Silvers' recent allegations that Stelor has failed reasonably to commercialize the intellectual property are similarly ludicrous.  First, the License Agreement imposes no benchmarks or time frame on Stelor's development activities, except for a specific requirement in paragraph IX(C) of the License Agreement.  That provision gives Silvers the right to terminate the License if, **after 5 years,** there are three consecutive years in which royalty payments to Silvers are less than $100,00.00.  Essentially, therefore, Stelor has at least until year eight of the License – June of 2009 to June of 2010 – before any specific royalty requirements apply.  Silvers himself recognizes that Stelor has invested millions of dollars in developing the property, which has been slowed by Google Inc.'s infringement (a problem Silvers himself has acknowledged by filing his trademark infringement action).  And, given Silvers own interference with Stelor's business, he is clearly barred from criticizing Stelor's commercialization efforts, especially where he cannot point to any specific threshold requirement with which Stelor has failed to comply under the Agreements.  Indeed, as of April 12, 2005, before his wrongful termination, Silvers himself advised Stelor through his counsel that "[h]e really is very happy with the project . . . . He knows the success of the project is the result of the work and investment made by everyone over there." (DE # 199-5 at 20).

## **REINSTATEMENT IS AN APPROPRIATE REMEDY**

Finally, Silvers improperly contends that, even if he unilaterally and wrongly terminated that License Agreement, Stelor's only recourse is money damages, and that Stelor cannot have the termination declared improper and the License Agreement deemed to be in effect. As the Court succinctly held in *Computer Currents Publishing Corp. v. Jaye Communications, Inc.,* 968 F. Supp. 684, 687 (N.D. Ga. 1997), in rejecting the identical argument by a trademark licensor, "[u]nfortunately, this is a misstatement of the law."[6]

That decision was expressly approved by the Eleventh Circuit in *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1307-08 (11th Cir. 1998). In fact, the *Burger King* decisions cited by Silvers were effectively overruled by the Eleventh Circuit's decision in *Robertson. Id.* at 1308. Adopting the Third Circuit's analysis in *S&R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371 (3d Cir. 1992), *Robertson* held that, before a franchisor could enjoin an allegedly terminated franchisee from continuing to use the trademarks, the franchisor had to show the termination was proper. Absent such a showing by the franchisor, the franchisee's rights to use the trademarks continue.

In fact, none of the decisions cited by Silvers – including the *Burger King* cases – supports Silvers' misstatement of the law that the License Agreement ends, even if Silvers' termination was wrongful. Rather, the established rule is as follows:

> Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages.

*Jiffy Lube,* 968 F.2d at 376. If – as Stelor has done here – the non-breaching party continues to perform under the contract, the party clearly preserves the right to continue to use the trademark should the termination prove to be wrongful. *See Ron Matusalem & Matusa, Inc. v. Ron Matusalem, Inc.,* 872 F.2d 1547, 1550, 1553 (11th Cir. 1989).[7]

---

[6] If accepted, Silvers' argument would give him a right he does not have under the Agreements to terminate at any time, even improperly, without any consequences. The law does not permit an interpretation that eviscerates the critical provisions of an agreement. *See Florida Polk County v. Prison Health Services, Inc.,* 170 F.3d 1081, 1084 (11th Cir. 1999).

[7] As one commentator put it, "[n]either a franchisor nor a franchisee can play the role of judge and jury in connection with contract defaults." H. Bruno, *Is Proper Termination Necessary to Obtain a Trademark Injunction?,* 21-SPG Franchise L.J. 204, 207 (2002). The franchisor's simply declaring the agreement to be terminated does not make it so.

9

Silvers' argument entirely ignores the controlling ruling in the *Ron Matusalem* decision, cited in Stelor's Motion at 19. As the Eleventh Circuit emphasized there, "termination of a franchise is a drastic remedy" and such franchise rights "should not be set aside lightly". *Id.* Clearly, the Court in this case has the authority to determine that Silvers' termination was wrongful and that the License remains in existence.

Nor did Judge Hurley decide this issue at the preliminary injunction stage in the prior action, as Silvers wrongly claims. Indeed, the decision to which Silvers points, *Freeplay Music, Inc. v. Verance Corp.,* 80 Fed Appx. 137 (2d Cir 2003), in fact supports Stelor's position. Thus, the Court affirmed a denial of a preliminary injunction because, on the facts at the injunction stage, no showing of irreparable harm was made; but the *Freeplay* Court overturned the lower court's dismissal of the claims for declaratory judgment, breach of contract, and other relief, and remanded the matter to the lower court "for proper resolution . . . upon a complete record". Based upon the complete record here, Stelor is clearly entitled to summary judgment declaring the Agreements to be in full force and effect.

Silvers' argument that Stelor has an adequate remedy at law is especially disingenuous, moreover, since as Silvers has previously argued, the License Agreement contains a provision limiting the amount of recoverable damages in the event of a breach. *See* Paragraph XIII. If enforced, that provision restricts Stelor's recovery of damages, although Stelor should be released from any obligation to re-pay Silvers the tendered royalty payments he has rejected for the past 19 months. Stelor should also be awarded its attorneys' fees pursuant to paragraph 17 of the Settlement Agreement.

## **CONCLUSION**

For these reasons, Stelor respectfully requests that summary judgment be granted against Steven Silvers, declaring his termination wrongful and invalid, deeming the Agreements to be reinstated and in full force and effect, releasing Stelor from any obligation to pay advance royalty payments or other sums that accrued during the pendency of this action, awarding Stelor its attorneys' fees and costs in an amount to be determined, along with such other and further relief the Court deems appropriate.

CASE NO. 05-80387 CIV RYSKAMP/VITUNAC

RESPECTFULLY SUBMITTED,

s/Kevin C. Kaplan - Florida Bar No. 933848
David J. Zack - Florida Bar No. 641685
Email:  kkaplan@bskblaw.com
        dzack@bskblaw.com
BURLINGTON, SCHWIEP, KAPLAN &
  BLONSKY, P.A.
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261
Counsel for STELOR PRODUCTIONS, LLC

CERTIFICATE OF SERVICE

    I hereby certify that on December 8, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Kevin C. Kaplan

11

CASE NO. 05-80387 CIV RYSKAMP/VITUNAC

# SERVICE LIST

**STEVEN A. SILVERS, Plaintiff, v. GOOGLE INC.**
**CASE NO. 05-80387 CIV RYSKAMP/VITUNAC**
**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA**

Robert H. Cooper, Esq.
robert@rcooperpa.com
ROBERT COOPER, P.A.
Concorde Centre II, Suite 704
2999 N.E. 191 Street
Aventura, Florida 33180
Tel: 305-792-4343
Fax: 305-792-0200
*Attorney for Plaintiff Steven A. Silvers*
Method of Service: CM/ECF

Ramsey Al-Salam, Esq.
RAlsalam@perkinscoie.com
William C. Rava, Esq.
PERKINS COIE LLP
Suite 4800
1201 Third Avenue
Seattle, Washington 98101-3099
Tel: 206-359-8000
Fax: 206-359-9000
*Attorneys for Defendant Google Inc.*
Method of Service: Email and U.S. Mail

Johanna Calabria, Esq.
PERKINS COIE LLP
Suite 2400
Four Embarcadero Center
San Francisco, CA 94111
Tel: 415-344-7050
Fax: 415-344-7124
E-mail: jcalabria@perkinscoie.com
*Attorneys for Defendant Google Inc.*
Method of Service: Email and U.S. Mail

Jan Douglas Atlas, Esq.
jatlas@adorno.com
ADORNO & YOSS LLP
Suite 1700
350 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
Tel: 954-763-1200
Fax. 954-766-7800
Attorneys for Defendant Google Inc.
Method of Service: CM/ECF