# EXHIBIT A

Dockets.Justia.com

BURLINGTON · SCHWIEP · KAPLAN ⟨&⟩ BLONSKY, P.A.

OFFICE IN THE GROVE  PENTHOUSE 2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900 F: 305.858.5261
EMAIL: KKAPLAN@BSKBLAW.COM   WWW.BSKBLAW.COM

October 20, 2006

## VIA TELEFAX AND US MAIL

Robert H. Cooper, Esq.
Robert H. Cooper P.A.
Concorde Centre II, Suite 704
2999 N.E. 191 Street
Aventura, Florida 33180

> Re:    Stelor Productions v. Steven Silvers,
>          Case No. 05-80387 CIV RYSKAMP

Dear Robert:

We address this communication to you based on your appearance at last week's depositions as counsel for Mr. Silvers. If, for any reason, you believe you are not authorized to receive this communication or that it should be directed elsewhere, please advise us immediately. Given your appearance, we are obviously uncomfortable communicating with Mr. Silvers directly.

Mr. Silvers sent us a letter on or about August 27, 2006, requesting an explanation for a laundry list of issues. At the conclusion of the letter, he wrote in capitalized letters "CONFIDENTIAL COMMUNICATION". He then emphasized that the letter "is a privileged, inadmissible and non-discoverable communication[] between the parties noted above."

Prior to our receipt of that letter, Mr. Silvers had also demanded that we confirm in writing our agreement that settlement communications between us would be "privileged, confidential, inadmissible, and non-discoverable". We did so.

Accordingly, upon our receipt of the August 27th Letter, we were unclear about whether Mr. Silvers intended it as a settlement communication (thus privileged under the terms he had insisted we agree to) or as a legal notice under the License Agreement. We attempted in writing repeatedly to obtain clarification from Mr. Silvers on this point. Thus, by email dated September 2, 2006, I advised Mr. Silvers as follows:

> In order for us to respond, we need to know whether your letter and our response
> are (1) a settlement discussion as part of the mediation or (2) a notice of default
> requesting a response by Stelor neither of which is or will be part of a privileged
> settlement discussion. Your letter is not clear on this, and we should not be
> required to guess. State your intention!

October 20, 2006
Page 2

Mr. Silvers refused to respond. Whatever his motives may have been in refusing to respond, that clearly prejudiced Stelor's ability to address the communication in a proper matter. I again attempted to address these issues with you prior to the commencement of Mr. Silvers' deposition last week. You told me that you were unaware of the letter, and when I gave you a copy, you said you would review it and advise us of your client's position. You later indicated it was not a settlement communication.

As set forth above, Stelor objects to your client's failure and refusal to clarify the intent behind his letter at the time it was sent. Nevertheless, to avoid the obvious pitfall your client apparently has attempted to create for Stelor, we now respond to the alleged issues addressed in the letter.

### GoGooz

First, Silvers complains about a reference to "The GoGooz from Goo" on Stelor's website back in July. As Silvers has already been advised, a BETA version of a new corporate website for StelorProductions.com was inadvertently released live on the internet before final review and approval. Stelor immediately addressed the issue, and removed the BETA version from its website. Accordingly, the issue has been fully addressed and corrected by Stelor.

Should Mr. Silvers believe any further issue exists on this topic, please advise us immediately in writing what that issue is, so that Stelor may promptly address it.

To the extent Mr. Silvers also complains about the registration of the domain name www.gogooz.com, we do not understand the issue. Stelor has and continues to register a long list of "goo" related domain names, among other reasons to protect the Googles property and prevent others from using similar names. The registration of the gogooz domain name is one such example. The network solutions print out, moreover, shows that the domain was registered in the name of Silvers Entertainment Group, Inc. (and not Stelor). If Mr. Silvers wants the registrant information to be different, simply advise us and we will be happy to change it.

### Grammy Awards and iTunes Downloads

Second, Silvers complains about two alleged misstatements on Stelor's website from that same time period: (1) a reference to a Grammy nomination for One GooWorld; and (2) a reference to more than 1 million downloads of the album.

Again, as Mr. Silvers has been advised, these were errors contained in the BETA version of the website, explained above. The statements have been removed. Accordingly, the issue has been fully address and corrected by Stelor.

Should Mr. Silvers believe any further issue exists on this topic, please advise us immediately in writing what that issue is, so that Stelor may promptly address it.

October 20, 2006
Page 3

### Troodles from Troo

Third, Silvers complains about Stelor's application to register a trademark in the name "The Troodles from Troo", because the name sounds similar to the Googles from Goo. We are unsure exactly what Silvers believes the issue to be. The Troodles from Troo are another character set that Stelor has developed.

Please advise us immediately if and how Mr. Silvers believes the development of another character set constitutes a violation of the License Agreement. We do not see how it could.

### Goo Roo

Fourth, Silvers complains that the "Goo Roo" mark has not yet been registered. As a threshold matter, certain of Mr. Silvers' comments are extremely surprising, given his own actions with respect to the application. Thus, Mr. Silvers himself wrote to the Office in or about July of 2005 to change the correspondent from Laurence Hefter at Finnegan, Henderson to Steven Silvers. Accordingly, Silvers knows that Mr. Hefter was handling the matter as counsel, and not Ira Edell, as the letter suggests. Mr. Silvers' change of the correspondent information has also disrupted the ability of Stelor and its counsel to handle this matter, since notices from the Office are going to Silvers, instead of Mr. Hefter. This is an example of conduct by Mr. Silvers that is clearly detrimental to everyone's interest. Stelor has highly competent counsel engaged to address these issues, yet Silvers for no apparent reason takes action to disrupt that counsel's ability to do their job. Then, in typical fashion, he complains to Stelor about the situation!

With respect to the request for additional time, as explained below under the heading "Commercialization of IP", Stelor is ready, willing and able to proceed with the launch of its website, and the associated activity such as use of the plush toys, but its ability to do so has been impeded by the ongoing litigation related to Google, and to Mr. Silvers' improper interference with Stelor's business.

### Oogle, Iggle and Oggle

Fifth, Mr. Silvers questions whether section 8 and 15 declarations will be filed for the Oogle, Iggle and Oggle marks. As his letter sets forth, the period during which the declarations must be filed runs until September 2007. Stelor is prepared to and will address these issues during this time, pursuant to the License Agreement. Stelor understands the letter to constitute a demand by Silvers that Stelor take such action as is required to file these declarations.

If Stelor's understanding is incorrect in any way, please advise us immediately in writing.

October 20, 2006
Page 4

### The Maryland Actions

Sixth, Mr. Silvers suggests the filing of the action in Maryland against him somehow is in violation of the venue provisions in the License and Settlement Agreements. The Maryland action, however, does not involve claims arising under or relating to the Agreements. The Maryland action is for misconduct by Silvers independent of his obligations under the Agreements.

### The Japanese Trademark

Seventh, Mr. Silvers complains about Stelor's request that he sign documents related to the Japanese trademark application for Goosicles. Our understanding is that Mr. Silvers spoke directly with Larry Hefter regarding this application, which satisfied his concerns, and accordingly that he went ahead and signed the documents.

If our understanding is incorrect in any way, and any further issue exists on this point, please advise us immediately in writing.

### Commercialization of IP

Finally, Mr. Silvers complains that Stelor has failed to "reasonably commercialize" the Googles intellectual property. Specifically, Mr. Silvers points to the absence of sub-licensees, of manufactured products, and sales of plush toys and other merchandise. The reality, as Mr. Silvers well knows, is that the pendency of litigation has severely impacted Stelor's ability to move forward with its plans to commercialize the property. The confusion created by Google – coupled with its claims for trademark infringement against you and Stelor – have dramatically chilled the interest potential licensees. Sublicensees are apparently reluctant to make an investment in the intellectual property while a threat exists that the Googles trademark may be invalidated, or that Google Inc. is launching a directly competing business. Similarly, these uncertainties have impacted Stelor's ability to proceed with the launch of its website, including the voluminous content it has spent 4 years and millions of dollars developing.

The issues that your client has raised as well – although entirely bogus – have negatively impacted the business. That Mr. Silvers – after himself undertaking to interfere with Stelor's business in this manner – would now complain about the state of Stelor's development of the intellectual property is absolutely ludicrous. Indeed, how can Mr. Silvers complain that Stelor has not commercialized the intellectual property, such as by sublicensing, when he claims that Stelor does not have the right to license at all? Does Mr. Silvers now agree that the License remains in effect? If not, surely he will concede that he cannot complain about Stelor's commercialization of the property while he claims the License to be terminated. Clearly, he cannot have it both ways. This is just another example of Mr. Silvers' fundamental inability to grasp the consequences of his actions, even as he seeks to blame everyone else in sight.

October 20, 2006
Page 5

### Conclusion

As detailed above, therefore, the litany of issues raised by Mr. Silvers in his August 27th letter have been fully addressed by Stelor, or are entirely unfounded. Again, as requested with respect to each specific item above, if Mr. Silvers believes differently, or contends that some additional action is required by Stelor, please advise us immediately in writing. In the event we do not receive such a response, Stelor will assume that all of the issues raised by Mr. Silvers in his letter have been addressed to his satisfaction.

Sincerely,

Kevin C. Kaplan

KK/mjp
cc:    Stelor Productions, LLC