UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80387 CIV RYSKAMP/VITUNAC

STEVEN A. SILVERS, an individual,

    Plaintiff,

v.

GOOGLE INC., a Delaware corporation,

    Defendant.
_____/

GOOGLE INC., a Delaware corporation,

    Counterclaimant,

v.

STEVEN A. SILVERS, an individual;
STELOR PRODUCTIONS, INC., a Delaware
Corporation; STELOR PRODUCTIONS, LLC, a
Delaware limited liability company, and
STEVEN ESRIG, an individual,

    Counterdefendants.
_____/

### PLAINTIFF AND COUNTER-DEFENDANTS REPLY TO DEFENDANT GOOGLE INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER

In opposing Stelor's Motion, Google ignores the pending claim for cancellation of the Google, Inc. trademark registration. Thus, in addition to claims for trademark infringement and unfair competition, Count IV of the First Amended Complaint ("Complaint") (DE #10) seeks the cancellation of Google, Inc.'s trademark registration. The Count asserts that Google's trademark applications contained false statements, and must be canceled.

COFFEY BURLINGTON
OFFICE IN THE GROVE  PENTHOUSE  2699 SOUTH BAYSHORE DRIVE  MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
EMAIL: info@coffeyburlington.com   www.coffeyburlington.com

Dockets.Justia.com

On these issues, the testimony of Page and Brin is indispensible. Because they were the only individuals involved with Google at the time, only they can testify regarding the alleged fraud in the submission of Google's original trademark application. Similarly, no one other than Brin and Page can legitimately testify about the nature and timing of the first use of the Google mark. Obviously, those facts are critical for Stelor to prove its cancellation claim and also to establish the scope of its rights as the prior user of the virtually identical "Googles" mark.

Google cannot properly seek to prevent this deposition. Nor can Google fairly seek to delay the deposition by requiring Stelor first to travel to California to depose another designated representative of Google and then seek permission to travel again to California to depose Brin and Page. Stelor should be permitted to take these depositions at once, without any requirement to make multiple trips, or jump through impermissible hoops, in order to depose the relevant and knowledgeable witnesses on critical issues in this case.

Accordingly, Google should be compelled to produce its 30(b)(6) witness, along with Messrs. Page and Brin, at a date certain for deposition in California.[1]

## I.

## THE CANCELLATION CLAIM

Google wrongly asserts "[t]here is no genuine dispute about when Google began using its name, or when or what occurred with respect to its original "GOOGLE" trademark application."

---

[1] Pursuant to an agreement with Google, Inc., Plaintiff Stelor has dropped its assertion from its Motion to Compel Google Inc.'s Production of Its Principals, Sergey Brin and Lawrence Page, For Deposition that Page and Brin appear for deposition in Miami, Florida (DE #259). Stelor consents to the depositions of both Page and Brin, as well as Google's Rule 30(b)(6) witness, in California.

Coffey Burlington
Office in the Grove  Penthouse  2699 South Bayshore Drive  Miami, Florida 33133
T: 305.858.2900  F: 305.858.5261
Email: info@coffeyburlington.com  www.coffeyburlington.com

Opposition at 4. That ignores the pending claim for cancellation of Google's registration, and the crucial need to depose Brin and Page on those issues.

Thus, Count Four of the Complaint – and in the general allegations (*see* Compl. ¶¶ 32-45) – alleges in detail the significant issues related to Google's first use and registration of the "GOOGLE" trademark. In September of 1998, "Google, Inc." filed an Intent-To-Use federal trademark registration to register the mark "Google" for use in connection with computer hardware and computer services (Cmpl. ¶¶ 41& 85, Exh 50) (a copy is attached hereto as Exhibit "A"). Of course, an Intent-To-Use application means that the applicant has not yet used the mark in commerce, but intends to use it in commerce at some future date.

In fact, the "commercial" launch of the "Google" search engine did not occur until a year later, in or about September of 1999. Until that point, the search engine had remained free to anyone connected to the Internet, and was a non-commercial experimental academic model. *See* Compl. ¶ 42 & Exh. 51, at pages 1, 3, 4, 5, and 10. As alleged in the Complaint, Page intended to keep the search engine in the non-commercial academic realm in order to avoid the advertising-supported business model of most search engines. Compl. ¶ 42. Indeed, it was not until early 2000 that a paid advertising program was introduced. *Id.* ¶ 44.

Of course, as reflected in Stelor's Registration (Exhibit "B" hereto), the first use of Stelor's "GOOGLES" mark in interstate commerce was June 1996 –

- more than 2 years **BEFORE** Google first declared its intent to use its virtually identical mark,
- more than 3 years **BEFORE** Google's own "commercial" launch,
- and 3 ½ years **BEFORE** the introduction of Google's paid advertising program.

COFFEY BURLINGTON

OFFICE IN THE GROVE   PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
EMAIL: info@coffeyburlington.com        www.coffeyburlington.com

Suspiciously, however, in March of 1999, "Google, Inc." filed an Amendment-To-Allege-Use in the pending federal trademark application. (Exhibit "C" hereto). Inconsistent with the original application – and also with the actual history of use – the Amendment stated that the "Google" mark had been used in interstate commerce since *September 1997,* a full year before the initial intent-to-use application. The Amendment was filed together with Page's Declaration that, based on his own knowledge the "Google" mark was in use in commerce as of September 1997, another contradiction, since the search engine services appear not to have been advertised or offered for sale, and thus not used in interstate commerce, until late 1999.

Further inconsistencies exist in connection with these Google applications, related to the corporate history of "Google, Inc." Thus, at the time "Google, Inc." filed the initial Intent-To – Use Application in 1998, "Google, Inc." did not exist as a legal entity. The Company was not incorporated until October 2002, 3 years after the application was filed. Compl. ¶¶ 45, 89 & Exh. 54. In fact, the corporation that Page and Brin had formed and were using in 1998 was Google Technology, Inc. Compl. ¶¶ 40 & Exh. 48. For this reason as well, the application and Page's statements in his declaration were false.

Based on these alleged facts – which Google denies in their entirety, *see* Answer (DE 42) – Stelor claims that the "GOOGLE" Registrations No. 2954071 and 2806075 be ordered cancelled.

## II.

## TESTIMONY OF PAGE AND BRIN IS CRITICAL

To prove this cause of action, therefore, Stelor seeks discovery on the background and evidence related to the first commercial use of the Google mark, the Google, Inc. applications for

COFFEY BURLINGTON

OFFICE IN THE GROVE   PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
EMAIL: info@coffeyburlington.com        www.coffeyburlington.com

trademark registration, and the statements made by the Google principals under oath in support of those application. Not only do Brin and Page have relevant information on these issues; ***ONLY*** Brin and Page can testify directly about that information.

During the initial phase of Google's formation and development, there were only two people associated with it – Brin and Page. They alone ran the operations and developed the business. In a description of the company's history on its own website, Google touts its humble, graduate-student beginnings, with Brin and Page as the brains behind the company and its search engine. *See* http://www.google.com/corporate/history.html (attached as Exhibit "D" hereto). As that history confirms, Page and Brin were the only people associated with the Google search engine or idea, until at least the Fall of 1998, when they hired their first employee.

Given Google's unique history, and the specific involvement and knowledge of its two founders, Page and Brin are the appropriate witnesses to be questioned on this set of issues in the case. They and only they have direct knowledge of these facts. Accordingly, under these specific circumstances, Stelor's need to depose Brin and Page is legitimate, real, and must be permitted. Other than a knee-jerk reaction to prevent its founders' depositions, Google, Inc. has no basis to oppose this required discovery.

## III.

## THE DEPOSITIONS SHOULD BE COMPELLED

**A.     Stelor May Depose Brin and Page Under the Rules of Discovery**

Stelor has the right, pursuant to Fed. R. Civ. P. 26, to conduct discovery of issues presented by the pleadings. There is no requirement, as Google seems to imply in its Opposition, that Stelor present evidence to justify the conduct of discovery. The purpose of discovery is to

5

COFFEY BURLINGTON

OFFICE IN THE GROVE   PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
EMAIL: info@coffeyburlington.com      www.coffeyburlington.com

"discover" information to be used as evidence at trial. Liberal standards apply, permitting a party to seek information reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Stelor has clearly satisfied these standards here.

Per Rule 30(b)(1), moreover, Stelor may notice particular corporate officers for deposition, namely Brin and Page, *and also* depose a Rule 30(b)(6) designee to elicit information about a corporation. *Provide Commerce, Inc. v. Preferred Commerce, Inc.*, 2008 WL 360588 *2 (S.D.Fla. Feb. 8, 2008). Rule 30(b)(6) supplemented the prior existing procedures for corporate depositions, but did *not* supplant the use of 30(b)(1) to depose parties. Rule 30(b)(6) was created for efficiency to have the corporation, which would know which person within the corporation would be most knowledgeable, select a representative. It did *not*, as Google implies, take away the ability to ask particular officers questions with respect to their personal knowledge without first jumping over the representative hurdle. *Id.* (holding that a corporate officer deposed under 30(b)(1) for his individual knowledge could be deposed again under 30(b)(6) as representative of the corporation). Nor are these provisions designed to restrict the sequence in which discovery may proceed.

Given the demonstrated need to depose Brin and Page in this case, Google's position is unfounded. Although the discovery may be inconvenient, it does not result in the type of "annoyance, embarrassment, oppression, or undue burden or expense," required before a court will limit discovery. Nor can Google legitimately ask Stelor first to depose someone with – at best – second-hand knowledge on these issues, as a precondition to deposing Brin and Page. Here, there is simply no one else with direct information on the relevant issues, other than Brin and Page.

6

COFFEY BURLINGTON

OFFICE IN THE GROVE   PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
EMAIL: info@coffeyburlington.com        www.coffeyburlington.com

B.     The "Apex" Doctrine Does Not Apply to Bar These Depositions.

Google's invocation of the "apex doctrine" to bar these depositions is misplaced under the circumstances here. While executives might be protected in certain instances, "no per se rules exist prohibiting depositions of top corporate executives." *Simon v. Pronational Insurance Co.*, 2007 WL 4893478 *1 (S.D. Fla. Dec. 13, 2007). When a high ranking official, whom the court may in some circumstances give heightened protection from discovery, has specific and unique knowledge of pertinent facts, he must submit to deposition. *Gray v. Kohl*, 2008 WL 1803643, at * 2 (S.D. Fla. April 21, 2008) (Court allowed deposition of high ranking official who had personal knowledge concerning the matters into which plaintiff was entitled to inquire because Court could not find good cause to issue protective order barring such official's deposition). *Simon*, cited by Google for the proposition of preventing an executive's deposition, is distinguishable because the executive the plaintiff wished to depose did not have "relevant unique knowledge." 2007 WL 4893478 at *2. That is certainly not the case here, as detailed above.

C.     No Other Source – Let Alone a Less Intrusive Source – Exists.

Given Page and Brin's unique and exclusive involvement in the development of Google and its business, no other source exists for the information at issue. A 30(b)(6) deposition cannot – and is not designed to – replace the deposition of an individual with personal knowledge. *Provide*, 2008 WL 360588 at *2. Stelor does not seek to depose Google's founders as mere "additional officials," but rather as individuals with direct and personal knowledge not available through any other source. "A corporate entity is distinct from the individuals who control or manage the corporation," thus the individual knowledge obtained from a particular officer would

COFFEY BURLINGTON

OFFICE IN THE GROVE   PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
EMAIL: info@coffeyburlington.com         www.coffeyburlington.com

not be obtained from a designee. *Provide Commerce*, 2008 WL 360588 at *3 (Court held that a corporate officer who was deposed in his individual capacity could then be deposed again on behalf of the corporation.) As founders of Google, they have unique personal knowledge.

Google attempts to argue that Stelor could gather whatever information it needs, through the Rule 30(b)(6) deposition of Rose Hagan. That 30(b)(6) deposition is also clearly required, and will be important to the factual development of other issues involved in the case. But, Ms. Hagan's testimony will not eliminate the need to depose Brin and Page on the issues related to Google's first use and applications for registration of the trademark.

Even under the 30(b)(6) standard, the question arises whether Google could properly designate anyone other than Page and Brin to testify on these issues. They should be the corporate executives to testify since they the "most knowledgeable persons" about the topics Stelor seeks to investigate. *One Parcel of Real Estate at 5860 North Bay Road*, 121 F.R.D. at 440 (the court endorsed the notice of deposition of two directors of corporation who were deemed to have crucial information and knowledge about the issues at hand).

Moreover, clearly neither Page nor Brin can disavow knowledge of these areas. Their prior testimony in other cases – referenced by Google in its opposition – demonstrates their knowledge on these issues. That depositions were taken in another matter – where Stelor was not a party and Stelor's counsel was afforded no opportunity to conduct an examination – is not a basis for preventing depositions here. Indeed, that Brin and Page have previously been deposed on similar issues demonstrates the legitimacy and appropriateness of Stelor's request in this case. There is no need or basis for protection here. Brin and Page have not only personal knowledge, but unique personal knowledge. There is no requirement to engage in other discovery or take

8

COFFEY BURLINGTON

OFFICE IN THE GROVE   PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
EMAIL: info@coffeyburlington.com       www.coffeyburlington.com

other depositions first when these two have unique and personal knowledge. *Gray*, 2008 WL 1803644, at *2.

Furthermore, in the interest of efficiency, Stelor should be able to depose Brin and Page directly and immediately. The 30(b)(6) deposition of Rose Hagan will most assuredly fail to yield sufficient information only held by Google's founders relating to, among other things, use and the initial ideas surrounding the selection of the mark. Having to ask this designated representative questions and then having to petition this Court to depose the founders at a later date only causes unnecessary burden and delay.

## **CONCLUSION**

Brin and Page have direct and specific knowledge related to critical issues in this case. Stelor's motion should be granted, and their testimony compelled, without preconditions or limitations.

Respectfully submitted,

s/Kevin C. Kaplan - Florida Bar No. 933848
  David J. Zack - Florida Bar No. 641685
  Morgan L. Swing – Florida Bar No. 0017092
Email:  kkaplan@coffeyburlington.com
       dzack@coffeyburlington.com
       mswing@coffeyburlington.com
COFFEY BURLINGTON
Office in the Grove, Penthouse
2699 South Bayshore Drive
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261
Counsel for STELOR PRODUCTIONS,
   LLC and STEVEN ESRIG

9

COFFEY BURLINGTON

OFFICE IN THE GROVE   PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
EMAIL: info@coffeyburlington.com   www.coffeyburlington.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Mailing Information for Case 9:05-cv-80387-KLR. I also certify that the foregoing Counsel of record currently identified on the Mailing Information list to receive e-mail notices for this case are served via Notices of Electronic Filing generated by CM/ECF. Counsel of record who are not on the Mailing Information list to receive e-mail notices for this case have been served via U.S. Mail.

/s/ Morgan L. Swing

COFFEY BURLINGTON

OFFICE IN THE GROVE   PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
EMAIL: info@coffeyburlington.com        www.coffeyburlington.com