UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

NO. 05-80387-CIV (Ryskamp/Vitunac)

STELOR PRODUCTIONS, INC.,

        Plaintiff,

    v.

GOOGLE INC.,

        Defendant.

## DEFENDANT GOOGLE INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

### I.    INTRODUCTION

Google has moved for a protective order precluding Plaintiff from taking the depositions of Google's founders and co-presidents—Sergey Brin and Larry Page—until after Plaintiff has exhausted less intrusive and equally, if not more, reliable means to get the information.[1] In opposing the motion, Plaintiff claims that Messrs. Brin and Page have "indispensable" testimony relating to its claim that Google's trademark registration for "GOOGLE" was fraudulently obtained and should be cancelled.[2] Opposition at 2. In particular, Plaintiff speculates that Messrs. Brin and Page have unique information concerning the early use of "GOOGLE" as a trademark and argue that such testimony is critical to the issue of whether the trademark application was proper.

Defendant's arguments are disingenuous and without merit. As discussed in Google's opening memorandum, Plaintiff's request for Messrs. Brin and Page's depositions is premature

---

[1] Google also requested an order requiring the depositions of Google's California-based employees proceed in California. Plaintiff has dropped its demand that depositions proceed in Florida, so that request for relief is now moot.

[2] The opposition is titled "Plaintiff and Counter-Defendants Reply to Defendant Google Inc.'s Opposition to Plaintiff's Motion to Compel and Motion for Protective Order."

because it has made no attempt to obtain the information it seeks from Messrs. Brin and Page from less intrusive sources. Plaintiff is scheduled to take the 30(b)(6) deposition of Google on September 10, 2008, on various topics, including topics relating to the early use of "GOOGLE" and the filing and prosecution of the original trademark application for "GOOGLE." Google intends to produce as its corporate designee Rose Hagan, who has managed trademarks at Google for the last six years. As reflected in Ms. Hagan's declaration filed herewith, her background and expertise makes her a far better source of information on issues relating to Google's trademark history than either Mr. Brin or Mr. Page. Following Ms. Hagan's deposition, Plaintiff will be in a position to determine whether it has a legitimate need for any additional information from Messrs. Brin and Page regarding Google's corporate trademarks.

In that regard, the substantive justifications offered by Plaintiff for deposing Messrs. Brin and Page are flawed. The underlying issue in this case is whether Google is infringing Plaintiff's trademark rights relating to children's books. That issue is based on how Google is currently *using* the "GOOGLE" trademark and is not related to Google's original trademark application or registration, which has no reference to children's books or goods. Further, Plaintiff's fraud theory with respect to the registration—that it claims a use earlier than any actual use in commerce—reflects a misunderstanding of trademark law. There is nothing improper about filing a statement of use that pre-dates the filing of an intent to use application, and use in interstate commerce does not require *commercial* use.

For these reasons, the Court should grant Google's motion for a protective order, and preclude Plaintiff from deposing Messrs. Brin or Page until after it has exhausted other avenues for obtaining the information, including completing the deposition of Ms. Hagan.

## II.    PLAINTIFF SHOULD TAKE MS. HAGAN'S DEPOSITION FIRST.

Even assuming, *arguendo*, that Messrs. Brin and Page may have information that is relevant to some legitimate claim by Plaintiff (a point which Google disputes), Plaintiff should first take the deposition of Ms. Hagan. As explained in Ms. Hagan's declaration, she is more knowledgeable with respect to the facts, documents and other information concerning Google's

2

trademark history, including the filing and prosecution of the original trademark application for "GOOGLE." Hagan Dep. ¶ 4. Messrs. Brin and Page have no expertise with respect to trademark matters. As reflected on the documents relied upon by Plaintiff, the original intent-to-use trademark application, as well as the amendment to allege use, were filed by Google's *outside* counsel. *See* Plaintiff's Opposition, Exhibits A, C. As Plaintiff concedes, Messrs. Page and Brin were simply computer-focused graduate students. There is *nothing* that suggests they had any expertise in trademark law or any substantive involvement with the filing or prosecution of the trademark application.

Ms. Hagan, in contrast, is responsible for Google's trademark matters, and has been offered as a 30(b)(6) witness on various topics in Plaintiff's deposition notice, including topics relating to the early use of "GOOGLE" as a trademark. *Id.* ¶ 5. Her deposition is currently scheduled for September 10, 2008. Ms. Hagan can testify, based on her personal knowledge and the business records of the company, about matters relating to the early uses of "GOOGLE" as a trademark, and the filing and prosecution of Google's trademark applications.

As pointed out in Google's moving papers, courts have consistently rejected requests to take depositions of senior executives, at least where the discovery is "obtainable from some other source that is more convenient, less burdensome or less expensive." *Faro Techs. v. Romer, Inc.*, 2007 WL 496615 at *4 (M.D. Fla. Feb. 12, 2007) (quoting *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991)). Plaintiff does not even try to distinguish any such cases. Instead, Plaintiff relies on three decisions—*Provide Commerce v. Preferred Commerce, Inc.*, 2008 WL 360588 (S.D. Fla. Feb. 8, 2008), *Simon v. Pronational Ins. Co.*, 2007 WL 4893478 (S.D. Fla. Dec. 13, 2007) and *Gray v. Kohl*, 2008 WL 1803643 (S.D. Fla. Apr. 21, 2008). *Id.* at 6-7. These authorities do not support Plaintiff's demand for the depositions of Messrs. Brin and Page. In *Provide*, the Plaintiff had already deposed the president of the defendant corporation in his individual capacity. The defendant corporation moved for a protective order to prohibit a 30(b)(6) deposition because it would otherwise produce its president again. The court denied the motion because there was no authority that "barred a second deposition of an individual who was

3

first deposed in an individual capacity and then called to testify a second time on behalf of the corporation." *Id.* at *3. The issue is obviously different than the issue in the instant case.

In *Pronational,* the court **granted** a protective order precluding the deposition of the CEO. In doing so, it noted that "courts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case." *Id.* at *2 (quoting *Cardenas v. Prudential Ins. Co. of Am.,* 2003 WL 21293757 at *1 (D. Minn. May 16, 2003).

In *Kohl,* although the Court denied the defendant sheriff's request for a protective order based on his specific knowledge of certain facts, it noted that "courts generally restrict parties from deposing high-ranking officials lacking personal knowledge of the issues being litigated because they are 'vulnerable to numerous, repetitive, harassing and abusive depositions, and therefore need some measure of protection from the courts.'" *Id.* at *2 (quoting *Simon v. Pronational Ins. Co.,* 2007 WL 48993478 (S.D. Fla. Dec. 13, 2007)); *see also Celebrity v. Ultra Clean Holding, Inc.,* 2007 WL 205067 at *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level . . . has observed that such discovery creates a tremendous potential for abuse or harassment"). Accordingly, the Court recognized depositions of high-ranking officials and officers should not proceed until a party has exhausted other means for obtaining the information.

The Court should grant Google's request for a protective order.

## III.    GOOGLE'S ORIGINAL TRADEMARK REGISTRATION IS IMMATERIAL TO PLAINTIFF'S TRADEMARK INFRINGEMENT CLAIMS

Further, Plaintiff cannot show a legitimate need for Mr. Brin's or Mr. Page's testimony. Plaintiff relies, exclusively, on its claim that the testimony is critical in connection with issues relating to Google's original trademark application. *See* Opposition at 3-4. That trademark application and registration, however, have no relevance to Plaintiff's underlying claim for trademark infringement.

4

As reflected in the First Amended Complaint, and in plaintiff's original motion to compel, this is a trademark infringement case. Motion to Compel at 1. Plaintiff claims trademark rights relating to children's books. As plaintiff concedes, the issues in this case are based on its allegation that Google has infringed its trademark rights by moving into children's books or related goods. *See id.* at 5 ("Google has since begun to look to expand, importantly in this action, into the children's market, thus affecting the 'Googles' mark and goodwill. Google has filed a federal trademark application to expand its right to use the 'Google' trademark for children's goods, including books and clothing."). Plaintiff asserts, more specifically, that Google "now uses the 'GOOGLE' mark 'GOOGLE.COM' and other domain names . . . to advertise, promote, market and sell children's books, merchandise and related goods and services, and has encroached upon [Plaintiff's] federal and common law trademark rights." *Id.* at ¶ 58. Based on this assertion, Plaintiff asserts trademark infringement (Count 1), unfair competition under federal law (Count 2) and unfair competition under Florida law (Count 3).

Nevertheless, Plaintiff seeks the depositions of Sergey Brin and Larry Page based on Google's original application arguing it is a critical issue in the case. Opposition at 3-4. Neither that application, nor the resulting trademark registration, have anything to do with children's books, and have not been alleged to be harming plaintiff in any manner. Trademark infringement is based upon *use* that can confuse the public. *See* 15 U.S.C. § 1114 (defining infringement as "use in commerce [which] is likely to cause confusion or to cause mistake or to deceive"). Trademark registration alone cannot result in a finding of infringement; infringement occurs only where "the defendant's use is 'likely to cause confusion, or to cause mistake, or to deceive.'" *Times Newspapers Ltd. v. Times Publishing Co.*, 25 U.S.P.Q.2d 1835, 1840 (M.D. Fla. 1993). Even if the registration were directed at children's books, the act of registering a trademark cannot, as a matter of law, constitute infringement. Google's original trademark registration is irrelevant or at least immaterial to the issues in this case.[3]

---

[3] To the extent this matter is not resolved on other grounds, Google anticipates moving for summary judgment on the request for cancellation.

## IV. PLAINTIFF'S THEORY OF FRAUD IS MISGUIDED.

Even if the registration were relevant, plaintiff's theory of why the registration is invalid is misguided. In particular, Plaintiff appears to argue that Google committed fraud when it claimed that its first use of its mark in interstate commerce was in September of 1997. Opposition at 4. Plaintiff asserts that this claim is "inconsistent" with the original intent-to-use application, and inconsistent with the fact that Google's "search engines services appear not to have been advertised or offered for sale, and thus not used in interstate commerce until late 1999." *Id.* Plaintiff apparently equates interstate commerce with the "commercial" launch of "Google's advertising-supported business model." *Id.* at 3 (contrasting commercial use with "non-commercial experimental academic" use). Plaintiff misunderstands trademark law. First, there is nothing improper about claiming a date of first use prior to the filing of an intent-to-use application. "An applicant who is actually using the mark may, for various reasons, choose to file an intent-to-use application." *In re Promo Ink*, 78 U.S.P.Q.2d 1301, 1303, 2006 WL 478994 (T.T.A.B. 2006); *see also In re Paul Wurth S.A.*, 21 U.S.P.Q.2d 1631, 1633 (Comm'r Pat. 1991) (applicant may claim a bona fide intention to use when some actual use of the mark has already begun); T.M.E.P. § 903 (2005 rev.) ("A § 1(b) applicant may assert dates of use that are earlier than the filing date of the application in an amendment to allege use or statement of use."); *McCarthy on Trademarks and Unfair Competition* (4th ed. 2005) § 19:13.

In addition, use in interstate commerce does not require a commercial for-profit use. The term "use in commerce" as used in the Lanham Act "denotes Congress's authority under the Commerce Clause rather than an intent to limit the [Lanham] Act's application to profit making activity." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1196 (11th Cir. 2001) (holding that the distribution of free software over the Internet satisfies the "use in commerce" jurisdictional predicate); *see also Capital Speakers, Inc. v. Capital Speakers Club*, 41 U.S.P.Q.2d 1030, 1034 n.3 (T.T.A.B. 1996) ("[T]he giving of services is sufficient for registration. A for-profit sale is not required"); *NCTA v. American Cinema Editors*, 937 F.2d 1572, 19 U.S.P.Q.2d 1424, 1425 (Fed. Cir. 1991) (subject registration was for free service of "conducting award

presentation ceremonies for excellence in cable television broadcasting"); *Planned Parenthood Fed'n of Am., Inc. v. Bucci,* 42 U.S.P.Q.2d 1430, 1434, 1997 WL 133313 (S.D.N.Y.1997) ("The nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement."), *aff'd,* 152 F.3d 920 (2d Cir.). In sum, not only is the trademark registration irrelevant to the Plaintiff's underlying claims for infringement, Plaintiff's theory of cancellation has no merit. At the least, the issues raised are not so critical or material that they justify deposing Google's founders and co-Presidents as the first step in deposition discovery.

## V. CONCLUSION

For the reasons set for above, Plaintiff's motion for protective order should be granted.

Dated: July 31, 2008

Respectfully submitted,

**ADORNO & YOSS LLP**
By:/s/Samantha Tesser Haimo
    Samantha Tesser Haimo
    stesser@adorno.com
    Florida Bar Number: 148016
    Jan Douglas Atlas
    jda@adorno.com
    Florida Bar Number: 226246
    Adorno & Yoss LLP
    350 East Las Olas Boulevard, Suite 1700
    Fort Lauderdale, Florida 33301-4217
    Phone: (954) 763-1200
    Fax: (954) 766-7800

    Ramsey Al-Salam, Esq.
    RAlsalam@perkinscoie.com
    PERKINS COIE LLP
    Suite 4800
    1201 Third Avenue
    Seattle, WA 98101-3099
    Phone: 206-359-8000
    Fax: 206-359-9000

    Attorneys for Defendant Google Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 31, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Samantha Tesser Haimo
Samantha Tesser Haimo

Kevin C. Kaplan, Esq.
kkaplan@coffeyburlington.com
Florida Bar Number 933848
**COFFEY BURLINGTON**
Office in the Grove, Penthouse A
2699 South Bayshore Drive
Miami, FL 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

Attorneys for STELOR PRODUCTIONS, LLC
and STEVEN ESRIG

Robert H. Cooper, Esq.
Robert@rcooperpa.com
**ROBERT COOPER, P.A.**
Concorde Centre II, Suite 704
2999 N.E. 191 Street
Aventura, FL 33180
Telephone: 305-792-4343
Facsimile: 305-792-0200

Attorney for Plaintiff STEVEN A. SILVERS