**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**Case No. 05-80387-CIV (Ryskamp/Vitunac)**

STELOR PRODUCTIONS, LLC, a Delaware limited liability company,

    Plaintiff,

v.

GOOGLE INC., a Delaware corporation,

    Defendant.

**DEFENDANT GOOGLE INC.'S REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

41063-0037/LEGAL14955860.1

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | GOOGLE IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT, WHICH DISPOSES OF THE CASE IN ITS ENTIRETY | | 1 |
| | A. | Stelor Has the Burden of Introducing Evidence Sufficient to Create an Issue of Fact | 1 |
| | B. | Stelor Has Failed to Create a Genuine Issue of Fact as to "Reverse Confusion" | 1 |
| | | 1. Google Has Not "Saturated" Stelor's Market | 1 |
| | | 2. The Claims Cannot Be Based on Google's Fame for Its Internet Search Engine | 2 |
| | | 3. There Is No Evidence That Any of Stelor's Customers Have Been Confused | 3 |
| | | 4. The Other Likelihood of Confusion Factors Do Not Create a Genuine Issue of Fact | 6 |
| III. | THE GOOGLES TRADEMARK REGISTRATION IS INVALID | | 7 |
| | A. | Stelor's Claim to Common Law Rights Are Irrelevant | 7 |
| | B. | The Alleged Distribution of the Book Prior to June 1996 Was Not Use in Interstate Commerce | 8 |
| | C. | There Was No Continuous Commercial Use of the Mark Between March 1998 and March 2003 | 8 |
| | D. | The Original Application and Section 8/15 Affidavits Were Fraudulent | 9 |
| | E. | The Trademark Owner Did Not File the Section 8/15 Affidavits | 9 |
| IV. | STELOR IS NOT ENTITLED TO MONETARY RELIEF AS A MATTER OF LAW | | 10 |
| V. | CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006) ............................................................. 3, 5

*Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219 (D. Colo. 1976), *aff'd and award modified*, 561 F.2d 1365 (10th Cir. 1977) ................................................ 3

*Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260 (5th Cir. 1975) ........................................................ 8

*Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013 (C.D. Cal. 1998) .................................................... 5

*Capital Films Corp. v. Charles Fries Prods., Inc.*, 628 F.2d 387 (5th Cir. 1980) ................................ 3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................................... 1

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270 (3d Cir. 2001) .................. 6

*Cohn v. Petsmart, Inc.*, 281 F.3d 837 (9th Cir. 2002) ........................................................................... 4

*Commerce Nat'l Ins. Svcs. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432 (3d Cir. 2000) ................... 6

*Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998) ................................... 3

*Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093 (8th Cir. 1996) ......................................... 4

*Echo Drain v. Newsted*, 307 F. Supp. 2d 1116 (C.D. Cal. 2003) ......................................................... 4

*Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463 (3d Cir. 2005) .................................... 3

*Gen. Car & Truck Leasing Sys., Inc. v. Gen. Rent-A-Car Inc.*, 17 U.S.P.Q.2d 1398 (S.D. Fla. 1990) ................................................................................................................................................ 9

*Harlem Wizards Entm't Basketball, Inc. v. NBA Props., Inc.*, 952 F. Supp. 1084 (D.N.J. 1997) ................................................................................................................................................ 7

*In re Precious Diamonds, Inc.*, 635 F.2d 845 (C.C.P.A. 1980) ......................................................... 10

*Instant Media, Inc. v. Microsoft Corp.*, No. C07-02639 SBA, 2007 WL 2318948 (N.D. Cal. Aug. 13, 2007) ................................................................................................................................... 6

*Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576 (2d Cir. 1991) .............................................................. 4

*M2 Software, Inc. v. Madacy Entm't Corp.*, 421 F.3d 1073 (9th Cir. 2005) ....................................... 2

*Mach. Head v. Dewey Global Holdings, Inc.*, 61 U.S.P.Q.2d 1313 (N.D. Cal. 2001) ........................ 7

*Mars Musical Adventures, Inc. v. Mars, Inc.*, 159 F. Supp. 2d 1146 (D. Minn. 2001) ....................... 3

*Michael Caruso & Co. v. Estefan Enters., Inc.*, 994 F. Supp. 1454 (S.D. Fla.), *aff'd*, 166 F.3d 353 (11th Cir. 1998) ................................................................................................................ 6, 7

*Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208 (2d Cir. 1999) .......................................................... 4

*Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166 (5th Cir. 1986) ..................................................... 4

*Parfums Nautee, Ltd. v. Am. Int'l Indus.*, 22 U.S.P.Q.2d 1306 (T.T.A.B. 1992) ............................... 9

*SLY Magazine, LLC v. Weider Publ'ns L.L.C.*, 529 F. Supp. 2d 425 (S.D.N.Y. 2007) ...................... 5

*Sony Pictures Entm't, Inc. v. Fireworks Entm't Group, Inc.*, 156 F. Supp. 2d 1148 (C.D. Cal. 2001) .............................................................................................................................................. 1

*Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481 (S.D.N.Y. 2004) ............................ 5

*Sunenblick v. Harrell,* 895 F. Supp. 616 (S.D.N.Y. 1995), *aff'd,* 101 F.3d 684 (2d Cir. 1996) ....... 5, 7

*Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625 (9th Cir. 2005) ............................................ 3

*Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623 (6th Cir. 2002) .............................................. 3

*Versa Prods. Co. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189 (3d Cir. 1995) ............................................. 4

*Walter v. Mattel, Inc.*, 210 F.3d 1108 (9th Cir. 2000) ......................................................................... 3

*Windows User, Inc. v. Reed Bus. Publ'g Ltd.*, 795 F. Supp. 103 (S.D.N.Y. 1992) ............................. 8

**Other Authorities**

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:10 (4th ed. 2008) ............................................................................................................................................... 1

## I. INTRODUCTION

Google Inc. ("Google") has moved for summary judgment that: (1) it is not infringing any trademark rights owned by plaintiff ("Stelor"); (2) Stelor's trademark registration for "GOOGLES" is invalid; and (3) Stelor is not entitled to any monetary relief. In opposition, Stelor asserts various arguments and evidence but fails to create a genuine issue of fact on any of the three issues.

## II. GOOGLE IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT, WHICH DISPOSES OF THE CASE IN ITS ENTIRETY.

### A. Stelor Has the Burden of Introducing Evidence Sufficient to Create an Issue of Fact.

Because Stelor has the burden of proving trademark infringement, Stelor must introduce evidence sufficient to create a genuine issue of fact on the issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Google has discharged its burden by " 'showing' – that is, pointing out . . . that there is an absence of evidence to support [Stelor's] case." *Sony Pictures Entm't, Inc. v. Fireworks Entm't Group, Inc.*, 156 F. Supp. 2d 1148, 1152 (C.D. Cal. 2001). In response, Stelor must do more than rest upon mere allegations or denials; it "must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Stelor Has Failed to Create a Genuine Issue of Fact as to "Reverse Confusion"

#### 1. Google Has Not "Saturated" Stelor's Market

Stelor asserts that this is a "classic reverse confusion case." Opp. at 1. To prove its theory, Stelor must establish that its customers (*i.e.*, the readers of its book or the registrants on its website) believe that the books or website are associated with Google. Stelor has produced no evidence that raises a genuine issue of fact on this issue. Stelor has not, for example, presented any survey evidence or expert testimony, or even any specific evidence of the allegedly infringing Google activities. Instead, Stelor relies on insufficient and irrelevant evidence (e.g., misdirected emails based on the similarity of domain names), and misleading arguments concerning "reverse confusion." As discussed below, these are insufficient to avoid summary judgment.

Reverse confusion requires, among other things, that Google has "saturated" Stelor's market in a manner that leads people to believe that Stelor's products or services originate with Google. *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:10, at 23-47 (4th ed. 2008) ("In a reverse confusion situation, . . . the junior user saturates the market and 'overwhelms the senior user.'"); *see also M2 Software, Inc. v. Madacy Entm't Corp.*, 421 F.3d

1073, 1089 (9th Cir. 2005) (approving jury instruction on reverse confusion that required proof that the junior user "has saturated the market"). To the extent Stelor has trademark rights in any "market," it is the children's books (the subject of its trademark registration) and/or children's entertainment website (googles.com) markets. Stelor must thus prove that Google has saturated *the children's books or children's entertainment markets* with its own products or services.

Although Stelor argues that Google has "commenced offering products and services for children that are closely related to those of Plaintiff" (Opp. at 19), there is no evidence that Google has "saturated" these markets with its own goods. Indeed, Stelor's evidence of infringement consists of six conclusory paragraphs by its CEO. *See* Esrig Decl. ¶¶ 52-57; Plaintiff's Statement of Additional Disputed Facts ¶ 55. Mr. Esrig asserts that Google: (1) co-branded an undisclosed number of reference books with Dorling Kindersley, an independent publisher (the "DK Reference Books"); (2) sold an undisclosed and unidentified number of promotional items through its Google store; (3) published a Website for user-generated content at "Lively.com;"[1] and (4) offered some educational programs for use in schools. Esrig Decl. ¶ 53. This conclusory paragraph, which does not even set forth the extent to which Google has engaged in any such activities (e.g., does not establish the extent of sales) is insufficient, as a matter of law, to find that Google has "saturated" the market for children's books or children's entertainment. This lack of evidence is, in itself, a sufficient basis to grant summary judgment.

      **2.**      **The Claims Cannot Be Based on Google's Fame for Its Internet Search Engine**

Stelor's claim ultimately focuses on Google's fame and activities in another market – the internet search engine market. *See, e.g.*, Opp. at 1 (complaining about Google's "meteoric rise to success," and that its trademark is "now so infinitely more well known . . . .") *Stelor cannot state a claim for reverse confusion based upon Google's fame as an internet search engine.* Google cannot be sued simply because it has become famous within its own market.

Courts finding reverse confusion have focused on the saturation of the senior user's market. The cases relied upon by Stelor do not suggest otherwise. *See, e.g.*, *Big O Tire Dealers, Inc. v.*

---

[1] The lively.com website cannot plausibly be asserted to compete with Plaintiff's website at googles.com. Lively is a website that states, by its terms, that the website cannot be used by persons "under the age of 13" and that users must otherwise be of "legal age to form a binding contract" or have parental consent. *See* Lively.com/html/legal_notices.html. Further, the site is for user-generated content, where people can create "avatars" that communicate in chat rooms, which is fundamentally different from googles.com, which is directed at young children and has music and games and other entertainment around the multi-eyed alien characters known as "Googles."

*Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219 (D. Colo. 1976), *aff'd and award modified*, 561 F.2d 1365 (10th Cir. 1977) (seminal case on reverse confusion based on defendant's massive advertising in plaintiff's market for tires); *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006) (defendant launched a line of kitchen appliances that competed with plaintiff's products); *Capital Films Corp. v. Charles Fries Prods., Inc.*, 628 F.2d 387 (5th Cir. 1980) (defendant distributed a movie with the same title as plaintiff's earlier movie).

This proposition is also supported by common sense. A small company selling Apple refrigerators, for example, cannot sue Apple Computer merely because the latter has become "infinitely" more well-known for its success with computers. In the instant case, Stelor has not, nor can it, credibly claim that Google has saturated those markets in which it allegedly holds trademark rights. While Google is famous in the field of web search, that fact alone does not create a cause of action for reverse confusion.

### 3. There Is No Evidence That Any of Stelor's Customers Have Been Confused

In addition to not presenting evidence of market saturation, Stelor has failed to introduce evidence that its customers are likely to believe the Googles book or website is associated with Google. *See, e.g.*, *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1110 (9th Cir. 2000) ("The question . . . is whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user.") (lower court quoting *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998)). Where no such evidence is presented, summary judgment should be granted. *See Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463 (3d Cir. 2005) (affirming summary judgment on reverse confusion); *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 641 (6th Cir. 2002) (affirming summary judgment on reverse confusion because, among other things, "the parties' good and services are related in only the most general sense"); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) (affirming summary judgment because, among other things, there was insufficient evidence that customers would likely associate the two product lines); *Walter*, 210 F.3d at 1108 (granting summary judgment); *Mars Musical Adventures, Inc. v. Mars, Inc.*, 159 F. Supp. 2d 1146 (D. Minn. 2001) (granting summary judgment).

Actual confusion can be compelling evidence of a likelihood of confusion. The passage of significant time without any actual confusion, however, is strong evidence that no likelihood of

confusion exists. *See, e.g.*, *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173 (5th Cir. 1986) (referring to the lack of such evidence as "highly significant"); *Versa Prods. Co. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 205 (3d Cir. 1995) ("If a defendant's product has been sold for an appreciable period of time without evidence of actual confusion, one can infer that continued marketing will not lead to consumer confusion in the future."); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002) (a "lack of evidence about actual confusion after an ample opportunity for confusion 'can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion'") (quoting *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999)).

The DK Reference Books have been available, and the Google Store has been operational for years. Al-Salam II Decl.,[2] Exhs. 1-2 (the Google Store has been selling products since at least 2001 and the co-branding arrangement with DK began in 2003). Throughout this time, however, there has been no evidence of any actual confusion as to the source of Stelor's books or website.

The only evidence relied upon by Stelor, the evidence that it characterizes as "some of the strongest evidence of confusion," is the numerous misdirected emails to the googles.com website. Esrig Decl. ¶ 56. The emails are irrelevant, however, as a matter of law. The misdirected emails arise solely because of the similarity between the two domain names – google.com and googles.com – and have nothing to do with whether Google is selling children's books. This type of "confusion" would arise even if Google were selling faucets. The relevant confusion in the trademark infringement context is that which affects purchasing decisions. *See Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582-83 (2d Cir. 1991). Courts have repeatedly held that confusion that does not go to purchasing decisions is not actionable. *Id.* (misdirected phone calls irrelevant); *see also Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) (rejecting misdirected communications as evidence of actual confusion because "vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion' "); *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1126-27 (C.D. Cal. 2003) (granting summary judgment on reverse confusion claim because, among other things, the two bands "Echo Drain" and "Echobrain" played

---

[2] "Al-Salam II Decl." refers to the declaration of Ramsey Al-Salam filed in support of this reply memorandum, and attached hereto.

different types of music and there was no evidence that "suggests that members of the buying public would *mistakenly purchase* an Echo Drain product believing it was an Echo-Brain product or vice versa"); *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 493 (S.D.N.Y. 2004) (rejecting evidence of misdirected phone calls and emails).[3]

In *SLY Magazine, LLC v. Weider Publ'ns L.L.C.*, 529 F. Supp. 2d 425 (S.D.N.Y. 2007), for example, the court granted summary judgment of non-infringement despite numerous mis-directed emails to the plaintiff's website. The court held that such confusion was not the "type of confusion against which the Lanham Act was designed to protect," because there was "no evidence . . . that anyone has made a mistaken purchasing decision – that is bought defendants' magazine thinking it was plaintiff's or placed advertising with plaintiff thinking it was advertising with defendants." *Id.* at 440. "There is no reason to believe that the confusion represented by the emails could inflict commercial injury in the form of either diversion of sales, damage to goodwill, or loss of control over reputation." *Id.* at 441.

These same considerations apply here. Stelor's book and website are substantially different from any offerings made by Google, and the parties' products and services are not directed at the same customers. There is also no evidence of any mistaken purchasing decisions (e.g., there is no evidence that anyone: (1) registered for Stelor's website thinking it was registering at Google's website; or (2) purchased one of Stelor's books under the mistaken impression that they were purchasing a book published by Google).

Nor has Stelor introduced any surveys[4] demonstrating that confusion as to purchasing decisions in the marketplace relating to its books or website is even probable. In other words, there is no relevant evidence of record supporting Stelor's claim of likelihood of confusion. *See Sunenblick v. Harrell,* 895 F. Supp. 616, 629 (S.D.N.Y. 1995), *aff'd,* 101 F.3d 684 (2d Cir. 1996) ("The short of the matter is that [plaintiff] has proved no instances of actual reverse confusion on

---

[3] Stelor's reliance on the *Attrezzi* decision (Opp. at 19) as supporting the relevance of the emails is misplaced. In *Attrezzi*, the emails were misdirected because consumers believed that the plaintiff was selling defendant's products, not because of any similarity in domain names.

[4] Courts have repeatedly held that failure to provide survey evidence can create a presumption that any such surveys would have been unfavorable. *See, e.g., Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041-42 (C.D. Cal. 1998) ("A plaintiff's failure to conduct a consumer survey . . . may lead to an inference that the results of such a survey would be unfavorable.").

the part of the relevant class of purchasers, and no surveys exist to show that such actual confusion is probable in the marketplace."). This, in itself, is a sufficient basis to grant summary judgment.

> 4. **The Other Likelihood of Confusion Factors Do Not Create a Genuine Issue of Fact**

Other factors[5] also weigh against any likelihood of confusion. Stelor suggests, for example, that such confusion exists because the DK Reference Books are directed to children.[6] Although Stelor's book and the DK Reference Books are ostensibly directed to children, they are otherwise very different. Stelor's "Googles and the Planet of Goo" book is a fictional book about alien, multi-eyed cartoon characters that come from outer space to Earth. The cover of the book reflects the theme. *See* Al-Salam II Decl. Exh. 3. In contrast, the DK Reference Books are factual books concerning dinosaurs, volcanoes, or other subject areas. *Id.* Exh. 4 (sample cover pages). There is no evidence in the record establishing that consumers would believe producers of fictional children's books would expand into the area of educational reference books, or vice versa.[7]

The respective marks are also different in context. In the Stelor book, "GOOGLES" is part of the title and refers to the alien characters. In the DK Reference Books, "GOOGLE" is not used as part of the title, and appears on the cover only in the famous multi-colored Google logo. No reasonable person is likely to believe that these factual reference books are published by Stelor or by the same publisher as the "Googles and the Planet of Goo" book.

Courts have consistently found no likelihood of confusion where otherwise similar trademarks appear in different ways and/or are directed at different audiences. The mere fact that "two products or services fall within the same general field . . . does not mean that the two products or services are sufficiently similar to create a likelihood of confusion." *Harlem Wizards Entm't*

---

[5] The Eleventh Circuit applies a seven factor test in determining likelihood of confusion. *See Michael Caruso & Co. v. Estefan Enters., Inc.*, 994 F. Supp. 1454, 1458 (S.D. Fla.), *aff'd*, 166 F.3d 353 (11th Cir. 1998). Although the Eleventh Circuit has apparently not addressed how the test would apply to reverse confusion theories, most courts apply some variation of the likelihood of confusion factors. *See, e.g.*, *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 302 (3d Cir. 2001) (addressing modified analysis of factors for purposes of reverse confusion).

[6] Stelor refers to both it and Google as "Internet-based businesses operat[ing] through identical channels." Opp. at 19. The use of the Internet as a medium does not establish that the parties are offering competing products or services. *See Instant Media, Inc. v. Microsoft Corp.*, No. C07-02639 SBA, 2007 WL 2318948, at *10 (N.D. Cal. Aug. 13, 2007) (goods and services cannot be considered related merely because they fall "under the general rubric of 'Internet-related services'").

[7] *Cf. Commerce Nat'l Ins. Svcs. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438, 441-43 (3d Cir. 2000) (holding that it was clearly erroneous for district court to assume that "banking and insurance are similar industries in the minds of consumers and that consumers would expect banks to expand into the insurance industry" where evidence of such perception consisted merely of an affidavit and an "unpersuasive report.").

*Basketball, Inc. v. NBA Props., Inc.*, 952 F. Supp. 1084, 1095 (D.N.J. 1997) (finding no likelihood of confusion though both parties used "Wizards" for basketball teams). Similarly, "[t]he fact that both products could broadly be described as relating to music is not sufficient to find that the products have a similar use or function." *Mach. Head v. Dewey Global Holdings, Inc.*, 61 U.S.P.Q.2d 1313, 1318 (N.D. Cal. 2001). "Meaningful differences between the products and services are often cited as a factor tending to negate reverse confusion, even when the products are superficially within the same category." *Harlem Wizards,* 952 F. Supp. at 1095; *see also Sunenblick* at 629 (concurrent use of "Uptown" for record publishers unlikely to cause confusion in light of the different audiences and different manner the marks were portrayed).

Similarly, the claim that Google is creating confusion by the sale of promotional products from its Google Store is ridiculous. Persons purchasing from the Google Store are either at the store at Google's California headquarters or, alternatively, are on the google.com Website. Any purchaser would know that the items offered by Google are promotional items originating with Google. *See Michael Caruso*, 994 F. Supp. at 1462 (finding no likelihood of confusion where Defendant sold souvenir clothing at store next to its restaurant). Since Stelor has not created any genuine issue of fact on infringement, summary judgment of non-infringement should be granted.

### III. THE GOOGLES TRADEMARK REGISTRATION IS INVALID

#### A. Stelor's Claim to Common Law Rights Are Irrelevant

The Court should also grant summary judgment that the GOOGLES trademark registration is invalid. Stelor argues that, even if Google prevails on this issue, it has "superior common law rights – independent of the federal trademark registration." Opp. at 2. Stelor's common law trademark rights are not at issue in Google's motion. Google's relief is limited to Stelor's trademark registration. Invalidation of the registration will substantially narrow the issues for trial.

The trademark registration at issue is a stylized design mark for GOOGLES, for "children's books." Nevertheless, the vast majority of evidence presented by Stelor in opposition, including nearly all of the evidence attached to the Silvers and Esrig Declarations, is directed at other products or activities (e.g., creation of the website). That evidence is irrelevant to the trademark registration. When this irrelevant evidence is ignored, there is no genuine issue of fact that: (1) there was insufficient use of the trademark on the book to support the 1996 trademark application and Mr. Silvers *should have known* that the use was insufficient; and (2) the trademark was not in use in

2003 or in continuous use in interstate commerce from 1998 to 2003, and Stelor *should have known* of this fact; and (3) the trademark owner did not file the Section 8/15 affidavit.

B. **The Alleged Distribution of the Book Prior to June 1996 Was Not Use in Interstate Commerce**

Stelor claims that the distribution of 20 books by Ms. Genaro constitutes sufficient "use in commerce" to support the filing of a trademark application. First, there is no testimony from Ms. Genaro that she distributed any books. Instead, Stelor relies on a hearsay, unauthenticated "log" allegedly showing the distribution. *See* Al-Salam Decl. Exh. 6. Because the log is inadmissible, there is no evidence supporting the claim that there was any distribution in interstate commerce. Even if the log were admissible, it does not support Stelor's claims. The log discloses, at most, the distribution of 20 books, 16 of which were distributed as promotional items ("promo"). Promotional distribution is not a use in commerce or trade. *See Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir. 1975) (shipping goods to regional sales manager insufficient to serve as a first use in commerce); *Windows User, Inc. v. Reed Bus. Publ'g Ltd.*, 795 F. Supp. 103, 108 (S.D.N.Y. 1992) (free promotional delivery of magazines is not a trademark use). The distribution of such promotional items, and the sale of four books is insufficient, as a matter of law, to support a claim of use in commerce. *See* Google Motion at 10-11 n.15 (citing cases where substantially greater distribution was deemed insufficient).

C. **There Was No Continuous Commercial Use of the Mark Between March 1998 and March 2003**

On March 26, 2003, Stelor filed an affidavit swearing that the trademark is "still in use and has been in continuous use in interstate commerce [in] the United States for more than five (5) consecutive years from June 1996 through the present [on children's books]." Al-Salam Decl. Exh. 31. Stelor's attorney testified that he understood that the books were "being sold with the logo appearing thereon . . . ." Google's Undisputed Facts ¶¶ 4, 37-43. In fact, the books were not being offered for sale at that time, and had never been offered for sale by Stelor. Google's Undisputed Facts ¶¶ 26-29. There is no documentary evidence or evidence from any Aurora employee that Stelor's predecessor – Aurora – sold any books containing the logo. Stelor cannot and does not seriously dispute the allegations. Instead, Stelor asserts that "the book is now available for purchase on the googles.com website," and that the "***Book had been offered for sale on the Internet through***

*the on-line seller Amazon.com throughout the period from 1998 to 2003*." Stelor Statement of Disputed Facts ¶¶ 27-28 (emphasis in original). The first part of the claim (i.e., that the book is available for sale now) is irrelevant. The issue is whether there were sales between 1998 and 2003, as claimed in the affidavits.

The second part of the claim is unsupported and, legally, irrelevant. There is no documentary evidence to support Mr. Esrig's new claim (*i.e.*, a claim never mentioned in prior depositions) that the book was continuously on sale on Amazon.com. The claim is also misleading. Stelor is apparently referring to **sales of used books by third parties**, not sales by Stelor. A trademark owner cannot claim that a mark has been in continuous use in interstate commerce based on **third-party activities**. *See, e.g., Parfums Nautee, Ltd. v. Am. Int'l Indus.*, 22 U.S.P.Q.2d 1306, 1309 (T.T.A.B. 1992) ("A party cannot defend against a claim of abandonment by relying on some residual goodwill generated through post-abandonment sales by distributors or retailers.").

The only other "evidence" of distribution is Mr. Esrig's unsupported, self-serving testimony that he gave out books at airports. Esrig Decl. ¶¶ 15-18. Even if true, this is insufficient to create the use in commerce necessary to support a Section 8 or 15 affidavit. *See* Opening Memorandum at 11-14.

### D. The Original Application and Section 8/15 Affidavits Were Fraudulent

Stelor claims that Google must prove that the false statements about use were intentional. Even if some courts have indicated that specific intent must be proven, those decisions are not binding on this Court, which has held that specific intent is unnecessary: "proof of specific intent to commit fraud is not required, rather, fraud occurs when an applicant or registrant makes a false material representation that the applicant or registrant knew or should have known was false." *Gen. Car & Truck Leasing Sys., Inc. v. Gen. Rent-A-Car Inc.*, 17 U.S.P.Q.2d 1398, 1400 (S.D. Fla. 1990). In the instant case, Mr. Silvers *should have known* that there was insufficient use in commerce as of June 1996 and Stelor *should have known* that the Combined Declaration of Use and Incontestability under Sections 8 and 15 contained misstatements. Even if Stelor did not know, it *should have known*.

### E. The Trademark Owner Did Not File the Section 8/15 Affidavits

As discussed in Google's opening memorandum, the current owner of the trademark registration must file the Section 8 affidavit. *See* Motion at 14-15; *In re Precious Diamonds, Inc.*,

635 F.2d 845, 846-47 (C.C.P.A. 1980) (upholding cancellation where Section 8 affidavit filed by wrong corporate entity). The trademark owner, Mr. Silvers, did not file the affidavit. Although Stelor spends significant time explaining why this mistake occurred, and argues that it was unintentional, that does not change the fact that the wrong party filed the affidavit. Stelor cites no authority, other than the legal conclusion of its paid expert, that supports its claim that this mistake can be ignored. *See* Opp. at 16. This is an independent basis for invalidating the registration.

## IV. STELOR IS NOT ENTITLED TO MONETARY RELIEF AS A MATTER OF LAW

As with the issue of infringement, Stelor has the burden of establishing its rights to damages, and coming forth with evidence sufficient to create a genuine issue of fact on the issue. Although Stelor claims the right to an award of Google's profits (Opp. at 20), it has not submitted any evidence sufficient to create a genuine issue of fact. Stelor argues that Google "acted in bad faith" (*Id.*), but has not introduced any evidence to support the claim. At best, it refers to the fact that Google did not respond to an e-mail from Mr. Silvers in 2001. That e-mail (or even the earlier trademark search), is insufficient, as a matter of law, to create a genuine issue of fact as to whether Google acted "in bad faith."

Further, Stelor's claim fails for a more fundamental reason – Stelor has failed to submit any evidence that Google has even profited from the allegedly infringing activities. Stelor has not, for example, established that Google has made any profits on the DK Reference Books, the Google Store, or any other activities that could be alleged to be infringing (Stelor is obviously not entitled to Google's profits related to its internet search business).

## V. CONCLUSION

For the reasons set forth above, Google should be granted summary judgment.

DATED: November 24, 2008.

Ft. Lauderdale, FL                    Respectfully submitted,


By:  */s/ Samantha Tesser Haimo*
   **ADORNO & YOSS LLP**
   Jan Douglas Atlas
   Florida Bar No. 226246
   jda@adorno.com
   Samantha Tesser Haimo
   Florida Bar No. 0148016
   stesser@adorno.com
   350 East Las Olas Boulevard, Ste. 1700
   Fort Lauderdale, FL  33301
   Telephone:  (954) 763-1200
   Facsimile:   (954) 766-7800

   **PERKINS COIE LLP**
   Ramsey M. Al-Salam (*pro hac vice*)
   ralsalam@perkinscoie.com
   Elana S. Matt (*pro hac vice*)
   ematt@perkinscoie.com
   1201 Third Avenue, Suite 4800
   Seattle, WA  98101-3099
   Telephone:  (206) 359-6338
   Facsimile:   (206) 359-7338

   Attorneys for Defendant Google Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 24 day of November, 2008, I served a copy of the foregoing Reply Memorandum in Support of Motion for Summary Judgment on the following persons, via CM/ECF filing:

      Kevin C. Kaplan
      David J. Zack
      Morgan L. Swing
      Coffey Burlington
      Office in the Grove, Penthouse
      2699 S. Bayshore Drive, Penthouse A
      Miami, FL 33133

                        */s/ Samantha Tesser Haimo*
                        Samantha Tesser Haimo